UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| NATIONAL UNION FIRE COMPANY OF PITTSBURGH, PA, <br><br> Plaintiff, <br><br> vs. <br><br> PONTIAC FLYING SERVICE, INC., JUSTYN WEBSTER, as Special Administrator Of the Estate of NEIL WEBSTER, Deceased, And CAREN S. LUCENTE, as Independent Executor of the Estate of RICHARD P. LUCENTE, Deceased, <br><br> Defendants, <br><br> and <br><br> PONTIAC FLYING SERVICE, INC., <br><br> Third Party Plaintiff, <br><br> vs. <br><br> HARDY AVIATION INSURANCE, INC., <br><br> Third Party Defendant. | No. 03-1288 |

### ANSWER OF PONTIAC FLYING SERVICE TO FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

Now comes the Defendant and Third Party Plaintiff, PONTIAC FLYING SERVICE, INC. ("PONTIAC"), by its attorney, DAVID B. MUELLER of the firm of CASSIDY & MUELLER, and for answer to the First Amended Complaint for Declaratory Judgment states:

### COMMON ALLEGATIONS

### Parties

1. Plaintiff, NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA. ("NATIONAL UNION") is an insurance company organized and existing under the laws of Pennsylvania with its principal place of business in Pennsylvania and is authorized to issue policies of insurance in the State of Illinois.

ANSWER: PONTIAC admits the allegations of paragraph 1.

2. Defendant, PONTIAC FLYING SERVICE, INC. ("PONTIAC FL YING") is a corporation incorporated under the laws of the state of Illinois, with its principal place of business in Pontiac, Illinois, and is doing business at 15755 E. 2000 N. Road, Pontiac, Illinois. PONTIAC FLYING is a defendant in an underlying lawsuit filed against it by JUSTYN WEBSTER, as Special Administrator of the Estate of NEIL WEBSTER, Deceased. On or about May 5, 2003, PONTIAC FLYING was insured under a policy of insurance issued by NATIONAL UNION.

ANSWER: PONTIAC admits the allegations of paragraph 2.

3. Defendant, JUSTYN WEBSTER, as Special Administrator of the Estate of NEIL WEBSTER, Deceased ("WEBSTER") is, upon information and belief, a citizen of the State of Michigan and is the plaintiff in an underlying lawsuit filed against PONTIAC FLYING and CAREN S. LUCENTE, Independent Executor of the Estate of RICHARD P. LUCENTE, Deceased and, upon information and belief, is a necessary party defendant herein under Federal Rule of Civil Procedure 19(a).

ANSWER: Upon information and belief, PONTIAC admits the allegations of paragraph 3.

4. Defendant, CAREN S. LUCENTE, Independent Executor of the Estate of RICHARD P. LUCENTE, Deceased ("LUCENTE"), is, upon information and belief, a Citizen

of the State of Illinois and is a defendant in an underlying lawsuit filed against her and PONTIAC FLYING by WEBSTER and, upon information and belief, is a necessary party defendant herein under Federal Rule of Civil Procedure 19(a).

ANSWER: Upon information and belief, PONTIAC admits the allegations of paragraph 3.

## Jurisdiction and Venue

5. This Court has jurisdiction over the subject matter of this action pursuant to Title 28, United States Code, Section 1332 (diversity of citizenship), inasmuch as the parties are domiciled in diverse states (Pennsylvania, Michigan and Illinois), and, based upon information and belief, the amount in controversy exceeds $75,000 exclusive of interest and costs.

ANSWER: PONTIAC admits the allegations of paragraph 5.

6. Venue within this United States District Court for the Central District of Illinois is proper pursuant to Title 28, United States Code, Section 1391.

ANSWER: PONTIAC admits the allegations of paragraph 6.

7. A genuine, actual and justiciable controversy exists between NATIONAL UNION, on the one hand, and PONTIAC FL YING, WEBSTER, and/or LUCENTE, on the other, as to whether NATIONAL UNION has any obligation to indemnify PONTIAC FLYING and/or LUCENTE with regard to the loss of an a certain aircraft and/or third party wrongful death complaint filed against PONTIAC FL YING and LUCENTE arising out of said loss.

ANSWER: PONTIAC admits the allegations of paragraph 7.

## Statement of Case

8. This action seeks a declaration of the parties' rights and obligations under a policy of insurance bearing policy number A V3391999-04 which NATIONAL UNION issued to

PONTIAC FLYING with respect to the loss of an aircraft, 1991 Air Tractor AT-503A, N503D ("Air Tractor"), which resulted from an aircraft accident on May 5, 2003 in Pontiac, Illinois.

ANSWER: PONTIAC admits that this action seeks a declaration of the parties' rights and obligations under NATIONAL UNION Policy No. AV3391999-04 with respect to the loss of the air tractor. Further answering, PONTIAC states that the action also seeks a declaration of the party's rights and obligations under the policy for the defense and indemnification of PONTIAC FLYING against the wrongful death and survival Act claims of the Estate of Neil Webster in the underling lawsuit.

## Background

9. PONTIAC FL YING is in the business of, *inter alia,* aerial application of agricultural products.

ANSWER: PONTIAC admits the allegations of paragraph 9.

10. Upon information and belief, on or about May 5, 2003, PONTIAC FLYING was operating as an agricultural flight training school, which included the use of the Air Tractor for turbine transition flight instruction.

ANSWER: PONTIAC denies the allegations of paragraph 10 in the sense that they differentiate "turbine transition flight instruction" from aerial application. Further answering PONTIAC state that proper education and training of aerial application pilots is a necessary component of aerial application and in that regard training flights are in direct support thereof.

11. PONTIAC FLYING advertised its turbine transition training course, and its use of the Air Tractor for such instruction, in "Ag Air Update," including the April 2003 issue.

ANSWER: PONTIAC admits the allegations of paragraph 11.

12. On or before May 5, 2003, PONTIAC FLYING hired the services of Richard P. Lucente, Jr. (Caren Lucente and Richard Lucente will be referred to collectively as "LUCENTE") to provide turbine transition flight instruction in the Air Tractor to Neil T. Webster (Justyn Webster and Neil Webster will be referred to collectively as "WEBSTER").

ANSWER: PONTIAC denies that Lucente was an employee of PONTIAC FLYING. Further answering, PONTIAC states that Lucente was an independent contractor in providing turbine transition flight instruction to Webster.

13. WEBSTER was referred to PONTIAC FL YING for turbine transition training by Del Finup ("Finup") of Lakeview, Michigan.

ANSWER: PONTIAC admits the allegations of paragraph 13

14. Finup agreed pay PONTIAC FLYING the sum of $5,200 to complete WEBSTER's turbine transition training.

ANSWER: PONTIAC admits the allegations of paragraph 14.

15. In furtherance of the agreement to provide WEBSTER's turbine transition training, the Air Tractor departed from Pontiac Municipal Airport on May 5, 2003 with LUCENTE acting as pilot in command and WEBSTER as student pilot passenger.

ANSWER: For answer to paragraph 15 PONTIAC states that Lucente and Webster were both pilots. Further answering upon information and belief, PONTIAC states that at the time the air tractor departed from Pontiac Municipal Airport on May 5, 2003, it believes that Lucente was acting as pilot in command and that Webster was acting as a student pilot. However, PONTIAC further states that at the time of the occurrence, it lacks knowledge regarding which pilot was flying the plane or whether both were flying the plane.

16. The Air Tractor impacted the ground at some point after its departure from Pontiac Municipal Airport on May 5, 2003 resulting in the death of LUCENTE and WEBSTER and the destruction of the Air Tractor.

ANSWER: PONTIAC admits the allegations of paragraph 16.

### The Claims

17. On May 5, 2003, PONTIAC FLYING reported the loss of the Air Tractor to its insurance agent, Hardy Aviation Insurance, Inc.

ANSWER: PONTIAC admits that it reported the loss to HARDY AVIATION INSURANCE, INC. Further answering, PONTIAC states that it lacks knowledge regarding the legal relationship at that time and under those circumstances between HARDY AVIATION INSURANCE and PONTIAC or HARDY AVIATION INSURANCE and NATIONAL UNION and therefore denies the remaining allegations of paragraph 17.

18. NATIONAL UNION denied hull coverage for the loss of the aircraft by letter dated July 31, 2003 to PONTIAC FLYING.

ANSWER: PONTIAC admits the allegations of paragraph 18.

19. On April 22, 2004, WEBSTER filed a complaint against PONTIAC FL YING and LUCENTE in the Circuit Court of Livingston County, Illinois styled *Justyn Webster, as Special Administrator of the Estate of Neil Webster, Deceased* v. *Pontiac Flying Service, Inc. and Caren S. Lucente, as Independent Executor of the Estate of Richard P. Lucente, Deceased,* pending as Case No. 04 L 15 ("The Webster Complaint"). The Webster Complaint seeks damages under the Illinois Wrongful Death Act and Survival Act. A copy of the Webster Complaint is attached hereto as Exhibit "A" and made a part hereof.

ANSWER: PONTIAC admits the allegations of paragraph 19.

20. NATIONAL UNION denied coverage in connection with the Webster Complaint by letter dated June 10, 2004 to PONTIAC FLYING.

ANSWER: PONTIAC admits that NATIONAL UNION has denied coverage in connection with the Webster complaint and further answering states that that declination is evidenced by a letter of June 10, 2004 to PONTIAC.

### The Policy

21. NATIONAL UNION issued a liability insurance policy to PONTIAC FLYING under Policy No. A V 3391999-04, effective May 19, 2002 to July 6, 2003. A copy of the NATIONAL UNION policy is attached hereto as Exhibit "B" and made a part hereof.

ANSWER: PONTIAC admits the allegations of paragraph 21. Further answering PONTIAC states that the policy also provides first party property loss coverage.

22. The NATIONAL UNION policy covered three aircraft, including the Air Tractor, and provided non-chemical and chemical liability coverage and physical damage coverage. The "Bodily Injury - excluding Passengers" limit of liability is $100,000 each person, $300,000 each occurrence/aggregate. The Physical Damage Coverage identified for the Air Tractor includes an Insured Value of $350,000.

ANSWER: PONTIAC admits the allegations of paragraph 22.

23. The NATIONAL UNION policy provided coverage as follows under INSURING AGREEMENTS:

### AERIAL APPLICATOR AIRCRAFT POLICY
### INSURING AGREEMENTS

> The Company... in consideration of the payment of the premium, in reliance upon the statements of the Declarations made a part hereof, subject to all of the terms of this policy including the applicable limits of liability, the Company agrees with the Named Insured with respect to those coverages in Items 3 and 4 of the Declarations.

> I.    **LIABILITY COVERAGES**
>
> **Coverage A – Bodily Injury** Liability Excluding **Passengers –** To pay on behalf of the Insured those sums which the **Insured** shall become legally obligated to pay as damages because of **bodily injury** sustained by any person **excluding any passenger[.]**
>
> **Coverage B – Property Damage** Liability - To pay on behalf of the **Insured** those sums which the **Insured** shall become legally obligated to pay as damages because of **property damage.**
>
> . . .
>
> caused by an **occurrence** and arising out of the ownership, maintenance or use of the **aircraft**.
>
> \*   \*   \*
>
> III.    **PHYSICAL DAMAGE COVERAGES**
>
> **Coverage F – All Risk Basis** - To pay for **physical damage** loss to the **aircraft**, including **disappearance** of the **aircraft** unless otherwise described in this policy.
>
> \*   \*   \*

(Exhibit B.)

  ANSWER:    PONTIAC admits that the policy contained the provisions which are set forth in paragraph 23.

24.    The Declarations page of the NATIONAL UNION Policy provides, in part:

> **<u>DECLARATIONS</u>**
>
> **ITEM 6.** The aircraft will be used only for the purpose **Aerial Application**.
>
> \*   \*   \*

(Exhibit B.)

  ANSWER:    PONTIAC admits that the declarations page of the policy contained the language which is set forth in paragraph 24.

- 8 -

25. The NATIONAL UNION policy provides, *inter alia,* as follows under DEFINITIONS:

### DEFINITIONS

"**Aerial Application**" means the application by aircraft of seeds, fertilizers or chemicals and includes flights required in direct support thereof.

"**Bodily Injury**" means bodily injury, sickness, disease, and if arising out of the foregoing, mental anguish sustained by any person which occurs during the policy period, including death at any time resulting therefrom.

"**Crew**" means the pilot in-command, co-pilot, flight engineer, flight attendant or anyone else who is in, on, or boarding the **aircraft** for assisting in the operation of the **aircraft**.

"**Passenger**" means any person in, on, or boarding the **aircraft** for the purpose of
riding or flying therein or alighting therefrom after a flight or attempted flight therein, including **crew** member(s).

\*   \*   \*

(Exhibit B.)

ANSWER:    PONTIAC admits that the policy contains the language which is set forth in paragraph 25.

26. The NATIONAL UNION policy includes the following exclusions:

### EXCLUSIONS

This policy does not apply:

1.  a)  while the **aircraft** is being operated with the knowledge and consent of the **Insured** or of any executive officer or partner thereof, for any unlawful purpose, or for any purpose or use other than **aerial application**, unless specifically endorsed on the policy;

\*   \*   \*

(Exhibit B.)

ANSWER:    PONTIAC admits that the policy contains the language which is set forth in paragraph 26.

## CLAIMS FOR DECLARATORY RELIEF

## COUNT I

*Unauthorized Purpose Of Use*

27.    NATIONAL UNION adopts and incorporates by reference herein each and every "Common Allegation," set forth above, as allegations under Count I.

ANSWER:    For answer to paragraph 27 PONTIAC adopts its answer to the corresponding allegations of the First Amended Complaint.

28.    "Aerial application" is the only purpose specifically declared and authorized by the NATIONAL UNION policy, as expressly identified by Item 6 of the Declarations page and incorporated into the insuring agreement.

ANSWER:    PONTIAC admits the allegations of paragraph 28.

29.    At the time of the accident, PONTIAC FLYING was not using the Air Tractor for "aerial application."

ANSWER:    PONTIAC denies the allegations of paragraph 29. Further answering PONTIAC states that the definition of "aerial application" as used in the policy includes flights which are required for the direct support of the application by aircraft of seeds, fertilizers, or chemicals. In that regard pilot education and training is essential to and directly supports that activity.

30.    At the time of the accident, PONTIAC FL YING was using the Air Tractor for turbine transition training of an out-of-state pilot pursuant to a nationally advertised turbine transition training program.

ANSWER: PONTIAC denies the allegations of paragraph 30 in the sense that it infers turbine transition training is not required for aerial application involving the covered aircraft and therefore is not in direct support of the application by aircraft of seeds, fertilizers or chemicals.

31. Turbine transition training is not included in the definition of "aerial application" under the NATIONAL UNION policy and was not a covered purpose of use under the policy

ANSWER: PONTIAC denies the allegations of paragraph 31 and further answering states that flights which are required to train pilots in the application by covered aircraft of seeds, fertilizers or chemicals are in direct support of aerial application.

32. Exclusion lea) of the NATIONAL UNION policy also applies to exclude coverage for the loss of the Air Tractor and defense and indemnity in connection with the Webster Complaint because at the time of the accident the Air Tractor was being operated with the knowledge and consent of PONTIAC FL YING for a purpose or use other than "aerial application.

ANSWER: PONTIAC denies the allegations of paragraph 32.

33. The loss of the Air Tractor and the Webster Complaint do not come within the coverage of the NATIONAL UNION policy, and are also expressly excluded under the policy, because the loss of the Air Tractor and the death of its occupants on May 5, 2003 resulted from a purpose of use of the aircraft other than "aerial application" and therefore NATIONAL UNION has no duty to indemnify PONTIAC FLYING in connection with the loss of the Air Tractor and no duty to defend or indemnify PONTIAC FL YING and/or LUCENTE in connection with the Webster Complaint.

ANSWER: PONTIAC denies the allegations of paragraph 33 and further answering states that NATIONAL UNION is obligated to indemnify PONTIAC in connection with the loss

of the air tractor and to defend and indemnify PONTIAC in connection with the Webster complaint.

WHEREFORE, Defendant, PONTIAC FLYING SERVICE, INC., prays that the court declare that:

A. NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA. is obligated to indemnify PONTIAC FLYING in connection with the loss of the Air Tractor under its Policy No. A V 3391999-04;

B. NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURG, PA is also obligated to the Bank of Pontiac, Pontiac, Illinois, as "loss payee" under the Policy;

C. NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA is also obligated under the liability coverage of the Policy to defend and indemnify PONTIAC FLYING SERVICE, INC. against any claims for personal injury or death arising out of the May 5, 2003 accident, and

D. Such other and further relief as may be appropriate.

## COUNT II

*Policy Provides No Coverage For Bodily Injury To "Passengers"*

34. NATIONAL UNION adopts and incorporates by reference herein each and every "Common Allegation," set forth above, as allegations under Count II.

ANSWER:    For answer to paragraph 34 PONTIAC adopts its answer to the prior allegations of the First Amended Complaint which are identified.

35. The NATIONAL UNION policy issued to PONTIAC FLYING is, by its terms, intended to provide coverage for "bodily injury" to individuals on the ground or in other airplanes, not for "bodily injury" to the occupants of the insured aircraft - who usually are subject to workers compensation protection as employees of the aerial applicator/aircraft owner or subject to their own business coverage as an independent contractor - accordingly, the face of the

Declarations page of the National Union provides under Item 3A: "Bodily Injury -excluding Passengers."

ANSWER:    PONTIAC admits that the declarations page of the policy contains the language which is alleged. However, further answering PONTIAC states that the remainder of the allegations are legal conclusions of the pleader to which no answer is required and further responding state that those legal conclusions are inaccurate representations of the law.

36.    Section I of the NATIONAL UNION policy, "Liability Coverages" provides for **"Bodily Injury** Liability Excluding **Passengers"** and states that the Company will "... pay on behalf of the Insured those sums which the **Insured** shall become legally obligated to pay as damages because of **bodily injury** sustained by any person **excluding any passenger**."

ANSWER:    PONTIAC admits that the policy contains the language which is set forth in paragraph 36.

37.    The "Definitions" section in the NATIONAL UNION policy provides that "Passengers" means"... any person in, on, or boarding the aircraft for the purpose of riding or flying therein or alighting therefrom after a flight or attempted flight therein, including crew members."

ANSWER:    PONTIAC admits that the policy contains the language which is set forth in paragraph 37.

38.    LUCENTE and WEBSTER were "passengers" as defined by the NATIONAL UNION policy while aboard the Air Tractor on May 5, 2003 and therefore the NATIONAL UNION policy does not provide coverage for any damages arising out of "bodily injury" sustained by either LUCENTE or WEBSTER.

ANSWER: For answer to paragraph 38 PONTIAC states that it lacks knowledge as to whether Lucente or Webster or both were flying the plane at the time of the occurrence and therefore denies the allegations of paragraph 38.

WHEREFORE, PONTIAC FLYING SERVICE, INC. prays that the court declare that:

A.  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA. is obligated to indemnify PONTIAC FLYING in connection with the loss of the Air Tractor under its Policy No. A V 3391999-04;

B.  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURG, PA is also obligated to the Bank of Pontiac, Pontiac, Illinois, as "loss payee" under the Policy;

C.  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA is also obligated under the liability coverage of the Policy to defend and indemnify PONTIAC FLYING SERVICE, INC. against any claims for personal injury or death arising out of the May 5, 2003 accident, and

D.  Such other and further relief as may be appropriate.

### COUNT III

*Lucente Not An Insured*

39. NATIONAL UNION adopts and incorporates by reference herein each and every "Common Allegation," set forth above, as allegations under Count III.

ANSWER: For answer to paragraph 39 PONTIAC adopts its answer to the prior paragraphs of the First Amended Complaint which are identified.

40. Upon information and belief, LUCENTE was hired by PONTIAC FL YING as an independent contractor to provide turbine transition flight instruction to WEBSTER and LUCENTE was not an employee of PONTIAC FLYING.

ANSWER: PONTIAC admits the allegations of paragraph 40.

41. The NATIONAL UNION policy provides, *inter alia,* as follows under

DEFINITIONS:

**DEFINITIONS**

"Insured" means with respect to Coverages A, B, C and D, not only the Named Insured but also officers, directors and employees of the Named Insured and pilots under contract to the Named Insured, but only while acting within the scope of their duties as such and provided the actual use of the aircraft is with the express permission of the Named Insured. Except with respect to the Named Insured the provisions of this paragraph do not apply:

* * *

b) to any person or organization or to any agent or employee thereof (other than any employee of the Named Insured while acting in the course of his employment by the Named Insured):

* * *

3) who is engaged in the activity of instruction, evaluation, examination or certification of any pilot or crew member or prospective pilot or crew member;

4) who is charging a fee and/or receiving any remuneration or benefit for providing any type of service whatsoever in connection with the ownership, maintenance or use of any insured aircraft;

c) to any person or organization operating the aircraft under the terms of any rental agreement or training program which provides any remuneration or benefit to the Named Insured for the use of the aircraft;

***

ANSWER: PONTIAC admits that the policy contains the language which is alleged.

42. On May 5, 2003, at the time of the loss of the Air Tractor and the death of its occupants, LUCENTE, as an independent contractor for PONTIAC FL YING, was engaged in the activity of flight instruction of WEBSTER and LUCENTE therefore is not included within the definition of "Insured" pursuant to paragraph b(3) under the definition of "Insured" in the policy.

ANSWER: For answer to paragraph 42, PONTIAC states that coverage is determined under the insuring agreement as of the time of the occurrence. PONTIAC lacks knowledge of the

activities of Webster and Lucente at the time of the occurrence and therefore neither admits nor denies the allegations of paragraph 42 as they relate to coverage for Lucente.

43. On May 5, 2003, at the time of the destruction of the Air Tractor and the death of its occupants, LUCENTE, as an independent contractor for PONTIAC FLYING, was charging a fee to WEBSTER's employer, Finup, in exchange for providing turbine transition flight training services to WEBSTER and LUCENTE therefore is not included within the definition of "Insured" pursuant to paragraph b(4) under the definition of "Insured" in the policy.

ANSWER: PONTIAC denies the allegations of paragraph 43.

44. On May 5, 2003, at the time of the destruction of the Air Tractor and the death of its occupants, LUCENTE, as an independent contractor for PONTIAC FLYING, was operating the aircraft under the terms of a training program which provided remuneration to PONTIAC FLYING for the use of the aircraft and LUCENTE therefore is not included within the definition of "Insured" pursuant to paragraph c under the definition of "Insured" in the policy.

ANSWER: PONTIAC states that the provision in question does not apply to PONTIAC as the named insured. Further answering PONTIAC states that it lacks knowledge of who was operating the aircraft at the time of the occurrence and therefore can neither admit nor deny application of the policy language to Lucente.

WHEREFORE, PONTIAC FLYING SERVICE, INC. states that it is unable to determine whether there was coverage for Lucente under the policy and therefore prays that the court require the Plaintiff to prove the allegations of Count III before making declarations which are sought.

## DEFENSES

Now comes the Defendant and Third Party Plaintiff, PONTIAC FLYING SERVICE, INC., and asserts the following defenses to the First Amended Complaint:

## FIRST DEFENSE

For its first defense, PONTIAC FLYING SERVICE, INC., states that the First Amended Complaint fails to state a claim upon which relief may be granted.

WHEREFORE, Defendant, PONTIAC FLYING SERVICE, INC., prays that the First Amended Complaint be dismissed.

## SECOND DEFENSE

For its second defense, PONTIAC FLYING SERVICE, INC., states that the Plaintiff, through its agent, has waived the limited interpretation which it gives the term "aerial application" in the First Amended Complaint.

WHEREFORE, Defendant and Third Party Plaintiff, PONTIAC FLYING SERVICE, INC., prays that the First Amended Complaint be dismissed.

## THIRD DEFENSE

For its third defense, PONTIAC FLYING SERVICE, INC., states that the Plaintiff, acting through its agent, is estopped to assert the limited interpretation which it gives to the term "aerial application" in its First Amended Complaint.

WHEREFORE, Defendant and Third Party Plaintiff, PONTIAC FLYING SERVICE, INC., prays that the First Amended Complaint be dismissed.

CASSIDY & MUELLER

By: _____
Attorneys for Defendant and Third Party Plaintiff,
PONTIAC FLYING SERVICE, INC.

CASSIDY & MUELLER
323 Commerce Bank Building
416 Main Street
Peoria, Illinois 61602
Telephone: 309/676-0591