**E-FILED**
Wednesday, 08 September, 2004  11:15:34 AM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| NATIONAL UNION FIRE INSURANCE ) <br> COMPANY OF PITTSBURGH, PA. ) <br> ) <br> Plaintiff ) <br> v. ) <br> ) <br> PONTIAC FLYING SERVICE, INC., ) <br> JUSTYN WEBSTER, as Special Administrator ) <br> of the Estate of NEIL WEBSTER, Deceased, and ) <br> CAREN S. LUCENTE, as Independent Executor ) <br> of the Estate of RICHARD P. LUCENTE, ) <br> Deceased, ) <br> ) <br> Defendants ) <br> _____ ) <br> PONTIAC FLYING SERVICE, INC., ) <br> ) <br>     Defendant and Third Party Plaintiff, ) <br> v. ) <br> ) <br> HARDY AVIATION INSURANCE, INC. ) <br> ) <br>     Third Party Defendant. ) | Case No. 03-CV091288 <br><br> Magistrate Judge Byron G. Cudmore |

**DEFENDANT, JUSTYN WEBSTER, as Special Administrator of the Estate of NEIL
WEBSTER, DECEASED'S ANSWERS TO PLAINTIFF'S FIRST AMENDED
COMPLAINT FOR DECLARATORY JUDGMENT**

NOW COMES the Defendant, JUSTYN WEBSTER, as Special Administrator of the Estate

of NEIL WEBSTER, Deceased, (hereinafter "WEBSTER") by and through his attorneys,

CLIFFORD LAW OFFICES, P.C. and for his answer to Defendant, National Union Fire Insurance

Company of Pittsburgh, PA's First Amended Complaint for Declaratory Judgment states:

**COMMON ALLEGATIONS**

**PARTIES**

1.     Plaintiff, NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,

PA. ("NATIONAL UNION") is an insurance company organized and existing under the laws of Pennsylvania with its principal place of business in Pennsylvania and is authorized to issue policies of insurance in the State of Illinois.

    **ANSWER**:    WEBSTER admits the allegations of Paragraph 1.

    2.    Defendant, PONTIAC FLYING SERVICE, INC., ("PONTIAC FLYING") is a corporation incorporated under the laws of the State of Illinois, with its principal place of business in Pontiac, Illinois, and is doing business at 15755 East 2000 N. Road, Pontiac, Illinois. PONTIAC FLYING is a defendant in an underlying lawsuit filed against it by JUSTYN WEBSTER, as Special Administrator of the Estate of NEIL WEBSTER, Deceased. On or about May 5, 2003, PONTIAC FLYING was insured under a policy of insurance issued by NATIONAL UNION.

    **ANSWER**:    WEBSTER admits the allegations of Paragraph 2.

    3.    Defendant, JUSTYN WEBSTER, as Special Administrator of the Estate of NEIL WEBSTER, Deceased ("WEBSTER") is, upon information and belief, a citizen of the State of Michigan and is the Plaintiff in an underlying lawsuit filed against PONTIAC FLYING and CAREN S. LUCENTE, Independent Executor of the Estate of RICHARD P. LUCENTE, Deceased and, upon information and belief, is a necessary party defendant herein under Federal Rule of Civil Procedure 19(a).

    **ANSWER**:    WEBSTER admits the allegations of Paragraph 3.

    4.    Defendant, CAREN S. LUCENTE, Independent Executor of the Estate of RICHARD P. LUCENTE, Deceased ("LUCENTE"), is, upon information and belief, a Citizen of the State of Illinois and is a defendant in an underlying lawsuit filed against her and PONTIAC FLYING by WEBSTER, and, upon information and belief, is a necessary party defendant herein under Federal

Rule of Civil Procedure 19(a).

**ANSWER**:  WEBSTER admits the allegations of Paragraph 5.

### Jurisdiction and Venue

5.  This Court has jurisdiction over the subject matter of this action pursuant to Title 28, United States Code, Section 1332 (diversity of citizenship), inasmuch as the parties are domiciled in diverse states (Pennsylvania, Michigan and Illinois), and, based upon information and belief, the amount in controversy exceeds $75,000 exclusive of interest and costs.

**ANSWER**:  Paragraph 5 contains jurisdictional allegations to which no answer is required.

6.  Venue within this United States District Court for the Central District of Illinois is proper pursuant to Title 28, United States Code, Section 1391.

**ANSWER**:  Paragraph 6 contains jurisdictional allegations to which no answer is required.

7.  A genuine, actual and justiciable controversy exists between NATIONAL UNION, on the one hand, and PONTIAC FLYING, WEBSTER, and/or LUCENTE, on the other, as to whether NATIONAL UNION has any obligation to indemnify PONTIAC FLYING and/or LUCENTE with regard to the loss of a certain aircraft and/or third party wrongful death complaint filed against PONTIAC FLYING and LUCENTE arising out of said loss.

**ANSWER**:  WEBSTER admits the allegations of Paragraph 7.

### Statement of Case

8.  This action seeks a declaration of the parties' rights and obligations under a policy of insurance bearing policy number AV3391999-04 which NATIONAL UNION issued to PONTIAC FLYING with respect to the loss of an aircraft, 1991 Air Tractor AT-503A, N503D ("Air Tractor"),

which resulted from an aircraft accident on May 5, 2003 in Pontiac, Illinois.

> **ANSWER**: WEBSTER admits that this action seeks a declaration of the parties' rights and obligations under the National Union Policy No. AV3391999-04 with respect to the loss of the Air Tractor. Further answering, WEBSTER states that the action also seeks a declaration of the party's rights and obligations under the Policy for the defense and indemnification of Pontiac Flying against the wrongful death and survival act claims of the Estate of NEIL WEBSTER in the underlying lawsuit.

## Background

9. PONTIAC FLYING is in the business of, *inter alia*, aerial application of agricultural products.

> **ANSWER**: WEBSTER admits the allegations of Paragraph 9.

10. Upon information and belief, on or about May 5, 2003, PONTIAC FLYING was operating as an agricultural flight training school, which included the use of the Air Tractor for turbine transition flight instruction.

> **ANSWER**: WEBSTER denies the allegations of paragraph 10 in the sense that they differentiate "turbine translation flight instruction" from aerial application. Further, answering, WEBSTER states that proper education and training of aerial application pilots is a necessary component of aerial application and in that regard training flights are in direct support thereof.

11. PONTIAC FLYING advertised its turbine transition training course, and its use of the Air Tractor for such instruction, in "Ag Air Update," including the April 2003, issue.

> **ANSWER**: WEBSTER is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 11 and denies said allegations and demands strict proof thereof.

12. On or before May 5, 2003, PONTIAC FLYING hired the services of Richard P. Lucente, Jr. (Caren Lucente and Richard Lucente will be referred to collectively as "LUCENTE") to provide turbine transition flight instruction in the Air Tractor to Neil T. Webster (Justyn Webster

and Neil Webster will be referred to collectively as "WEBSTER").

> **ANSWER**: WEBSTER is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 12 and denies said allegations and demands strict proof thereof.

13. WEBSTER was referred to PONTIAC FLYING for turbine transition training by Del Finup ("Finup") of Lakeview, Michigan.

> **ANSWER**: WEBSTER is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 13 and denies said allegations and demands strict proof thereof.

14. Finup agreed to pay PONTIAC FLYING the sum of $5,200 to complete WEBSTER's turbine transition training.

> **ANSWER**: WEBSTER is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 11 and denies said allegations and demands strict proof thereof.

15. In furtherance of the agreement to provide WEBSTER's turbine transition training, the Air Tractor departed from Pontiac Municipal Airport on May 5, 2003 with LUCENTE acting as pilot in command and WEBSTER as student pilot passenger.

> **ANSWER**: WEBSTER admits the allegations contained in Paragraph 15.

16. The Air Tractor impacted the ground at some point after its departure from Pontiac Municipal Airport on May 5, 2003 resulting in the death of LUCENTE and WEBSTER and the destruction of the Air Tractor.

> **ANSWER**: WEBSTER admits the allegations contained in Paragraph 16.

## The Claims

17. On May 5, 2003, PONTIAC FLYING reported the loss of the Air Tractor to its insurance agent, Hardy Aviation Insurance Inc.

>**ANSWER**: WEBSTER is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 17 and denies said allegations and demands strict proof thereof.

18. NATIONAL UNION denied hull coverage for the loss of the aircraft by letter dated July 31, 2003 to PONTIAC FLYING.

>**ANSWER**: WEBSTER is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 18 and denies said allegations and demands strict proof thereof.

19. On April 22, 2004, WEBSTER filed a complaint against PONTIAC FLYING and LUCENTE in the Circuit Court of Livingston County, Illinois styled *Justyn Webster, as Special Administrator of the Estate of Neil Webster, Deceased v. Pontiac Flying Service, Inc. and Caren S. Lucente, as Independent Executor of the Estate of Richard P. Lucente, Deceased,* pending as Case No. 04 L 15 ("The Webster Complaint"). The Webster Complaint seeks damages under Illinois Wrongful Death Act and Survival Act. A copy of the Webster Complaint is attached hereto as Exhibit "A" and made a part hereof.

>**ANSWER**: WEBSTER admits the allegations of Paragraph 19.

20. NATIONAL UNION denied coverage in connection with the Webster Complaint by letter dated June 10, 2004 to PONTIAC FLYING.

>**ANSWER**: WEBSTER is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 20 and denies said allegations and demands strict proof thereof.

## The Policy

21. NATIONAL UNION issued a liability insurance policy to PONTIAC FLYING under Policy No. AV 3391999-04, effective May 19, 2002 to July 6, 2003. A copy of the NATIONAL UNION policy is attached hereto as Exhibit "B" and made a part hereof.

**ANSWER**: WEBSTER admits the allegations of Paragraph 21.

22. The NATIONAL UNION policy covered three aircraft, including the Air Tractor, and provided non-chemical and chemical liability coverage and physical damage coverage. The "Bodily Injury - - excluding Passengers" limit of liability is $100,000 each person, $300,000 each occurrence/aggregate. The Physical Damage Coverage identified for the Air Tractor includes an Insured Value of $350,000.

**ANSWER**: WEBSTER admits that the National Union policy provided the coverages which are alleged.

23. The NATIONAL UNION policy provided coverage as follows under INSURING AGREEMENTS:

AERIAL APPLICATOR AIRCRAFT POLICY

INSURING AGREEMENTS

The Company . . . in consideration of the payment of the premium, in reliance upon the statements of the Declarations made a part hereof, subject to all of the terms of this policy including the applicable limits of liability, the Company agrees with the **Named Insured** with respect to those coverages in Item 3 and 4 of the Declarations.

I. **LIABILITY COVERAGES**

**Coverage A - Bodily Injury** Liability Excluding **Passengers** - To pay on behalf of the Insured those sums which the **Insured** shall become legally obligated to pay as damages because of **bodily injury** sustained by any person **excluding any passenger[.]**

**Coverage B - Property Damage** Liability - To pay on behalf of the **Insured** those sums which the **insured** shall become legally obligated to pay as damages because of **property damage**.

. . .

Caused by an **occurrence** and arising out of the ownership, maintenance or use of the **aircraft**.

\* \* \*

III.   **PHYSICAL DAMAGE COVERAGES**

**Coverage F - All Risk Basis** - To pay for **physical damage** loss to the **aircraft**, including **disappearance** of the aircraft unless otherwise described in this policy.

\* \* \*

(Exhibit B.)

**ANSWER**: WEBSTER admits that the policy contains the provisions which are set fourth in Paragraph 23.

24.   The Declarations page of the NATIONAL UNION Policy provides, in part:

**DECLARATIONS**

**ITEM 6.** The aircraft will be used only for the purpose **Aerial Application.**

\* \* \*

(Exhibit B.)

**ANSWER**: WEBSTER admits that the declaration page of the policy contains the language which is set forth in Paragraph 24.

25.   The NATIONAL UNION policy provides, *inter alia*, as follows under DEFINITIONS:

**DEFINITIONS**

"**Aerial Application**" means the application by aircraft of seeds, fertilizers or chemicals and includes flights required in direct support thereof.

"**Bodily Injury**" means bodily injury, sickness, disease, and if arising out of the foregoing, mental anguish sustained by any person which occurs during the policy period, including

8

death at any time resulting therefrom.

**"Crew"** means the pilot in-command, co-pilot, flight engineer, flight attendant or anyone else who is in, on, or boarding the **aircraft** for assisting in the operation of the **aircraft**.

**"Passenger"** means any person in, on, or boarding the **aircraft** for the purpose of riding or flying therein or alighting therefrom after a flight or attempted flight therein, including **crew** member(s).

\* \* \*

(Exhibit B.)

**ANSWER**: WEBSTER admits that the policy contains the language which is set forth in Paragraph 25.

26. The NATIONAL UNION policy includes the following exclusions:

### EXCLUSIONS

This policy does not apply:

1. a) while the **aircraft** is being operated with the knowledge and consent of the **Insured** or of any executive officer or partner thereof, for any unlawful purpose, or for any purpose or use other than **aerial application**, unless specifically endorsed on the policy;

\* \* \*

**ANSWER**: WEBSTER admits that the policy contains the provisions which are set forth in Paragraph 26.

### CLAIMS FOR DECLARATORY RELIEF

### COUNT I

9

*Unauthorized Purpose of Use*

27.  NATIONAL UNION adopts and incorporates by reference herein each and every "Common Allegation," set forth above, as allegations under Count I.

**ANSWER**:  WEBSTER repeats and realleges the responses contained in Paragraphs 1 through 26 as if fully set forth herein.

28.  "Aerial application" is the only purpose specifically declared and authorized by the NATIONAL UNION policy, as expressly identified by Item 6 of the Declarations page and incorporated into the insuring agreement.

**ANSWER**:  WEBSTER admits the allegations of Paragraph 28.

29.  At the time of the accident, PONTIAC FLYING was not using the Air Tractor for "aerial application."

**ANSWER**:  WEBSTER denies the allegations of Paragraph 29.  Further answering, WEBSTER states that the definition of "aerial application" as used in the policy includes flights which are required for the direct support of the application by aircraft of seeds, fertilizers, or chemicals.  In that regard, pilot education and training is essential to and directly supports that activity.

30.  At the time of the accident, PONTIAC FLYING was using the Air Tractor for turbine transition training of an out-of-state pilot pursuant to a nationally advertised turbine transition training program.

**ANSWER**:  WEBSTER denies the allegations of paragraph 30 in the sense that it infers that turbine transition training is not required for aerial application involving the covered aircraft and therefore is not in direct support of the application by aircraft of seeds, fertilizers or chemicals.

31.  Turbine transition training is not included in the definition of "aerial application" under the NATIONAL UNION policy and was not a covered purpose of use under the policy.

**ANSWER**:  WEBSTER denies the allegations of Paragraph 31 and further states that

10

flights which are required to train pilots in the application by covered aircraft of seeds, fertilizers or chemicals are in direct support of aerial application.

32. Exclusion 1(a) of the NATIONAL UNION policy also applies to exclude coverage for the loss of the Air Tractor and defense and indemnity in connection with the Webster Complaint because at the time of the accident the Air Tractor was being operated with the knowledge and consent of PONTIAC FLYING for a purpose or use other than "aerial application."

**ANSWER**: WEBSTER is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 11 and denies said allegations and demands strict proof thereof.

33. The loss of the Air Tractor and the Webster Complaint do not come within the coverage of the NATIONAL UNION policy, and are also expressly excluded under the policy, because the loss of the Air Tractor and the death of its occupants on May 5, 2003 resulted from a purpose of use of the aircraft other than "aerial application" and therefore NATIONAL UNION has no duty to indemnify PONTIAC FLYING in connection with the loss of the Air Tractor and no duty to defend or indemnify PONTIAC FLYING and/or LUCENTE in connection with the Webster Complaint.

**ANSWER**: WEBSTER denies the allegations of paragraph 33 and further answering states that NATIONAL UNION is obligated to indemnify PONTIAC FLYING in connection with the WEBSTER Complaint.

WHEREFORE, Defendant, JUSTYN WEBSTER, as Special Administrator of the Estate of NEIL WEBSTER, Deceased, respectfully requests that this Honorable Court declare that:

A. NATIONAL UNION FIRE INSURANCE OF PITTSBURGH, PA. is obligated to indemnify Pontiac Flying in connection with the loss of the Air Tractor under its policy number: A V 3391999-04;

B. NATIONAL UNION FIRE INSURANCE OF PITTSBURGH, PA. is also obligated under the liability coverage of the Policy to defend and indemnify Pontiac Flying

      Service, Inc., against any claims of personal injury or death arising out of the May 5, 2003 air crash, and

C.    Such other and further relief as may be appropriate.

## COUNT II

*Policy Provides No Coverage For Bodily Injury To "Passengers"*

34.    NATIONAL UNION adopts and incorporates by reference herein each and every "Common Allegation," set forth above, as allegations under Count II.

    **ANSWER**:    WEBSTER repeats and realleges the responses contained in Paragraph 1 through 26 a if fully set forth herein.

35.    The NATIONAL UNION policy issued to PONTIAC FLYING is, by its terms, intended to provide coverage for "bodily injury" to individuals on the ground or in other airplanes, not for "bodily injury" to the occupants of the insured aircraft - - who usually are subject to workers compensation protection as employees of the aerial applicator/aircraft owner or subject to their own business coverage as an independent contractor - - accordingly, the face of the Declarations page of the National Union provides under Item 3A: "Bodily Injury - excluding Passengers."

    **ANSWER**:    WEBSTER admits that the declarations page of the policy contains the language which is alleged. However, further answering WEBSTER states that the remainder of the allegations are legal conclusions of the pleader to which no answer is required and further responding states that those legal conclusions are inaccurate representations of the law.

36.    Section I of the NATIONAL UNION policy, "Liability Coverages" provides for "**Bodily Injury** Liability Excluding **Passengers**" and states that the Company will ". . . pay on behalf of the Insured those sums which the **Insured** shall become legally obligated to pay as damages because of **bodily injury** sustained by any person **excluding any passenger**."

  **ANSWER**: WEBSTER admits that the policy contains the language which is set forth in paragraph 36.

37. The "Definitions" section in the NATIONAL UNION policy provides that "Passengers" means ". . .any person in, on, or boarding the aircraft for the purpose of riding or flying therein or alighting therefrom after a flight or attempted flight therein, including crew members."

  **ANSWER**: WEBSTER admits that the policy contains the language which is set forth in paragraph 37.

38. LUCENTE and WEBSTER were "passengers" as defined by the NATIONAL UNION policy while aboard the Air Tractor on May 5, 2003 and therefore the NATIONAL UNION policy does not provide coverage for any damages arising out of "bodily injury" sustained by either LUCENTE or WEBSTER.

  **ANSWER**: For answer to paragraph 38, WEBSTER states that he lacks knowledge as to whether Lucente or Webster or both were flying the plane at the time of the occurrence and therefore denies the allegations of paragraph 38.

WHEREFORE, JUSTYN WEBSTER, as Special Administrator of the Estate of NEIL WEBSTER, Deceased, respectfully requests that this Honorable Court find and declare that:

A. NATIONAL UNION Policy No. AV 339999-04 provides coverage for damages arising out of "bodily injury" sustained by LUCENTE and/or WEBSTER on May 5, 2003.

B. NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., is obligated to defend and indemnify PONTIAC FLYING and/or LUCENTE in connection with the Webster Complaint under the terms of NATIONAL UNION Policy No. AV 3391999-04; and

C. Such other relief as this Court deems necessary and proper, including an award of costs.

## COUNT III

*Lucente Not An Insured*

39. NATIONAL UNION adopts and incorporates by reference herein each and every "Common Allegation," set forth above, as allegations under Count III.

> **ANSWER**: WEBSTER repeats and realleges the responses contained in Paragraphs 1 through 26 as if fully set forth herein.

40. Upon information and belief, LUCENTE was hired by PONTIAC FLYING as an independent contractor to provide turbine transition flight instruction to WEBSTER and LUCENTE was not an employee of PONTIAC FLYING.

> **ANSWER**: WEBSTER is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 41 and denies said allegations and demands strict proof thereof.

41. The NATIONAL UNION policy provides, *inter alia*, as follows under DEFINITIONS:

## DEFINITIONS

**"Insured"** means with respect to Coverages A, B, C and D, not only the Named Insured but also officers, directors and employees of the Named Insured and pilots under contract to the Named Insured, but only while acting within the scope of their duties as such and provided the actual use of the aircraft is with the express permission of the Named Insured. Except with respect to the Named Insured the provisions of this paragraph do not apply:

\* \* \*

> b) to any person or organization or to any agent or employee thereof (other than any employee of the National Insured while acting in the course of his employment by the Named Insured):
>
> \* \* \*
>
> 3) who is engaged in the activity of instruction, evaluation, examination or certification of any pilot or crew member or prospective pilot or crew member;
>
> 4) who is charging a fee and/or receiving any remuneration or benefit for providing any type of service whatsoever in connection with the

14

           ownership, maintenance or use of any insured aircraft;

    c)    to any person or organization operating the aircraft under the terms of any rental agreement or training program which provides any remuneration or benefit to the Named Insured for the use of the aircraft;

    \* \* \*

    **ANSWER**:    WEBSTER admits that the policy contains the language which is set forth in paragraph 41.

42. On May 5, 2003, at the time of the loss of the Air Tractor and the death of its occupants, LUCENTE, as an independent contractor for PONTIAC FLYING, was engaged in the activity of flight instruction of WEBSTER and LUCENTE therefore is not included within the definition of "Insured" pursuant to paragraph b(3) under the definition of "Insured" in the policy.

    **ANSWER**:    WEBSTER is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 42 and denies said allegations and demands strict proof thereof.

43. On May 3, 2003, at the time of the destruction of the Air Tractor and the death of its occupants, LUCENTE, as an independent contractor for PONTIAC FLYING, was charging a fee to WEBSTER's employer, Finup, in exchange for providing turbine transition flight training services to WEBSTER and LUCENTE therefore is not included within the definition of "Insured" pursuant to paragraph b(4) under the definition of "Insured" in the policy.

    **ANSWER**:    WEBSTER is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 43 and denies said allegations and demands strict proof thereof.

44. On May 5, 2003, at the time of the destruction of the Air Tractor and the death of its occupants, LUCENTE, as an independent contractor for PONTIAC FLYING, was operating the

aircraft under the terms of the aircraft and LUCENTE therefore is not included within the definition of "Insured" pursuant to paragraph c under the definition of "Insured" in the policy.

    **ANSWER**: WEBSTER is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 44 and denies said allegations and demands street proof thereof.

WHEREFORE, JUSTYN WEBSTER, as Special Administrator of the Estate of NEIL WEBSTER, Deceased, states that he is unable to determine whether there was coverage for Lucente under the Policy and therefore prays that the Court require the Plaintiff to prove the allegations of Count III before making declarations which are sought.

## AFFIRMATIVE DEFENSES

Now comes the Defendant, JUSTYN WEBSTER, as Special Administrator of the Estate of NEIL WEBSTER, Deceased, and asserts the following Affirmative Defenses to the Complaint:

## FIRST DEFENSE

For its first Defense, JUSTYN WEBSTER, as Special Administrator of the Estate of NEIL WEBSTER, Deceased, states that the Complaint fails to state a claim upon which relief may be granted.

WHEREFORE, Defendant, JUSTYN WEBSTER, as Special Administrator of the Estate of NEIL WEBSTER, Deceased, prays that the Complaint be dismissed.

## SECOND DEFENSE

For its second Affirmative Defense, JUSTYN WEBSTER, as Special Administrator of the Estate of NEIL WEBSTER, Deceased, states that the Plaintiff through its agent, has waived the limited interpretation which it gives the term "aerial application" in the Complaint.

WHEREFORE, Defendant, JUSTYN WEBSTER, as Special Administrator of the Estate of NEIL WEBSTER, Deceased, prays that the Complaint be dismissed.

### THIRD DEFENSE

For its third Affirmative Defense, JUSTYN WEBSTER, as Special Administrator of the Estate of NEIL WEBSTER, Deceased, states that the Plaintiff, acting through its agent, is estopped to assert the limited interpretation which it gives to the term "aerial application" in its Complaint.

WHEREFORE, Defendant, JUSTYN WEBSTER, as Special Administrator of the Estate of NEIL WEBSTER, Deceased, prays that the Complaint be dismissed.

Respectfully submitted,

s/ Kevin P. Durkin
Kevin Durkin Attorney Bar Number: 03127906
Clifford Law Offices, P.C.
120 N. LaSalle Street
Suite 3100
Chicago, Illinois 60602
Telephone: (312) 899-9090
Fax: (312) 251-1160
E-mail: kpd@cliffordlaw.com

                        Attorney for Defendant, JUSTYN WEBSTER, as Special Administrator of the Estate of NEIL WEBSTER, Deceased

Kevin P. Durkin
Michael S. Krzak
CLIFFORD LAW OFFICES, P.C.
Attorneys for Plaintiff
120 North LaSalle Street
Suite 3100
Chicago, Illinois 60602
(312) 899-9090