**E-FILED**
Tuesday, 19 October, 2004  10:58:26 AM
Clerk, U.S. District Court, ILCD

National Union Fire Insurance
Company of Pittsburgh, Pennsylvania,
Plaintiff

v.

Pontiac Flying Service, Inc.
Defendant and Third Party
Plaintiff

v.

Hardy Aviation Insurance, Inc.,
Third Party Defendant

---

## Report and Analysis

The following report and analysis represents my professional opinions in the captioned matter and is based upon my education, training and experience in the insurance industry as well as documents provided to me and my personal research.[1] The opinions expressed below are made to a reasonable certainty in my field of expertise.   If appropriate additional information is presented to me, this report may be supplemented.

**Introduction.**

Defendant Pontiac Flying Service, Inc. (Pontiac) obtained Aerial Applicator Aircraft Policy Number AV 33391999-04 (Form AGO1[9/98])issued by National Union Fire Insurance Company of Pittsburgh, Pennsylvania (National Union)

---

[1] My curriculum vitae is attached as Exhibit A.

-1-

## Report and Analysis

effective May 19, 2002 to May 19, 2003 through Hardy Aviation Insurance, Inc. (Hardy). This policy was the renewal of Policy Number AV 3391999-03.

The policy provided Bodily Injury and Property Damage Liability insurance as well as Physical Damage coverage for three aircraft including a 1991 Air Tractor 5Q3 (N503D). The Air Tractor was insured for "All Risks: Ground and Flight" with deductibles of $500-Not in Motion and $35,000-In Motion, Ingestion or Mooring. As this aircraft was used in the aerial application of agricultural products (crop-dusting) it also had Comprehensive Chemical coverage.

On May 5, 2003 the Air Tractor (N503D) was destroyed in an aircraft accident while involved in alleged "turbine transition" training. Both the pilot-in-charge, Richard P. Lucente, Jr., and companion pilot, Neil T. Webster, were killed in the crash. National Union investigated under a reservation of rights and then denied coverage for the aircraft loss as will be discussed below. The day after the loss May 6, 2003 National Union notified the insured that the policy would be "non-renewed".

In order to meet the 60 day requirement of the Illinois Cancellation / Nonrenewal Endorsement - Aviation (SE52142[11/94]) Endorsement Number 17 the policy was extended from May 19, 2002 to July 6, 2003 on Policy Period Revision Endorsement (AV116[1/99]) effective May 19, 2003, Endorsement Number 19. Prior to the loss National Union was obligated to renew the policy under Illinois insurance regulations set forth on Endorsement 17.

**Discussion.**

My discussion on this matter is being presented in two sections. The first is my review and analysis of the Aerial Applicator Aircraft Policy Number AV 33391999-04 with respect to the coverage available for the Air Tractor (N503D). The second section will cover my report and analysis of Hardy Aviation Insurance, Inc. and its activities related to the insurance coverages obtained for Pontiac Flying Service, Inc.

-2-

**Report and Analysis**

---

**I. National Union.**

National Union issued Aerial Applicator Aircraft Policy Number AV 33391999-04 to Pontiac Flying Service, Inc. This was a renewal of a prior insurance policy and was not substantially different in coverage.

The applicable insuring agreements are:

> Liability–Coverage A - **Bodily Injury** Liability Excluding **Passengers** - To pay on behalf of the **Insured** those sums which the **Insured** shall become legally obligated to pay as damages because of bodily injury sustained by any person excluding any **passenger,**[2]

> Liability Coverage B–**Property Damage** Liability - To pay on behalf of the **Insured** those sums which the **Insured** shall become legally obligated to pay as damages because of **property damage,**

> caused by an **occurrence** and arising out of the ownership, maintenance or use of the **aircraft.**

> Physical Damage Coverages–Coverage F - **All Risk Basis** - To pay for **physical damage** loss to the **aircraft,** including **disappearance** of the **aircraft** unless other wise described in the policy.

It its *Claim for Declaratory Relief* National Union charges that Pontiac was using the Air Tractor (N503D) for turbine transition training. Further National Union claims this training was not included in the definition of "Aerial Application". What National Union fails to mention is that turbine transition training was not specifically excluded on the policy nor was it ever mentioned on any of the 19 endorsements.

Hardy's testimony provides the assurance that any pilot who undertakes turbine transition training is already an experienced piston engine powered fixed-wing aircraft pilot in aerial application. Thus the risk involved for the insurance company

---

[2] Any terms used in the policy that are in bold-face type are terms that are defined within the policy.

**Report and Analysis**

is less than that of a student pilot in piston engine powered fixed-wing aircraft taking in-flight training.

The plaintiff uses as the basis for denial of coverage the following entry from the Declarations page:

> Item 6.  The aircraft will be used only for the purpose **Aerial Application.**

And the following policy exclusion:

> This policy does not apply:

> (a) While the **aircraft** is being operated with the knowledge and consent of the **insured** or of any executive officer or partner thereof, for any unlawful purpose, or for an purpose or use other than **aerial application,** unless specifically endorsed on the policy.

The term "Aerial Application" is defined in the policy as follows:

> "Aerial Application" means the application by aircraft of seeds, fertilizers or chemicals *and includes flights required in direct support thereof.* (Emphasis added)

An agricultural aerial application aircraft can have many uses beyond actually applying seeds, fertilizers or chemicals; all of which involve direct support of "aerial application" flights. For example it can be flown from one location to another, undertake test flights, travel to another location for maintenance, be flown for transitioning experience, be used to build up pilot hours, make check flights, touch and go landings, fly out to an area to inspect it for a later aerial application, or fly to a location to pick up seeds, fertilizers or chemicals.

None of these suggested flights are specifically excluded in the policy nor are they endorsed on the policy.  All of these are in my opinion *"flights required in direct support"* of the primary mission of the aircraft; i.e. aerial application. This is particularly true of training flights, seeds, fertilizers and chemicals cannot be appplied unless the pilot is trained to fly the turbine powered aircraft.  An aviation underwriter

-4-

Report and Analysis

---

or producer would anticipate and even expect such activities to take place in addition to the actual applying of seeds, fertilizers or chemicals.

Underwriters for aviation insurance just as those insurance producers who sell aviation insurance products are specialists familiar with types and uses of aircraft and aviation insurance policies. Many are experienced pilots themselves and understand the multiple uses of an aircraft within and outside of specific aviation activities.

National Union agrees that it has not and does not have a definition of "includes flights required in direct support thereof" either in the policy or in any claim or underwriting manual. Yet National Union is interpreting this phrase in its favor in the case at hand. Under National Union's interpretation aerial application aircraft would have to remain parked except to take a load of seed, fertilizer or chemical and fly out to a location to make an aerial application and then return direct to its base to park and wait for the next trip. Such an interpretation is self-serving and would invalidate coverage the insured has paid premium for and had a reasonable expectation that coverage would apply if the insured plane was damaged or destroyed in an accident or circumstances where the insured would be held liable.

An insurance company is in the business of paying losses. Its staff cannot and should not base coverage on self-satisfying interpretations of the policy after the fact. Yet as there are no "standard" policies in aviation insurance an insured is subject to the whims of the underwriter, producer and claim handler. Particularly in circumstances where the policy provisions are used without prior published definitions. Policy provisions that are unartfully drawn such as in this case are ambiguous at best to the extent the insurance company is allowed to interpret them to restrict coverage which the insured believes it has purchased.

## II. Hardy Aviation Insurance, Inc.

Pontiac Flying Service, Inc. had been a client of Hardy for a number of years. Because of this relationship Hardy was familiar with the insurance needs of Pontiac as well as its activities. When the Air Tractor (N503D) was purchased coverage was

**Report and Analysis**

bound by National Union on policy number AV 3991999-03 from March 1, 2002 until expiration April 10, 2002. Hardy then obtained a new policy for Pontiac with USAIG effective April 10, 2002 which provided coverage for the Air Tractor and the other two aircraft. Because of a Gypsy Moth contract USAIG would not provide coverage for Pontiac. Hardy then returned to National Union and policy number AV 3991999-04 was issued effective May 19, 2002. The USAIG policy was then cancelled.

Correspondence between Hardy and National Union clearly shows that both parties were familiar with the fact that Pontiac was purchasing the Air Tractor (N503D) and that Scott Peterson had undertaken a turbine transition course, a ground course and was building hours in turbine powered aircraft. I also understand that Hardy also "bound" the coverages on the Air Tractor (N503D) as of March 1, 2002 after telling Scot Peterson that he had to have additional turbine transition training in the plane.

Randy Hardy is an experienced aviation insurance producer as is his Administrative Assistant Angie Banz. They are familiar with aviation insurance and advertise that "Hardy Aviation Insurance, Inc. is staffed by professionals who have the knowledge to take care of all your aviation related insurance needs." They also advertise that "We are committed to providing highly individualized service to our clients."

The firm had also insured the former owner of the Air Tractor (N503D) and were aware that it was a tandem seat aircraft and had been used for turbine transition training for aerial application pilots.

If the National Union policy is as restrictive and limiting in coverage as National Union claims, Hardy had a responsibility to so advise Pontiac of the limitations of the coverage it had purchased. He should have told Pontiac that the three airplanes on the policy were only covered for aerial application, as National Union now defines it. In that regard he should have given them what is now National Union's limited coverage interpretation; Pontiac could only take off, perform the

## Report and Analysis

application, and return to base. At a minimum, if he was uncertain of the meaning of the undefined term"flights in direct support thereof"he should have ascertained the insurance company's restrictive meaning before telling Scott Peterson that coverage was bound on March 1, 2002, with Peterson to have further training in the plane.

It is important to consider the duties and responsibilities that Hardy had to its client Pontiac. It is recognized in the industry that an insurance producer has the following obligations with respect to his or her clients.

> First there is the duty to follow instructions of his or her insurance client.

> Second there is the duty to procure insurance which involves additional care, skill, effort and diligence on the part of the insurance producer.

> Third a duty to maintain insurance coverage. This duty arises out of the past course of dealings or by arrangement between the producer and the client.

> Fourth a duty to place insurance with a solvent insurance company. Sound practices clearly include reasonable attempts to inquire as to the solvency of selected insurance companies.

> Fifth there is a duty to provide sound and proper advice regarding the client's insurance needs.[3]

Based on the testimony of both Randy Hardy and Angie Banz they had full knowledge of Pontiac's operations as well as those of Harold's Flying Service (Harold's) from whom the Air Tractor was purchased. They were aware that the plane was a tandem two-seat aircraft and that it had been used in turbine transition training. Further they were aware that Pontiac planned to take over Harold's operations and told Scot Peterson that he was covered for turbine transition training in the plane which was required after March 1. 2002.

---

[3] Lorimer, James J., et al. *The Legal Environment of Insurance, Vol II, 4th ed.* Malvern, Pennsylvania: The American Institute for Chartered Property Casualty Underwriters, 1993.

-7-

## Report and Analysis

Hardy advertised in the same aviation industry publication as Pontiac which further supports the idea that Randy Hardy and/or his employees and agents knew that the training had or would commence. Yet he did nothing to warn his client of the apparent loss exposure and lack of coverage.

As an advertised specialist in aviation insurance Hardy had a responsibility to make certain that the coverages provided to its clients were proper for the activities of their clients. This is especially true with aviation insurance which has no standard policies. The variations between policies issued by the limited number of insurance companies writing aviation insurance are significant.

If needed coverages are not in the policy and cannot be endorsed thereon it become the responsibility of the insurance producer to so advise the client to determine what should be done. Should another insurance company be contacted? Will the underwriter agree to include the requested coverage?

One should not advertise that they have the knowledge to take care of a client's aviation insurance needs if they cannot or do not do so.

### Conclusion.

National Union's investigation ended with its review of coverage and their alleged interpretation that the policy allowed coverage only for aerial application and nothing else. However it is my professional opinion that this decision was based solely on their self-serving interpretation of the term "aerial application".

Where National Union errs is that by doing so they have totally restricted coverage to take-off, application, and return to base. Further this interpretation strips the insured of any coverage under the phrase *"and includes flights required in direct support thereof"* (Emphasis added) a portion of the policy for which a premium had been paid. This is either a misinterpretation of the policy language or the failure to recognize that it is ambiguous.

Without National Union having a definition of the phrase in the policy or

-8-

## Report and Analysis

without any documentation to support their position the term is unsubstantiated. Further without a policy exclusion for "turbine transition training" a broad interpretation of the coverage provided by the policy is necessary.

An insured is owed the reasonable expectation that the coverage purchased is the coverage that will be received in the event of loss. An insurance company cannot simply deny coverage under some self-serving interpretation. If an insurance company wants to restrict or extend coverage, they have the right to do so but only when the insured is so informed. The fact that National Union is willing to extend coverage beyond aerial application is demonstrated in this policy by Endorsement Number 8 which provides that the *"Purpose of Use shall be only as follows: Pleasure and Business use only, and excluding Aerial Application"*. This change was allowed "As respects aircraft while operating within, on or above the Commonwealth of Kentucky."

Transition training in my opinion falls within the concept of flights required in direct support of aerial application. For example, the Open Pilot Warranty (OPW) requires that the command pilot meet a certain number of hours in turbine powered aircraft as well as a certain number of hours in an airplane of the same or similar type. With a tandem seat aircraft, the pilot logging hours can be up-front while a pilot meeting the OPW can be riding in the rear seat. Otherwise how can a new turbine pilot obtain hours?

If pilots cannot use an aircraft for turbine transition training, how can they qualify. Again I repeat this policy does not directly exclude training nor is there a restrictive endorsement. Because of this it is my opinion that turbine transition training is covered under this policy.

In my professional opinion the aircraft insurance producer Hardy failed to meet the duty of an insurance producer in that the insured was not made aware of the possibility that the National Union was to be interpreted in such a way that coverage was severely limited.

## Report and Analysis

Having knowledge of the type of aircraft, Air Tractor (N503D); i.e., tandem seat, turbine powered and having informed Scot Peterson that he was covered for additional turbine transition training and having knowledge use of the plane for training both before and after its purchase, it is my professional opinion that Hardy failed in his duty to advise his client of the type of coverages needed to meet the expected loss exposures.

Finally, it is my professional opinion that National Union is responsible to provide coverage for the aircraft accident on May 6, 2003 where the Air Tractor (N503D) was destroyed, and the two crew members died.

In the alternative, if National Union is not held responsible to provide coverage under the Aerial Applicator Aircraft Policy Number AV 33391999-04 then it is my professional opinion that Hardy failed to meet the duties of a professional aircraft insurance producer and must be held responsible to provide payment for the losses incurred May 6, 2003.

Marshall W. Reavis III, PhD
September 13, 2004

## Curriculum Vitae
**Marshall Wilson Reavis III**

280 South Shore Lane
Lake Forest, Illinois 60045

Phone - 847.615.1979
FAX   - 847.615.1978
E-mail mwreavis@comcast.net

**Education, Professional Designations**

Indiana University, Bloomington, AB, (Government, Economics)
Indiana University, Bloomington, MBA, (Major field - Insurance)
University of Georgia, Athens, PhD, (Business Administration - Major Field - Risk Management and Insurance)
Chartered Property and Casualty Underwriter (CPCU)
Associate in Risk Management (ARM)
Chartered Life Underwriter (CLU)

**Professional Experience**

Adjunct Professor, Department of Risk Management, Insurance and Finance, Roosevelt University, Chicago, 2000 to present.

Instructor, Insurance School of Chicago - 2000 to present.

Consultant, M. Reavis Associates, Insurance litigation consultants, 1977 to present.

Chairman, Insurance Education Specialists, Publishers of insurance education materials, 1976 to present.

Executive Director (Acting), Insurance School of Chicago, 10/99 to 9/2000

Chairman/Director of Education, Insurance Institute for Continuing Education, 1996 to 1999.

Visiting Professor, Department of Finance, The University of Illinois at Chicago, 1990-1997.

Professor of Insurance and Chairholder, Insurance Studies Program, Eastern Kentucky University, Richmond, 1986-1989.

Associate Professor of Finance, DePaul University, Chicago, 1982-1986.

Associate Professor of Finance, Roosevelt University, Chicago, 1976-1982.

University Professor of Business Administration, Governors State University, University Park, Illinois, 1972-1976.

Executive Director and Dean, Insurance School of Chicago, 1974-1978.

Corporate Insurance Manager, Baxter International, Deerfield, IL, 1969-1970.

Corporate Insurance Manager, Wurlitzer Company, Chicago, 1966-1968.

Regional Sales Manager, Consolidated Underwriters, Chicago, 1963-1966.

Vice President, G. Shannon Grover & Co., Underwriting Managers for Accident and Health Insurance, Chicago, 1961-1962.

District Manager, Underwriter, Editor, Claims Examiner, Kemper Insurance Companies, Chicago, 1958-61.

Claims Examiner, Grain Dealers Mutual Insurance Co., Indianapolis, 1953-1954.

2

## Professional Memberships

American Risk and Insurance Association
Southern Risk and Insurance Association
Western Risk and Insurance Association
Society of Chartered Property and Casualty Underwriters
Society of Insurance Educators and Trainers
Midwest Business Administration Association
International Insurance Society (former)
Society of Insurance Research (former)
Risk and Insurance Managers Society (former)
International Council for Small Business (former)

## Professional Activities

Consultant and Trial Expert on Insurance Matters. Risk Management and Insurance litigation. Insurance coverage analysis and archeology. Insurance company financial and operations evaluation. All lines of insurance. 1977 to present.

Presented Paper. *Bad Faith Tort Actions over First Party Loss Settlements: Comments and Concerns* - Southern Risk and Insurance Association, Annual Meeting, Charleston, SC, November 1995.

Presented Paper. *The Property and Casualty Insurance Cycle - Revisited* - College of Business, Illinois State University, May 1994.

Presented Paper. *Orientation: The Missing Link in Risk Identification* - Midwest Business Administration, Annual Meeting, Chicago, March 1994.

Presented Paper. *Niche Health Insurance for the Elderly* - Midwest Business Administration Association, Annual Meeting, Chicago, March 1993.

Presented Paper. *Riverbottom Collapse - A Covered Peril? A Review of Insurance Coverages and The Great Chicago Flood of 1992* - Southern Risk and Insurance Association, Annual Meeting, Clearwater, FL, November 1992.

Presented Paper. *The Duty Owed by an Insurance Company to an Insured for Loss Control Services* - Southern Risk and Insurance Association, Annual Meeting, Clearwater, FL, November 1992.

Member. Ad hoc Committee on Liability Insurance, Chicago Board of Education, 1990.

Invited Paper. *The Impact of Cash Flow Underwriting and the Insurance Crisis* - Western Economics Association, 63rd Annual International Conference, Los Angeles, July 1988.

Consultant. Department of Insurance, Commonwealth of Kentucky. Prepared Insurance Consultants License examinations, 1986-1989.

Member. Continuing Education Advisory Committee, Department of Insurance, Commonwealth of Kentucky, 1988.

Conferment Speaker. Society of Chartered Life Underwriters, Louisville, 1987.

Group Leader. Gamma Iota Sigma Annual Management Conference, Appalachian State University, Boone, NC, October 1987.

Speaker. Kentucky Young Agents Conference, Independent Agents of Kentucky, Lake Cumberland, KY, September 1987.

Chairman. Bluegrass Insurance Day, Lexington, May 1987.

Speaker. Professional Insurance Agents Association of Lexington, May 1987.

Panel Member. *AIDS in Society* - Economic effects of AIDS on Insurance Costs, Lexington Community College forum, April 1987.

Member. Organizational Committee, Bluegrass Chapter, Society of Chartered Property and Casualty Underwriters, Lexington, February 1987.

Speaker. Risk and Insurance Managers Society, Lexington, November 1987.

Moderator. American Risk and Insurance Association, Annual Meeting, Chicago, August 1986.

Speaker. Kentucky Life Underwriters, Annual Meeting, Louisville, May 1986.

Presented Paper. *The Development of Video Training Programs for Insurance Education* - Midwest Business Administration Association, Annual Meeting, Chicago, March 1986.

Technical Consultant. *ISO Training* A five hour video training program on the ISO Commercial Package Policy Program (CPP). Script and Production. Alexander & Alexander, Inc., New York, September-November 1985.

Consultant/Trainer. Three-day presentations of *ISO Training* for Alexander & Alexander, Inc. Seminars held in New York, Los Angeles, Atlanta, and Dallas, October-November 1985.

Presented Paper. *Proposal: Nonownership Uninsured Motorists and Underinsured Motorists Liability Plan* - Southern Risk and Insurance Association, Annual Meeting, Orlando, November 1985.

Seminar Leader. *The Insurance Industry: Trends and Problems* - Illinois CPA Foundation, Chicago, October 1985.

Panel Member. Assembly on Compulsory Automobile Liability Insurance, Professional Insurance Agents Assn. of Illinois, Springfield, July 1985.

Presented Paper. *Defensive Management: A Model for Treating Dynamic Risk* - International Council of Small Business, 30th Annual World Conference, Montreal, June 1985.

4

Testified.  Illinois Senate Committee on Insurance.  Opponent of proposed Compulsory Automobile Insurance Law, June 1985.

Speaker. *Agency-Company Relations*- Illinois 1752 Club (Insurance Company Sales Representatives), Spring Education Conferences, Collinsville, West Chicago, and East Peoria, April 1985.

Presented Paper. *The Fourth Hazard - The Legal Hazard* - Midwest Business Administration Association, Annual Meeting, Chicago, March 1985.

Presented Paper. *The Incontestable Clause - Misused or Abused?* - Western Risk and Insurance Association, Annual Meeting, Reno, January 1995

Presented Paper. *The Growth in Compulsory Insurance* - American Risk and Insurance Association, Annual Meeting, Minneapolis, August 1984.

Speaker. *The Agent's Role in Today's Insurance Market* - Annual agent's meetings, Addison Farmers Mutual Insurance Company, Schaumburg and Joliet, Illinois, March 1984.

Moderator. *Education in Risk Management* panel - Midwest Business Administration Association, Annual Meeting, Chicago, March 1983.

Consultant. Professional Consultants on Africa, Inc. - Conducted two week Insurance Management Seminar for Nigerian Insurance executives, Chicago, June 1983.  Conducted one week Insurance Management Seminar for Insurance Executives, Lagos, Nigeria, July 1983.

Seminar Leader. *Understanding Business Insurance* - Northern Illinois Industrial Association, June 1983.

Presented Paper. *Overview of Retroactive Liability Insurance* - Midwest Business Administration Assn., Annual Meeting, Chicago, March 1982.

Member.  Illinois Insurance Directors's Committee on Insurance Agent's Pre-Licensing Examination, 1976.

Contract writer.  Educational Testing Service, Questions for Insurance Agent's Pre-Licensing Examination, 1976.

Consultant.  Insurance Education and Training Activities.

> Chicago Board of Underwriters, 1975-1982.
> Alexander & Alexander, Inc., Chicago, 1982
> Marsh & McLennan, Inc., Chicago, 1979-1980
> William Mercer Co., Chicago, 1980
> Alexander & Alexander, Inc., New York, 1985.

**Professional Honors and Awards**

John Breen Fellowship - Doctoral Studies in the Field of Insurance and Risk Management, James S. Kemper Foundation, 1970-1972.

5

Who's Who in the Midwest, 1984.
Who's Who in the World, 1984.

## Community Service and Memberships
Chairman. Long-range Planning Committee, The Village Presbyterian Church, Northbrook, Illinois, 1994-1995.
Secretary. Courtyards at the Woodlands Condominium Association, 1992.
Board Member. Hinsdale Township High School District 86, 1985.
Nominating Committee. Hinsdale School District 181 Caucus, 1983-84.
Chairman. Insurance Study Committee. Village of Clarendon Hills, 1981-82
Nominating Committee. Clarendon Hills Community Caucus,1980-1982.
Member. Citizens Advisory Board, League of Women Voters, Hinsdale, 1979-81.
Program Chairman. Insurance Society of Chicago. 1974-1978.
Village Trustee, Clarendon Hills, Illinois, 1974-1978.
Elder/Trustee, Community Presbyterian Church, Clarendon Hills.
Past President, Director, Chairman Advisory Committee, and Member Executive Committee, Chicago Council, United States Navy League.
Commander, U.S. Naval Reserve (Retired).  Former Commanding Officer, Executive Officer, Administrative Officer, Training Officer.
Blue and Gold Officer. United States Naval Academy, 1976-1978.
Vice President, Director. Neighborhood Service Organization, Chicago, 1968-70.

Memberships
The Union League Club of Chicago.
Naval Order of the United States.
Naval Reserve Association.
The Retired Officers Association.
AMVETS
Illinois Naval Militia.
Indiana University Alumni Association.
Indiana University Alumni Association.
University of Georgia Alumni Association.
Sigma Alpha Epsilon.

## Current Research and Publication Activity
*Handbook of Insurance Terms and Concepts*, Second Edition (Draft)
*Insurance and Benefits: A Handbook for Consumers*, (Draft)
*Risk Management and Insurance for Small Businesses*, (Draft)
"The Incontestable Clause: An Out of Date Concept?" (Draft)
"Products Liability, A Historic Perspective - The First 100 Years" (Under review)
"Declaratory Judgment Motions in First Party Claims: Who Should Pay?" (Draft)
"Medicare Set-Aside Trusts, A Concern for Risk Managers (Draft)

6

## Research Papers, Publications, Articles

"Compulsory Automobile Insurance: A Position Paper"
Prepared for the Professional Insurance Agents Association of Illinois and presented to the Illinois Senate Committee on Insurance. June 1985.

"Insurance - What Apartment Residents and Condominium Association Members Should Know"- Apartment and Condominium News, June 1984, pp.25-26.

"Insurance Insights" - Journal of Property Management.  A series of thirty-six articles on insurance and risk management topics. 1977-1983.

"Defensive Management: The Art of Survival in Today's Business Environment" - The AMO Quarterly, in four parts, 1977.

"Insurance Perspectives"- Business Insurance.  A series of five articles on insurance and risk management topics. 1973-1974.

"Risk Management Techniques for the Local Agent" - with Dr. E. J. Leverett, The Mutual Review, September 1972.

"The Current Role Risk Managers Play" - Risk Management, August/September 1971.
Reprinted in *Insurance Insights*, Green and Swadner, Cincinnati: South Western Publishing Company, 1974.

"Applying Risk Management Principles to the Products Liability Exposure" - YOU, Utica Mutual Agent's Magazine, in three parts, 1970-1971.

"The Corporate Risk Manager's Contribution to Profit" - The Journal of Risk and Insurance, September, 1969.


## Books and Manuals

"Essentials of Life and Health Insurance for Florida Producers"
Required Insurance Pre-Licensing Preparatory Manual. Chicago: Longman Financial Services Publishing, Third edition, November 1987.  pp 250.

"Essentials of Property and Casualty Insurance: A License Preparatory Manual"- Chicago: Longman Financial Services Publishing, 1983. pp. 200.

"Essentials of Life and Health Insurance: A License Preparatory Manual" - Chicago: Longman Financial Services Publishing, 1983.  pp. 220.

"Illinois Insurance Law: A License Preparatory Manual" - Second Edition. Chicago: Farnsworth Publishing, a division of Longman USA. April 1985. pp. 225.

"Handbook of Insurance Terms and Concepts" - Chicago: Longman Financial Publishing, 1983. pp. 160.

7

The following manuals have been published by Insurance Education Specialists,
"Student Review Guide for CPCU" - Professional designation review manuals. Annual
editions since 1977. In ten parts. pp. 1,980.

> *Ethics, Insurance Perspectives and Insurance Contract Analysis.*
> *Personal Risk Management and Insurance*
> *Commercial Property Risk Management and Insurance*
> *Commercial Liability Risk Management and Insurance*
> *Insurance Company Operations*
> *The Legal Environment of Insurance*
> *Management*
> *Accounting and Finance*
> *Economics*
> *Insurance Issues and Professional Ethics.*

"Student Review Guide for General Insurance" (INS) - Professional certification review
manuals. Annual editions since 1977. In three parts. pp. 450.

> *Property and Liability Insurance Principles*
> *Personal Insurance*
> *Commercial Insurance*

"Student Review Guide for Risk Management" (ARM) - Professional designation review
manuals. Annual editions since 1985. In three parts. pp. 450.

> *Essentials of Risk Management*
> *Essentials of Risk Control*
> *Essentials of Risk Finance*

"Student Review Guide for Associate in Claims" (AIC) - Professional designation review
manual. Annual editions from 1979 through 1986.

> *Principles and Practices of Insurance and Property Loss Adjusting*

"Introduction to the Insurance Industry"- Fifth edition, 1988.

"Answers to the Course Guide Study Questions" - General Insurance Program (INS)
In three parts.  Annual editions 1982-2000.

> *Property and Liability Insurance Principles*
> *Personal Insurance*
> *Commercial Insurance*

"Answers to the Course Guide Study Questions" - Associate in Risk Management
Program (ARM).  In three parts. Annual editions 1986-2000.

> *Essentials of Risk Management*
> *Essentials of Risk Control*
> *Essentials of Risk Finance*

8

"Answers to the Course Guide Study Questions" - Associate in Underwriting Program
(AU). In four parts. Annual Editions 1985-1995.
*Principles of Property and Liability Underwriting*
*Personal Lines Underwriting*
*Commercial Liability Underwriting*
*Commercial Property and Multiple-Lines Underwriting*

"Answers to the Course Guide Study Questions" - Chartered Property and Casualty
Underwriter Program (CPCU). Parts 1 and 5. 1992.

"Answers to the Course Guide Study Questions"- Associate in Commercial Underwriting
(AU). In two parts. 1996-2000.
*Commercial Underwriting/Principles and Property*
*Commercial Underwriting/Liability and Advanced Techniques*

"The Life Insurance Book" - Insurance Producer Pre-Licensing Preparatory Manual.
1996.

"The Health Insurance Book" - Insurance Producer Pre-Licensing Preparatory Manual.
1996.

"Fundamentals of Financial Planning" - A Guide to  Insurance and Financial Tools used
in financial planning, 1997.

Continuing Education Self-Study Courses - 1997 to Present
Essentials of Personal Insurance
Life Insurance and Related Coverages
Health Insurance and Related Coverages
Homeowners Insurance and Related Coverages
Personal Automobile Insurance and Related Coverages
Workers Compensation and Related Coverages
Introduction to Property and Liability Insurance

Seminars - 1999 to present
Introduction to the Insurance Industry
Fundamentals of Financial Planning

**Reported Cases.**
*Nassen v. National States Insurance Company* (494 N.W. 2nd 231; 1992 Iowa)
[LEXIS 422]
*White, et al v. Continental General Insurance Company* (831 F. Supp. 1545; 993
U.S. Dist) [LEXIS 14067]

MWR - 8/2003

# Report of Depositions and Trials

# 2001 - 2004

_____

**Marshall Wilson Reavis III**
**PhD, CPCU, CLU, ARM**

## Report of Depositions and Trials

**2001**

The Hanover Insurance Company, <u>Plaintiffs</u>
v. Metal Decking, Inc.; Ranken steel, Inc.;
Ranken Contractors, Inc.; Ranken Erectors,
Inc.; Kenneth E. Richardson; Randolph Hughes
and John David Stevens, Defendants.  United
States District Court for the Central District of          Deposition
Illinois, Danville/Urbana Division. No. 98-2066            January 11, 2001


Platinum Enterprises, Inc., <u>Plaintiff</u> v. The
Cincinnati Insurance Company and The Major
Agency, Inc., Defendants.  In the Eighteenth
Judicial Circuit, DuPage County, Illinois.                 Deposition
No. 98 MR 518                                              January 17, 2001


Dale Sippel, Joyce Maloney, JES Personnel
Consultants, Inc., Genie Temporary Services,
Inc. and Joyce Maloney Temps, Inc. d/b/a
Jeanie Temps, <u>Plaintiffs</u> v. William D. Larson,
Paul E. Larson Insurance Agency, Inc. an
Illinois Corporation, Larson Loebach Insurance
Agency, Inc. an Illinois Corporation and
Loebach Redlich Insurance Agency, Inc., an                 Deposition
Illinois Corporation, Defendants                           February 23, 2001


Bradley J. Waller, Trustee of the Estate of Armando A.
Pacis, Debtor, <u>Plaintiff</u> v. Illinois State Medical Inter-
Exchange, Illinois State Medical Insurance Services,
Inc., Defendants. In the Circuit Court of Cook County,     Jury Trial
Illinois, County Department, Law Division. No 97 L 8756.   May 23, 2001


Bobby Menard, Plaintiff v. Ricky D. Briley, Costello
Moye Insurance Agencies, Inc, and Western States
Insurance Company, <u>Defendants</u>.  In the Circuit Court
Twentieth Judicial Circuit, St. Clair County, Illinois.    Deposition
No.97-L-209A                                               September 28, 2001

# Report of Depositions and Trials

**2002**

ANR Advance Transportation Company,
Inc., Debtor. Ohio Bureau of Workers'
Compensation, <u>Claimant,</u> United States
Bankruptcy Court, Eastern District of
Wisconsin, Case No. 99-22155-JES

Deposition,
May 3, 2002

Champaign County Forest Preserve,
<u>Plaintiff</u> v. Robert King and Insurance
Risk Managers, Ltd, Defendants, In
the Circuit Court of the Sixth Judicial
District, Champaign County, Illinois,
Case No. 95-L-1679

Jury Trial
May 7, 2002

Barbara Williams, <u>Plaintiff</u> v. Union
Fidelity Life Insurance Company and
Archie Cochrane Motors, Inc.,
Defendants. Montana Thirteenth
Judicial District Court, Yellowstone
County, Cause No. DV99-0501

Jury Trial
May 21, 2002

Rieme Spindler 1992 Trust and Judith
Benz, Marian Gempeler and Joyce
Buechler, as Trustees of the Rieme
Spindler 1992 Trust, <u>Plaintiffs</u> v.
American Express Financial Advisors,
Inc., a Delaware corporation c/o its
Registered Agent, CT Corporation
System and John Hopp, Defendants.
State of Wisconsin, Milwaukee County
Circuit Court, No. 00-CV-010639

Deposition
May 29, 2002

# Report of Depositions and Trials

**2002 - Continued**

MA. Lourdes Calalang and Karla
Calalang, a minor by her Mother
and best Friend MA.Lourdes Calalang,
<u>Plaintiffs</u> v.Bankers Life and Casualty
Company, Defendant. In the Circuit
Court of Cook County, Illinois, County          Deposition
Department, Law Division, No.:00L014141          November 1, 2002


Indian Community School of Milwaukee,
Plaintiff/Counterclaim Defendant v.
National Union Fire Insurance Company,
<u>Defendant/Counterclaim-Plaintiff</u>. State of
Wisconsin, Circuit Court, County of Milwaukee,    Deposition
Case No. 00-CV-004804                            November 7, 2002


Westfield Insurance Co., <u>Plaintiff</u> v. Rovan, Inc.,
Brandon J. Robinson, Terry Bartley and Tracy
Trout, individually and as natural parents and
guardian of Tiffany Bartley, a minor and Tyler
Bartley, a deceased minor child, Donald Hatfield,
individually and as parent of Aaron Hatfield, a
deceased minor child, and as Personal Representative
of the Estate of Aaron Hatfield, Yolanda Lavon
Kuda, mother of Aaron Hatfield, Monte L. Florey,
individual and as natural parent of Heather A.
Florey, a deceased minor child and as Personal
Representative of the Estate of Heather A. Florey,
Pamela A. Hiers, and Yaste, Zent & Rye Agency,
Inc., Defendants. State of Indiana, County of
Kosciusko, In the Kosciusko Circuit Court,          Deposition
Cause No.: 43CO1-9811-CP-787                        November 11, 2002
(Also: Indiana Court of Appeals,
No 43A03-9903-CV-112 - Cite as
722 N.E.2d 851 [Ind.App.2000])

## Report of Depositions and Trials

**2003**

Iowa Mutual Insurance Company,
Plaintiff, v. Moser and Marsalek, P.C.,
Brian R. Plegge and Thomas E. Fagan,
Defendants.  In the United States District
Court, Southern District of Illinois,
Cause No. 02-308-GPM

Deposition
April 4, 2003

Willard Dill, Plaintiff, v. Northwest GF
Mutual Insurance Company, Farmers
Alliance Mutual Insurance Company, and
Tri-County Insurance and Leasing, Inc.,
Defendants. In the District Court, Southwest
District, County of Hettinger, State of
North Dakota.  Case No 01C7.

Deposition
May 13, 2003

Wausau Insurance Company, Plaintiff,
v. Titan International, Inc. and Dyneer
Corporation, Defendants.  In the United
States District Court for the Central
District of Illinois, Springfield Division,
No. 02-CV-3060.

Deposition
July 23, 2003

The Hanover Insurance Company,
Plaintiff v. Ranken Ironworks, LLC;
S&K Investments of Champaign, Inc.;
Ranken Steel, Inc. and Kenneth
Richardson, Defendants.   In the United
States District Court for the Central
District of Illinois, Danville/Urbana
Division. Case No. 02-2051

Jury Trial
August 18, 2003

Bob G. Mitchell, Individually and
Bob G. Mitchell, general partner
of Mitchell, Mitchell-Green, Plaintiff.
v. The Travelers Indemnity Company
and Wilcox & Jones, Inc.  In the District
Court of Sequoyah County, State of
Oklahoma. No. CJ-01-426

Deposition
October 3, 2003

# Report of Depositions and Trials

**2003 - Continued**

In the Matter of the Arbitration between
National Union Fire Insurance Company
of Pittsburgh, Pennsylvania and
<u>Bridgestone/Firestone North American
Tire, Inc.</u> JAMS No. 1340004512

Deposition
November 18, 2003

Guideone Insurance, f.k.a. The
Guidant Insurance Group, Guideone
Mutual Insurance Company, f.k.a.
Guidant Mutual Insurance Company,
<u>Plaintiff</u> v. BB&T Insurance Services,
Inc., a.k.a. BB&T Insurance Services,
Inc., Regional Insurance Agency,
a.k.a. BB&T Regional Insurance,
a.k.a. BB&T Regional Insurance
Services, Inc., a.k.a. BB&T Regional
Insurance Center, Joseph McDonald,
a.k.a. Joe McDonald, Candyce Louise
Dixon, a.k.a. Candy Dixon, William
G. (Jerry) Lawrence, a.k.a. Jerry
Lawrence, a.k.a. William G.
Lawrence, a.k.a. William Gerrard
Lawrence, Defendants. In the United
States District Court, Eastern District
of North Carolina, Western Division.
Case No.5:02-CV-442-BO(3)

Deposition
December 30, 2003

## Report of Depositions and Trials

**2004**

Mattie Stringfellow, as
Assignee of the Rights and
Claims of Escambia County
School Board, Plaintiff v.
Florida High School
Activities Association, Inc.,
Defendants. In the Circuit
Court, First Judicial Circuit,
In and For Escambia County,
Florida. Case No. 96-0279-CA-01

Video Deposition
May 5, 2004

Elizabeth M. Gorion, Plaintiff
v. American Service Insurance
Company, Inc. an Illinois
corporation, and Durango
Insurance Agency, Inc., an
Illinois corporation. In the Circuit
Court of Cook County, Illinois,
Municipal Department, First
District. No. 03 M1 119364

Arbitration
May 5, 2004

DuPage Biofluids, Inc., Plaintiff
v. Valley Forge Life Insurance
Company (d/b/a CNA Life Insurance
Co.), Joel S. Randazzo and Financial
Brokerage, Inc., Defendants. In the
Circuit Court of Cook County,
Illinois, County Department - Law
Division. No. 00 L 1602

Depositions (2)
June 4, 2004
September 9, 2004

# Report of Depositions and Trials

**2004, Continued**

Richard Nettleton and Nettleton
Logging, Inc., Plaintiffs v. Elizabeth
Campbell, Individually, and as an
Agent of Northern Finnish Mutual
Insurance Company, and <u>Northern
Finnish Mutual Insurance Company,
Marengo, Ashland County, Wisconsin,
a Wisconsin Corporation, Defendants.</u>
State of Wisconsin, Circuit Court,
Bayfield County, Case No. 02-CV-27.

Deposition
June 17, 2004

Cathy L. Brockelsby and Bruce
Brockelsby, <u>Plaintiffs</u> v. Continental
General Insurance Company and
Harold Hulett, Defendants. In the
Circuit Court for the Seventh Judicial
Sangamon County, Illinois, Case No.
2002 L 0370.

Deposition
August 20, 2004

The Injured Workers' Insurance Fund,
<u>Plaintiff</u> v. Henry's Automobile Auctions,
Inc. and Robert A. Quinn, Defendants. In
the Circuit Court for Baltimore County,
Maryland, Civil Action No. 03-C-03-
011623.

Deposition
September 1, 2004

MWR
September 13, 2004