E-FILED
Friday, 17 December, 2004  05:29:18 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| NATIONAL UNION FIRE COMPANY OF PITTSBURGH, PA, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) No. 03-1288 ) |
| PONTIAC FLYING SERVICES, INC., | ) ) ) |
| Defendants and Third Party Plaintiff, | ) ) ) |
| vs. | ) ) ) |
| HARDY AVIATION INSURANCE, INC., | ) ) |
| Third Party Defendant. | ) |

**RESPONSE TO MOTION TO STRIKE**

Now comes the Defendant and Third Party Plaintiff, PONTIAC FLYING SERVICES, INC., ("PONTIAC"), by its attorney, DAVID B. MUELLER of the firm of CASSIDY & MUELLER, and makes the following Response to the Plaintiff's **MOTION TO STRIKE AERIAL APPLICATOR AFFIDAVITS AND SUPPLEMENTAL REPORT OF MARSHALL WILSON REAVIS, III**.

**NATURE OF THE PROCEEDING**

The **MOTION TO STRIKE** is directed to PONTIAC FLYING's Response to **MOTION TO BAR EXPERT REPORT AND TESTIMONY OF MARSHALL WILSON REAVIS, III.** The Defendant's Response sets forth the procedural posture of the case and the respective positions of NATIONAL UNION and PONTIAC FLYING. That background is adopted for the purposes of this response.

## ARGUMENT

PONTIAC FLYING takes issue with the adjectival "gloss" "spin" and argument which NATIONAL UNION places upon what it perceives to be the facts. In the first instance they are misstated. Second, the purpose of the pending motions is not to argue the interpretations placed upon the *actual facts* by the respective parties. If and when NATIONAL UNION decides to file a Motion for Summary Judgment the disputes and disparate contentions of the parties can and will be aired. For the present, the dispute centers upon whether custom and usage in the agricultural aviation industry can be used to define the scope of the disputed policy term ". . . flights which are in direct support of the application by aircraft of seeds, fertilizers or chemicals." That question has two foci which converge in the respective understandings of the insurer and the insured.

PONTIAC FLYING submits that by the present **MOTION TO STRIKE**, NATIONAL UNION is impaled upon the horns of its own dilemma. In confessing the understanding of agricultural aviators, such as PONTIAC FLYING, the insurer admits the truth of the factual averments which are contained in the disputed affidavits. From the past president of the National agricultural Aviation Association (NAAA), to the vice president elect of the Illinois Agricultural Aviation Association (IAAA), the affiants uniformly state that:

> It is commonly understood and accepted in the agricultural aviation industry that pilot instruction flights, including turbine transition training for the operation of turbine driven application aircraft, are necessary and essential to the aerial application of chemicals, seeds and fertilizers, and

> It is commonly and generally understood and accepted in the agricultural aviation industry that pilot instruction flights, including turbine transition

training flights, are flights which are in direct support of the application by aircraft of seeds, fertilizers or chemicals.[1]

In fact, NATIONAL UNION carries that concession to the point where it even argues that the relationship between turbine transition training and crop dusting is so "self evident" that the common understanding of that fact within the industry is irrelevant. Nonetheless, it persists in its contention that *either* the term has a different meaning when applied to its insured, PONTIAC FLYING, or PONTIAC FLYING is not entitled to share in the common understanding of the term.

Apart from the understanding of the insured is that of the insurer. The opinions of Marshall Reavis, III are directed to what NATIONAL UNION had to know in the context of insuring the agricultural aviation industry. It is a generally accepted rule that contracts within a particular industry are drawn in recognition of the commonly accepted customs and practices of that industry. As stated in *Chicago Bridge & Iron v. Reliance Insurance Co.*, 46 Ill.2d 522, 531-32 (1970):

> Proof of custom or usage is intended as an aid to the interpretation of the intent of the parties at the time the contract was made. (*Bissell v. Ryan* (1860), 23 Ill. 517 (orig. ed. 566); *Kelly v. Carroll* (1921), 223 Ill.App. 309; U.C.C. secs. 1-201(3).) If a usage exists in a particular trade of which both parties either had notice or should have had notice, it is only just and proper that their contract should be interpreted in view of the trade practice. (See *Kuinglig Jarnagsstyrelsen v. Dexter & Carpenter, Inc.* (1924), 299 F. 991.) . . .

In the instant case the industry in question is agricultural aviation. The common understanding within that industry is that instructional flights, including transition turbine training flights, are necessary to and directly supportive of the aerial application of seeds, chemicals and fertilizers.

---

[1] The insurer argues that this paragraph embodies a "legal conclusion". That contention is at cross purposes with the premise that "flights which are in direct support of the application by aircraft of seeds, fertilizers or chemicals" is a term of common understanding which requires no definition.

NATIONAL UNION holds itself out as a specialty insurer of agricultural aviation risks. As such, it is deemed to know that understanding and to write its policies to comport with it. *American Bar Endowment v. Mutual of Omaha Insurance Co.*, 2002 W.L. 480960 (N.D. Ill. 2002).

*Sub judice* the common understanding in the industry to be insured is that training flights are in direct support of crop dusting. Given that understanding and the relationship of NATIONAL UNION to the industry which it insures, Marshall Reavis properly opines:

> None of these suggested flights is specifically excluded in the policy nor are any endorsed on the policy. All of these are in my opinion *"flights required in direct support"* of the primary mission of the aircraft; i.e. aerial application. This is particularly true of training flights. Seeds, fertilizers and chemicals cannot be applied unless the pilot is trained to fly the turbine powered aircraft. *An aviation underwriter or producer would anticipate and even expect such activities to take place in addition to the actual applying of seeds, fertilizers or chemicals.*
>
> *Underwriters for aviation insurance, just as those insurance producers who sell aviation insurance products, are specialists familiar with types and uses of aircraft and aviation insurance policies. Many are experienced pilots themselves and understand the multiple uses of an aircraft within and outside of specific aviation activities.* (Italics supplied).

PONTIAC FLYING submits that NATIONAL UNION cannot deny that its policy language is ambiguous and yet argue that instructional and training flights are not in "direct support of the application by aircraft of seeds, fertilizers or chemicals." *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill.2d 90, 108 (1992) and *First Insurance Funding Corp. v. Federal Insurance Co.*, 284 F.3d 799, 804 (7 Cir., 2002). If the term is susceptible of more than one meaning then custom and usage is relevant to the understanding and intention of both the insureds who buy the policy and the insurer that writes the coverage. *McFarland v. General American Life Insurance Co.*, 149 F.3d 583, 586 (7 Cir., 1998). In that context the disputed affiants supply the former and Marshall Reavis provides the latter. On the other hand if training

flights are in direct support of aerial application, as the insurer now appears to concede, the policy must be construed in favor of coverage.

## CONCLUSION

NATIONAL UNION wants it both ways and argues that PONTIAC FLYING is entitled to neither. It seeks to strike and bar evidence of the relationship between training flights and agricultural application as it is commonly understood in the industry *and* as that understanding is embodied in the specialty insurance coverages which are written for that industry. At the same time it acknowledges but rejects the common sense linkage which the language it drafted demands. PONTIAC FLYING submits that the affidavits of agricultural aviators and the opinions of MARSHALL REAVIS are relevant and competent to the interpretation of the disputed language of the policy. On the other hand, if NATIONAL UNION concedes training flights are clearly in direct support of aerial application, PONTIAC FLYING is entitled to judgment in its favor.

CASSIDY & MUELLER

By: s/ DAVID B. MUELLER
    Attorneys for Defendant,
    PONTIAC FLYING SERVICE, INC.

CERTIFICATE OF SERVICE

       I hereby certify that on December 17, 2004, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Mr. Jeffrey B. Rock | jrock@hrbklaw.com, cpoehlman@hrbklaw.com |
| Ms. Diane M. Baron | dbaron@clausen.com, pkebr@clausen.com |
| Mr. Michael S. Krzak | msk@cliffordlaw.com, jmg@cliffordlaw.com |
| Kevin P. Durkin | kpd@cliffordlaw.com; jg@cliffordlaw.com |

And I hereby certify that I have mailed by United States Postal Service the document to the foregoing non CM/ECF participants:

    Mr. Mark T. Banovetz
    Tressler, Soderstrom, Maloney & Priess
    233 S. Wacker Dr., 22nd Floor
    Chicago, IL  60606-6308

                                     s/DAVID B. MUELLER
                                        David B. Mueller - #01980661
                                        CASSIDY & MUELLER
                                        416 Main Street, Suite 323
                                        Peoria, IL  61602
                                        Telephone: 309/676-0591
                                        Fax: 309/676-8036
                                        E-mail: dmueller@cassidymueller.com