E-FILED
Thursday, 28 April, 2005  10:01:32 AM
Clerk, U.S. District Court, ILCD





COPY

# Aviation Insurance Contract

**EXHIBIT A**

ATTACH ENDORSEMENTS HERE







# COMMERCIAL GENERAL LIABILITY COVERAGE AVIATION POLICY

### POLICY PROVISIONS — PART 1 — FORM CGL01

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under **SECTION II — WHO IS AN INSURED.**

Other words and phrases that appear in **bold** type have special meaning. Refer to **SECTION V — DEFINITIONS.**

## SECTION I — COVERAGES

### COVERAGE A — BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement.**

   (a) We will pay those sums that the insured becomes legally obligated to pay as damages because of **bodily injury** or **property damage** to which this insurance applies resulting from your **Aviation operations**. We will have the right and duty to defend any **suit** seeking those damages. We may at our discretion investigate any **occurrence** and settle any claim or **suit** that may result. But:

   (1) The amount we will pay for damages is limited as described in **SECTION III — LIMITS OF INSURANCE;** and

   (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgements or settlements under Coverages A or B or medical expenses under Coverage C.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **SUPPLEMENTARY PAYMENTS — COVERAGES A, B AND D.**

   (b) This insurance applies to **bodily injury** and **property damage** only if:

   (1) The **bodily injury** or **property damage** is caused by an **occurrence** that takes place in the **coverage territory;** and

   (2) The **bodily injury** or **property damage** occurs during the policy period.

   (c) Damages because of **bodily injury** include damages claimed by any person or organization for care, loss of services or death resulting at any time from the **bodily injury.**

2. **Exclusions.**

   This insurance does not apply to:

   (a) **Bodily injury** or **property damage** expected or intended from the standpoint of the insured. This exclusion (a) does not apply to **bodily injury** resulting from the use of reasonable force to protect persons or property.

   (b) **Bodily injury** or **property damage** for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion (b) does not apply to liability for damages:

   (1) Assumed in a contract or agreement that is an **insured contract**, provided the **bodily injury** or **property damage** occurs subsequent to the execution of the contract or agreement; or

   (2) That the insured would have in the absence of the contract or agreement.

   (c) **Bodily injury** or **property damage** for which any insured may be held liable by reason of:

   (1) Causing or contributing to the intoxication of any person;

   (2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

   (3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

   This exclusion (c) applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

   (d) Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

   (e) **Bodily injury** to:

   (1) An employee of the insured arising out of and in the course of employment by the insured; or

   (2) The spouse, child, parent, brother or sister of that employee as a consequence of (e) (1) above.

   This exclusion (e) applies:

   (i) Whether the insured may be liable as an employer or in any other capacity; and

(ii)  To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion (e) does not apply to liability assumed by the insured under any **insured contract**.

(f)  **Bodily injury** or **property damage** arising out of Air Traffic Control operations on the ground or in the air.

(g)  **Bodily injury** or **property damage** arising out of the ownership, maintenance, use or entrustment to others of any **aircraft**, **auto** or watercraft owned or operated by or leased, rented, or loaned to any insured. "Use" includes operation and **loading** or **unloading** and with respect to **aircraft**, "operated by" also includes operation on behalf of any insured.

This exclusion (g) does not apply to:

(1)  A watercraft while ashore on premises you own, or rent;

(2)  A watercraft you do not own that is:

(i)  Less than 26 feet long; and

(ii)  Not being used to carry persons or property for a charge;

(3)  Parking an **auto** on, or on the ways next to, premises you own or rent, provided the **auto** is not owned by or leased, rented or loaned to you or the insured;

(4)  Liability assumed under any **insured contract** for the ownership, maintenance or use of watercraft;

(5)  **Bodily injury** or **property damage** arising out of the operation of any of the equipment listed in paragraph (f) (1) or (f) (2) of the definition of **mobile equipment** (Section V. 13.).

(h)  **Bodily injury** or **property damage** arising out of:

(1)  The transportation of **mobile equipment** by an **auto** owned or operated by or leased, rented or loaned to any insured; or

(2)  The use of **mobile equipment** in, or while in practice or preparation for, a prearranged racing, speed or demolition contest or in any stunting activity.

(i)  **Property damage** arising out of the appropriation of property or property rights by governmental power.

(j)  **Property damage** to:

(1)  Property you own, lease, rent, or occupy;

(2)  Premises you sell, give away or abandon, if the **property damage** arises out of any part of those premises;

(3)  Property loaned to you;

(4)  Personal property in the care, custody or control of the insured;

(5)  That particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf are performing operations, if the **property damage** arises out of those operations; or

(6)  That particular part of any property that must be restored, repaired or replaced because **your work** was incorrectly performed on it.

Paragraph (2) of this exclusion (j) does not apply if the premises are **your work** and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion (j) do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion (j) does not apply to **property damage** included in the **products-completed operations hazard**.

(k)  **Property damage** to **your product** arising out of it or any part of it.

(l)  **Property damage** to **your work** arising out of it or any part of it and included in the **products-completed operations hazard**.

This exclusion (l) does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

(m)  **Property damage** to **impaired property** or property that has not been physically injured, arising out of:

(1)  A defect, deficiency, inadequacy or dangerous condition in **your product** or **your work**; or

(2)  A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion (m) does not apply to the loss of use of other property arising out of sudden and accidental physical injury to **your product** or **your work** after it has been put to its intended use.

(n)  Damages claimed for any **loss**, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1)  **Your product**;

(2)  **Your work**; or

(3)  **Impaired property**;

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

(o)  **Bodily injury** arising out of any:

(1)  Refusal to employ;

(2)  Termination of employment;

(3) Coercion, demotion, evaluation, reassignment, discipline, harassment, humiliation, discrimination or other employment-related practices, policies, acts or omissions; or

(4) Consequential **bodily injury** as a result of (1) through (3) above.

This exclusion (o) applies whether you may be held liable as an employer or in any other capacity to any obligation to share damages with or to repay someone else who must pay damages because of the injury.

Exclusions (c) through (o) do not apply to **property damage** by fire to premises rented or leased to you. A separate limit of insurance applies to this coverage as described in **SECTION III — LIMITS OF INSURANCE**.

## COVERAGE B — PERSONAL AND ADVERTISING INJURY LIABILITY

1. **Insuring Agreement.**

   (a) We will pay those sums that the insured becomes legally obligated to pay as damages because of **personal injury** or **advertising injury** to which this insurance applies resulting from your **Aviation operations**. We will have the right and duty to defend any **suit** seeking those damages. We may at our discretion investigate any **occurrence** or offense and settle any claim or **suit** that may result. But:

   (1) The amount we will pay for damages is limited as described in **SECTION III — LIMITS OF INSURANCE**; and

   (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgement or settlements under Coverages A or B or medical expenses under Coverage C.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **SUPPLEMENTARY PAYMENTS — COVERAGES A, B AND D**.

   (b) This insurance applies to:

   (1) **Personal injury** caused by an offense arising out of your **Aviation operations**, excluding advertising, publishing, broadcasting or telecasting done by or for you;

   (2) **Advertising injury** caused by an offense committed in the course of advertising your goods, products or services;

   but only if the offense was committed in the **coverage territory** during the policy period.

2. **Exclusions.**

   This insurance does not apply to:

   (a) **Personal injury** or **advertising injury:**

   (1) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

   (2) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

   (3) Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured; or

   (4) For which the insured has assumed liability in a contract or agreement. This exclusion (4) does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

   (5) Arising out of:

   (i) Refusal to employ;

   (ii) Termination of employment;

   (iii) Coercion, demotion, evaluation, reassignment, discipline, harassment, humiliation, discrimination or other employment-related practices, policies, acts or omissions; or

   (iv) Consequential **personal injury** as a result of (i) through (iii) above.

   (6) Arising out of the taking of or exercising of the property rights of others by overflight or other operation of **aircraft**.

   (b) **Advertising injury** arising out of:

   (1) Breach of contract other than misappropriation of advertising ideas under an implied contract;

   (2) The failure of goods, products or services to conform with advertised quality or performance;

   (3) The wrong description of the price of goods, products or services; or

   (4) An offense committed by an insured whose business is advertising, broadcasting, publishing or telecasting.

## COVERAGE C — MEDICAL PAYMENTS

1. **Insuring Agreement.**

   (a) We will pay medical expenses as described below for **bodily injury** caused by an accident:

   (1) On premises you own, lease, or rent;

   (2) On ways next to premises you own, lease or rent; or

   (3) Because of your **Aviation operations**;

provided that:

  (i)  The accident takes place in the **coverage territory** and during the policy period;

  (ii)  The expenses are incurred and reported to us within one year of the date of the accident; and

  (iii) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

(b) We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

  (1)  First aid at the time of an accident;

  (2)  Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

  (3)  Necessary ambulance, hospital, professional nursing and funeral services.

2. **Exclusions.**

We will not pay expenses for **bodily injury:**

(a) To any insured.

(b) To a person hired to do work for or on behalf of any insured or a tenant of any insured.

(c) To a person injured on that part of premises you own, lease or rent that the person normally occupies.

(d) To a person, whether or not an employee of any insured, if benefits for the **bodily injury** are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

(e) To a person injured while taking part in athletics.

(f) Included within the **products-completed operations hazard.**

(g) Excluded under Coverage A.

## COVERAGE D — HANGARKEEPERS' LIABILITY

1. **Insuring Agreement.**

(a) We will pay those sums that the insured becomes legally obligated to pay as damages because of **loss** to **aircraft** (subject to the deductible shown in the Declarations if applicable unless such **loss** results from fire or explosion or while the **aircraft** is dismantled and being transported) occurring while such **aircraft** is in the care, custody or control of the insured for safekeeping, storage, service or repair. We will have the right and duty to defend any **suit** seeking those damages. We may at our discretion investigate any **loss** and settle any claim or **suit** that may result. But:

  (1)  The amount we will pay for damages is limited as described in **SECTION III — LIMITS OF INSURANCE;** and

  (2)  Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgements or settlements under Coverage D.

  (3)  When you repair damages which you have caused we will not pay more than:

    (i)  your actual net cost for necessary material and parts of like kind and quality; and

    (ii)  your actual wages for labor at current straight time rates with no premium for overtime, plus 100% of such wages as an allowance for Overhead and Supervision.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **SUPPLEMENTARY PAYMENTS — COVERAGES A, B AND D.**

(b) This insurance applies to damages because of **loss** to **aircraft** only if:

  (1)  The **loss** takes place in the **coverage territory;** and

  (2)  The **loss** occurs during the policy period.

2. **Exclusions.**

This insurance does not apply to:

(a) The insured's liability under any agreement to be responsible for **loss.**

(b) **Loss** to robes, wearing apparel, personal effects or merchandise.

(c) To loss or damage to **aircraft** or parts of any **aircraft:**

  (1)  owned by, leased to, rented to or loaned to the insured or partner(s) of the insured;

  (2)  owned by, leased to, rented to or loaned to an officer or employee of the insured unless the property is an **aircraft** in your custody under an agreement for which a charge has been made.

(d) **Loss** due to theft or conversion caused in any way by you, your employees, your partners or by your shareholders.

(e) **Loss** to **your work** arising out of it or any part of it.

(f) **Loss** to **aircraft** while **in flight.**

**SUPPLEMENTARY PAYMENTS** — COVERAGES A, B AND D

We will pay, with respect to any claim or **suit** we defend:

1.  All expenses we incur.

2.  Up to $1,000 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

3.  The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

4.  All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or **suit**, including actual loss of earnings up to $100 a day because of time off from work.

5.  All costs taxed against the insured in the **suit**.

6.  Pre-judgement interest awarded against the insured on that part of the judgement we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any pre-judgement interest based on that period of time after the offer.

7.  All interest on the full amount of any judgement that accrues after entry of the judgement and before we have paid, offered to pay, or deposited in court the part of the judgement that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

## SECTION II — WHO IS AN INSURED

1.  If you are designated in the Declarations as:

    (a) An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

    (b) A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

    (c) An organization other than a partnership or joint venture, you are an insured. Your executive officers and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2.  Each of the following is also an insured:

    (a) Your employees, other than your executive officers, but only for acts within the scope of their employment by you. However, no employee is an insured for:

    (1) **Bodily injury** or **personal injury** to you or to a co-employee while in the course of his or her employment, or the spouse, child, parent, brother or sister of that co-employee as a consequence of such **bodily injury** or **personal injury**, or for any obligation to share damages with or repay someone else who must pay damages because of the injury; or

    (2) **Bodily injury** or **personal injury** arising out of his or her providing or failing to provide professional health care services; or

    (3) **Property damage** to property owned or occupied by or leased or rented or loaned to that employee, any of your other employees, or any of your partners or members (if you are a partnership or joint venture).

    (b) Any person (other than your employee), or any organization while acting as your real estate manager.

    (c) Any person or organization having proper temporary custody of your property if you die, but only:

    (1) With respect to liability arising out of the maintenance or use of that property; and

    (2) Until your legal representative has been appointed.

    (d) Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this policy.

3.  With respect to **mobile equipment** registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

    (a) **Bodily injury** to a co-employee of the person driving the equipment; or

    (b) **Property damage** to property owned by, rented to, leased to, in the charge of, or occupied by you or the employer of any person who is an insured under this provision.

4.  Any organization you newly acquire or form, other than a partnership or joint venture, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

    (a) Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier.

    (b) Coverage A does not apply to **bodily injury** or **property damage** that occurred before you acquired or formed the organization.

    (c) Coverage B does not apply to **personal injury** or **advertising injury** arising out of an offense committed before you acquired or formed the organization.

    (d) Coverage C does not apply to medical expenses arising out of **bodily injury** that occurred before you acquired or formed the organization.

    (e) Coverage D does not apply to **loss** to aircraft before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

CGL01 (1/99)                     5

## SECTION III — LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   (a) Insureds;

   (b) Claims made or **suits brought**;

   (c) Persons or organizations making claims or bringing **suits**; or

   (d) **Aircraft** to which Coverage D applies.

2. The General Aggregate Limit is the most we will pay for the sum of:

   (a) Damages under Coverage A, except damages because of **bodily injury** or property damage included in the **products-completed operations hazard**;

   (b) Damages under Coverage B; and

   (c) Medical expenses under Coverage C.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of **bodily injury** and **property damage** included in the **products-completed operations hazard**.

4. Subject to 2. above, the Personal and Advertising Injury Aggregate Limit is the most we will pay under Coverage B for the sum of all damages because of all **personal injury** and all **advertising injury** sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   (a) Damages under Coverage A; and

   (b) Medical expenses under Coverage C

   because of all **bodily injury** and **property damage** arising out of any one **occurrence**.

6. Subject to 5. above, the Fire Damage Limit is the most we will pay under Coverage A for damages because of **property damage** to premises rented or leased to you arising out of any one fire.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of **bodily injury** sustained by any one person.

8. The Hangarkeepers' Each Loss Limit is the most we will pay for the sum of damages under Coverage D because of any one **loss**.

9. Subject to 8. above, the Hangarkeepers' Each Aircraft Limit is the most we will pay for the sum of damages under Coverage D because of **loss** to any one **aircraft** in any one **loss**.

The limits of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV — POLICY CONDITIONS

1. **Bankruptcy.**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this policy.

2. **Cancellation.**

   (a) The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

   (b) We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   (1) 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   (2) 30 days before the effective date of cancellation if we cancel for any other reason.

   (c) We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

   (d) Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

   (e) If this policy is cancelled, we will return any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

   (f) If notice is mailed, proof of mailing will be sufficient proof of notice.

3. **Changes.**

   This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by the **Aviation Managers** and made a part of this policy.

4. **Duties in the Event of Occurrence, Loss, Claim or Suit.**

   (a) You must see to it that we or the **Aviation Managers** are notified promptly of an **occurrence** which may result in a claim.

   Notice should include:

   (1) How, when and where the **occurrence** took place; and

    (2)  The names and addresses of any injured persons and witnesses.

(b)  If a claim is made or **suit** is brought against any insured, you must see to it that we or the **Aviation Managers** receive prompt written notice of the claim or **suit**.

(c)  You and any other involved insured must:

    (1)  Immediately send us or the **Aviation Managers** copies of any demands, notices, summonses or legal papers received in connection with the claim or a **suit**;

    (2)  Authorize us or the **Aviation Managers** to obtain records and other information;

    (3)  Cooperate with us or the **Aviation Managers** in the investigation, settlement or defense of the claim or **suit**; and

    (4)  Assist us or the **Aviation Managers**, upon our or the **Aviation Managers'** request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which the insurance may also apply.

(d)  No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our or the **Aviation Managers'** consent.

**5.  Examination of Your Books and Records.**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**6.  Inspections and Surveys.**

We have the right but are not obligated to:

(a)  Make inspections and surveys at any time;

(b)  Give you reports on the conditions we find; and

(c)  Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

    (1)  Are safe and healthful; or

    (2)  Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization that makes insurance inspections, surveys, reports or recommendations.

**7.  Legal Action Against Us.**

No person or organization has a right under this policy:

(a)  To join us as a party or otherwise bring us into a **suit** asking for damages from an insured; or

(b)  To sue on this policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgement against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative. Service of process may be made upon the **Aviation Managers** on behalf of the Company. However, we do not waive our right to commence an action in any court of competent jurisdiction or to seek a transfer to another court as permitted by law.

**8.  Other Insurance.**

If other valid and collectible insurance is available to the insured for a **loss** we cover under Coverages A, B or D of this policy, our obligations are limited as follows:

(a)  Primary Insurance

    This insurance is primary except when (b) below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then we will share with all that other insurance by the method described in (c) below.

(b)  Excess Insurance

    (1)  This insurance is excess over any other insurance, whether primary, excess, contingent or on any other basis:

        (i)  That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for **your work**;

        (ii)  That is Fire Insurance for premises rented to you;

        (iii)  If the loss arises out of the maintenance or use of **aircraft**, **autos** or watercraft to the extent not subject to Exclusion (g) of Coverage A (Section I); or

        (iv)  If the loss is included within the **products-completed operations hazard.**

    (2)  When this insurance is excess, we will have no duty under Coverage A, B or D to defend any claim or **suit** that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

    (3)  When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

        (i)  The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

        (ii)  The total of all deductible and self insured amounts under all that other insurance.

(4) We will share the remaining loss, if any, with other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this policy.

(c) **Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the **loss** remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to total applicable limits of insurance of all insurers.

9. **Premiums.**

The first Named Insured shown in the Declarations is responsible for the payment of all premiums.

10. **Premium Audit.**

(a) We will compute all premiums for this policy in accordance with our rules and rates.

(b) Premium shown in this policy as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy term is greater than the earned premium, we will return the excess premium paid.

(c) The first Named Insured must keep records of the information we need for premium computation and send us copies of those records at such times as we may request.

11. **Representations.**

By accepting this policy, you agree:

(a) The statements in the Declarations are accurate and complete;

(b) Those statements are based upon representations you made to us; and

(c) We have issued this policy in reliance upon your representations.

12. **Separation of Insureds.**

Except with respect to the Limits of Insurance and any rights or duties specifically assigned in this policy to the first Named Insured, this insurance applies:

(a) As if each Named Insured were the only Named Insured; and

(b) Separately to each insured against whom claim is made or **suit** is brought.

13. **State Statutes.**

If the terms of this policy are in conflict with or inconsistent with the statutes of any state where this policy is in effect, we will conform to those state statutes.

14. **Titles of Paragraphs.**

The titles of the various paragraphs of this policy and amendments, if any, attached to this policy are inserted solely for reference and are not to be deemed in any way to limit or affect the provisions to which they relate.

15. **Transfer of Rights of Recovery Against Others to Us.**

If the insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The insured must do nothing after **loss** to impair them. At our request, the insured will bring **suit** or transfer those rights to us and help us enforce them.

16. **Transfer of Your Rights and Duties Under This Policy.**

Your rights and duties under this policy may not be transferred without our written consent except in the case of the death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

17. **When We Do Not Renew.**

If we decide not to renew this coverage, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V — DEFINITIONS

1. **Advertising injury** means injury arising out of one or more of the following offenses:

(a) Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

(b) Oral or written publication of material that violates a person's right of privacy;

(c) Misappropriation of advertising ideas or style of doing business; or

(d) Infringement of copyright, title or slogan.

2. **Aircraft** means any aircraft including engines, propellers, operating and navigating instruments and radio equipment attached to or usually attached to or carried on the aircraft, including component parts detached and not replaced by other similar parts, and tools therein which are standard for the make and type of aircraft. The term aircraft excludes missiles, **spacecraft** and launch vehicles.

3. **Auto** means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But **auto** does not include **mobile equipment**.

4. **Aviation Managers** means AIG Aviation, Inc., American International Aviation Agency, Inc., or any of their subsidiary or affiliated companies, branch offices or authorized representatives.

5. **Aviation operations** means all operations arising from the ownership, maintenance or use of locations for aviation activities including that portion of roads or other accesses that adjoin these locations. **Aviation operations** include all operations necessary or incidental to aviation activities.

6. **Bodily injury** means bodily injury, sickness, mental anguish or disease sustained by a person, including death resulting from any of these at any time.

7. **Coverage territory** means:

    (a) The United States of America (including its territories and possessions), Puerto Rico and Canada;

    (b) International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in 7 (a) above; or

    (c) All parts of the world if:

        (1) The injury or damage arises out of:

            (i) **Your product** or **your work** made, sold or performed in the territory described in 7 (a) above; or

            (ii) The activities of a person whose home is in the territory described in 7 (a) above, but who is away for a short time on your business; and

        (2) The insured's responsibility to pay damages is determined in a **suit** on the merits, in the territory described in 7 (a) above or in a settlement we agree to.

8. **Impaired property** means tangible property, other than **your product** or **your work**, that cannot be used or is less useful because:

    (a) It incorporates **your product** or **your work** that is known or thought to be defective, deficient, inadequate or dangerous; or

    (b) You have failed to fulfill the terms of a contract or agreement;

    if such property can be restored to use by:

        (1) The repair, replacement, adjustment or removal of **your product** or **your work**; or

        (2) Your fulfilling the terms of the contract or agreement.

9. **In flight** means the time commencing with the actual take-off run of the **aircraft** until it has completed its landing roll, or if the **aircraft** is a rotorcraft, from the time the rotors start to rotate under power until they cease to rotate.

10. **Insured contract**

    (a) means:

        (1) A lease of premises;

        (2) A sidetrack agreement;

        (3) Any easement or license agreement except in connection with construction or demolition operations on or within 50 feet of a railroad;

        (4) An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

        (5) An elevator maintenance agreement; or

        (6) That part of any other contract or agreement pertaining to your **Aviation operations** (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for **bodily injury** or **property damage** to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

    An **insured contract**

    (b) does not include that part of any contract or agreement:

        (1) That indemnifies any person or organization for **bodily injury** or **property damage** arising out of construction or demolition operations within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

        (2) That indemnifies an architect, engineer or surveyor for injury or damages arising out of:

            (i) Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

            (ii) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

        (3) Under which the insured, if an architect, engineer or surveyor, assumes liability for injury or damage arising out of the insured's rendering or failing to render professional services, including those listed in (b) (2) above and supervisory, inspection or engineering services; or

        (4) That indemnifies any person or organization for damage by fire to premises rented or loaned to you; or

        (5) That indemnifies any person or organization for **bodily injury** and **property damage** arising out of the manufacture of **aircraft** or **aircraft** parts; or

    (6) That indemnifies any person or organization for **bodily injury** or **property damage** arising out of any major alteration or repair of an **aircraft** or **aircraft** parts; or

    (7) Which is agreed to orally by you and another party, unless the contract or agreement is required by a governmental body for you to use an airport.

11. **Loading** or **unloading** means the handling of property:

    (a) After it is moved from the place where it is accepted for movement into or onto an **aircraft**, watercraft or **auto**;

    (b) While it is in or on an **aircraft**, watercraft or **auto**; or

    (c) While it is being moved from an **aircraft**, watercraft or **auto** to the place where it is finally delivered; but **loading** or **unloading** does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the **aircraft**, watercraft or **auto**.

12. **Loss** means an accident resulting in direct damage to tangible property, including continuous or repeated exposure to substantially the same general harmful conditions. **Loss** includes any resulting loss of use.

13. **Mobile equipment** means any of the following types of land vehicles, including any attached machinery or equipment:

    (a) Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    (b) Vehicles maintained for use solely on or next to premises you own, lease, or rent including special use vehicles designed for operation on airports;

    (c) Vehicles that travel on crawler treads;

    (d) Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

        (1) Power cranes, shovels, loaders, diggers or drills; or

        (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

    (e) Vehicles not described in 13 (a, b, c or d) above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

        (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well service equipment; or

        (2) Cherry pickers and similar devices used to raise or lower workers;

    (f) Vehicles not described in 13 (a, b, c or d) above maintained primarily for purposes other than the transportation of persons or cargo.

    However, self-propelled vehicles with the following types of permanently attached equipment are not **mobile equipment** but will be considered **autos**:

        (1) Equipment designed primarily for:

            (i) Road maintenance, but not construction or resurfacing; or

            (ii) Street cleaning.

        (2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

        (3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

14. **Occurrence** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

15. **Personal injury** means injury, other than **bodily injury**, arising out of one or more of the following offenses:

    (a) False arrest, detention or imprisonment;

    (b) Malicious prosecution;

    (c) The wrongful eviction from, wrongful entry into or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

    (d) Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    (e) Oral or written publication of material that violates a person's right of privacy; or

    (f) Misdirection of a person to an **aircraft** or other conveyance.

16. (a) **Products-completed operations hazard** includes all **bodily injury** and **property damage** occurring away from premises you own, lease, or rent and arising out of **your product** or **your work** except:

        (1) Products that are still in your physical possession; or

        (2) Work that has not yet been completed or abandoned.

    (b) **Your work** will be deemed completed at the earliest of the following times:

        (1) When all of the work called for in your contract has been completed.

        (2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

        (3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

CGL01 (1997)

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

   (c)  This hazard does not include **bodily injury** or **property damage** arising out of:

      (1)  The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the **loading** or **unloading** of it;

      (2)  The existence of tools, uninstalled equipment or abandoned or unused materials.

17.  **Property damage** means:

   (a)  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   (b)  Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the **occurrence** that caused it.

18.  **Spacecraft** means a spacecraft, satellite, spaceship, space station (or launch vehicle for such spacecraft) designed to travel to, in, or from and operate primarily in space (including parts thereof detached **in flight)**. The term spacecraft excludes **aircraft** and missiles.

19.  **Suit** means a civil proceeding in which damage because of **bodily injury, property damage, personal injury** or **advertising injury** to which this insurance applies are alleged. **Suit** includes:

   (a)  An arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or

   (b)  Any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

20.  **Your product**

   (a)  means:

      (1)  Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

         (i)  You;

         (ii)  Others trading under your name; or

         (iii)  A person or organization whose business or assets you have acquired; and

      (2)  Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

   (b)  includes:

      (1)  Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **your product**; and

      (2)  The providing of or failure to provide warnings or instructions.

   **Your product** does not include vending machines or other property rented to or located for the use of others but not sold.

21.  **Your work**

   (a)  means:

      (1)  Work or operations performed by you or on your behalf; and

      (2)  Materials, parts or equipment furnished in connection with such work or operation.

   (b)  includes:

      (1)  Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **your work**; and

      (2)  The providing of or failure to provide warnings or instructions.

## SECTION VI — COMMON POLICY EXCLUSIONS

1.  **Noise, Pollution and Other Perils Exclusion Clause**

   (a)  This insurance does not cover claims directly or indirectly occasioned by, happening through or in consequence of:

      (1)  Noise (whether audible to the human ear or not) or vibration, sonic boom and any phenomena associated therewith,

      (2)  Pollution and contamination of any kind whatsoever,

      (3)  Electrical and electromagnetic interference,

      (4)  Interference with the use of property,

      Unless caused by or resulting in a crash, fire, explosion or collision or a recorded in-flight emergency causing abnormal **aircraft** operation.

   (b)  With respect to any provision in the Policy concerning our duty to investigate or defend claims, such provision shall not apply and we shall not be required to defend:

      (1)  Claims excluded by paragraph (a) or,

      (2)  A claim or claims covered by the policy when combined with any claims excluded by paragraph (a) (referred to below as "Combined Claims").

(c)  In respect of any Combined Claims, we shall (subject to proof of loss and the limits of the policy) reimburse the insured for that portion of the following items which may be allocated to the claim or claims covered by the policy:

    (1)  Damages awarded against the insured and

    (2)  Defense fees and expenses incurred by the insured.

(d)  Nothing herein shall override any radioactive contamination or other exclusion clause attached to or forming part of this Policy.

**2.  Absolute Asbestos Exclusion Clause**

This insurance does not apply to any damages, judgements, settlements, loss, costs or expenses that:

(a)  May be awarded or incurred by reason of any claim or **suit** alleging actual or threatened injury or damage of any nature or kind to persons or property which would not have occurred in whole or in part but for the asbestos hazard;

(b)  Arise out of any request, demand or order to test for, monitor, clean up, remove, encapsulate, contain, treat, detoxify or neutralize or in any way respond to or assess the effects of an asbestos hazard; or

(c)  Arise out of any claim or **suit** for damages because of testing for, monitoring, cleaning up, removing, encapsulating, containing, treating, detoxifying or neutralizing or in any way responding to or assessing the effects of an asbestos hazard.

As used in this exclusion, asbestos hazard means an exposure or threat of exposure to the actual or alleged properties of asbestos and includes the mere presence of asbestos in any form.

**3.  Nuclear Energy Liability Exclusion Clause**

This insurance does not apply to:

(a)  **Bodily injury** or **property damage**:

    (1)  With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

    (2)  Resulting from the **hazardous properties of nuclear material** and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

(b)  Expenses incurred under Medical Payments coverage with respect to **bodily injury** resulting from the **hazardous properties of nuclear material** and arising out of the operation of a **nuclear facility** by any person or organization.

(c)  **Bodily injury** or **property damage** resulting from the **hazardous properties of nuclear material**, if:

    (1)  The **nuclear material** (i) is at any **nuclear facility** owned by, or operated by or on behalf of, an insured or (ii) has been discharged or dispersed therefrom;

    (2)  The **nuclear material** is contained in **spent fuel** or **waste** at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

    (3)  The **bodily injury** or **property damage** arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **nuclear facility**, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to **property damage** to such **nuclear facility** and any property thereat.

As used in **COMMON POLICY EXCLUSION 3. Nuclear Energy Liability**:

**"Hazardous properties"** include radioactive, toxic or explosive properties;

**"Nuclear material"** means source material, special nuclear material or by-product material;

**"Source material"**, **"special nuclear material"**, and **"by-product material"** have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

**"Spent fuel"** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a **nuclear reactor**;

**"Waste"** means solely with respect to this exclusion 3., any waste material (i) containing **by-product material** other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its **source material** content, and (ii) resulting from the operation by any person or organization of any **nuclear facility** included under the first two paragraphs of the definition of **nuclear facility**.

**"Nuclear facility"** means:

(a)  Any **nuclear reactor**;

(b)  Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing **spent fuel**, or (3) handling, processing or packaging **waste**;

(c)  Any equipment or device used for the processing, fabricating or alloying of **special nuclear material** if at any time the total amount of such material in the custody of the insured at the premises where such equipment or devise is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d)  Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of **waste**; and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"**Nuclear reactor**" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"**Property damage**" includes all forms of radioactive contamination of property.

4. **Special Airport Provisions Exclusion Clause**

This insurance does not apply:

(a) To the conduct of any contest, exhibition, air meet, air race, air show; permitted, sponsored or participated in, by any insured; or

(b) To the ownership, maintenance, use or operation, by any insured of;

    (1) Grandstands, bleachers or observation platforms other than observation decks or promenades which are part of permanent structures on the premises;

    (2) Swimming pools;

    (3) Lodging accommodations for the general public; or

    (4) Schools other than pilot training schools.

(c) With respect to restaurants operated by you or by others trading under your name, to **bodily injury** or **property damage** arising out of

    (1) Your **products**; or

    (2) Reliance upon a representation or warranty made with respect thereto if the **bodily injury** or **property damage** occurs after physical possession of such products has been relinquished to others.

(d) To that portion of any **loss** arising out of the ownership, maintenance or use of **aircraft** or **autos** with respect to which the insured has other valid and collectible insurance, whether primary or excess.

5. **War and other Perils Exclusion Clause**

This insurance does not apply with respect to **bodily injury** or **property damage** due to:

(a) War, invasion, acts of foreign enemies, hostilities (whether or not war be declared), civil war, rebellion, insurrection, martial law, military or usurped power or attempts at usurpation of power;

(b) Any hostile detonation of any weapon of war employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter;

(c) Strikes, riots, civil commotions or labor disturbances;

(d) Any act of one or more persons, whether or not agents of a sovereign power, for political or terrorist purposes and whether claim, injury, **loss** or damage resulting therefrom is accidental or intentional;

(e) Any malicious act or act of sabotage;

(f) Confiscation, nationalization, seizure, restraint, detention, appropriation, requisition by or under any government (whether civil, military or de facto), public or local authority; or,

(g) Hi-jacking or any unlawful seizure or wrongful exercise of control of an aircraft or crew, including any attempted seizure or control, made by any person or persons acting without the consent of the Insured.

IN WITNESS WHEREOF, the Company specified on the Declaration Page has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned on the Declarations Page by a duly authorized agent of the Company and approved by the **Aviation Managers**.

Secretary                                   President

AMERICAN HOME ASSURANCE COMPANY

Secretary                                   President

NATIONAL UNION FIRE INSURANCE COMPANY

Secretary                                   President

THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA

This policy is issued by:   NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA
70 PINE STREET
NEW YORK, NY  10005

## DECLARATIONS - COMMERCIAL GENERAL LIABILITY AVIATION POLICY

Policy Number:  **AP 3388953-05**          Previous Policy Number:  AP 3388953-04

**ITEM 1.**    Named Insured:   **PONTIAC FLYING SERVICE**

Mailing Address:   15755 EAST 2000 NORTH ROAD
PONTIAC, IL  61764, USA

**ITEM 2.**    Policy Period:   From _____ MAY 19, 2002 _____ to _____ MAY 19, 2003 _____, 12:01 a.m.
standard time at your mailing address shown above.  In return for the payment of premium, and subject
to all terms of this policy we agree to provide insurance as stated in this policy.
Named Insured is  AERIAL APPLICATION
Business Description:  CORPORATION                          Interest:  TENANT
Audit Period:  Annual unless otherwise stated.

**ITEM 3.**    In return for the payment of premium, and subject to all the terms of this Policy, we agree with you to
provide insurance as stated in this Policy.

| Commercial General Liability Coverage | | Limits of Insurance |
|---|---|---|
| General Aggregate Limit (other than Products/Completed Operations) | $ | NOT APPLICABLE |
| Products/Completed Operations Aggregate Limit | $ | NOT COVERED |
| Personal and Advertising Injury Aggregate Limit | $ | NOT COVERED |
| Each Occurrence Limit | $ | 1,000,000. |
| Fire Damage Limit  (any one fire) | $ | NOT COVERED |
| Medical Expense Limit  (any one person) | $ | NOT COVERED |
| Hangarkeeper's Liability Coverage | | |
| Each **Aircraft** Limit | $ | NOT COVERED |
| Each Loss Limit | $ | NOT COVERED |
| Deductible  (each **aircraft**)  $ _____ NOT APPLICABLE | | |
| TOTAL ADVANCE PREMIUM | $ | 1,187 |

**ITEM 4.**    Location of premises owned, rented to or occupied by the Named Insured at the beginning of the Policy
Period: PONTIAC MUNICIPAL, PONTIAC, IL

**ITEM 5.**    Endorsements and forms forming a part of this policy on its effective date:
CGL01 (1/99),  AV224,  AV412,  AVN48B,  AV209,  AV214,  AV219,  AV220,  AV252,  AVN46B,
AVN38B, AV855, AV191, AVN2000A, SE52142

Producer   HARDY AVIATION INSURANCE, INC., 7016 W. HARRY PO BOX 12010, WICHITA, KS  67277-2010
H00022

Countersigned _____

At _____

By _____
(Authorized Representative)

Approved By _____
(Authorized Representative)

CGL03 (1/99)

## LIMITATION OF COVERAGE TO DESIGNATED PREMISES OR PROJECT

In consideration of additional premium of $ _____INCLUDED_____ , this policy is amended as follows:

(If no entry appears below, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance applies only to **bodily injury, property damage, personal injury, advertising injury** and medical expenses arising out of:

1.  The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises; or

2.  The project shown in the Schedule.

SCHEDULE

Premises/Project:

AS SHOWN IN ITEM 4 OF THE DECLARATIONS, AND OTHER LOCATIONS WHICH ARE NECESSARY OR INCIDENTAL TO THOSE PREMISES, BUT EXCLUDING THE USE OF PUBLIC ROADWAYS.

All other provisions of this policy remain the same.

This endorsement becomes effective _____MAY 19, 2002_____ to be attached to and hereby made a part of Policy No. ____AP 3388953-05____ issued to PONTIAC FLYING SERVICE

By NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

Endorsement No.____1____

Date of Issue ____June 6, 2002 (bp )____

By _____
(Authorized Representative)

AV224 (1/99)

# ILLINOIS NOISE, POLLUTION AND OTHER PERILS
## AMENDATORY ENDORSEMENT

This policy is amended as follows:

Paragraphs (b) and (c) of **Noise, Pollution and Other Perils Exclusion Clause** under **COMMON POLICY EXCLUSIONS** are hereby deleted in their entirety and replaced with the following:

(b)  With respect to any provision in the policy concerning our duty to investigate or defend claims, such provision shall not apply and we shall not be required to defend:

   (1)  Claims excluded by paragraph (a), or

(c)  With respect to any claim or claims covered by the policy when combined with any claims excluded by paragraph a) we shall (subject to proof of loss and the limits of the policy) reimburse the insured for that portion of the following items which may be allocated to the claim or claims covered by the policy:

   (1)  Damages awarded against the insured, and

   (2)  Defense fees and expenses incurred by the insured.

All other provisions of this policy remain the same.

This endorsement becomes effective _____ MAY 19, 2002 _____ to be attached to and hereby made a part of
Policy No. ___ AP 3388953-05 ____ issued to PONTIAC FLYING SERVICE _____

By NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA _____

Endorsement No. _____ 2 _____

Date of Issue _____ June 6, 2002 (bp ) _____

By _____
                    (Authorized Representative)

AV412 (1/99)

# WAR, HI-JACKING AND OTHER PERILS EXCLUSION CLAUSE (AVIATION)

This policy is amended as follows:

In the event any of the provisions of this endorsement are in conflict with any provisions, exclusions, conditions or terms forming part of this policy, this endorsement shall take precedence.

This policy does not cover claims caused by:

(a) War, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, martial law, military or usurped power or attempts at usurpation of power;

(b) Any hostile detonation of any weapon of war employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter;

(c) Strikes, riots, civil commotions or labor disturbances;

(d) Any act of one or more persons, whether or not agents of a sovereign power, for political or terrorist purposes and whether the loss or damage resulting therefrom is accidental or intentional;

(e) Any malicious act or act of sabotage;

(f) Confiscation, nationalization, seizure, restraint, detention, appropriation, requisition for title or use by or under the order of any Government (whether civil, military or de facto) or public or local authority;

(g) Hi-jacking or any unlawful seizure or wrongful exercise of control of the aircraft or crew in flight (including any attempt at such seizure or control) made by any person or persons on board the aircraft acting without the consent of the Insured.

Furthermore, this policy does not cover claims arising whilst the aircraft is outside the control of the Insured by reason of any of the above perils.

The aircraft shall be deemed to have been restored to the control of the Insured on the safe return of the aircraft to the Insured at an airfield not excluded by the geographical limits of this policy, and entirely suitable for the operation of the aircraft (such safe return shall require that the aircraft be parked with engines shut down and under no duress).

All other provisions of this policy remain the same.

This endorsement becomes effective _____ MAY 19, 2002 _____ to be attached to and hereby made a part of Policy No. ___ AP 3388953-05 ___ issued to ___ PONTIAC FLYING SERVICE _____

By __ NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA _____

Endorsement No. ____ 3 _____

Date of Issue ____ June 6, 2002 (bp ) ____        By _____
                                                        (Authorized Representative)

AVN48B (1/02)

# EXCLUSION - COVERAGE C - MEDICAL PAYMENTS

This policy is amended as follows:

SCHEDULE

Description and Location of Premises:

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to any locations shown in the Schedule, COVERAGE C - MEDICAL PAYMENTS does not apply and none of the references to it in the Coverage apply.

The following is added to **SUPPLEMENTARY PAYMENTS**:

Expenses incurred by the Insured for first aid to others at the time of an accident for **bodily injury** to which this insurance applies.

All other provisions of this policy remain the same.

This endorsement becomes effective _____ MAY 19, 2002 _____ to be attached to and hereby made a part of Policy No. ___AP 3388953-05___ issued to PONTIAC FLYING SERVICE

By NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

Endorsement No. _____4_____

Date of Issue _____June 6, 2002 (bp )_____

By _____
(Authorized Representative)

AV209 (1/99)

## EXCLUSION - FIRE DAMAGE LEGAL LIABILITY

This policy is amended as follows:

1.  The last paragraph of Exclusions under COVERAGE A does not apply.

2.  Paragraph 6. of the **LIMITS OF INSURANCE** does not apply.

3.  Any reference in the Declarations to "Fire Damage Legal Liability" does not apply.

All other provisions of this policy remain the same.

This endorsement becomes effective _____ MAY 19, 2002 _____ to be attached to and hereby made a part of Policy No. ___ AP 3388953-05 ___ issued to PONTIAC FLYING SERVICE

By NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

Endorsement No. ___ 5 ___

Date of Issue ___ June 6, 2002 (bp ) ___

By _____
(Authorized Representative)

AV214 (1/99)

## EXCLUSION - PERSONAL INJURY AND ADVERTISING

This policy is amended as follows:

COVERAGE B does not apply and none of the references to it in the Coverage Part apply.

All other provisions of this policy remain the same.

This endorsement becomes effective _____ MAY 19, 2002 _____ to be attached to and hereby made a part of Policy No. __ AP 3388953-05 __ issued to PONTIAC FLYING SERVICE

By NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

Endorsement No. _____ 6

Date of Issue _____ June 6, 2002 (bp )

By _____
        (Authorized Representative)

AV219 (1/99)

## EXCLUSION - PRODUCTS/COMPLETED OPERATIONS HAZARD

This policy is amended as follows:

This insurance does not apply to **bodily injury** or **property damage** included within the **Products/Completed Operations Hazard.**

_____

Signature of Named Insured

_____

Date

All other provisions of this policy remain the same.

This endorsement becomes effective _____ MAY 19, 2002 _____ to be attached to and hereby made a part of Policy No. ___ AP 3388953-05 ____ issued to PONTIAC FLYING SERVICE _____

By NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA _____

Endorsement No. _____ 7 _____

Date of Issue _____ June 6, 2002 (bp ) _____      By _____

AV220 (1/99)                                                                    (Authorized Representative)

## HANGARKEEPERS EXCLUSION ENDORSEMENT

This policy is amended as follows:

SCHEDULE

Location:

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to any location shown in the Schedule, COVERAGE D - HANGARKEEPERS' LIABILITY does not apply and none of the references to it in the coverage apply.

All other provisions of this policy remain the same.

This endorsement becomes effective _____ MAY 19, 2002 _____ to be attached to and hereby made a part of Policy No. ____ AP 3388953-05 _____ issued to PONTIAC FLYING SERVICE _____

By NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA _____

Endorsement No. _____ 8 _____

Date of Issue _____ June 6, 2002 (bp ) _____

By _____
(Authorized Representative)

AV252 (1/99)

## NOISE AND POLLUTION AND OTHER PERILS EXCLUSION CLAUSE

This policy is amended as follows:

In the event any of the provisions of this endorsement are in conflict with any provisions, exclusions, conditions or terms forming part of this policy, this endorsement shall take precedence.

1.  This policy does not cover claims directly or indirectly occasioned by, happening through or in consequence of:

    (a)  noise (whether audible to the human ear or not), vibration, sonic boom and any phenomena associated therewith,

    (b)  pollution and contamination of any kind whatsoever,

    (c)  electrical and electromagnetic interference,

    (d)  interference with the use of property;

    unless caused by or resulting in a crash, fire, explosion or collision or a recorded in-flight emergency causing abnormal aircraft operation.

2.  With respect to any provision in the policy concerning any duty of the Company to investigate or defend claims, such provision shall not apply and the Company shall not be required to defend:

    (a)  claims excluded by paragraph 1., or

    (b)  a claim or claims covered by the policy when combined with any claims excluded by paragraph 1. (referred to below as "Combined Claims").

3.  In respect of any Combined Claims, the Company shall (subject to proof of loss and the limits of the policy) reimburse the Insured for that portion of the following items which may be allocated to the claims covered by the policy:

    (a)  damages awarded against the Insured and

    (b)  defense fees and expenses incurred by the Insured.

4.  Nothing herein shall override any radioactive contamination or other exclusion clause attached to or forming part of this policy.

All other provisions of this policy remain the same.

This endorsement becomes effective _____ MAY 19, 2002 _____ to be attached to and hereby made a part of Policy No. ___ AP 3388953-05 ___ issued to ___ PONTIAC FLYING SERVICE _____

By ___ NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA _____

Endorsement No. _____ 9 _____

Date of Issue _____ June 6, 2002 (bp ) _____

By _____
                          (Authorized Representative)

AVN46B (1/02)

# NUCLEAR RISKS EXCLUSION CLAUSE

This policy is amended as follows:

In the event any of the provisions of this endorsement are in conflict with any provisions, exclusions, conditions or terms forming part of this policy, this endorsement shall take precedence.

1.  This policy does not cover:

    (i)   loss or destruction of or damage to any property whatsoever or any loss or expense whatsoever resulting or arising therefrom or any consequential loss

    (ii)  any legal liability of whatsoever nature

    directly or indirectly caused by or contributed to by or arising from:

        (a)  the radioactive, toxic, explosive or other hazardous properties of any explosive nuclear assembly or nuclear component thereof;

        (b)  the radioactive properties of, or a combination of radioactive properties with toxic, explosive or other hazardous properties of, any other radioactive material in the course of carriage as cargo, including storage or handling incidental thereto;

        (c)  ionizing radiations or contamination by radioactivity from, or the toxic, explosive or other hazardous properties of, any other radioactive source whatsoever.

2.  It is understood and agreed that such radioactive material or other radioactive source in paragraph 1. (b) and (c) above shall not include:

    (i)   depleted uranium and natural uranium in any form;

    (ii)  radioisotopes which have reached the final stage of fabrication so as to be usable for any scientific, medical, agricultural, commercial, educational or industrial purpose.

3.  This policy, however, does not cover loss of or destruction of or damage to any property or any consequential loss or any legal liability of whatsoever nature with respect to which:

    (i)   the Insured under this policy is also an insured or an additional insured under any other insurance policy, including any nuclear energy liability policy; or

    (ii)  any person or organization is required to maintain financial protection pursuant to legislation in any country; or

    (iii) the Insured under this policy is, or had this policy not been issued would be, entitled to indemnification from any government or agency thereof.

4. Loss, destruction, damage, expense or legal liability in respect of the nuclear risks not excluded by reason of paragraph 2. shall (subject to all other terms, conditions, limitations, warranties and exclusions of this policy) be covered, provided that:

(i) in the case of any claim in respect of radioactive material in the course of carriage as cargo, including storage or handling incidental thereof, such carriage shall in all respects have complied with the full International Civil Aviation Organization "Technical Instructions for the Safe Transport of Dangerous Goods by Air", unless the carriage shall have been subject to any more restrictive legislation, when it shall in all respects have complied with such legislation;

(ii) this policy shall only apply to an incident happening during the period of this policy and where any claim by the Insured against the Company or by any claimant against the Insured arising out of such incident shall have been made within three years after the date thereof;

(iii) in the case of any claim for the loss of or destruction of or damage to or loss of use of an aircraft caused by or contributed to by radioactive contamination, the level of such contamination shall have exceeded the maximum permissible level set out in the following scale:

| Emitter<br><br>(IAEA Health and Safety Regulations) | Maximum permissible level of non-fixed radioactive surface contamination (Averaged over 300 $cm^2$) |
|---|---|
| Beta, gamma and low toxicity alpha emitters | Not exceeding 4 Bequerels / $cm^2$ ($10^{-4}$ microcuries / $cm^2$) |
| All other alpha emitters | Not exceeding 0.4 Bequerels / $cm^2$ ($10^{-5}$ microcuries / $cm^2$) |

(iv) the cover afforded hereby may be cancelled at any time by the Company giving seven days' notice of cancellation.

All other provisions of this policy remain the same.

This endorsement becomes effective _____MAY 19, 2002_____ to be attached to and hereby made a part of Policy No. __AP 3388953-05__ issued to __PONTIAC FLYING SERVICE__

By __NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA__

Endorsement No. ____10____

Date of Issue ____June 6, 2002 (bp)____

By _____
(Authorized Representative)

AVN38B (1/02)                    Page 2

# FUNGUS EXCLUSION ENDORSEMENT

This policy shall not apply under any coverage section to:

1. **bodily injury**; sickness; disease; occupational disease; headaches; dizziness; neurological disorders of any kind; mental or physical stress, anguish, or injury of any kind; **property damage** or grounding or any other claim whatsoever nor

   any loss, cost, or expense including, but not limited to, losses, costs, or expenses related to, arising from, or associated with testing for, cleaning up, remediation, containment, removal, or abatement, nor

   any obligation to defend or indemnify due in whole or in part to any claim or suit against the **insured** alleging damages arising from or caused by, directly or indirectly, in whole or in part, by

   (a)  any **fungus(i)**, **molds**, mildew or yeast, or

   (b)  any **spore(s)**, or toxins created or produced by or emanating from such **fungus(i)**, **mold(s)**, mildew or yeast, or

   (c)  any substance, vapor gas, or other emission or organic or inorganic body or substance produced by or arising out of any fungus(i), mold(s), mildew or yeast, or

   (d)  any **material**, product, building component, building or structure or any concentration of moisture, water or other liquid within such material, product, building component, building or structure that contains, harbors, nurtures, or acts as a medium for any fungus(i), mold(s), mildew or yeast, or **spore(s)** or toxins emanating therefrom,

   regardless of any other cause, event material, product and/or building component that contributed concurrently or in any sequence to any alleged loss or subsequent claim.

2. For the purposes of this endorsement, the following definitions are added to the policy:

   **Fungus(i)** includes, but is not limited to, any of the plants or organisms belonging to the major group Fungi, lacking chlorophyll, and including **mold(s)**, rusts, mildews, smuts, and mushrooms.

   **Mold(s)** includes, but is not limited to, any superficial growth produced on damp or decaying organic matter or on living organisms, and **fungi** that produce **molds**.

   **Spore(s)** means any dormant or reproductive body produced by or arising or emanating out of any **fungus(i)**, **mold(s)**, mildew, plants, organisms, or microorganisms.

All other provisions of this policy remain the same.

This endorsement becomes effective _____ MAY 19, 2002 _____ to be attached to and hereby made a part of Policy No. ___ AP 3388953-05 ___ issued to ___ PONTIAC FLYING SERVICE ___

By ___ National Union Fire Insurance Company of Pittsburgh, PA ___

Endorsement No. ___ 11 ___

Date of Issue ___ June 6, 2002  (bp) ___

By _____
(Authorized Representative)

AV855  (2/02)

## ADDITIONAL INSURED - DESIGNATED PERSON OR ORGANIZATION

This policy is amended as follows:

SCHEDULE

Name of Person(s) or Organization(s):

CITY OF PONTIAC
115 HOWARD ST
PONTIAC, IL   61761

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**WHO IS AN INSURED** is amended to include as an Insured the person(s) or organization(s) shown in the Schedule as an Insured but only with respect to liability arising out of your operations or premises owned by or rented to you.

All other provisions of this policy remain the same.

This endorsement becomes effective _____ MAY 19, 2002 _____ to be attached to and hereby made a part of Policy No. ___ AP 3388953-05 ___ issued to PONTIAC FLYING SERVICE _____

By NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA _____

Endorsement No. ___ 12 _____

Date of Issue ___ June 6, 2002 (bp ) ___

By _____
(Authorized Representative)

AV191 (1/99)

## DATE RECOGNITION EXCLUSION CLAUSE

This Policy does not cover any claim, damage, injury, loss, cost, expense or liability (whether in contract, tort, negligence, product liability, misrepresentation, fraud or otherwise) of any nature whatsoever arising from or occasioned by or in consequence of (whether directly or indirectly and whether wholly or partly):

(a)  the failure or inability of any computer hardware, software, integrated circuit, chip or information technology equipment or system (whether in the possession of the Insured or of any third party) accurately or completely to process, recognize, exchange or transfer year, date or time data or information in connection with any change of year, date or time;

   whether on or before or after such change of year, date or time;

(b)  any implemented or attempted change or modification of any computer hardware, software, integrated circuit, chip or information technology equipment or system (whether in the possession of the Insured or of any third party) in anticipation of or in response to any such change of year, date or time, or any advice given or services performed in connection with any such change or modification;

(c)  any non-use or unavailability for use of any property or equipment of any kind whatsoever resulting from any act, failure to act or decision of the Insured or of any third party related to any such change of year, date or time;

and any provision in this Policy concerning any duty of the Company to investigate or defend claims shall not apply to any claims so excluded.

All other provisions of this policy remain the same.

This endorsement becomes effective _____ MAY 19, 2002 _____ to be attached to and hereby made a part of Policy No. __ AP 3388953-05 __ issued to _ PONTIAC FLYING SERVICE _

By __ NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA _

Endorsement No. _____ 13 _____

Date of Issue _____ June 6, 2002 (bp ) _____          By _____

                                                              (Authorized Representative)

AVN2000A (1/02)

# ILLINOIS CANCELLATION / NONRENEWAL ENDORSEMENT - AVIATION

Wherever used in this endorsement: 1) "we", "us", "our", and "Insurer" mean the insurance company which issued this policy; and 2) "you", "your", "Named Insured", "First Named Insured", and "Insured" mean the Named Corporation, Named Organization, Named Sponsor, Named Insured, or Insured stated in the Declarations page; and 3) "Other Insured(s)" means all other persons or entities afforded coverage under the policy.

<u>CANCELLATION AND NONRENEWAL</u>

A) The cancellation condition of this policy is replaced by the following:

CANCELLATION

1.  The Named Insured may cancel this policy by mailing to the Insurer advance written notice of cancellation.

2.  If this policy has been in effect for sixty (60) days or less, the insurer may cancel this policy by mailing to the Named Insured written notice of cancellation at least:

    a)  Ten (10) days before the effective date of cancellation if the Insurer cancels for nonpayment of premium; or

    b)  Thirty (30) days before the effective date of cancellation if the Insurer cancels for any other reason.

3.  If this policy has been in effect for more than sixty (60) days the Insurer may cancel this policy only for one or more of the following reasons:

    a)  Nonpayment of premium;

    b)  The policy was obtained through a material misrepresentation;

    c)  The Named Insured or Other Insured(s) have violated any of the terms and conditions of the policy;

    d)  The risk originally accepted has measurably increased;

    e)  Certification to the Director of Insurance of the loss of reinsurance by the Insurer which provided coverage to the Insurer for all or a substantial part of the underlying risk insured; or

    f)  A determination by the Director that the continuation of the policy could place the Insurer in violation of the insurance laws of this State.

    If the Insurer cancels this policy based on one or more of the above reasons except for nonpayment of premium, the Insurer will mail written notice to the Named Insured at least sixty (60) days before the effective date of cancellation. When cancellation is for nonpayment of premium, the Insurer will mail notice at least ten (10) days before the effective date of cancellation.

4.  The Insurer will mail the notice to the Named Insured and the agent or broker at the last addresses known to the Insurer.

5.  Notice of cancellation will state the effective date of cancellation and a specific explanation of the reason or reasons for cancellation. The policy period will end on that date.

6. If this policy is cancelled, the Insurer will send the Named Insured any premium refund due. If the Insurer cancels, the refund will be pro rata. If the Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if the Insurer has not made or offered a refund.

7. Proof of mailing will be sufficient proof of notice.

B) The following is added:

NONRENEWAL

If the Insurer decides not to renew this policy, the Insurer will mail written notice stating the reason for nonrenewal to the Named Insured's last mailing address known to the Insurer at least sixty (60) days before the expiration date of the policy. A copy of the notice will also be sent to:

a) The broker, if known to the Insurer, or the agent of record; and

b) The last known mortgagee or lienholder named in the policy at the last mailing address known to the Insurer.

This paragraph does not apply if the Insurer has manifested a willingness to renew directly to the Named Insured.

All other provisions of this policy remain the same.

This endorsement becomes effective _____ MAY 19, 2002 _____ to be attached to and hereby made a part of Policy No. ___ AP 3388953-05 _____ issued to PONTIAC FLYING SERVICE

By NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

Endorsement No. _____ 14 _____

Date of Issue _____ June 6, 2002 (bp ) _____

By _____
(Authorized Representative)

SE52142 (1/99)          Page 2