E-FILED
Thursday, 12 May, 2005  02:55:06 PM
Clerk, U.S. District Court, ILCD

SKS 358707                                                                                          3917-8

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 03-CV-01288 |
| v. | ) ) | |
| PONTIAC FLYING SERVICE, INC., JUSTYN WEBSTER, As Special Administrator of the Estate of NEIL WEBSTER, Deceased, and CAREN S. LUCENTE, as Independent Executor of the Estate of RICHARD P. LUCENTE, Deceased, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |
| And | ) ) | |
| PONTIAC FLYING SERVICE, INC. v. | ) ) ) | |
| HARDY AVIATION INSURANCE, INC., | ) ) | |
| Third Party Defendant. . | ) ) ) | |

**NATIONAL UNION'S  RESPONSE TO MOTIONS
OF PONTIAC AND WEBSTER FOR LEAVE TO FILE COUNTERCLAIMS**

Plaintiff, NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA. ("National Union"), by its attorneys, HASSELBERG, ROCK, BELL & KUPPLER and TRESSLER, SODERSTROM, MALONEY & PRIESS, submits the following Response to the motions of PONTIAC FLYING SERVICE, INC. ("Pontiac") and JUSTYN WEBSTER, and VIRGINIA WEBSTER-SMITH ("Webster") for leave to file counterclaims against National Union pursuant to Federal Rule of Civil Procedure 13(a):

## I.    INTRODUCTION

National Union's Motion for Summary Judgment is fully briefed. National Union seeks summary judgment against all defendants on the basis that Pontiac's use of the insured Air Tractor aircraft to operate a nationally-advertised turbine transition flight training program is decidedly not within even the most imaginative interpretation of "aerial application" – the only approved use of the aircraft under the aerial applicator policy issued to Pontiac to cover the Air Tractor and two other agricultural airplanes. The policy also specifically excludes liability arising out of the injury or death of any and all occupants of the insured aircraft. National Union therefore seeks a declaration that neither first party hull coverage nor third party liability coverage are afforded under the policy in connection with the loss of the Air Tractor and the death of its occupants.

Pontiac and Webster, for the first time in two years since the accident, and one and half years after this litigation was initiated, seek leave of court to file counterclaims seeking to establish that liability coverage is afforded for this matter under a separate, standard commercial general liability (CGL) policy issued by National Union to Pontiac. As is typical in the industry, the CGL policy does not afford coverage for the operation of aircraft (for which separate policies are issued) but instead affords coverage for liability arising from the premises of Pontiac Flying Service (e.g., with certain limitations - slip and fall, premises liability, negligent maintenance of others' aircraft, and the like). Accordingly, like any other standard CGL coverage form, the CGL policy issued to Pontiac includes an <u>Aircraft/Auto/Watercraft exclusion</u>. Since there is absolutely no possibility that the CGL policy would afford coverage in connection with the

aircraft accident at issue as a matter of black-letter policy language and as a matter of law, the pending motions for leave to file counterclaims should be denied.

## II.   ARGUMENT

In addition to the aerial applicator policy at issue in this declaratory judgment action, National Union issued a Commercial General Liability Aviation Policy to Pontiac under Policy No. AP 3388953-05, effective May 19, 2002 to May 19, 2003.  This policy is not intended to, and does not, cover Pontiac for its operation of aircraft.  As this Court is aware, National Union issued two separate policies to cover Pontiac's operation of its general aviation/training aircraft and its agricultural (crop dusting) airplanes.  Pontiac and Webster now seek an 11th hour opportunity to allege that liability coverage may be afforded to Pontiac and/or the Petersens individually under the CGL policy.

It appears to be reasonably clear that the latest submission by Pontiac and Webster is timed[1] in conjunction with the pending motion for summary judgment on the aerial applicator aircraft policy as a tactic intended to prevent National Union from obtaining summary judgment, thereby forcing National Union to continue to litigate through dispositive motions until it is beaten into submission and agrees to pay on a compromised settlement on a risk for which no coverage was purchased.  This latest maneuver follows on the heels of two other, similar maneuvers.  The first was Pontiac's claim that National Union might be bound by the purported "scope of coverage" statements of the broker under an agency theory notwithstanding the obvious lack of coverage

---

[1] National Union was not asked to and did not provide a copy of the CGL policy to Pontiac.  Pontiac obviously had a copy of the policy from the onset.  As will be established below, there is nothing "new" in the amended underlying complaint which could support the movants' sudden inspiration to seek liability coverage under this policy.  The timing of their motion speaks for itself, as does the merit of their proposed counterclaims.

under the aerial applicator policy. That notion was dispelled through discovery (which uncovered no "scope of coverage" statements by the broker) and through Pontiac's admission, in its own pleadings, that Hardy is and always has been <u>Pontiac's</u> broker – not National Union's agent.

The second dilatory tactic was Pontiac's claim that it needed depositions and written discovery in order to respond to National Union's original motion for judgment on the pleadings. That fruitless venture has taken more than a year and has served only to strengthen National Union's case for summary judgment. In the meantime, despite the fact that no reasonable basis exists to support Pontiac's claim for coverage under its aerial applicator policy, National Union's efforts to obtain a judgment have been thwarted. It almost appears as though Pontiac is determined to force National Union to pay one way or another, despite the fact that National Union clearly owes no obligation under the policy. This Court has the authority to protect a litigant from the efforts of an opponent to protract litigation where the rights of the parties can be determined from the pleadings and evidence before the court. This case is indeed a classic example of one where the need for the exercise of such authority is plain to be seen.

The language of the aircraft exclusion set forth in the policy upon which Pontiac and Webster now seek to pursue declaratory relief by way of counterclaims could certainly stand alone as National Union's argument that Pontiac's and Webster's motions for leave to file compulsory counterclaims should be denied. The language is as follows:

2. Exclusions

This insurance does not apply to:

(g) **Bodily injury** or **property damage** arising out of the ownership, maintenance, use or entrustment to others of any **aircraft, auto** or watercraft owned or operated by or leased, rented, or loaned to <u>any</u> insured. **** (underline emphasis added)

Pontiac and Webster neglect to mention this suspiciously relevant exclusion in their respective motions. Like nearly every other CGL ever written, this one does not cover any loss arising out of the operation of an auto, aircraft or watercraft. Insurance coverage for such risks requires separate insurance policies written to cover the specific risks involved.

Pontiac and Webster appear to be attempting to confuse this Court by citing the reference to "aviation operations" in the policy. The policy, of course, is a general liability policy designed to apply to the particular business and premises liability insurance needs of those, like Pontiac, who are engaged in the aviation business (i.e., performing maintenance on others' airplanes, etc.). The policy clearly, by its terms, does not apply to aircraft accidents involving the insured's use of its own airplane – for which it has purchased separate coverage.

The fact that Scott and Sarah Petersen have been named as individual defendants in the new underlying complaint is nothing more than a ploy intended to attempt to trigger coverage under the CGL policy in a vain attempt to separate them from the business that they wholly own – Pontiac Flying Service. No doubt Pontiac intends to argue that the Petersens, individually, did not "own" or "operate" the aircraft. However, this is irrelevant. This Court will note that the exclusion, set forth above, applies to bodily injury resulting from the use of any aircraft owned or operated by **any** insured. It therefore would be of no consequence if the Petersens themselves

5

did not own and were not personally "operating" the airplane (even assuming that this argument has merit, which National Union contends it does not). The exclusion clearly applies. This is not shades of gray. It is black and white.

Although unnecessary – because the exclusion speaks for itself and the Court is doubtless familiar with the fact that CGL policies are written to exclude an insured's aircraft and auto liability - National Union nonetheless cites herein to relevant Illinois law upholding this most basic exclusion. *Coleman v. Charlesworth*, 240 Ill.App.3d 662, 608 N.E.2d 464 (1st Dist. 1992). In *Coleman*, the insured, Windy City, was a hot air balloon ride operator that offered commercial sightseeing flights for hire. The balloon was on such a flight, and was piloted by a hired pilot, when a crash resulted after the balloon came in contact with power lines. The balloon crash resulted in deaths and injuries, and a claim against Windy City for resulting damages followed. Urbine-Sides Insurance Agency provided airport premises and products liability coverages to Windy City. Coverage for the accident was denied based upon the following exclusion:

> THIS SECTION IS SUBJECT TO THE FOLLOWING EXCLUSIONS: * * *
>
> 2.   Bodily injury or property damage caused by * * *
>
>   b. Any Ships, Vessels, Craft, or Aircraft owned, chartered, used or operated by or on account of the assured (Windy City).

The court in *Coleman* held that "…this exclusion precludes coverage under the premises provisions of the policy here because the hot air balloon that caused plaintiffs' injuries was an aircraft being used and operated by Windy City through its agent Bickett, the pilot of the ill-fated balloon flight, acting within his authority to carry on the business of the enterprise." 240 Ill.App.3d at 666. The court also found that there was no coverage under the products portion of the policy, finding that hot air balloon rides are a service, not a product. Importantly, the court

recognized the basic distinction between an <u>airport</u> premises liability policy and an <u>aircraft</u> operations policy, noting:

> In sum, Windy City purchased aviation premises coverage to protect it against claims arising from bodily injury and property damage occurring at the location of its business operations, including customer slip and falls and other injuries arising directly from a customer's use of its premises. …Windy City, however, did not purchase aircraft operators' insurance or any other insurance that would provide coverage for liabilities arising from the use of an aircraft."

The *Coleman* case makes clear that an aircraft exclusion, contained in an airport premises/general liability policy, is expressly designed to <u>prevent</u> the policy from being turned into an aircraft <u>operations</u> liability policy. In the instant case, Pontiac in fact carried a specific policy, tied to the Air Tractor, to afford coverage for aerial application operations. The fact that Pontiac chose to use the aircraft for the purpose of operating a flight school in addition to aerial application does not provide any rationale for converting its airport premises general liability policy into an aircraft operators' policy.

It would serve no purpose to fill these pages with further examples of case law upholding auto and aircraft exclusions in general liability policies. Nor would it benefit the ends of justice, judicial economy, or basic fairness to permit Pontiac and Webster to file counterclaims that have no merit on the face of the claim alleged based on the language of the insurance policy attached to their own pleadings. While a litigant should be afforded the opportunity to have his or her day in court to establish a basis for a *bona fide* claim, such a claim must have some reasonable merit on its face. A litigant should not be permitted the opportunity to file a pleading which has no merit on its face, which is transparent in its purpose, and which is obviously designed to buy time and prolong litigation.

### III.  CONCLUSION

For the reasons set forth above, Plaintiff National Union Fire Insurance Company of Pittsburgh, PA respectfully requests that this Court deny the motions of Pontiac Flying Service and Justyn/Virginia Webster to file their respective "compulsory counterclaims." Pontiac has long awaited a ruling on its request for judgment as respects coverage under the policy that actually applies to the subject aircraft at issue here. It should not be subjected to further delay and expense briefing a dispositive motion on a pleading that clearly has no merit on its face.

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA.


By: ___/s/ Jeffrey B. Rock_____
       One of Its Attorneys


Jeffrey B. Rock                    Mark T. Banovetz
Hasselberg Rock Bell & Kuppler    Tressler, Soderstrom, Maloney & Priess
4600 North Brandywine Drive       Sears Tower, 22nd Floor
Suite 200                            233 South Wacker Drive
Peoria, Illinois 61614              Chicago, Illinois 60606-6308
(309) 688-9400                    (312) 627-4000

                                      Attorney for Plaintiff NATIONAL UNION