E-FILED
Tuesday, 24 May, 2005  03:30:09 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| NATIONAL UNION FIRE COMPANY OF PITTSBURGH, PA, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | No. 03-1288 |
| PONTIAC FLYING SERVICES, INC., | ) ) ) | |
| Defendants and Third Party Plaintiff, | ) ) ) | |
| vs. | ) ) ) | |
| HARDY AVIATION INSURANCE, INC., | ) ) | |
| Third Party Defendant. | ) | |

### REPLY TO NATIONAL UNION RESPONSE

### NATURE OF THE REPLY

On April 28, 2005 PONTIAC FLYING sought leave to file a counterclaim against the plaintiff, NATIONAL UNION FIRE COMPANY OF PITTSBURGH, PA. The proposed counterclaim was attached to the motion as an exhibit. That pleading seeks declarations that NATIONAL UNION owes PONTIAC FLYING SERVICE, and its employees, SCOTT PETERSEN and SARAH PETERSEN, a defense and indemnification against the Wrongful Death and Survival Act claims of Justin Webster, as Special Administrator of the Estate of Neil Webster, under NATIONAL UNION's commercial general liability coverage aviation policy (CGL policy). Specifically, the counterclaim attaches as exhibits copies of the CGL policy and the original Complaint at Law and Second Amended Complaint at Law and contains the following prayer for relief:

WHEREFORE, Defendant and Counterplaintiff, PONTIAC FLYING SERVICES, INC., prays for the following relief from Plaintiff and Counterdefendant under NATIONAL UNION's Commercial General Liability Coverage Aviation Policy.

    A.    An adjudication that the following claims which appear in the original complaint against PONTIAC FLYING SERVICE filed on April 22, 2004 are potentially within coverage under the CGL policy:

        b.    Failed to properly and adequately instruct NEIL WEBSTER on the flight of the Air Tractor Aircraft;

        c.    Failed to properly communicate with NEIL WEBSTER during flight training;

    B.    An adjudication that NATIONAL UNION had knowledge of those claims since June 21, 2004.

    C.    An adjudication that NATIONAL UNION has not provided a defense under its CGL policy in the Livingston County case;

    D.    An adjudication that by failing to provide PONTIAC FLYING SERVICE with a defense in the Livingston County case, NATIONAL UNION is estopped to deny coverage to PONTIAC FLYING SERVICE and its employees, SCOTT PETERSEN and SARAH PETERSEN, under the CGL policy in the Livingston County case, and

    E.    For such other and additional relief as may be appropriate.

NATIONAL UNION responded by objecting to the motion. In large part its objections are vituperative maunderings regarding the merits of its complaint and pending motion for summary judgment *vis a vis* the defenses raised by the "insured" Defendants. Suffice it to say that PONTIAC FLYING SERVICE and its employees take issue with those contentions. However, both the Motion for Summary Judgment and their Response are on file. Those submissions speak for themselves.

This court has requested a REPLY on the single issue of whether application of the following exclusion to the allegations of the plaintiff's complaints is so "black and white" as to obviate the filing of the counterclaim. The exclusion provides:

2. Exclusions

This insurance does not apply to:

(g) **Bodily injury** or **property damage** arising out of the ownership, maintenance, use or entrustment to others of an **aircraft, auto** or watercraft owned or operated by or leased, rented, or loaned to any insured.

As the following ARGUMENT establishes, the claims which "triggered" coverage under the policy are expressly contemplated and covered under the insuring agreement. They relate to the flight training and instruction which were *provided to the plaintiff's decedent, NEIL WEBSTER*. Under the concurrent cause doctrine the insurer can avoid its obligation to defend those claims pursuant to the exclusion *only* by showing that the sole proximate cause of Webster's death fell within the exclusion. As otherwise expressed, where the aircraft, auto or watercraft exclusion is involved, if the complaint shows concurrent causes for the damages which are sought, the carrier must defend unless all concurrent causes are controlled by the exclusion.

## ARGUMENT

### A.

### THE POLICY SPECIFICALLY PROVIDES COVERAGE FOR FLIGHT INSTRUCTION AND TRAINING

The insuring agreement of the CGL policy provides *inter alia*:

SECTION I – COVERAGES

COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement.

(a) We will pay those sums that the insured becomes legally obligated to pay as damages because of **bodily injury** or **property damage** to which this insurance applies resulting

3

from your **Aviation operations**. We will have the right and duty to defend any suit seeking those damages. We may at our discretion investigate any **occurrence** and settle any claim or **suit** that may result.

Aviation operations are defined in the policy as:

> 5.   **Aviation operations** means all operations arising from the ownership, maintenance or use of locations for aviation activities including that portion of roads or other accesses that adjoin these locations. **Aviation operations** include all operations necessary or incidental to aviation activities.

Flight instruction and training are clearly "aviation activities" which involve the ownership and use of the covered location. As there is no exclusion for those activities they are implicitly within the insuring agreement. They are also explicitly covered as evidenced by the following express exception to the **Special Airport Provisions Exclusion Clause**:

> 4.   **Special Airport Provisions Exclusion Clause**
>
> This insurance does not apply:
>
> (a)   To the conduct of any contest, exhibition, air meet, air show; permitted, sponsored or participated in, by any insured; or
>
> (b)   To the ownership, maintenance, use or operation, by any insured of:
>
> > (1)   Grandstands, bleachers or observation platforms other than observation decks or promenades which are part of permanent structures on the premises;
> >
> > (2)   Swimming pools;
> >
> > (3)   Lodging accommodations for the general public; or
> >
> > (4)   *Schools other than pilot training schools.* (Italics provided for emphasis).

The preceding language and analysis demonstrates that NATIONAL UNION sold and PONTIAC FLYING SERVICE purchased a policy which protects the insured against liability

for bodily injury which is caused by the negligent instruction or training of pilots such as the plaintiff's decedent, Neil Webster.

B.

**THE UNDERLYING COMPLAINT SEEKS DAMAGES FOR THE NEGLIGENT INSTRUCTION AND TRAINING OF PLAINTIFF'S DECEDENT, NEIL WEBSTER**

The Complaint at Law in the Webster case which triggered coverage for PONTIAC FLYING SERVICE was filed on April 22, 2004. That pleading is attached to the counterclaim as Exhibit B. As to PONTIAC FLYING SERVICE it contains the following allegations *inter alia*:

> 6. On May 5, 2003, the Air Tractor departed from Pontiac Municipal Airport with Richard P. Lucente, Jr., acting as pilot in command and Plaintiff's decedent, NEIL WEBSTER, as the student pilot passenger.
>
> 7. On May 5, 2003, the Air Tractor impacted the ground at some point after its departure from Pontiac Municipal Airport resulting in the death of NEIL WEBSTER.
>
> 8. At all times relevant hereto, Defendant(s), PONTIAC FLYING SERVICE, INC. . . . owed a duty to exercise due care in providing flight instruction services . . .
>
> 9. On May 5, 2003, Defendant, PONTIAC FLYING SERVICE, INC. . . . was negligent in one or more of the following ways: . .
>
>> b. Failed to properly and adequately instruct NEIL WEBSTER on the flight of the Air Tractor Aircraft;
>>
>> c. Failed to properly communicate with NEIL WEBSTER during flight training . .
>
> 10. As a direct and proximate result of one or more of the aforementioned acts of negligence, Plaintiff's decedent, NEIL WEBSTER, sustained injuries . . .

The complaint does not allege who was piloting the plane at the time it went down. Nor are there any allegations that NEIL WEBSTER was negligent. Instead, the pleading avers that the cause in fact of the accident and the proximate cause of the injuries and damages which are claimed by the WEBSTER estate was PONTIAC FLYING SERVICE's failure to properly and

5

adequately train and instruct NEIL WEBSTER so that he could fly the Air Tractor Aircraft. In other words, "but for" the alleged negligence of PONTIAC FLYING SERVICE in its instruction and training *of the plaintiff's decedent, NEIL WEBSTER*, the plane would not have crashed with its attendant consequences.

C.

**THE CONCURRENT CAUSE RULE**

Where automobile, aircraft or watercraft exclusions are found in CGL policies Illinois is a concurrent cause state. *United States Fidelity & Guaranty Co. v. State Farm Mutual Automobile Insurance Co.*, 152 Ill.App.3d 46, 48-49 (1987). Under that rule the court will consider the separate negligent acts and omissions which are alleged in the complaint in the context of the role which *each* played in bringing about or causing the injuries and damages for which recovery is sought. It will then compare each separately to the exclusion. If coverage is found for *any* of the negligent acts and omissions which are charged the insurer has a duty to defend. Alternatively, the rule is referred to as the "sole proximate cause doctrine" in the sense that the carrier must show that the sole proximate cause of the loss was an excluded risk.

In *USF&G v. State Farm*, *supra*, the insured was the owner and operator of Happyland, a day care center. One of its employees was using a Happyland station wagon to transport children from the facility to a dance class when a passenger door opened and the plaintiff fell out, sustaining the injuries for which suit was brought on her behalf. The complaint alleged alternatively that the plaintiff's injuries were proximately caused by the defendant's: (1) failure to operate and maintain the station wagon properly and (2) failure to provide sufficient and

adequate supervision of the children. USF&G asserted the following exclusion which is virtually identical to that in the instant case:[1]

> This insurance does not apply
> * * *
>
> (b) to bodily injury arising out of the ownership, maintenance, operation [or] use of
> (1) any automobile * * * owned or operated by * * * any insured, or
> (2) any other automobile * * * operated by any person in the course of his employment by an insured.

Applying the concurrent coverage rule the court found that claims of negligent operation and maintenance of the vehicle were precluded by the exclusion. However, there was coverage for the alternative theory that the proximate cause of the plaintiff's injuries was the defendant's "failure to provide sufficient and adequate supervision of the children." As the following discussion demonstrates, each causative alternative is to be considered separately, and the fact that one is excluded does not bar coverage for the other. In fact, the burden is upon the insurer to show that the sole proximate cause of the plaintiff's damages was an excluded risk:

> USF&G's argument overlooks the fact that there may be more than one proximate cause of an injury. A proximate cause of an injury is any cause which, in natural or probable sequence, produced the injury complained of. It need not be the only cause, nor the last or nearest cause. It is sufficient if it concurs with some other cause acting at the same time, which in combination with it, causes the injury. See Illinois Pattern Jury Instruction (IPI) Civil, No. 15.01 (2d ed. 1971). If a proximate cause of an injury is within the included coverage of an insurance policy, the included coverage is not voided merely because an additional proximate cause of the injury is a cause which is excluded under the policy. Thus, in order for an injury to be excluded from coverage under an insurance policy, the injury must have been caused solely by a proximate cause which is excluded under the policy. The insurance carrier has the burden of proof as to whether the injury was caused solely by a proximate cause which is excluded under the policy.

---

[1] With the exception that it applies to automobiles, as opposed to aircraft.

NATIONAL UNION's reliance upon *Coleman v. Charlesworth*, 240 Ill.App.3d 662 (1992) *affirmed* 157 Ill.2d 257 (1993) is misplaced. *Coleman* did not involve the concurrent cause rule. To the contrary, the analysis did not involve a complaint which contained alternative allegations, some of which were covered and not controlled by the aircraft exclusion. Instead, the opinion, as it related to the exclusion, focused solely upon the negligence of the insured in flying a hot air balloon into power lines.[2]

Illinois' adherence to the concurrent cause rule has also found expression in *Louis Marsch, Inc .v. Pekin Insurance Co.,* 140 Ill. App. 3d 1079, 1085-1087 (1985). There the plaintiff, a minor, was struck by a dump truck at a road construction site where Marsch was working. Through his father and next friend the minor brought suit against Marsch and its employee who was driving the truck. The Complaint alternatively alleged negligence in the operation of the truck, negligent hiring of the driver and violation of the Road Construction Injuries Act. Coverage for the occurrence was declined by Marsch's CGL carrier, Aetna Life and Casualty Insurance Company, based upon the standard auto exclusion for "bodily injury…arising out of the ownership, maintenance, operation, use, loading or unloading of (1) any automobile…owned or operated by or rented or loaned to any insured, or (2) any other automobile…operated by any person in the course of his employment by any insured."

Marsch brought a declaratory judgment action in which it sought declarations that coverage existed under the Aetna CGL policy. The court rejected the claim that the exclusion did not apply to the "negligent - hiring theory of recovery". On that issue it found that liability for negligent hiring was inextricably tied to the improperly hired employee's negligence in the operation of the defendant's vehicle. However, it held that coverage did exist for the plaintiff's

---

[2] Other claims involved interpretation of "the cover note of the insurance policy and application of the

8

claims under the Road Construction Injuries Act, even though the injuries in question arose out of the operation and use of Marsch's dump truck.

As was the case in *USF&G v. State Farm, supra*, the *Marsch* court found that the insured's violation of the Road Construction Injuries Act could potentially be viewed as a concurrent cause of the plaintiff's injuries which was independent of the negligence of the insured's truck driver. In that regard the opinion states:

> "We next consider Aetna's duty under the Road Construction Injuries Act (count V). The operative portion of that count alleges that Marsch failed to employ the proper number and placement of flagmen while the roadwork was taking place, and failed to mark a closed portion of the road with suitable warning signs or barricades. There are a number of ways in which the minor Chizmar could have been injured as a result of improper deployment of flagmen and warning devices, only one of which was being struck by a motor vehicle. For example, Chizmar could have struck a worker, an excavation, or piled materials. Thus if a trier of fact concluded that Marsh had failed in its duty to Chizmar under the Road Construction Injuries Act, the fact that the dump truck was the instrumentality which ultimately injured Chizmar would be but one of two concurrent causes of the injury, one excluded under the Aetna policy, the other not so excluded. If the liability of an insured arises from negligent acts which constitute non-auto-related conduct, the policy should be applicable regardless of the automobile exclusion or the fact that an automobile was involved in the occurrence. (*United States Fidelity & Guaranty Co. v. State Farm Mutual Automobile Insurance Co.* (1982), 107 Ill. App. 3d 190, 437 N.E.2d 663.) We conclude that Aetna is potentially liable under the Road Construction Injuries Act (count V) and is under a duty to defend Marsch upon it.

The *Marsch* court tested the allegations of negligence under the Road Construction Injuries Act in the context of coverage, apart from the known reality that the plaintiff's injuries were caused by the dump truck. Under the statute it was possible for the contractor to be liable without regard to allegations that the plaintiff was "…struck by a motor vehicle". *Sub judice* coverage was provided under the NATIONAL UNION policy for the operation of a pilot training school. As was the case in *Louis Marsch v. Pekin Insurance Co.* that coverage involved

---

products liability provisions of the policy."

9

a concurrent cause and was not vitiated by the fact that an owned aircraft was involved in the occurrence. As otherwise expressed, the negligent act which was a concurrent cause of Webster's death, and for which coverage exists under the policy, is the insured's failure to properly instruct and train Webster in the operation of the type of aircraft in question. Paraphrasing *Marsch*, that coverage is applicable regardless of the aircraft exclusion or the fact that the airplane in question was owned by PONTIAC FLYING.

As discussed *supra*, the underlying Complaint does not allege who was flying the plane at the time it went down. Nor does the pleading set forth the reasons why it crashed, other than the general allegations of negligence which appear in paragraph 9. From those allegations it may be reasonably inferred that at the time of the loss the aircraft was piloted by Webster *and* that the accident occurred because PONTIAC FLYING SERVICE had failed to adequately instruct and train him to do so. *Under those circumstances* there is no other negligence and there are no alternative or concurrent causes for the damages which are sought. *Under those circumstances* the sole cause in fact of the occurrence and the sole proximate cause of Webster's death is the covered negligence of the insured. Suffice it to say, NATIONAL UNION will be unable to meet its burden of proving that Webster's death was "…caused solely by a proximate cause excluded under its insurance policy." *USF&G v. State Farm,* 152 Ill. App. 3d 46, 49 (1987).

### D.

### THE DUTY TO DEFEND ARISES WHERE THERE IS ANY POTENTIAL FOR COVERAGE.

The underlying Complaint at Law which first contained allegations of negligent training and instruction was filed against PONTIAC FLYING SERVICE on April 22, 2004. NATIONAL UNION was aware of that pleading shortly thereafter as it refused coverage under its Aerial Applicator Aircraft Policy. The CGL policy in question was issued on or about May

19, 2002.[3] Consequently, NATIONAL UNION was aware of the coverage afforded by the CGL policy as well as the nature of the claims which were asserted against its insured more than a year before PONTIAC FLYING sought leave to file its counterclaim. Under these circumstances a number of fundamental coverage principles apply.

Every liability policy imposes two contractual obligations upon the insurer: (1) the duty to defend and (2) the duty to indemnify. The former is broader than the latter. *Conway v. Country Casualty Insurance Co.,* 92 Ill. 2d 388, 394 (1982) and *Zurich Insurance Co. v. Raymart Industries,* 118 Ill. 2d 23, 52 (1987). The determination of whether there is a duty to defend is based solely upon a comparison of the allegations of the complaint to the language of the insurance contract. *Thornton v. Paul,* 74 Ill. 2d 132, 144 (1978).

The duty to defend arises where there is any *potential* for coverage. In other words, if the complaint alleges facts which are *potentially* within policy coverage, the insurer is obligated to defend even if it knows that the allegations are groundless, false or even fraudulent. *Maryland Casualty Co. v. Peppers,* 64 Ill. 2d 187 (1976). The threshold that the complaint must satisfy to present a claim for potential coverage is low. *LaRotunda v. Royal Globe Insurance Co.,* 87 Ill. App. 3d 446 (1980). In that regard the Supreme Court has emphasized that the insurer must defend a complaint against its insured unless it is clear that there is *no* potential for coverage. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.,* 154 Ill. 2d 90 (1992) wherein it is stated at 107-108:

> …to determine whether the insurer has a duty to defend the insured, the court must look to the allegations in the underlying complaint and compare these allegations to the relevant provisions of the insurance policy. (See, *e.g., United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.* (1991), 144 Ill. 2d 64, 73; *Conway v. Country Casualty Insurance Co.,* (1982), 92 Ill. 2d 388, 393.) If the facts alleged in the

---

[3] These facts are derived from the allegations of the counterclaim.

>underlying complaint fall within, or potentially within, the policy's coverage, the insurer's duty to defend arises. (See, *e.g., Wilkin,* 144 Ill. 2d at 73; *Weiss v. Bituminous Casualty Corp.,* (1974), 59 Ill. 2d 165, 169.) Refusal to defend is unjustifiable unless it is clear from the facts of the underlying complaint that the facts alleged do not fall potentially within the policy's coverage. See, *e.g., Wilkin,* 144 Ill. 2d at 73; *Conway*, 92 Ill. 2d at 393.

In making the comparison between the pleading and the insurance policy the court must construe the complaint liberally in favor of coverage. *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.,* 144 Ill. 2d 64, 74 (1991); *Village of Hoffman Estates v. Cincinnati Insurance Co.,* 283 Ill. App. 3d 1011, 1014 (1996). All doubts and ambiguities must be resolved in favor of coverage. *Northbrook Property & Casualty Insurance Co. v. United States Fidelity & Guaranty Co.,* 150 Ill. App. 3d 479 (1986), *Trovillion v. United States Fidelity & Guaranty Co.,* 130 Ill. App. 3d 694, 700 (1985) and *USF&G v. Wilkin Insurance Co., supra* at 74. NATIONAL UNION is well aware of each of these basic coverage principles. *National Union Fire Insurance Co. of Pittsburgh v. Thomas Madden & Co.,* 813 F. Supp. 1349, 1351-52 (N.D. Ill. 1993).

Where the complaint against the insured includes both potentially covered and non-covered claims, the insurer must defend the entire complaint. *Conway v. Country Casualty Insurance Co.,* 92 Ill. 2d 388 (1982) and *Maryland Casualty Co. v. Peppers,* 64 Ill. 2d 187 (1976). Consequently, in making its comparison between the allegations of the complaint and the provisions of its policy the insurer is obligated to consider each allegation or claim separately to see whether or not it is potentially within coverage. As otherwise expressed, each of the preceding rules and obligations applies to each averment which is made against the insured.

Shortly after the underlying Complaint was filed on April 22, 2004, NATIONAL UNION had the obligation to consider the claims against PONTIAC FLYING SERVICE in conjunction

with the provisions of its CGL policy. That duty arises when the carrier knows of the claim against its insured. No formal tender is required. *Cincinnati Companies v. West American Insurance Co.,* 183 Ill. 2d 317, 326-29 (1998). As applied to the instant case, this means that NATIONAL UNION had the duty at the time to review and evaluate the claims in the underlying Complaint in the context of its CGL policy. Those claims included the allegations that the death of Neil Webster was proximately caused by the negligent failure of PONTIAC FLYING SERVICE to properly and adequately train and instruct Webster in the operation of the plane. As the preceding point of this Reply demonstrates, that analysis could not rule out the potential for coverage under the CGL contract. To the contrary, there was clearly coverage under the insuring agreement of the policy which could not be overcome by the aircraft exclusion.

Where, as here, any insurer elects to challenge whether there is a potential for coverage under its policy *vis a vis* the allegations of a complaint it can file a declaratory judgment action *or* provide a defense under a "reservation of rights". *State Farm Fire & Casualty Company v. Martin,* 186 Ill. 2d 367 (1999). By doing either the carrier satisfies its first obligation to protect its insured. In seeking a declaration that coverage does not exist the insurance company places the insured on notice of its position and permits him to contest the decision to deny coverage. By defending under a reservation of rights the insured is protected against a default and exposure to the costs and expenses of defending the underlying case.

Where coverage cannot be absolutely ruled out and the carrier fails to defend an equitable estoppel arises. By breaching its duty to defend the carrier is estopped from raising policy defenses to coverage, even those defenses that might have been successful had the insurer asserted them in a declaratory judgment action or after having defended under a reservation of

13

rights. *Clemmons v. Travelers Insurance Co.,* 88 Ill. 2d 469 (1981) and *Employers Insurance of Wausau v. Ehlco Liquidating Trust,* 186 Ill. 2d 127 (1999).

*Sub judice* NATIONAL UNION had actual knowledge of (1) the allegations of the Webster Complaint and (2) coverage under its CGL policy for the flight instruction and training by its insured, PONTIAC FLYING SERVICE. It also knew or should have known of the concurrent cause doctrine as it applied to the aircraft exclusion. At a minimum NATIONAL UNION was aware of the potential that a concurrent and covered cause of Webster's death was the negligence of its insured which prevented Webster from safely flying the plane. Given that knowledge NATIONAL UNION had the opportunity to amend its declaratory judgment complaint to include the CGL policy or, alternatively, to defend PONTIAC FLYING SERVICE and its employees under a reservation of rights. It elected to do neither and is therefore estopped to deny coverage for the Webster claims. Coverage under the CGL policy and the effects of the insurer's refusal to defend under that policy are the subject of the proposed counterclaim. It is respectfully submitted that PONTIAC FLYING SERVICE should be given leave to file that pleading.

                        CASSIDY & MUELLER

                        By: s/ DAVID B. MUELLER
                            Attorneys for Defendant,
                            PONTIAC FLYING SERVICE, INC.

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 24, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Mr. Jeffrey B. Rock | jrock@hrbklaw.com, cpoehlman@hrbklaw.com |
| Ms. Diane M. Baron | dbaron@clausen.com, pkebr@clausen.com |
| Mr. Michael S. Krzak | msk@cliffordlaw.com, jmg@cliffordlaw.com |
| Mr. Kevin P. Durkin | kpd@cliffordlaw.com; jg@cliffordlaw.com |
| Mr. Mark T. Banovetz | mbanovetz@tsmp.com |

And I hereby certify that I have mailed by United States Postal Service the document to the foregoing non CM/ECF participants:

s/DAVID B. MUELLER
David B. Mueller - #01980661
CASSIDY & MUELLER
416 Main Street, Suite 323
Peoria, IL  61602
Telephone: 309/676-0591
Fax: 309/676-8036
E-mail: dmueller@cassidymueller.com