**E-FILED**
Friday, 17 June, 2005  09:51:27 AM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, | ) ) ) |
| Plaintiff, | ) ) Case No. 03-CV-01288 |
| v. | ) ) Chief Judge Joe Billy McDade ) |
| PONTIAC FLYING SERVICE, INC., JUSTYN WEBSTER, As Special Administrator of the Estate of NEIL WEBSTER, Deceased, and CAREN S. LUCENTE, as Independent Executor of the Estate of RICHARD P. LUCENTE, Deceased, | ) Magistrate Judge Byron G. Cudmore ) ) ) ) ) ) |
| Defendants. | ) ) |
| And | ) ) |
| PONTIAC FLYING SERVICE, INC., | ) ) |
| Third Party Plaintiff, | ) ) |
| v. | ) ) |
| HARDY AVIATION INSURANCE, INC., | ) ) |
| Third Party Defendant. | ) |

**NATIONAL UNION'S MEMORANDUM IN SUPPORT OF ITS
MOTION FOR JUDGMENT ON THE PLEADINGS
ON COUNTERCLAIMS OF PONTIAC AND THE WEBSTER DEFENDANTS**

**I.      INTRODUCTION**

National Union filed a motion for summary judgment against all defendants on the basis that Pontiac's use of the insured Air Tractor aircraft to operate a nationally-advertised turbine transition flight training program is not within even the most imaginative interpretation of "aerial application" – the only approved use of the aircraft under the aerial applicator policy issued to

Pontiac to cover the Air Tractor and two other agricultural airplanes. National Union's Motion for Summary Judgment is fully briefed.

Likely recognizing the lack of applicable insurance coverage for this loss, Pontiac and the Webster defendants have now filed belated counterclaims in which they allege that National Union is obligated to defend Pontiac under an airport premises/general liability policy from claims asserted against it by the Webster defendants in connection with the crash of Pontiac's Air Tractor. The general liability policy includes an "aircraft exclusion" which unambiguously applies to this loss. Since there is no dispute in the pleadings as to the material facts, and the application of the "aircraft exclusion" is evident as a matter of common sense and clearly defined Illinois law, National Union moves herein for judgment on the pleadings.

## II.     UNDISPUTED FACTS

The pleadings are filed and National Union's Answer to the Counterclaims asserted by Pontiac and the Webster defendants establishes that the material issues of fact in this matter are not in dispute. All parties agree, pursuant to the pleadings, that the following allegations are true and correct:

1.     National Union issued a general liability insurance policy to Defendant, bearing policy number AP 3388953-05 (herein "the GL Policy") (Ans. ¶ 6, 17.)    The GL Policy provides, subject to certain exclusions, coverage for "bodily injury" resulting from Pontiac's "Aviation operations."

2.     The term "Aviation operations" is defined as "all operations arising from the ownership, maintenance or use of locations for aviation activities included that portions of roads or others accesses that adjoins these locations.  'Aviation operations' include all operations necessary or incidental to aviation activities."

3.    The GL Policy further contains the following exclusion: "This insurance does not apply to . . . (g) 'Bodily injury' or 'property damage' arising out of the ownership, maintenance, use or entrustment to others of any aircraft, auto or watercraft owned or operated by or leased, rented, or loaned to any insured.  'Use" includes operation and loading or unloading and with respect to aircraft, 'operated by' also includes operation on behalf of an insured."

4.    Neil Webster was attending a flight school run by Pontiac and was being trained by Richard Lucente, an independent contractor pilot retained by Pontiac to do the training. Webster was being instructed on how to fly a turbine-powered agricultural ("crop dusting") airplane.  Pontiac's turbine Air Tractor was being used for the training.  During a training flight in Pontiac's Air Tractor, the Air Tractor crashed, killing Neil Webster and his instructor, Richard Lucente.

5.    The Air Tractor was covered by a separate policy of insurance issued by National Union which is the subject of the pending motion for summary judgment in this case.

### III.    ARGUMENT

### A.    STANDARD FOR JUDGMENT ON THE PLEADINGS

Rule 12(c) of the Federal Rules of Civil Procedure permits a party to move for judgment after the parties have filed the complaint and answer based on the pleadings alone. See Fed. R. Civ. P. 12(c); *Northern Indiana Gun & Outdoor Shows v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998).   The pleadings include the complaint, the answer, and any written instruments attached as exhibits. See Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is part thereof for all purposes."); *Northern Indiana*, 163 F.3d at 452. Courts may grant a Rule 12(c) motion if "it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *Id.; Am. Fire & Cas. Co., v. Broeren Russo Constr.,* 54 F.Supp.2d 842, 845 (C.D. Ill. 1999). Thus, the moving party must demonstrate that there are no material issues of fact to be resolved, and the Court must view the facts presented in the pleadings and any inferences to be drawn therefrom in the light most favorable to the nonmoving party.  Id.

### B.    STANDARD FOR CONSTRUCTION OF AN INSURANCE POLICY

In diversity cases, courts generally look to state law regarding the interpretation of insurance policies. *See McFarland v. General Am. Life Ins. Co.*, 149 F.3d 583, 586 (7th Cir. 1998).   Illinois courts have specifically held that an insurance policy is governed by the law of the state where the policy was issued or delivered or by the law of the place of the last act to give rise to a valid contract. *United States Fire Ins. Co. v. CNA Ins. Cos.*, 213 Ill. App.3d 568, 575, 572 N.E.2d 1124 (1st Dist. 1991); *Jadczak v. Modern Serv. Ins. Co.,* 151 Ill. App.3d 589, 593, 503 N.E.2d 794 (1st Dist. 1987).  The Defendant-policyholder in this case is located in Illinois

and the underlying accident occurred in Illinois. (Ans., Exh. A., ¶ 2, 6.)  Accordingly, the Court should apply Illinois law to the substantive issues in this case.

The construction of an insurance policy is a question of law. *Am. States Ins. Co. v. Koloms*, 177 Ill.2d 473, 227 Ill.Dec. 149, 687 N.E.2d 72, 75 (1997).  A court's primary objective in construing the language of the policy is to ascertain and give effect to the intentions of the parties as express in their agreement.  *Crum & Forster Managers Corp. v. Resolution Trust Corp.,* 156 Ill.2d 384, 391, 620 N.E.2d 1073, 1078 (1993).  When the language of an insurance policy is clear and unambiguous, it must be accorded its plain and ordinary meaning.  *Outboard Marine,* 154 Ill.2d 90, 670 N.E.2d 1204, 1212 (1992).

**C.**    **THE WEBSTER COMPLAINT SEEKS DAMAGES FOR BODILY INJURY "ARISING OUT OF THE...USE...OF [AN] AIRCRAFT OWNED OR OPERATED BY...OR ON BEHALF OF...ANY INSURED" AND THEREFORE THE NATIONAL UNION GL POLICY DOES NOT APPLY AS A MATTER OF LAW**

Under Illinois law, an insurer may justifiably refuse to defend its insured if the allegations of the underlying complaint, read as a whole, fall entirely within an exclusion to coverage.  *Altaf v. Hanover Square Condo. Assoc.*, 188 Ill. App.3d 553, 541 (Ill. App. Ct. 1989). The paramount objective in construing a policy of insurance is to give effect to the intent of the parties as expressed by the terms of the agreement.  *Oakley Transp. v. Zurich Ins. Co.*, 271 Ill. App.3d 716, 726 (Ill. App. Ct. 1995), *citing International Minerals & Chem. Co. v. Liberty Mut. Ins. Co.*, 168 Ill. App.3d 361 (Ill. App. Ct. 1988).

Pontiac purchased from National Union an aerial application policy that provides coverage under specified circumstances for claims arising out of the use of aircraft for "aerial application" as defined in that policy.  It also purchased a general liability (GL) policy that contains a conspicuous exclusion for injuries arising out of the operation of aircraft.  The policy

5

is a typical business general liability policy tailored to address certain risks in connection with the operation of an aviation-related business. Obviously, the aircraft exclusion is intended to preclude the GL policy from being interpreted as an aircraft liability policy. Just like any other business, an aviation-related business must purchase automobile coverage for its automobiles and aircraft insurance for the operation of its aircraft. The general liability policy does not provide coverage for Pontiac's operation of an aircraft just as it does not provide coverage for Pontiac's operation of an automobile. Despite the aircraft exclusion, Pontiac and the Webster defendants now belatedly allege, by way of their counterclaims, that National Union owes a defense to Pontiac under the GL policy.

In its motion opposing the counterclaims, Pontiac cited *Coleman v. Charlesworth*, 240 Ill.App.3d 662, 608 N.E.2d 464 (1st Dist. 1992) for the basic proposition that a general liability policy is <u>not</u> an aircraft policy anymore than a homeowners policy is an automobile policy. In *Coleman*, the insured, Windy City, was a hot air balloon ride operator that offered commercial sightseeing flights for hire. The balloon was on such a flight, and was piloted by a hired pilot, when a crash resulted after the balloon came in contact with power lines. The balloon crash resulted in deaths and injuries, and a claim against Windy City for resulting damages followed. Urbine-Sides Insurance Agency provided airport premises and products liability coverages to Windy City. Coverage for the accident was denied based upon the following exclusion:

> THIS SECTION IS SUBJECT TO THE FOLLOWING EXCLUSIONS: * * *
>
> 2.    Bodily injury or property damage caused by * * *
>
>> b.  Any Ships, Vessels, Craft, or Aircraft owned, chartered, used or operated by or on account of the assured (Windy City).

The court in *Coleman* held that "…this exclusion precludes coverage under the premises provisions of the policy here because the hot air balloon that caused plaintiffs' injuries was an

aircraft being used and operated by Windy City through its agent Bickett, the pilot of the ill-fated balloon flight, acting within his authority to carry on the business of the enterprise." 240 Ill.App.3d at 666.   The court also found that there was no coverage under the products portion of the policy, finding that hot air balloon rides are a service, not a product.   Importantly, the court recognized the basic distinction between an <u>airport</u> premises liability policy and an <u>aircraft</u> operations policy, noting:

> In sum, Windy City purchased aviation premises coverage to protect it against claims arising from bodily injury and property damage occurring at the location of its business operations, including customer slip and falls and other injuries arising directly from a customer's use of its premises.   …Windy City, however, did not purchase aircraft operators' insurance or any other insurance that would provide coverage for liabilities arising from the use of an aircraft."

The *Coleman* case makes clear that an aircraft exclusion, contained in an airport premises/general liability policy, is expressly designed to <u>prevent</u> the policy from being turned into an aircraft <u>operations</u> liability policy.   In the instant case, Pontiac in fact carried a specific policy, tied to the Air Tractor, to afford coverage for aerial application operations.   The fact that Pontiac chose to use the aircraft for the purpose of operating a flight school in addition to aerial application does not provide any rationale for converting its airport premises general liability policy into an aircraft operators' policy.

In response, Pontiac and Webster allege that coverage may nonetheless be provided under the general liability policy for "concurrent negligence" based on allegations in Webster's complaint alleging that Pontiac:

> b.     Failed to properly and adequately instruct Neil Webster on the flight of the Air Tractor Aircraft
>
> c.     Failed to properly communicate with Neil Webster during flight training.

Based on the arguments contained in Pontiac's Reply to National Union's Response to its Motion for Leave to File Counterclaims, it appears that Pontiac and Webster argue that these allegations are independent from the use of an aircraft, and therefore the "sole proximate cause" of the loss was not an excluded event or instrumentality.   This argument misapplies Illinois insurance law and misapprehends Illinois precedent on this subject.

The policy expressly does not apply to bodily injury arising out of the "ownership, maintenance, use or entrustment to others of any aircraft, auto or watercraft owned or operated by . . . any insured."   This exclusion is unambiguous and enforceable under Illinois law. *Northbrook Prop. & Cas. Co. v. Transportation Joint Agr*., 194 Ill.2d 96 (Ill. 2000).   Neil Webster was killed in Pontiac's airplane, while attending a flight school operated by Pontiac. The exclusion could not more clearly apply given these facts.

Illinois courts have recognized that accidents involving boats, airplanes and cars involve risks that are typically beyond the scope of general liability policies, and are typically the subject of special insurance policies tailored for that type of risk. *Oakley Transp. v. Zurich Ins. Co*., 271 Ill. App.3d 716, 726 (Ill. App. Ct. 1995); *Coleman v. Charlesworth*, 240 Ill. App.3d 662, 667 (Ill. App. Ct. 1992). Aircraft/Auto/Watercraft exclusions are intended to remove the risk of accidents involving these devices from general liability policies, and should be interpreted to facilitate this intent.   *Oakley*, at 726.   Here, Pontiac insured against the risk of an accident involving its airplane through an aerial application policy, the interpretation of which is the primary subject of this Declaratory Judgment action.   Based on industry custom, common sense, and the plain language of the GL policy, neither party could have reasonably believed that, by providing general liability coverage to Pontiac, National Union was obligating itself to defend claims arising out of an airplane crash involving the very aircraft that was specifically insured under the

aerial application aircraft policy. Only now, after Pontiac has sustained a loss while using the aircraft for a purpose other than that for which insurance was procured, has Pontiac come to assert coverage under its GL policy for injuries that are unambiguously excluded.

The Webster defendants' claims of negligent training and communication with Neil Webster fall squarely within the aircraft exclusion in the GL policy, as they are not separate or distinct from the use of the aircraft. Under Illinois law, if injury results from the use of an excluded instrumentality, no coverage is owed for claims for negligent supervision or entrustment of that instrumentality. This is because an injury resulting from the use of that instrumentality is a necessary element of the cause of action. *See Transamerica Ins. Co. v. South*, 975 F.2d 321 (7th Cir. 1992), *State Farm Fire. & Cas. Co. v. Mann*, 172 Ill. App.3d 86, 92 (Ill. App. Ct. 1992), *Oakley Transp. v. Zurich Ins. Co*., 271 Ill. App.3d 716, 726 (Ill. App. Ct. 1995). The Webster defendants' claims of negligent flight training require the negligent use or maintenance of an aircraft by Pontiac. This is because the danger of negligent flight training <u>is</u> the crash of the airplane; absent the use of an aircraft and subsequent damages from an accident, this "claim" does not exist. *See West American Ins. Co. v. Tovar*, no. 01 C 2747, 2002 WL 256803 (Feb. 21, 2002, N.D. Ill.). Here, absent the use of the airplane, there could be no injury caused by Pontiac's alleged negligent training and communication. Therefore, these claims are dependant on the insured's use of an aircraft and are excluded from coverage under the aircraft/auto/watercraft exclusion.

The Illinois Supreme Court issued a ruling that is dispositive of the situation here. *Northbrook Prop. & Cas. Co. v. Transportation Joint Agr*., 194 Ill.2d 96, 98-9 (Ill. 2000). The *Northbrook* case arose from the highly emotional and publicized train/school bus accident that occurred in Fox River Grove, Illinois on October 25, 1995, resulting in numerous casualties

involving school children.   In *Northbrook*, the Court found that, under a nearly identical aircraft/auto/watercraft exclusion as that in Pontiac's GL policy, claims of negligent planning of a bus route and negligent failure to warn a bus driver of perils are derivative of the use of the bus, and therefore the aircraft/auto/watercraft exclusion in a general liability policy applied to bar coverage.   194 Ill.2d 96, 98-9 (Ill. 2000).   The appellate court below had held that some of the allegations might be independent of the bus driver's negligent operation of the vehicle, and therefore plaintiffs had alleged at least one proximate cause of the accident that potentially was not subject to the auto exclusion.   *Northbrook Prop. & Cas. Co. v. Transportation Joint Agr*, 309 Ill. App.3d 261, 266-7 (Ill. App. Ct. 1999).   The lower court had concluded that allegations of failure to inspect routes, to educate bus drivers about hazardous conditions, and to provide adequate route sheets to the drivers "have nothing to do with" the use of the bus.   *Id*. at 267.   The court believed that liability could be found on these theories in absence of any negligent operation of the bus, and therefore held that these allegations constituted separate proximate causes of the loss that were not affected by the auto exclusion.   *Id*.

The Illinois Supreme Court disagreed, finding that allegations of negligent planning of bus routes and supervision of the drivers' were "nothing more than rephrasings of the fact that the students' injuries arose from the school districts' use of a motor vehicle." 194 Ill.2d at 98-9. The court expressly held that none of the allegations were "wholly independent" of the negligent operation of the bus, and therefore were all subject to the aircraft/auto exclusion.   *Id*. at 99.   The Supreme Court's holding in *Northbrook* stands for the proposition that, with respect to the aircraft/auto/watercraft exclusion, the "use" of a car or airplane encompasses the training of the vehicle's driver and the planning of his route.   Here, Pontiac's alleged negligent planning and training is at the core of Defendants' counterclaims.   As in *Northbrook*, the discrete acts of

negligence alleged by the Webster defendants are only rephrasings of their central allegation; that Neil Webster died in an airplane owned and operated by and on behalf of Pontiac due to the negligence of Pontiac and its employees. There are no allegations of wrongdoing that are "independent" of the use of the aircraft. The reasoning in *Northbrook* applies here.

The *Northbrook* decision is in perfect harmony with other Illinois state and federal decisions addressing this issue. For example, in *Massachusetts Bay Ins. Co. v. Unique Presort Serv.*, *Inc*., the court found that an auto exclusion applied to claims arising out of a collision with the insured's truck, including claims alleging liability for failure to test the truck driver for drugs under federal law. 287 Ill. App.3d 741, 745 (Ill. App. Ct. 1997). The court found that the drug-testing regulation in question affected only drivers on public roadways, and therefore claims alleging its violation were inextricably bound with the (excluded) use of an automobile. *Id*. Similarly, in *Allstate Ins. Co. v. Smiley*, a child drowned while in the custody of his day-care provider. 276 Ill. App.3d 971 (Ill. App. Ct. 1995). The insurance policy there excluded coverage for injuries arising out of the insured's business activities. Id. at 979. The court found that, regardless of how many discrete acts of negligence were alleged, the injuries were intertwined with the insured's day care business, and thus no coverage was owed for any of the plaintiff's claims. *Id*. at 980. This meant that claims against the insured's husband for negligent maintenance of the pool were similarly excluded, as his duties were "indistinguishable" from those owed by his wife in the course of her business. *Id*.

In Pontiac's Reply in support of its Motion for Leave to File Counterclaim, it relies upon two older cases for the proposition that negligent supervision claims may not "arise out of" the use of a plane for purposes of applying the aircraft/auto/watercraft exclusion. *See United States Fid. & Guar. Co. v. State Farm Mut. Auto. Ins. Co*., 152 Ill. App.3d 46 (Ill. App. Ct. 1987) and

*Louis Marsch, Inc. v. Pekin Ins. Co.*, 140 Ill. App.3d 1079 (Ill. App. Ct. 1985). This pair of 20-year-old decisions are not only distinguishable, their validity is in doubt in light of more recent Illinois precedent, including *Northbrook*.

In *Marsch v. Pekin*, the court held that an insurer was obligated to defend its insured from claims alleging negligent failure to use flagmen and other warning signs or barricades in violation of the Road Construction Injuries Act, even though the underlying injury came about when the insured hit the plaintiff with a dump truck (an excluded event under an auto exclusion.). The court found that, because liability under the Act could arise under a wide variety of scenarios not involving an auto accident, failure to comply with the Act was a concurrent, non-excluded cause of the plaintiff's injuries. In light of the *Northbrook* decision, it is questionable whether this holding is still valid, as the failure to provide flagmen to prevent an auto accident is arguably not "wholly independent" of the auto accident itself. Nonetheless, even presuming that *Marsch* is distinguishable from *Northbrook*, it does not apply here, as there is no reasonable scenario in which negligent flight instruction could have caused Webster's injuries in the absence of the use of the Air Tractor.

Pontiac's other authority, *U.S. Fid. & Guar. Co. v. State Farm Auto Ins. Co.*, 152 Ill. App.3d 46 (Ill. App. Ct. 1987), fares no better. In *USF&G*, a child had fallen out of a moving car while in the custody of her day-care provider. In the underlying suit against the provider, one count of the complaint alleged negligent supervision of the plaintiff, while another alleged failure to operate the car safely and properly. *Id.* at 47. The jury returned a general verdict against the provider. The court found that, as the general verdict could not be collaterally attacked, USF&G had not met its burden to show that the plaintiff's injuries were solely caused by the use of an auto, rather than by negligent supervision of the plaintiff. *Id.* at 49.

12

Given *Northbrook*'s broad holding, it seems highly unlikely that *USF&G* would be decided the same way today.  However, even if *USF&G* can be distinguished from *Northbrook*, it is equally distinguishable from the facts of this case. In *USF&G*, the plaintiffs had alleged a theory of recovery under which the negligent operation of the car was not a necessary predicate to recovery.  The insured in *USF&G* could have been found liable for negligently supervising the children, but not liable for negligently driving the car (for example, failure to supervise the use of seatbelts).  Although admittedly a weak argument, in that instance, the plaintiff's injuries at least arguably may not have arisen out of the use of an auto; rather, the involvement of the auto may arguably have been nothing more than the fortuitous mechanism of the injury, with the lack of supervision being the primary cause.  That could not be the case here.  The Webster defendants allege that Pontiac negligently trained Webster to fly a specific airplane, the Air Tractor owned by Pontiac.  The Air Tractor crashed while Webster and his instructor, Lucente, were flying it. Absent the use of the plane, there would be no injury for which Pontiac could be legally liable arising out of the negligent training.  The allegations of negligent supervision could not support any injury other than one resulting from the operation of an aircraft.  Webster can only recover if Pontiac's negligent maintenance or use of the plane in connection with flight training caused the crash, which at least arguably was not the case in *USF&G*.  Therefore, that case would not control here in any event.

*Northbrook* represents the law that applies here.  Through *Northbrook*, it is apparent that the Illinois Supreme Court has recognized that it would be patently unjust to permit Pontiac and Webster to effectively nullify the unambiguous aircraft exclusion in the GL policy, thereby turning a standard premises/business liability policy into an aircraft liability policy with $1,000,000 limits ($900,000 higher than the single liability limit in the policy actually issued to

13

cover the aircraft). Such a result would be neither reasonable nor justifiable – nor, indeed, supported by Illinois law. There is no dispute within the pleadings as to the material facts regarding the language of the policy at issue, the underlying pleadings, and the underlying factual scenario leading to the accident in question. Coverage is not afforded for this loss under the general liability policy issued by National Union to Pontiac. National Union is therefore entitled to judgment on the pleadings.

## IV.     CONCLUSION

For the reasons set forth above, Plaintiff National Union Fire Insurance Company of Pittsburgh, PA respectfully requests that this Court enter Judgment On the Pleadings in its favor and against Pontiac Flying Service and Webster on their respective counterclaims, and declare as follows:

A.     That all claims and allegations made by the Webster defendants against Pontiac Flying Service, Inc. and its owners/employees, Scott Petersen and Sarah Petersen, arise out of the maintenance and/or use of an aircraft by or on behalf of "any insured," including Pontiac and its owners/employees, as those terms are used in the aircraft/auto/watercraft exclusion (Exclusion g) set forth in the GL policy issued by National Union;

B.     That National Union owes no defense or indemnity obligation to Pontiac Flying Service, Inc., Scott Petersen or Sarah Petersen in connection with any lawsuit pertaining to the May 5, 2003 loss of the 1991 Air Tractor AT503A, Registration No. N503D, under the terms of National Union Policy No. AP 3388953-05; and

C.     That National Union is entitled to such other relief as this Court deems necessary and proper, including an award of costs.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., Plaintiff

_____ s/ Jeffrey B. Rock _____
Jeffrey B. Rock, Esq., Bar No. 2360039
Hasselberg, Rock, Bell& Kuppler LLP
Suite 200 Associated Bank Building
4600 N. Brandywine Drive
Peoria, IL 61614-5591
Telephone: (309) 688-9400
Facsimile: (309) 688-9430
E-mail: jrock@hrbklaw.com

Mark T. Banovetz, Esq.
Charmagne Topacio, Esq.
Tressler, Soderstrom, Maloney & Priess
Sears Tower, 22nd Floor
233 South Wacker Drive
Chicago, IL 60606-6308
Telephone: (312) 627-4000

Attorneys for Plaintiff

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 17th day of June, 2005, I electronically filed the foregoing **Memorandum in Support of Motion For Judgment on the Pleadings on Counterclaims of Pontiac and the Webster Defendants** with the Clerk of the Court using the CM/ECF system which will send notification of such following to the following:

David B. Mueller, Esq.
CASSIDY & MUELLER
323 Commerce Bank Building
416 Main Street
Peoria, IL  61602

Michael S. Krzak, Esq.
Kevin P. Durkin, Esq.
CLIFFORD LAW OFFICES, P.C.
120 North LaSalle Street
Suite 3100
Chicago, IL  60602

Diane M. Baron, Esq.
CLAUSEN MILLER, P.C.
10 South LaSalle Street
Chicago, IL  60603-1098

and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants:  None.

NATIONAL    UNION    FIRE    INSURANCE
COMPANY OF PITTSBURGH, PA., Plaintiff,

By: ___s/  Jeffrey B. Rock_____
Jeffrey B. Rock, Esq., Bar No. 2360039
Hasselberg, Rock, Bell & Kuppler LLP
Suite 200 Associated Bank Building
4600 N. Brandywine Drive
Peoria, IL  61614-5591
Telephone:  (309) 688-9400
Facsimile:  (309) 688-9430
E-mail:  jrock@hrbklaw.com