UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| NATIONAL UNION FIRE COMPANY<br>OF PITTSBURGH, PA,<br><br>      Plaintiff,<br><br>vs.<br><br>PONTIAC FLYING SERVICE, INC.,<br>JUSTYN WEBSTER, as Special Administrator<br>of the Estate of NEIL WEBSTER, Deceased,<br>and CAREN S. LUCENTE, as Independent<br>Executor of the Estate of RICHARD P.<br>LUCENTE, Deceased,<br><br>      Defendants,<br><br>and<br><br>PONTIAC FLYING SERVICE, INC.,<br><br>      Third Party Plaintiff,<br><br>vs.<br><br>HARDY AVIATION INSURANCE, INC.,<br><br>      Third Party Defendant. | No. 03-CV-01288 |

## RESPONSE TO MOTION FOR JUDGMENT ON THE PLEADINGS

## NATURE OF THE PROCEEDING

On May 26, 2005 PONTIAC FLYING was permitted to file its **COUNTERCLAIM** against the Plaintiff, NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA ("NATIONAL UNION"). That order followed the exchange of memoranda between the parties regarding the existence and merits of the cause of action which was contained in the proposed pleading. Once the **COUNTERCLAIM** was filed NATIONAL UNION answered it

and also brought a **MOTION FOR JUDGMENT ON THE PLEADINGS** pursuant to Rule 12(c).[1] As was the case with its objection to the filing of PONTIAC FLYING's **COUNTERCLAIM** the plaintiff questions whether or not the pleading states a claim upon which relief may be granted. In that regard the arguments are in substantial part a reprise of those which were previously made and rejected. The Motion For Judgment On The Pleadings contains some additional authorities, elaborations and nuances upon the arguments which NATIONAL UNION made resisting the filing of the **COUNTERCLAIM**. The following **RESPONSE** addresses those points and in doing so better defines the rationale which was articulated in the counterplaintiff's Reply.

By way of summary, the insuring agreement of its CGL policy obligates NATIONAL UNION to defend PONTIAC FLYING and its employees against any claims in the WEBSTER complaint which are potentially within coverage. That potential exists unless it is clear that there is no possibility for coverage. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill.2d 90 (1992). The WEBSTER pleading alleges *inter alia*:

> 6.    On May 5, 2003, the Air Tractor departed from Pontiac Municipal Airport with Richard P. Lucente, Jr., acting as pilot in command and Plaintiff's decedent, NEIL WEBSTER, as the student pilot passenger.
>
> 7.    On May 5, 2003, the Air Tractor impacted the ground at some point after its departure from Pontiac Municipal Airport resulting in the death of NEIL WEBSTER.
>
> 8.    At all times relevant hereto, Defendant(s), PONTIAC FLYING SERVICE, INC. . . .  owed a duty to exercise due care in providing flight instruction services . . .

---

[1] The same type of motions, pleadings and procedures involve JUSTYN WEBSTER, AS SPECIAL ADMINISTRATOR OF THE ESTATE OF NEIL WEBSTER, DECEASED. Webster has filed a like counterclaim against NATIONAL UNION which is the subject of an identical motion for judgment on the pleadings.

    9. On May 5, 2003, Defendant, PONTIAC FLYING SERVICE, INC. . . . was negligent in one or more of the following ways: . .

      b. Failed to properly and adequately instruct NEIL WEBSTER on the flight of the Air Tractor Aircraft;

      c. Failed to properly communicate with NEIL WEBSTER during flight training . .

    10. As a direct and proximate result of one or more of the aforementioned acts of negligence, Plaintiff's decedent, NEIL WEBSTER, sustained injuries . . .

The preceding allegations regarding the training and instruction of the decedent, NEIL WEBSTER, are clearly covered by the insuring agreement of the policy as a component of "**Aviation operations**". Consequently, the only thread upon which NATIONAL UNION denies the potential for coverage, and *ergo* its duty to defend, is the exclusion for "**Bodily injury**" lawsuits ". . . arising out of the ownership, maintenance, use . . . of an **aircraft** . . . owned or operated by . . . any insured."² No one knows who was flying the plane when it went down. Nor can it be said that the crash was caused by negligence on the part of Lucente or Webster in flying the aircraft. It is entirely *possible* that the only negligence which can be established is that of PONTIAC FLYING in failing to provide proper training and instruction to NEIL WEBSTER *before* the plane took off. Thus, the potential exists that the absence of that instruction and training was the sole cause in fact of the crash and the sole proximate cause of the injuries and damages for which recovery is sought. As the following discussion establishes, that "potentiality" was sufficient to trigger the plaintiff's duty to defend.

---

² Pursuant to the insuring agreement the duty to defend is tied to a "suit", i.e. a negligence claim, which seeks damages for "**Bodily injury**". Consequently, as it applies to the *duty to defend* the exclusion focuses upon the negligence allegations which appear in the complaint.

# ARGUMENT

## A.

## THE MOTION IMPROPERLY INCORPORATES MATTERS OUTSIDE OF THE COUNTERCLAIM AND ANSWER

The motion under consideration is brought pursuant to Rule 12(c) and is designated:

**NATIONAL UNION'S MOTION FOR JUDGMENT ON THE PLEADINGS ON COUNTERCLAIMS OF PONTIAC AND THE WEBSTER DEFENDANTS**. In seeking a judgment on the pleadings NATIONAL UNION, as counterdefendant, is limited to matters which are contained within the counterclaims and its answer to those counterclaims. (Rule 12(c)). For the purposes of the motion the facts which are alleged are taken as true for the purpose of testing the legal sufficiency of the pleading in question, i.e. the counterclaim. In pertinent part those allegations are:

> 2.   An actual case and controversy exists between the parties to this counterclaim regarding whether or not there is liability insurance coverage for PONTIAC FLYING and its employees under that NATIONAL UNION Commercial General Liability Coverage Aviation Policy, a copy of which is attached to this counterclaim and made a part hereof as Exhibit A ("the CGL policy") for the occurrence of May 5, 2003, which took the life of Neil Webster,
>
> 4.   Attached to this counterclaim and made a part hereof as Exhibit C is a true and correct copy of an Amended Complaint which was filed on April 18, 2005 in Livingston County Cause No. 04 L 15. The Amended Complaint joins SCOTT PETERSEN and SARAH PETERSEN as additional defendants.
>
> 7.   The insuring agreement of the CGL policy provides *inter alia*:
> SECTION I – COVERAGES
>
> > COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY
> >
> > 1.   Insuring Agreement.
> >
> > > (a) We will pay those sums that the insured becomes legally obligated to pay as damages because of **bodily injury** or **property**

>  **damage** to which this insurance applies resulting from your **Aviation operations**. We will have the right and duty to defend any suit seeking those damages. We may at our discretion investigate any **occurrence** and settle any claim or **suit** that may result.

8. The CGL policy defines aviation operations as:

> 5. **Aviation operations** means all operations arising from the ownership, maintenance or use of locations for aviation activities including that portion of roads or other accesses that adjoin these locations. **Aviation operations** include all operations necessary or incidental to aviation activities.

9. At all relevant times SCOTT PETERSEN and SARAH PETERSEN were employees of PONTIAC FLYING SERVICE, INC. and were therefore insureds under the CGL policy.

11. The amended complaint which was filed on April 18, 2005, also alleges:

> 9. On May 5, 2003, Defendant, PONTIAC FLYING SERVICE, INC. by and through its employees and/or agents, including Richard P. Lucente, Jr., was negligent in one or more of the following ways:
>
>    a. Failed to properly control the aircraft;
>    b. Failed to properly and adequately instruct NEIL WEBSTER on the flight of the Air Tractor Aircraft;
>    c. Failed to properly communicate with NEIL WEBSTER during flight training;
>    d. Failed to properly and adequately maintain the Air Tractor Aircraft.

In its motion and accompanying "Memorandum of Law" NATIONAL UNION discusses issues which are outside of the counterclaim, its exhibits and NATIONAL UNION's answer to that counterclaim. Specifically, the counterdefendant attempts to argue issues which are peculiar to the dispute regarding coverage under its aircraft policy. Those issues have their own significance and are not a part of the counterclaims which involve only liability coverage under NATIONAL UNION'S CGL policy. This distinction is significant *because* liability claims under the aircraft policy are tied to negligence in the operation and maintenance of the aircraft. Here, as

set forth *supra*, the coverage triggering allegations involve the counterplaintiff's negligence in training and instructing NEIL WEBSTER in how to fly that plane or any like aircraft. As they are not tied to negligence in flying the covered aircraft they would not be covered under the aircraft policy.

B.

### THE EXCLUSION DOES NOT PRECLUDE COVERAGE FOR THE NEGLIGENT TRAINING AND INSTRUCTION OF NEIL WEBSTER

1.

### Concurrent Cause

The complaint alleges *inter alia* that PONTIAC FLYING was negligent in that it:

    b.    Failed to properly and adequate instruct NEIL WEBSTER on the flight of the Air Tractor Aircraft;

    c.    Failed to properly communicate with NEIL WEBSTER during flight training. . .

The pleading also avers that each of those negligent acts and omissions was a proximate cause of the injuries and damages for which recovery is sought. Thus, WEBSTER may recover against PONTIAC FLYING *solely* because of matters which took place before the plane left the ground, and without regard to the negligence of anyone in the operation of the aircraft on May 5, 2003.

    The duty to defend focuses upon each allegation of negligence separately. Where the complaint includes both potentially covered and non-covered claims, the insurer must defend the entire complaint. *Maryland Casualty Co. v. Peppers*, 64 Ill.2d 187 (1976). Therefore, allegations of pilot negligence are not necessary to trigger the duty to defend the training and instruction claims involving NEIL WEBSTER. Simply stated, and from the face of the complaint, the plane might have crashed *solely* because WEBSTER lacked the necessary training and instruction to fly it. Clearly, NATIONAL UNION cannot say at this stage that the sole proximate cause of the

injuries and damages which are claimed by WEBSTER was negligence which arose out of the ownership, maintenance, operation or use of the aircraft, as required by *United States Fidelity & Guaranty Co. v. State Farm Mutual Automobile Insurance Co.*, 152 Ill.App.3d 46, 48-49 (1987).[3] Similarly, the "arising out of" exclusion would not preclude coverage under the reasoning in *Louis Marsch, Inc. v. Pekin Insurance Co.*, 140 Ill.App.3d 1079, 1085-87 (1985) in that the failure to instruct and train WEBSTER was a concurrent cause of the "**Bodily injury**" which could have taken place in any turbine powered plane, not just that which was owned by PONTIAC FLYING.[4]

### 2.

### The Exclusion Requires Negligent Operation Or Use

Apart from *USF&G v. State Farm*, *supra*, *Marsh v. Pekin Insurance Co.*, *supra*, and the concurrent cause rule, for the "arising out of" exclusion to apply NATIONAL UNION must show that the injuries and damages which are sought by WEBSTER arose out of the *negligent* ownership, maintenance or use of the owned aircraft. Theoretically whether negligent operation

---

[3] *USF&G v. State Farm Mutual* is discussed at length in PONTIAC's **REPLY TO NATIONAL UNION RESPONSE.** There the court found that a like exclusion did not apply to a failure to supervise claim where an unrestrained child fell out of the insured's moving vehicle. Referring to the so-called "concurrent cause rule" the appellate court held that the "arising out of" exclusion did not bar coverage for bodily injuries which were concurrently caused by separate and distinct negligent acts and omissions.

[4] *Sub judice* the exclusion applies only to aircraft owned or operated by PONTIAC FLYING. Paraphrasing the *Marsch* reasoning the failure to train and instruct WEBSTER created a potential for bodily injury which did not depend upon a Pontiac Flying plane.

or use of the excluded aircraft or auto precludes other negligent causes from being "concurrent" or inextricably triggers the exclusion is immaterial. Each of the authorities upon which NATIONAL UNION relies depends *negligent* operation as an alternative and predominant cause in fact of the accident. For example, claims of negligent supervision and negligent entrustment of a vehicle presuppose its negligent operation. *Oakley Transport, Inc. v. Zurich Insurance Co.*, 271 Ill.App.3d 716 (1995) as do allegations that the insured failed to test its truck driver for drugs. *Massachusetts Bay Ins. Co. v. Unique Presort Services, Inc.*, 287 Ill.App.3d 741 (1997).

An excellent discussion of the required nexus between operator negligence and the exclusion is found in another of NATIONAL UNION'S authorities, *West American Ins. Co., v. Tovar,* 2002 WL 256803 (N.D.Ill. 2002). There the insured's daughter was riding a Yamaha wave runner when she injured a third party. The West American policy excluded coverage for claims:

> g. Arising out of:
> (1) The ownership, maintenance, use, loading or unloading of an excluded watercraft described below.

The injured party sued the daughter and the parents, all of whom were insureds under the policy. Her complaint contained the following claims.

> (1) A negligence claim against the daughter for her operation of the wave runner;
>
> (2) A negligent supervision claim against the parents; and
>
> (3) A negligent entrustment claim agisnt the parents.

West American "refused to defend on the grounds that the watercraft exclusion precluded coverage for all of … the claims".

In determining whether the exclusion applied to the failure to supervise claims against the parents the court undertook a synthesis of the cases which had considered the issue, including

*USF & G v. State Farm*, 107 Ill.App.3d 190 and 152 Ill.App.3d 46 (1987), *State Farm v. Mann*, 172 Ill.App.3d (1988) and *Transamerica Ins. Co. v. South*, 975 F.2d 321 (7 Cir. 1992). From that analysis it determined that the "arising out of" exclusion applies to any allegations which could not support a recovery by the injured party without a finding of negligence on the party of the operator. Conversely, it found that the exclusion does not apply to allegations upon which the claimant could recover without regard to operator negligence. In the latter instance the non excluded allegations qualify as independent causes of the injuries.

The same reasoning applies to claims of inadequate supervision, failure to warn, and lack of proper training and experience of the school district bus driver who collided with a METRA train in *Northbrook Property v. Transportation Joint Agreement*, 194 Ill.2d 96 (2000). In each instance *supra* the *sine qua non* for application of the exclusion was operator negligence which inextricably arose out of use of the vehicle. That requirement is clear from the following language of the supreme court in *Northbrook Property & Casualty Co. v. Transportation Joint Agreement*:

> Contrary to the appellate court's holding, the students' complaints failed to allege that the injuries arose from events "*wholly independent of any negligent operation of the bus.*" 309 Ill.App.3d at 266. Northbrook therefore has no duty to defend the school districts in the underlying lawsuits. (Emphasis supplied).
> *Id.* at 99.

NATIONAL UNION also acknowledges that for the exclusion to apply there must be negligence on the part of the operator or pilot. In that regard its memorandum at page 13 states:

> Webster can only recover if Pontiac's *negligent maintenance or use* of the plane in connection with flight training caused the crash, which at least arguably was not the case in *USF&G*. Therefore, that case would not control here in any event.

*Sub judice* WEBSTER can recover from PONTIAC FLYING without showing that the crash was caused by pilot negligence. That "potential" has a dual effect. First, it satisfies the causation requirements for coverage. Second, it triggered the duty to defend on or about June 21, 2004, when NATIONAL UNION became aware of the concurrent claim.

As it relates to the duty to defend, the "arising out of" exclusion has a negligence component for two reasons. First, the rules of policy construction require it. Second, the duty to defend is tied to the "suit" or claim regarding which the exclusion is asserted. These are discussed separately *infra*.

### C.

### THE RULES OF POLICY CONSTRUCTION LIMIT APPLICATION OF THE EXCLUSION TO BODILY INJURIES WHICH ARISE OUT OF THE NEGLIGENT USE FOR OPERATION OF AN AUTO OR AIRCRAFT

#### 1.

#### Contra Proferentem

In construing a liability policy all doubts and ambiguities must be resolved in favor of the insured. *USF&G. Wilkin Insulation Co.*, 144 Ill.2d 64, 74 (1991). The so-called *contra proferentem* rule is applied with particular force to exclusions which deprive an insured of coverage which would otherwise have existed. As stated in *National Union Fire Insurance Co. v. Glenview*, 158 Ill.2d 116, 122 (1994):

> In addition, provisions that limit or exclude coverage are to be construed liberally in favor of the insured and "most strongly against the insurer."

As otherwise expressed, where an exclusionary clause in an insurance policy is relied upon to deny coverage, its applicability must be clear and free from doubt. *Economy Fire & Casualty Co. v. Bassett*, 170 Ill.App.3d 765, 769 (1988).

The same preferential treatment is accorded the phrase "arising out of" whether it appears in the insuring agreement or in an exclusion. *Maryland Casualty Co. v. C&NW Transportation Co.*, 126 Ill.App.3d 150, 154 (1984) and *Oakley Transport, Inc. v. Zurich Insurance Co.*, 271 Ill.App.3d 716, 721 (1995). As a matter of law the clause is "broad and vague". *Dash Messenger Service, Inc. v. Hartford Insurance Co.*, 221 Ill.App.3d 1007, 1012 (1991) and *Burlington Northern Ry. Co. v. Illinois Emcasco Insurance Co.*, 158 Ill.App.3d 783, 787 (1987). Where coverage under the insuring agreement depends upon whether an occurrence "arose out of" particular conduct it is given an expansive interpretation for the benefit of the insured. In that regard coverage is afforded if the injury would not have taken place "but for" the conduct or activity which is referred to in the insuring agreement. *Maryland Casualty Co. v. C&NW Transportation Co.*, *supra* at 154 where it is stated:

> The phrase "arising out of" is both broad and vague, and must be liberally construed in favor of the insured; accordingly, "but for" causation, not necessarily proximate causation, satisfies this language. (*Consolidated Rail Corp. v. Liberty Mutual Insurance Co.* (1981), 92 Ill.App.3d 1066, 1069, 416 N.E.2d 758, quoting *Aetna Casualty & Surety Co. v. Ocean Accident & Guarantee Corp.* (3d Cir. 1967), 386 F.2d 413, 415.) "Arising out of" has been held to mean "originating from," "having its origin in," "growing out of" and "flowing from." *Western Casualty & Surety Co. v. Branon* (E.D. Ill. 1979), 463 F.Supp. 1208, 1210.

NATIONAL UNION urges the expansive "but for" interpretation. In doing so it argues that because WEBSTER was in the plane when it went down his death, i.e. "**Bodily injury**" arose out of the ". . . ownership, maintenance, use . . . of an aircraft . . . owned or operated by . . . [Pontiac Flying]." That reasoning has been roundly rejected where "arising out of" appears in an exclusion because an expansive interpretation of the clause in that setting is to the detriment of the insured. Consequently, it is given a restrictive meaning which favors coverage. *Oakley Transport, Inc. v. Zurich Insurance Co.*, 271 Ill.App.3d 716, 721 (1995) and *United Services*

11

*Automobile Association v. Dare*, 2005 W.L. 1278276 (2005). In *USAA v. Dare* the insurer sought the "but for" interpretation of "arising out of" as it was used in an auto exclusion. In rejecting that construction the court stated:

> However using this type of analysis, specifically, a case that interprets the phrase "arising out of" as it appears in a policy section providing coverage, offers minimal assistance in resolving the appropriate interpretation of the same phrase as it appears in an exclusion. *Oakley Transport, Inc. v. Zurich Insurance Co.*, 271 Ill.App.3d 716, 721-22, 208 Ill.Dec. 177, 648 N.E.2d 1099 (1995). That is because a broad interpretation here would expand the exclusion to the advantage of the insurer and would "turn on its head established judicial precedent regarding liberal construction of insurance policies in favor of the insured." *Oakley Transport*, 271 Ill.App.3d at 721, 208 Ill.Dec. 177, 648 N.E.2d 1099. When the application of an exclusion will result in denying the duty to defend, that exclusion must be clear and free from doubt. *Mount Vernon*, 343 Ill.App.3d at 320-21, 277 Ill.Dec. 366, 795 N.E.2d 1034. *Id.*, 12.

*Dare* involved the application of the following auto exclusion to injuries sustained by the claimant when the "butt chain" of a horse trailer failed releasing the animal:

> Medical Payments to Others do not apply to bodily injury or property damage:
> . . .
>
>    e.   arising out of:
>
>       (1)   the ownership, maintenance, use, loading or unloading of motor vehicles . . . including trailers, owned or operated by or rented or loaned to an Insured.

The complaint contained a variety of fault specifications, including allegations that:

- Dare failed to properly warn users of the risks, dangers, limitations and defects in the butt chain for restraining horses; (Paragraph 8(h))

- Dare failed to design, modify, install and equip the trailer with a mechanism to adjust the height of the butt chain to accommodate horses of various sizes; (Paragraph 8(i)), and

- Dare failed to design, modify, equip and provide the trailer with a proper and secure snap hook for the butt chain restraining device; (Paragraph 8(j)).

In giving the exclusion a restrictive interpretation the court distinguished the result *Northbrook Property v. Joint Transportation Agreement*, 194 Ill.2d 96 (2000) on a number of grounds. Chief among them was the fact that the allegations *supra* referred to risks which did not depend upon negligence in the ownership or maintenance of the trailer and "butt chain". In that regard they were not mere "rephrasings" of the underlying negligence claim. As the court found:

> These allegations claim that Ellington's injuries arose from a design defect created by Dare, not merely from her ownership or maintenance of the butt chain. Again, if the allegations of the complaint are within or potentially within a policy's coverage, the insurer is required to defend even if the allegations "may be groundless, false or fraudulent." *Shell Oil Co. v. AC&S, Inc.*, 271 Ill.App.3d 898, 904, 208 Ill.Dec. 586, 649 N.E.2d 946 (1995). We find these additional allegations are separate, distinct and outside the language of the exclusion. We therefore find *Northbrook* to be distinguishable. *Id.*, 10.

In finding that the duty to defend was triggered despite the auto exclusion, the *Dare* court also discussed and approved the reasoning in *United States Fidelity & Guarantee Co. v. State Farm Mutual Insurance Co.*, *supra*. Combining the concurrent cause reasoning in *USF&G v. State Farm* with the restrictive interpretation of "arising out of" when it is used in an exclusion (*Dare* and *Oakley Transport*) it is evident that, at a minimum, the exclusion applies only where the injury arises out of negligence in the ownership or operation of the auto or aircraft. Conversely, the exclusion does not apply where, as here, there is an alternative concurrent cause for the injury which is independent of negligence in the operation or use of the instrumentality.

## 2.

### Predominant Cause

Another standard which is used to determine whether an auto exclusion applies in the setting of alternative causes is the "predominant cause rule". If the predominant cause of the injury is negligence in the operation of the vehicle or aircraft, then the exclusion applies. Where alternative concurrent causes are either of equal significance or preponderate the exclusion will not be applied. *Allstate Insurance Co. v. Pruitt*, 177 Ill.App.3d 407, 411 (1988). In *Pruitt* the defendant's father purchased a homeowner's policy which included coverage for personal injury damages caused by a member of the household, but excluded bodily injury damages "arising out of the ownership, maintenance or use of any motorized land vehicle or trailer." The insured's son injured a man while riding his motorized mini bike. The injured party sued the son for negligent operation of the mini bike and the father for "negligent failure to supervise his son." Allstate sought a declaration that it was not obligated to defend or indemnify either insured because of the exclusion. The Pruitts responded by relying upon the concurrent cause reasoning in *USF&G v. State Farm, supra*. The court distinguished *USF&G* on the basis that the negligent supervision claim was "based solely on the minor's ownership and operation of the mini bike." *Pruitt* at 411. Because the father could only be negligent if the son was negligent, the excluded cause predominated, and the claim was not covered. The predominant cause rationale was also applied to a business activity exclusion in *Allstate Insurance Co. v. Smiley*, 276 Ill.App.3d 971, 982 (1996) and by the Seventh Circuit, applying Illinois law in *Transamerica Insurance Company v. South*, 975 F.2d 321, 330-31 (7 Cir., 1992).

*Sub judice* use of the predominant cause rule demonstrates the potential for coverage of the training and instruction allegations of the complaint. It cannot be said that the "predominant

cause" of the accident or WEBSTER's death was negligence in the operation of the aircraft. To the contrary, it is equally likely that the plane went down because WEBSTER lacked the training and instruction which was necessary to fly it in an emergent situation. In fact, those grounds of negligence are wholly independent and apart from negligence in the operation of the plane.

**D.**

**THE DUTY TO DEFEND PRESUPPSOES A "SUIT" WHICH IS FOUNDED UPON NEGLIGENCE**

The duty to defend is broader than the duty to indemnify. *Zurich Insurance Co. v. Raymart Industries*, 118 Ill.2d 23, 52 (1987). The determination of whether there is a duty to defend is based solely upon a comparison of the allegations of the complaint to the language of the insurance contract. *Thornton v. Paul*, 74 Ill.2d 132, 144 (1978).

The insuring agreement of the CGL policy in question clearly provides coverage for "**Aviation operations**" which include pilot instruction and training. That portion of the policy expressly imposes the obligation to defend upon NATIONAL UNION stating:

> SECTION I – COVERAGES
>
> COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY
>
> 1.   Insuring Agreement.
>
>   (a)   We will pay those sums that the insured becomes legally obligated to pay as damages because of **bodily injury** or **property damage** to which this insurance applies resulting from your **Aviation operations**. *We will have the right and duty to defend any suit seeking those damages.* We may at our discretion investigate any **occurrence** and settle any claim or **suit** that may result. (Emphasis supplied).

As is evident from the italicized language, the duty to defend is inextricably tied to a "suit" against the insured for bodily injuries and *ergo* to the allegations of the complaint. In each

15

instance those potentially triggering allegations are based upon negligence. These include negligence in the control and maintenance of the aircraft. Thus, the exclusion, to the extent of the "duty to defend" is dependent upon a "suit" or claim for "**Bodily injury**" which arises out of the negligence in the ". . . ownership, maintenance, use of . . . the **aircraft**."

### E.

### NATIONAL UNION HAD A DUTY TO DEFEND UNLESS THE COMPLAINT ON ITS FACE SHOWED THERE WAS NO POTENTIAL FOR COVERAGE

Not only do the allegations of negligent training and instruction of WEBSTER constitute an independent cause of WEBSTER'S death that construction should be given to the exclusion *if there is any doubt National Union Fire Insurance Co. v.* Glenview, 158 Ill.2d 116, 122 (1994). Moreover, in refusing to defend it is incumbent upon the Counterdefendant to show that " … it is clear from the facts of the underlying complaint that the facts alleged do not fall potentially within the policy's coverage. *USF & G v. Wilkin Insulation Co.*, 144 Ill.2d 64, 73-74 (1991).

PONTIAC FLYING respectfully submits that NATIONAL UNIONS has not and cannot show that there was negligence in the operation of the plane or that negligence in the operation of the plane was either the sole cause of WEBSTER'S death of the predominant cause of his demise. Nor in refusing to defend has it ruled out the "potential" of the insured's failure to instruct and train WEBSTER as an independent and covered cause of the damages which are sought in the underlying case.

### CONCLUSION

For the foregoing reasons it is respectfully submitted that NATIONAL UNION'S Motion for Judgment on the Pleadings should be denied.

                CASSIDY & MUELLER


            By: s/  DAVID B. MUELLER
                  Attorneys for Defendant and Third Party Plaintiff,
                  PONTIAC FLYING SERVICE, INC.


### CERTIFICATE OF SERVICE

I hereby certify that on July 1, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Mr. Jeffrey B. Rock | jrock@hrbklaw.com, cpoehlman@hrbklaw.com |
| Ms. Diane M. Baron | dbaron@clausen.com, pkebr@clausen.com |
| Mr. Michael S. Krzak | msk@cliffordlaw.com, jmg@cliffordlaw.com |
| Kevin P. Durkin | kpd@cliffordlaw.com; jg@cliffordlaw.com |
| Mark T. Banovetz | mbanovetz@tsmp.com |

And I hereby certify that I have mailed by United States Postal Service the document to the foregoing non CM/ECF participants:

                s/DAVID B. MUELLER
                  David B. Mueller - #01980661
                  CASSIDY & MUELLER
                  416 Main Street, Suite 323
                  Peoria, IL 61602
                  Telephone: 309/676-0591
                  Fax: 309/676-8036
                  E-mail: dmueller@cassidymueller.com