IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 03-CV-01288 |
| v. | ) ) | Chief Judge Joe Billy McDade |
| PONTIAC FLYING SERVICE, INC., | ) ) | Magistrate Judge Byron G. Cudmore |
| Defendant. | ) ) | |

**NATIONAL UNION'S REPLY IN SUPPORT OF
MOTION FOR JUDGMENT ON THE PLEADINGS**

Plaintiff, NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA. ("National Union"), by its attorneys, HASSELBERG, ROCK, BELL & KUPPLER and TRESSLER, SODERSTROM, MALONEY & PRIESS, submits the following Reply in Support of Its Motion For Judgment On The Pleadings against Defendants/Counterplaintiffs Pontiac Flying Service, Inc. ("Pontiac") and Justyn Webster and Virginia Webster-Smith ("the Webster defendants"), pursuant to Federal Rule of Civil Procedure 12(c):

**I.     INTRODUCTION**

On May 5, 2003, an airplane owned by Pontiac was being used by Pontiac to teach Neil Webster how to fly a turbine-powered agricultural aircraft. This airplane crashed during a training flight, killing Neil Webster and his instructor, Richard Lucente, an independent contractor pilot retained by Pontiac. Pontiac's general liability policy expressly does not cover claims arising out of the use of Pontiac's aircraft. Coverage for operation of the aircraft was the subject of a separate policy – and that policy limited coverage to use of the aircraft for aerial application – not flight school operations.

The National Union general liability policy contains an aircraft/auto/watercraft exclusion

which applies here, where the bodily injury at issue unquestionably arose out of the operation of an aircraft by or on behalf of "any insured." The Illinois Supreme Court in *Northbrook* has emphatically rejected the concept preferred by Pontiac and the Webster defendants – namely that claims alleging negligent training or supervision constitute "concurrent" negligence which does not involve the operation, maintenance or use of an aircraft. The Court in *Northbrook* recognized that, regardless of the theories alleged, bodily injury arising out of the operation of an automobile (or aircraft) invokes the exclusion. Pontiac and the Webster defendants now largely hang their hat on a recent case from an Illinois Appellate Court – the *Dare* case – which involved facts that were clearly distinguishable from those in *Northbrook* and those in the present case. The <u>full</u> discussion of the *Dare* case set forth herein establishes beyond question that the *Dare* holding does not apply to the instant case. The rule in *Northbrook* applies here, and the aircraft/auto/watercraft exclusion should therefore be held to apply.

## II.   ARGUMENT

In their lengthy responses to National Union's Motion for Judgment on the Pleadings, Pontiac and the Webster defendants accomplish little, save to remind the Court of the *contra proferentum* doctrine and to substantially misstate the holdings of controlling case law. In the interests of expediency, National Union will focus its reply on the controlling *Northbrook* case, while briefly and simply pointing out to the Court why the cases relied upon by Pontiac and the Webster defendants are inapplicable.

**A.    <u>THE MANDATE OF THE ILLINOIS SUPREME COURT CONTROLS OVER CONTRARY APPELLATE DECISIONS</u>**

The facts of the controlling Illinois Supreme Court decision are factually analogous and, indeed, nearly indistinguishable in all material ways from the facts in the present case. *Northbrook Prop. & Cas. Co. v. Transportation Joint Agr.*, 194 Ill.2d 96, (Ill. 2000). Pontiac

and Webster discuss a handful of cases which are readily distinguishable from both the instant case and *Northbrook*, and whose decisions are not free of doubt in light of their dissonance with *Northbrook's* more recent reasoning.

In applying Illinois law, federal courts are bound by the decisions of the Illinois Supreme Court, but not of the inferior appellate courts. *Coleman v. Ryan*, 196 F.3d 793, 799 (7th Cir. 1999); *Burns Philp Food, Inc. v. Calavea Cont. Freight, Inc.*, 135 F.3d 526, 528 (7th Cir. 1998). So long as a federal court is satisfied that it has discerned the will of the Illinois Supreme Court, contrary interpretations of Illinois state law should not be followed. *Robinson v. McKinley Comm. Serv.*, 19 F.3d 359, 363 (7th Cir. 1994). To the extent that this Court finds that any case cited by the parties conflicts with *Northbrook* or any other Illinois Supreme Court precedent, such case law should be disregarded.

**B.      THE *NORTHBROOK* CASE, WHICH CONTROLS HERE, ESTABLISHES THAT WEBSTER'S CLAIM ARISES OUT OF THE OWNERSHIP, OPERATION, USE OR ENTRUSTMENT OF AN AIRCRAFT BY "ANY INSURED."**

The Illinois Supreme Court has spoken on the issues raised by Pontiac's and the Webster defendants' counterclaims in *Northbrook Prop. & Cas. Co. v. Transportation Joint Agr.*, 194 Ill.2d 96, 98-9 (Ill. 2000). There, the Court found that all allegations against the insured arising out of the crash of one of its buses were subject to an aircraft/auto/watercraft exclusion, including *claims that the driver was not sufficiently trained or warned of hazards and that bus routes were not properly planned*. The court found that these claims were not independent of the use of the bus, and hence could not trigger coverage under a policy that excluded coverage for injuries caused by the use of a bus. *Id*. Here, Pontiac's plane crashed while Neil Webster was being instructed in it, and the Webster defendants have asserted a variety of negligence-based claims against Pontiac based on Neil Webster's bodily injury.

3

Despite the striking similarity of *Northbrook* to the facts at hand, Pontiac and the Webster defendants proceed to argue that *Northbrook* does not apply, because the following allegations of negligence purportedly fall outside the scope of the exclusion:

> b.  [Pontiac] [f]ailed to properly and adequately instruct Neil Webster on the flight of the Air Tractor Aircraft
>
> c.  [Pontiac] [f]ailed to properly communicate with Neil Webster during flight training.

These allegations of negligent training are indistinguishable, for the purposes of the aircraft/auto/watercraft exclusion, from those in *Northbrook*, which the Supreme Court found were excluded from coverage under an aircraft/auto/watercraft exclusion that is substantially identical to that used in the GL policy at issue here.

Faced with Supreme Court precedent that clearly controls the disposition of their counterclaims, Pontiac and the Webster defendants attempt to distinguish *Northbrook* by claiming that, in this case, a material issue of fact exists as to whether Neil Webster (the student) or Richard Lucente (the instructor) were flying the Air Tractor when it crashed. In no case cited by any party, including *Northbrook*, is the identity of the driver of a vehicle material in any way to the question of whether a vehicle exclusion will apply. *Northbrook* is not distinguishable on this or any other meaningful basis, and it does not support the notion that uncertainty as to the aircraft's operator constitutes grounds upon which to question the application of an auto/aircraft/watercraft exclusion.

The counter-plaintiffs' attempt to distinguish *Northbrook* based on the question of who was flying the airplane is without basis from the perspective of the language of the aircraft/auto/watercraft exclusion, which states as follows:

> This insurance does not apply to . . . (g) 'Bodily injury' or 'property damage' arising out of the ownership, maintenance, use or entrustment to others of any aircraft, auto or watercraft owned

> or operated by or leased, rented, or loaned to any insured. 'Use" includes operation and loading or unloading and with respect to aircraft, 'operated by' also includes operation on behalf of an insured.

Under the plain language of the exclusion, the question of whether Webster or Lucente was piloting the aircraft is irrelevant. The exclusion applies to injuries arising out of the "ownership, maintenance, use or entrustment to others" of "any aircraft . . . owned or operated by . . .[including on behalf] …of any insured." In order for the exclusion to apply, a) the aircraft in question must be owned or operated by an insured (Pontiac does not dispute that it owned the aircraft and was operating it for profit-generating flight instruction at the time of the accident) and b) an injury must arise out of its maintenance, use or entrustment. Clearly, the Air Tractor was being used (for profit, no less) at the time it went down, regardless of who was flying it. Thus, the exclusion plainly applies[1].

Pontiac represents to the court that *Northbrook* stands for the proposition that "the *sine qua non* for application of the auto/aircraft/watercraft exclusion was operator negligence which inextricably arose out of the use of the vehicle." (Pontiac's Response, page 9). This is a surprisingly blatant mischaracterization of controlling Illinois law. *Northbrook* unambiguously holds that claims for failing to warn bus drivers of hazards and of negligently planning bus routes are subject to the aircraft/auto/watercraft exclusion. The Court goes out of its way to point out that such allegations are mere restatements of the basic facts – that a bus operated by the school district crashed, resulting in injuries – and therefore the exclusion should apply. The aircraft/auto/watercraft exclusions in no way require or presuppose allegations or proof of actual operator negligence on the part of the person who was operating the vehicle or aircraft. This is

---

[1] It should be noted that the exclusion also applies to "entrustment" of an aircraft to others. Even assuming *arguendo* that Webster was at the controls at the time of the crash, the aircraft was not only in "use" at that time, but it would also have been "entrusted" to him under the meaning of that term.

not only an unrealistic limitation on the application of these exclusions, but is also pulled out of thin air by the counter-plaintiffs. There is no law to support it.

Faced with an unfavorable and indistinguishable Illinois Supreme Court decision, Pontiac resorts to misstatements of National Union's position. At page 9 of its Response, Pontiac disingenuously claims that National Union has conceded that the aircraft/auto/watercraft exclusion cannot apply unless there is negligence on the part of the aircraft's operator. National Union has conceded no such thing. The language which Pontiac quotes is taken from a portion of National Union's brief discussing what Webster must prove in order to recover against ***Pontiac***, and does not pertain to what Webster or Pontiac must prove to ***National Union*** or ***this court*** in order to avoid application of the exclusion.

The *Northbrook* case unquestionably controls here. As noted in that case, "[allegations that [the insured] inadequately planned and inspected bus routes or failed to warn bus drivers of potential hazards…are nothing more than rephrasings of the fact that the students' injuries arose from [the insured's] use or operation of a motor vehicle." 194 Ill.2d at 99. Similarly, allegations that Pontiac or its owners negligently failed to properly instruct Neil Webster, or failed to properly communicate with him during flight training, are nothing more than rephrasings of the fact that the bodily injuries sustained by Webster arose from Pontiac's use or operation of an aircraft. Exclusion (g) set forth in the National Union GL policy applies and coverage for this claim is expressly excluded from coverage under the National Union policy.

C.  **NONE OF THE CASES CITED BY PONTIAC OR WEBSTER APPLY; NOR DO THEY CALL INTO QUESTION THE CONCLUSION REACHED IN *NORTHBROOK***

Pontiac and Webster argue that, instead of *Northbrook*, three appellate court decisions should control the disposition of National Union's motion for judgment; *United States Auto. Assoc. v. Dare*, 2005 WL 1278276 (1st Dist. 2005), *Mount Vernon Fire Ins. Co. v. Heaven's*

6

*Little Hands Day Care*, 343 Ill. App.3d 309 (1st Dist. 2003), and *U.S. Fid. & Guar. Co. v. State Farm Auto Ins. Co.*, 152 Ill. App.3d 46 (Ill. App. Ct. 1987). If the holdings in these cases were as Pontiac and the Webster defendants have described them, they arguably would be contrary to the holding in *Northbrook* and this Court could properly disregard them entirely. However, even assuming that these cases can be read in harmony with *Northbrook*, they are distinguishable from this case and from *Northbrook*, and do not apply to the facts of this case.

The Webster defendants argue that "the facts of the case presently before the court are identical to the facts in [USAA v. Dare]." (Webster's Response, page 9). This statement could not be more inaccurate. In *Dare*, the insured was sued for alleged negligent design of a horse trailer that he sold to the third-party plaintiffs. 2005 WL 1278276, at *2. A restraining device on the trailer failed, allowing a horse to come loose, resulting in injuries to the plaintiff. The court found that allegations of negligent design were separate and distinct from allegations concerning the insured's ownership and maintenance of the trailer. Id. at *8. Critically, the court goes on to explain that its decision was <u>principally</u> based on the fact that the insured <u>did not own or maintain the trailer</u> in question when injury occurred, having sold it some time before. *Id*. at *10. The exclusion did not expressly apply to vehicles that the insured owned at some time in the past, and the court was disinclined to hold that the exclusion applied to all vehicles that the insured owned *or had ever owned*. The court concluded, in essence, that the case was a typical products liability/negligence type case and the fact that the insured used to own the instrument of the injury, and that that instrument was a trailer, was not sufficient to warrant the application of an auto/aircraft/watercraft exclusion, where the insured clearly was no longer owning, maintaining or operating it. It is on this basis that the court found that auto exclusion did not apply and distinguished *Northbrook*, which otherwise would have applied. *Id*.

Contrary to the assertion of Pontiac and the Webster defendants, the facts in *Dare* are nothing like the facts in the instant case, and its holding does not apply here. Unlike the insured in *Dare*, Pontiac admittedly <u>owned</u>, maintained, and used the Air Tractor on the day of the crash. Thus, the key factor that the *Dare* court relied upon to distinguish that decision from *Northbrook* is not present here. While it is at least arguable under *Northbrook* that the exclusion should not apply when the insured ***no longer*** owns, maintains, or uses an excluded vehicle, this case does not present such concerns. *Dare* is a products liability case in which the trailer in question had been sold by the insured before any injury took place, while this case involves a wrongful death claim where the insured owned and was using an airplane at the time that it crashed. *Dare* is so factually distinct from this case that it would be inapplicable even in the absence of the *Northbrook* decision.

Not only does the decision in *Mount Vernon Fire Ins. Co. v. Heaven's Little Hands Day Care,* 343 Ill. App.3d 309 (1st Dist. 2003), not support the counter-plaintiffs' argument, it expressly distinguishes itself and another case relied upon by Pontiac and Webster - *U.S. Fid. & Guar. Co. v. State Farm Auto Ins. Co*., 152 Ill. App.3d 46 (Ill. App. Ct. 1987)[2] - from the case at hand. In *Mount Vernon*, an infant was inadvertently left in a parked van and died of heat stroke. The underlying complaint contained a number of counts alleging negligent supervision of the victim. The court agreed with the insured that the van was not being used at the time of the child's death, and therefore the aircraft/auto/watercraft exclusion did not apply. *Id*. at 319-320. The court went on to hold that it was the insured's failure to keep track of the children in its care that caused the child's death, and as such the claim resulted from "nonvehicular conduct." *Id*. at 319. "In short, the van is the situs, rather than the cause, of [the victim's] death." *Id*. at 320.

---

[2] This case is discussed at length in National Union's and the counter-plaintiffs previous briefs in connection with the prior motions for leave to file counterclaims. For purposes of this discussion, it should be sufficient to remind the court that this case involved a child who fell out of a moving car.

Here, Pontiac's conduct cannot be reasonably described as "nonvehicular." Unlike the insured in *Mt. Vernon*, who negligently left a child in a car, Pontiac was training Webster in its aircraft. Pontiac allowed Webster to board the aircraft, and it was pursuant to Pontiac's direction and authority that the aircraft became airborne for the purpose of flight instruction. Far from being "nonvehicular," the presence and use of the Air Tractor is at the heart of Pontiac's alleged negligence and is the direct cause of the alleged bodily injury. The Air Tractor is much more than merely the location of Webster's injuries; it is the instrumentality that caused his injuries. If Webster had not used the aircraft, he would not have died. Therefore, as *Mt. Vernon* recognizes, his injuries clearly arise from the use of an aircraft.

Counter-plaintiffs also rely on *U.S.F & G. v. State Farm Auto Ins. Co.*, 152 Ill. App.3d 46 (Ill. App. Ct. 1987). As National Union noted in its previous brief, *USF&G*'s reasoning is in doubt in light of the more recent pronouncement in *Northbrook*. However, even if the Court believes that *USF&G* can be read consistently with *Northbrook*, the *Mt. Vernon* decision in fact illustrates why it does not apply here. In *USF&G,* a child fell out of a car that the insured was driving. The jury returned a general verdict against the insured. That verdict did not specify what conduct caused the injury - the insured's negligent use of the car, (such as through reckless driving) or the insured's negligent supervision of the child. Faced with an ambiguous jury verdict, the insurer could not prove that the child's injuries did not arise out of negligent supervision of the child, which is arguably "nonvehicular" in nature.

Here, the Air Tractor cannot be the location, yet not the cause, of Webster's death (as discussed in *Mt. Vernon*). There is no possibility that any "nonvehicular" conduct caused Webster's injuries. The Webster defendants' claims of negligent training are not independent of the use of the Air Tractor under the reasoning of any Illinois case. Webster was not being taught

the history of aviation, or aerial cartography.  He was being taught to fly the Air Tractor.  One needs to fly the airplane in order to be trained.  The distinction between an infant abandoned in a car, or even dropped out of a car (both being poor, general supervision of a child with the vehicle being a fortuitous element in the chain of events leading to the injury), and a person who is being trained to fly an aircraft (where the aircraft is necessary to have the related injury) is so basic and common sense that National Union will use up no more of the Court's time illustrating it.

The authorities cited by Pontiac and the Webster defendants do not apply and certainly do not overcome the precedent set forth by *Northbrook*, an Illinois Supreme Court case that provides absolute guidance in the present case.

**D.    THE AIRCRAFT/AUTO/WATERCRAFT EXCLUSION IS NOT CONTRARY TO THE PUBLIC POLICY OF ILLINOIS.**

The Webster defendants also argue that application of the exclusion should be void on public policy grounds, without citing a single case in support of this argument.  They also fail to cite any statute or regulation in which the Illinois legislature has articulated the public policy of Illinois to be against enforcement of this basic type of exclusion.  Considering that there is an unbroken line of cases construing aircraft/auto/watercraft exclusions, and as far as National Union is aware not one of these decisions even hints that the exclusion might be contrary to public policy, this argument is without foundation in Illinois law and thus should be ignored.

The "aviation operations" coverage provided by the National Union GL policy is obviously designed as general liability/premises coverage for airport operators and fixed base operators to cover such losses as slip-and-fall injuries at the insured's business location, or other covered bodily injury or property damage that occurs in connection with the insured's

10

business[3] – other than the insured's operation of aircraft, which is covered, industry-wide, under separate policies, just as any business purchases separate coverages for general liability and automobile liability. Such coverages are evaluated, rated, and priced very differently. It would turn GL coverage on its ear to find aircraft operation coverage under such a policy.

Coverage provided under the National Union GL policy at issue is therefore no more illusory and violative of public policy than any other general liability policy issued to any other non-aviation related business containing a similar auto exclusion.

### III.    CONCLUSION

The Illinois Supreme Court's holding in *Northbrook Prop. & Cas. Co. v. Transportation Joint Agr*. controls here and clearly expresses the Illinois Supreme Court's general rejection of the counter-plaintiffs' sophistic arguments in favor of coverage based on "concurrent" negligence. The cases cited by Pontiac and the Webster Defendants either conflict with *Northbrook*, a controlling authority, or simply do not apply to the facts of this case.

For the reasons set forth above, Plaintiff National Union Fire Insurance Company of Pittsburgh, PA respectfully requests that this Court enter Judgment On the Pleadings in its favor and against Pontiac Flying Service and the Webster defendants on their respective counterclaims, and declare as follows:

- A.  That all claims and allegations made by the Webster defendants against Pontiac Flying Service, Inc. arise out of the maintenance and/or use of an aircraft as those terms are used in the aircraft/auto/watercraft exclusion in the GL policy issued by National Union;

- B.  That National Union owes no defense or indemnity obligation to Pontiac Flying Service, Inc. in connection with any lawsuit pertaining to the loss of the 1991 Air Tractor AT503A, Registration No. N503D, under the terms of National Union Policy No. AP 3388953-05; and

---

[3] It should be noted that many aviation-related businesses located at airports do not actually operate aircraft, which is another reason that aviation GL and aircraft operation coverages are purchased separately.

11

    C.    That National Union is entitled to such other relief as this Court deems necessary and proper, including an award of costs.

> NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., Plaintiff
>
>     s/ Marci M. Shoff
> Marci M. Shoff, Esq., Bar No. 6278437
> Hasselberg, Rock, Bell& Kuppler LLP
> Suite 200 Associated Bank Building
> 4600 N. Brandywine Drive
> Peoria, IL  61614-5591
> Telephone:  (309) 688-9400
> Facsimile:  (309) 688-9430
> E-mail:  mshoff@hrbklaw.com
>
> Mark T. Banovetz, Esq.
> Charmagne Topacio, Esq.
> Tressler, Soderstrom, Maloney & Priess
> Sears Tower, 22nd Floor
> 233 South Wacker Drive
> Chicago, IL  60606-6308
> Telephone:  (312) 627-4000

**CERTIFICATE OF SERVICE**

I hereby certify that on the 11th day of July, 2005, I electronically filed the foregoing **National Union's Reply in Support of Motion For Judgment on the Pleadings** with the Clerk of the Court using the CM/ECF system which will send notification of such following to the following:

David B. Mueller, Esq.
CASSIDY & MUELLER
323 Commerce Bank Building
416 Main Street
Peoria, IL  61602

Michael S. Krzak, Esq.
Kevin P. Durkin, Esq.
CLIFFORD LAW OFFICES, P.C.
120 North LaSalle Street
Suite 3100
Chicago, IL  60602

Diane M. Baron, Esq.
CLAUSEN MILLER, P.C.
10 South LaSalle Street
Chicago, IL  60603-1098

and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants:  None.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., Plaintiff,

By:   s/ Marci M. Shoff
Marci M. Shoff, Esq., Bar No. 6278437
Hasselberg, Rock, Bell & Kuppler LLP
Suite 200 Associated Bank Building
4600 N. Brandywine Drive
Peoria, IL  61614-5591
Telephone:  (309) 688-9400
Facsimile:  (309) 688-9430
E-mail:  mshoff@hrbklaw.com