**E-FILED**
Thursday, 01 December, 2005  02:29:39 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| NATIONAL UNION FIRE COMPANY OF PITTSBURGH, PA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 03-CV-01288 |
| | ) | |
| PONTIAC FLYING SERVICE, INC., JUSTYN WEBSTER and VIRGINIA WEBSTER-SMITH as Co-Personal Representatives of the Estate of NEIL WEBSTER, Deceased, and CAREN LUCENTE, as Independent Executor of the Estate of RICHARD P. LUCENTE, Deceased. | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| PONTIAC FLYING SERVICE, INC. | ) | |
| | ) | |
| Third Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HARDY AVIATION INSURANCE INC. | ) | |
| | ) | |
| Third Party Defendant. | ) | |

**JUSTYN WEBSTER AND VIRGINIA WEBSTER-SMITH'S REPLY TO HARDY AVIATION INSURANCE, INC.'S RESPONSE TO WEBSTER'S MOTION TO INTERVENE**

JUSTYN WEBSTER and VIRGINIA WEBSTER-SMITH, as Co-Personal Representatives

of the Estate of NEIL WEBSTER, Deceased, (hereinafter "WEBSTER"), by and through their

attorneys, CLIFFORD LAW OFFICES, P.C., and for their reply to Third Party Defendant, HARDY

AVIATION INSURANCE INC.'S, (hereinafter "HARDY"), response to WEBSTER'S Petition to

Intervene state as follows:

## **INTRODUCTION**

On May 23, 2005, Neil Webster, deceased, was an attendee/student of a turbine transition flight instruction and training program provided by employees of PONTIAC FLYING SERVICE, INC., (hereinafter "PONTIAC"). On that date, the air tractor in which Neil Webster was receiving training came into contact with the ground, resulting in his death. At the time of this incident, PONTIAC was insured under an insurance policy issued by National Union Fire Company of Pittsburgh, Pa. ("National"). National filed a declaratory judgment action against PONTIAC, alleging it had no duty to defend PONTIAC under the insurance policy for any actions arising out of the air crash disaster. PONTIAC then filed a Third-Party Complaint against HARDY, alleging professional negligence in failing to provide PONTIAC with proper insurance. National filed a motion for summary judgment on its declaratory judgment action against PONTIAC. That motion was granted on August 19, 2005.

Presently, PONTIAC'S Third-Party Complaint against HARDY provides WEBSTER with the only available remedy for this incident as it relates to Pontiac. As such, WEBSTER filed a petition to intervene in the Third-Party action based upon his third party beneficiary status in relation to HARDY. Third-Party Defendant responded to WEBSTER'S petition arguing that intervention is not proper for one or more of the following reasons: (1) Neil Webster, Deceased, was not a foreseeable beneficiary of the aerial application insurance policy secured by HARDY for PONTIAC; (2) *Gothberg v. Nemerovski*, 58 Ill. App. 2d 372, 208 N.E.2d 12 (1st Dist. 1965), the case upon which WEBSTER relies, is distinguishable from the case presently before the court; and (3) other jurisdictions have not allowed such suits by injured third parties against an insured's insurance

-2-

broker or agent.

Defendant's response should be disregarded, and WEBSTER should be permitted to intervene because as is more fully established below: (1) HARDY knew or should have known that the plane was being used for training purposes; (2) defendant's attempt to distinguish *Gothberg* fails; and (3) the authority relied on by HARDY from other jurisdictions is inapposite. As such, this court should grant WEBSTER'S Motion to Intervene in the Third-Party action filed by PONTIAC against HARDY.

## ARGUMENT

### A.    NEIL WEBSTER'S DEATH, AS A STUDENT PILOT IN PONTIAC'S PLANE WAS FORESEEABLE TO HARDY.

In its opposition to WEBSTER'S Intervention, response HARDY erroneously argues that the death of Neil Webster, the student pilot in the plane while it was being used in PONTIAC's flight training business, was not foreseeable to HARDY. HARDY contends that Neil Webster was not an intended beneficiary under the aerial application policy issued to PONTIAC and has no standing to intervene in this action. In coming to its conclusion, HARDY completely mis-characterizes the deposition testimony of Scott Peterson (the President of PONTIAC) and takes the deposition testimony of Sarah Petersen, (Secretary of PONTIAC) out of context.

Specifically, HARDY states that both Scott and Sarah Petersen testified that they never told HARDY they were operating a flight training business with the AT-503. In making this broad assertion, HARDY fails to acknowledge that Scott Petersen specifically informed Randy Hardy, his insurance agent, that he would need insurance coverage for using the plane for transition training. More specifically, Scott Petersen testified as follows:

Q.    Did you tell anyone at Hardy that you were using the AT-503 for turbine transition training?  (Scott Petersen Dep., p. 36, lines 2-23)(attached hereto as "Exhibit A").

A.    Yes.  Randy [Hardy] specified that when we originally bought the aircraft, that I was to have additional training in it and I told him that we would add Rick Lucente as the instructor pilot on the aircraft.

Q.    Did you have an understanding as of the date of this loss as to whether there would be liability coverage for anyone in that plane? (*Id*. at  p. 42, lines 15-18).

A.    I assumed it would be covered.  (*Id*. at p. 42, line 19).

Q.    Did you ever discuss with anyone from Hardy Aviation Insurance anything about having passenger coverage for the AT-503?  (*Id*. at p. 48, lines 8-10).

A.    The only conversation I recall is the initial with Randy when I told him that we would -- had Rick Lucente as the instructor pilot on the airplane.  (*Id*. at p. 48, lines 11-13).

Q.    For purposes of training? (*Id*. at p. 48, line 14).

A.    Instruction.  (*Id*. at p. 48, line 15).

Q.    Instruction of yourself?  (*Id*. at p. 48, line 16).

A.    **<u>Anyone, is the way that I understood it</u>**.  (*Id*. at p. 48, line 17). (emphasis added).

Q.    Did Randy tell you that?  (*Id*. at p. 48, line 18).

A.    He never said we couldn't.  (*Id*. at p. 48, line 22).

Based upon this testimony, it can not be argued that HARDY had no idea that PONTIAC would be using the AT-503 for turbine transition training and/or instruction.  In fact, Randy Hardy knew that the plane was going to be used for transition training.

Furthermore, HARDY's use of Sarah Petersen's deposition takes her knowledge of the insurance policy issued for the AT-503 out of context.  Specifically, Sarah Petersen testified as follows:

Q.    Did you request insurance for the instructional flying [for other planes Pontiac

-4-

owned]?  (Sarah Petersen Dep., p. 8, lines 16-17)(attached hereto as "Exhibit B").

A.      Yes. (*Id*. at p. 8, line 18).

Q.      And did he [Randy Hardy] obtain that for you?  (*Id*. at p. 8, line19).

A.      Yes.  (*Id*. at p. 8, line 20).

Q.      And did you contact anyone at Hardy Aviation Insurance regarding obtaining coverage for the AT-305?  (*Id*. at p. 9, line 8-9).

A.      I don't recall.  (*Id*. at p. 9, line10).

Q.      Do you know if your husband did?  (*Id*. at p. 9, line 11).

A.      Yes.  (*Id*. at p. 9, line 12).

The excerpt from Sarah Petersen's deposition illustrates that Sarah Petersen merely lacked knowledge of the insurance policy issued for the AT-503.  HARDY mis-characterizes Sarah Petersen's testimony by implying that she was involved with the issuance of the insurance policy for the AT-503 and never mentioned anything about instructional coverage to HARDY.

The deposition excerpts used by HARDY in its reply should be disregarded**.**   Moreover, Scott Petersen's deposition testimony provides ample evidence which, at a minimum, raises a question of material fact as to whether HARDY knew or should have known that the AT-503 would be used for turbine transition training.  In turn, this court should find that Neil Webster was an intended third-party beneficiary of the contract between PONTIAC and HARDY to procure insurance for turbine transition training.

**B.      THE FACTS OF *GOTHBERG* ARE ANALOGOUS TO THOSE PRESENTLY BEFORE THE COURT.**

The facts presented in *Gothberg v. Nemerovski,* 58 Ill. App. 2d 372, 208 N.E.2d 12 (1st Dist. 1965), are analogous to those presently before the court.  HARDY's attempt to distinguish *Gothberg*

-5-

fails.  In *Gothberg v. Nemerovski*, 58 Ill. App. 2d 372, 208 N.E.2d 12 (1st Dist. 1965), the court held

that an injured plaintiff bringing suit against a public liability policy applicant had a sufficient

interest in the undertaking of a broker to procure coverage to bring suit directly against the broker.

          In *Gothberg*, the plaintiff was injured in a car accident allegedly caused by the public

liability policy applicant. *Id*. at 377.  In response, the plaintiff brought suit against the applicant and

the applicant sought indemnification from his insurer.  *Id*.  The insurer argued it had no duty to

defend in the underlying action on the grounds that the policy that the applicant contracted for was

not in effect at the time of the accident.  *Id*.  The court held that the injured plaintiff had standing

to bring an action against the insurance broker for his failure to procure the proper insurance.  *Id*.

At 387.

          Moreover, the Court was not impressed with the differences between negligence and contract

theories of liability.  *Id*. at 383-384.  The court found that the defendant broker unconditionally

undertook to procure insurance on behalf of the applicant.  *Gothberg*, 58 Ill. App. 2d at 383.  As

such, the court found that either the broker's breach of contract with the plaintiff considered a third

party beneficiary or the broker's negligence in performing the contract could be the basis of liability.

*Id*. at 383-384, 19.

          The facts of this case are similar to those in *Gothberg*.  Here, WEBSTER, on behalf of Neil

Webster, Deceased, seeks to intervene in the action currently pending against HARDY for its failure

to provide PONTIAC with the insurance it sought.  Although Neil Webster was not a named

beneficiary in the contract between HARDY and PONTIAC, the intent of PONTIAC in purchasing

the policy was to provide anyone in the plane with a remedy in the event of a loss.  Neil Webster

happened to be a member of the general public injured by the negligent acts of PONTIAC.  As such,

Neil Webster had a sufficient interest in HARDY procuring the proper insurance policy for PONTIAC.

In its motion, HARDY fails to persuasively distinguish *Gothberg* from the case presently before the court. HARDY contends that *Gothberg* is not analogous to this case because *Gothberg* involved an automobile insurance policy and this case involves an aerial application policy. This distinction is not persuasive because PONTIAC contracted for the aerial application policy for the same reason the driver in *Gothberg* contracted for the automobile liability policy, to protect the interests of third parties. Stated differently, PONTIAC sought to obtain insurance on the AT-503 to protect third parties injured through its turbine-transition training. As stated earlier, Scott Petersen testified that he told Randy Hardy to add Richard Lucente as an instructor on the AT-503 insurance policy. Based upon Scott Petersen's testimony and based upon the transition training policies issued for PONTIAC's other planes[1], HARDY knew or should have known that PONTIAC wanted to insure the AT-503 with a policy that covered turbine transition training. In turn, the nominal distinction between the insurance policy in this case and the insurance policy in *Gothberg* should be disregarded. Therefore, the thrust of the court's opinion in *Gothberg*, to allow an injured third party to bring a direct action against an insurance broker for its failure to procure the proper insurance, should be applied in this case.

Moreover, HARDY argues that because there is no statute requiring insurance coverage for planes used for a flight training business, Neil Webster did not rely on the AT-503 having insurance

---

[1] According to the testimony of Scott Petersen, HARDY Aviation Insurance, Inc. supplied PONTIAC Flying Service with insurance polices for the agricultural planes and for the instruction planes prior to the purchase of the AT-503. In turn, HARDY was aware that flight training occurred at PONTIAC Flying Service. (*See* Scott Petersen Dep., p. 17-18).

coverage. HARDY's argument fails based upon *Flattery v. Gregory*, 397 Mass.143, 489 N.E.2d 1257 (1986), a case cited by HARDY in its response. In *Flattery*, the Supreme Court of Massachusetts held that an injured driver was an intended beneficiary of a contract wherein the agent promised to obtain **optional** liability coverage on the insured's vehicle. *Id*. at 149, 1262. In other words, the *Flattery* court recognized that, statutorily required or not, the injured third party was an intended beneficiary of the contract for insurance. Therefore, even though there is no statute requiring insurance coverage for planes used for flight training, Webster was a third party beneficiary of the **optional** coverage PONTIAC sought for the AT-503. Accordingly, HARDY's argument fails.

### C. HARDY HAS FAILED TO CITE ANY CONTROLLING AUTHORITY TO BOLSTER ITS POSITION.

In its response, HARDY fails to cite any controlling authority to bolster its position. Instead, HARDY relies on cases from other jurisdictions, *Oathout v. Johnson*, 451 N.Y.S.2d 932, 88 A.D.2d 101 (3rd Div. 1982) and *Halali v. Vista Environments, Inc.*, 666 N.Y.S.2d 196, 245 A.D.2d 422 (2nd Div. 1997), two New York cases, *Oliver v. Natchitoches Air Center, Inc.*, 506 So.2d 558 (C.A. La. 1987), a Louisiana case, and *Flattery v. Gregory*, 397 Mass.143, 489 N.E.2d 1257 (1986) and *Quigley v. Bay State Graphics*, 427 Mass. 455, 693 N.E.2d 1368 (1998), two Massachusetts cases, to argue that this court should not recognize Webster as an intended third party beneficiary of the contract for insurance between PONTIAC and HARDY. HARDY correctly points out that the *Oathout*, *Halali*, *Oliver, Flattery*, and *Quigley* courts found that a duty directly assumed to benefit one person does not extend to third persons who are not intended beneficiaries of the undertaking to perform, even if it is foreseeable that someone else might be damaged by malfeasance. However, those opinions should be disregarded because the Illinois Supreme Court expressly recognized that

-8-

an injured plaintiff has standing to bring an action against an insurance broker for his failure to procure the proper insurance in *Gothberg*. *Gothberg,* 58 Ill. App. 2d at 387, 208 N.E.2d at 15. This case is governed by Illinois law, therefore, New York, Louisiana and Massachusetts law should not be considered where Illinois law directly answers the issue at hand.

In addition, *Oathout v. Johnson*, 451 N.Y.S.2d 932, 88 A.D.2d 101 (3rd Div. 1982), *Halali v. Vista Environments, Inc.*, 666 N.Y.S.2d 196, 245 A.D.2d 422 (2nd Div. 1997), *Oliver v. Natchitoches Air Center, Inc.*, 506 So.2d 558 (C.A. La. 1987) and *Flattery v. Gregory*, 397 Mass.143, 489 N.E.2d 1257 (1986) and *Quigley v. Bay State Graphics*, 427 Mass. 455, 693 N.E.2d 1368 (1998) are distinguishable from the case presently before the court.

In *Oathout v. Johnson*, 451 N.Y.S.2d 932, 88 A.D.2d 101 (3rd Div. 1982), the defendant insurance broker agreed to procure insurance for its insured's new taxi-cab, but failed to timely contact the insurance agency to begin the insurance policy. In the interim, plaintiff was injured while riding in the uninsured taxi-cab. *See Id*. at 933, 1010. Here, HARDY was insuring the plane at the time of the incident; however, HARDY failed to procure the type of insurance requested by Pontiac, its insured. HARDY did not fail to begin the insurance policy on the AT-503 in a timely manner as the broker did in *Oathout*.

*Oliver v. Natchitoches Air Center, Inc*., 506 So.2d 558 (C.A. La. 1987) is similarly distinguishable from this case. In *Oliver*, the defendant insurance broker negligently cancelled the insurance policy providing coverage for an airplane. *See Id*. at 559. After the policy was cancelled, plaintiff was injured in an airplane crash involving the uninsured plane. *See Id*. Here, HARDY did not negligently cancel the insurance policy covering the AT-503. Instead, HARDY failed to procure the type of insurance Pontiac requested for the plane.

-9-

*Halali v. Vista Environments, Inc*, 666 N.Y.S.2d 196, 245 A.D.2d 422 (2nd Div. 1997), is also distinguishable based upon the nature of the claim the court decided. In *Halali*, the court addressed whether an insurance broker could maintain a claim against its insurance underwriter for the alleged inadequate procurement of an insurance policy. *See Id*. at 196, 423. Here, the issue is not whether HARDY, the insurance broker, can maintain a claim against its underwriter, the issue in this case is whether Neil Webster, the injured third party, can intervene in the action against HARDY.

Moreover, HARDY erroneously relies on *Flattery v. Gregory*, 397 Mass.143, 489 N.E.2d 1257 (1986). In *Flattery,* the Massachusetts Supreme Court Supreme Court held that a driver injured in an automobile accident involving an insured's vehicle was an intended beneficiary of the alleged contract pursuant to which insured's agent agreed to obtain **optional** liability coverage on insured's vehicle, and thus, injured driver was entitled to assert a claim against the insured's agent. *Flattery*, 397 Mass. at 150. As such, HARDY's use of *Flattery* for the proposition that other jurisdictions' courts do not recognize injured parties as intended third party beneficiaries to contracts for insurance is misplaced.

In addition, *Quigley v. Bay State Graphics*, 427 Mass. 455, 693 N.E.2d 1368 (1998) is readily distinguishable from the case presently before this Court. In *Quigley* a lessee of commercial property was required by the terms of the lease agreement to obtain insurance for the premises and to include the owner of the premises (the plaintiff) as an insured. *Quigley*, 427 Mass. at 457. The lessee obtained insurance and instructed the insurer not to add the owner of the premises as an insured. *Id*. Thereafter, the building was damaged by fire and the plaintiff owners filed suit against the insurer for failure to procure the proper insurance. *Id*. 459, 1371. The court dismissed the action

finding that the owner was not an intended third party beneficiary of the policy because the lessee specifically told the insurer not to include the owner as an insured. *Id*. at 461-462. The facts of this case are distinguishable from the facts in *Quigley*. Here, PONTIAC intended to obtain an insurance policy from HARDY covering third parties who could be injured through the flight training program. HARDY knew, or should have known, that PONTIAC sought such a policy. In contrast, the insured in *Quigley* specifically told its insurer <u>not to add the injured party</u> as an insured on the contract. As such, the plaintiff in *Quigley* was not a foreseeable beneficiary to the contract for insurance. Here, Webster was a foreseeable beneficiary of the contract procured by HARDY to PONTIAC for insurance of the AT-503. Therefore, this court should grant WEBSTER's motion to intervene in the current action.

## **CONCLUSION**

WHEREFORE, JUSTYN WEBSTER and VIRGINIA WEBSTER-SMITH, as Co-Personal Representatives of the Estate of NEIL WEBSTER, Deceased, pray that this court grant their petition to intervene in the action against HARDY AVIATION INSURANCE, INC.


Respectfully Submitted,


s/ Michael S. Krzak
Michael S. Krzak Atty Bar No: 6243295
Clifford Law Offices, P.C.
120 North LaSalle Street
Suite 3100
Chicago, Illinois 60602
Telephone: (312) 899-9090
Fax: (312) 251-1160
E-mail: <u>msk@cliffordlaw.com</u>

-11-