UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| NATIONAL UNION FIRE COMPANY OF PITTSBURGH, PA, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | )    No. 03-CV-01288 ) |
| PONTIAC FLYING SERVICE, INC., JUSTYN WEBSTER, as Special Administrator of the Estate of NEIL WEBSTER, Deceased, and CAREN S. LUCENTE, as Independent Executor of the Estate of RICHARD P. LUCENTE, Deceased, | ) ) ) ) ) ) ) |
| Defendants, | ) ) |
| and | ) ) |
| PONTIAC FLYING SERVICE, INC., | ) ) |
| Third Party Plaintiff, | ) ) |
| vs. | ) ) |
| HARDY AVIATION INSURANCE, INC., | ) ) |
| Third Party Defendant. | ) |

**RESPONSE TO MOTION TO STRIKE**

Now comes the Defendant and Third Party Plaintiff, PONTIAC FLYING SERVICE, INC., ("PONTIAC FLYING") by its attorney, DAVID B. MUELLER of the firm of CASSIDY & MUELLER, and for response to the Motion to Strike of the Third Party Defendant, HARDY AVIATION INSURANCE, INC., ("HARDY"), states:

1.    HARDY has filed a motion to strike the Rule 36 requests which were served upon it by PONTIAC FLYING on January 20, 2006. The basis of the objection is that discovery had

been "cut off" prior to September 9, 2005. PONTIAC FLYING submits that the Rule 36 requests were served for evidentiary purposes as opposed to discovering additional facts which might lead to matters which would be admissible at trial. Specifically, the requests are intended and limited to:

> (a) eliminating the need for foundation on what should be uncontested exhibits, and
>
> (b) eliciting admissions of what should be undisputed facts.

In these respects the following background is helpful.

2. One of the issues in dispute is whether or not HARDY knew that PONTIAC FLYING was using the two-seated dual control AT503 for transition training of pilots. In that regard HARDY testified in his deposition:

> Q. And if you had known that they were using the plane for turbine transition training, is that something that you would have brought to their attention regarding coverage for that use?
> A. Yes.
> Q. And would that be a part of the monitoring responsibility that you have?
> A. Yes.
> Q. So it is your testimony that you didn't know that they were using it for transition training and that, therefore, didn't bring it to their attention prior to May 5th of 2003?
> A. Yes. (Dep. pp. 78-79).

3. In attempting to show that HARDY had that knowledge he was shown the April, 2003 issue of a trade publication to which he subscribed and in which he advertised, known as **AG AIR UPDATE**. At his deposition the issue which was then available showed that HARDY had an ad in that publication which also contained an advertisement by PONTIAC FLYING for turbine transition training. In fact, as the following testimony reflects, the two "ads" were directly opposite each other:

> Q. Randy, I'll show you Exhibit G. I'm, going to short-circuit this. Is that a copy of your ad from the magazine?

|   |   |   |
|---|---|---|
| | A. | Yes. |
| | Q. | And that's the April, 2003, volume? |
| | A. | Yes. |

(Marked for identification Deposition Exhibit G-1.)

BY MR. MUELLER:

| | | |
|---|---|---|
| | Q. | On Page 3A, and I'm referring you to Exhibit G-1, what do we have? |
| | A. | We have a lot of advertisement and some script on the next page. |
| | Q. | And is among the advertisements on Page 3A directly opposite your ad one for turbine transition training for Pontiac Flying Service? |
| | A. | Yes. |
| | Q. | And is it your testimony then that you never read this Ag Air Update either? |
| | A. | I have no idea. |
| | Q. | Well, if you read the Ag Air Update April, 2003, would you agree that in opening the magazine up you would have on your right-hand side the turbine transition training ad of Pontiac Flying Service and directly opposite that your own ad for Hardy Insurance on the left-hand side? |
| | A. | Is your question if I read it? |
| | Q. | No. My question is if you opened it up assuming that you read it, you would have before you on the right-hand side the Petersens' ad and directly opposite that on the left-hand side your ad; correct? |
| | A. | Tell you what I'm going to do. I'm going to take a straight edge here and run it across from the Hardy – from the Petersen ad on the right-hand side to the Hardy ad on the left-hand side. Would you agree that they're directly opposite each other? |
| | Q. | On different pages. |
| | A. | Would I agree to that, yes. Eleven inches to be exact. (Dep. pp. 83-84).[1] |

   4.  HARDY testified that he did not recall reading that issue and did not see the PONTIAC FLYING advertisement for turbine transition training. Follow-up questioning left open the issue of why he would advertise in a trade publication which he never read.

   5.  Subsequent to the deposition PONTIAC FLYING and its counsel obtained additional copies of **AG AIR UPDATE** for the months between the acquisition of the AT503 and the accident. The Rule 36 requests are directed seriatim to each of those issues and seek to obviate the need to provide foundation for the genuineness of the copies which are described and the fact that HARDY had advertisements in each, as did PONTIAC FLYING.

---

[1] Attached to this RESPONSE is a copy of those advertisements as they appear in the April 2003 issue.

6. The purpose of the requests is also to elicit evidentiary admissions that in addition to advertising in **AG AIR UPDATE** for each of the months in question, HARDY actually read one or more of the publications.

7. The evidentiary significance of the requests, in contradistinction to the information gathering objectives of discovery generally is made abundantly clear by subsection (b) which provides:

> (b) **Effect of Admission**. Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission. Subject to the provision of Rule 16 governing amendment of a pre-trial order, the court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits. Any admission made by a party under this rule is for the purpose of the pending action only and is not an admission for any other purpose nor may it be used against the party in any other proceeding.

8. While Rule 36 appears in the discovery sections of the rules, it serves a hybrid function. As appears in the following comment to the rule admissions separate disputed issues from those which are not in controversy as well as streamlining the evidence which is required to prove or disprove those which remain:

> Rule 36 serves two vital purposes, both of which are designed to reduce trial time. Admissions are sought, first to facilitate proof with respect to issues that cannot be eliminated from the case, and secondly, to narrow the issues by eliminating those that can be.

9. PONTIAC FLYING submits that Rule 36 requests such as those *sub judice* serve the issue distilling and proof refining objectives for which the rule was adopted.

10. Admittedly, the authorities which have considered the issue are not uniform in deciding whether requests under Rule 36 are discovery tools or evidentiary aids which simplify the trial of a case. **Evidentiary:** *O'Neill v. Medad*, 166 FRD 19, 21-22 (ED Mich., 1996);

*Carousel Candy Co., Inc. v. Weber*, 38 BR 927, 936 (ED NY, 1984); *McLaughlin v. Drackett Products Co.*, 20 Fed. Rules Serv.2d 1081 (D. Mass, 1975) and *Misco, Inc. v. United States Steel Corp.*, 784 F.2d 198 (6 Cir., 1986); **Discovery:** *Bieganek v. Wilson,* 110 Frd 77, 78 (ND Ill., 1986); **Commentary**: Moore's Federal Practice (Third Ed.), Vol. 7, §§ 36.02 and 36.03.

11.    The pending objections are purely procedural and relate to whether the requests are timely. They contain no indication of whether or not HARDY intends to dispute or contest the existence of the publications and their contents. Nor was any substantive reason given as to why he either cannot or is unwilling to admit or deny that he read all or any of them. Therefore, if the motion to strike is allowed those issues will be preserved for trial, when they could otherwise be obviated.

12.    As discussed above, PONTIAC FLYING's intention in serving the requests was to elicit the admission of what appear to be undisputed facts. At a minimum, these are the type of facts which the court would expect to be stipulated or, if not stipulated, then identified as "contested" in the final pretrial order.

WHEREFORE, Defendant and Third Party Plaintiff, PONTIAC FLYING SERVICE, INC., prays that HARDY's MOTION TO STRIKE be denied in its entirety or, alternatively, that HARDY be required to admit or deny the genuineness of the publications and the fact that he read them.

                                        CASSIDY & MUELLER

                                        By: s/  DAVID B. MUELLER
                                              Attorneys for Defendant and
                                              Third Party Plaintiff,
                                              PONTIAC FLYING SERVICE, INC.

CERTIFICATE OF SERVICE

      I hereby certify that on March 2, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Mr. Jeffrey B. Rock | jrock@hrbklaw.com, cpoehlman@hrbklaw.com |
| Ms. Diane M. Baron | dbaron@clausen.com, pkebr@clausen.com |
| Mr. Michael S. Krzak | msk@cliffordlaw.com, jmg@cliffordlaw.com |
| Kevin P. Durkin | kpd@cliffordlaw.com; jg@cliffordlaw.com |
| Mark T. Banovetz | mbanovetz@tsmp.com |

And I hereby certify that I have mailed by United States Postal Service the document to the foregoing non CM/ECF participants:

      s/DAVID B. MUELLER
      David B. Mueller - #01980661
      CASSIDY & MUELLER
      416 Main Street, Suite 323
      Peoria, IL 61602
      Telephone: 309/676-0591
      Fax: 309/676-8036
      E-mail: dmueller@cassidymueller.com