**E-FILED**
Thursday, 06 July, 2006  04:23:35 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | | |
|---|---|---|
| NATIONAL UNION FIRE CO. OF PITTSBURGH, PA, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 03-1288 |
| PONTIAC FLYING SERVICE, INC., JUSTYN WEBSTER and VIRGINIA WEBSTER-SMITH as Co-Personal Representatives of the Estate of NEIL WEBSTER, Deceased, and CAREN LUCENTE, as Independent Executor of the Estate of RICHARD P. LUCENTE, Deceased, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |
| and | ) ) | |
| PONTIAC FLYING SERVICE, INC., | ) ) | |
| Third Party Plaintiff, | ) ) | |
| v. | ) ) | |
| HARDY AVIATION INSURANCE, INC., | ) ) | |
| Third Party Defendant. | ) | |

## <u>ORDER</u>

Before the Court is Magistrate Judge Byron G. Cudmore's Report and Recommendation ("R & R") [Doc. #98], which addresses Defendants, Justyn Webster and Virginia Webster-Smith's ("Webster's estate") Motion to Intervene [Doc. #91] in the third-party suit filed by Pontiac Flying Services Inc., ("Pontiac") against Hardy Aviation Insurance ("Hardy"). For the

reasons that follow, the Court will adopt Magistrate Judge Cudmore's R & R.

## I.
## BACKGROUND

In September 2003, National Union Fire Company of Pittsburgh ("National Union") initiated this case against Pontiac, seeking a declaration that it owed no duty to indemnify Pontiac for the loss of its aircraft -- the Air Tractor 503 -- which crashed in May 2003, killing both instructor pilot Richard Lucente and student pilot Neil Webster.  See [Doc. #86]. Pontiac responded in part by filing a third-party complaint against insurance broker Hardy, for failing to procure both property and liability insurance to cover the incident.  See [Doc. #8]

In April 2004, Webster's estate filed negligence claims in state court against Pontiac and others.  This prompted National Union, in June 2004, to add Webster's and Lucente's Estates as defendants to the action against Pontiac, and to seek a declaration that National Union owed no duty to indemnify or defend against Webster's state court claims.

Later, on August 19, 2005, this Court granted summary judgment in favor of National Union, holding that National Union had no duty to indemnify or defend Pontiac for loss of the aircraft or for Webster's claims.  That ruling left only one

claim in this case -- Pontiac's third-party claim against Hardy for failing to procure insurance coverage.

Finally, on October 4, 2005, Webster's estate filed the instant Motion to Intervene, seeking "to recover damages for the agent's failure to provide liability coverage under the National Union aerial application policy."

After reviewing the record, Magistrate Judge Cudmore concluded that Webster's estate had not fulfilled all of the requirements for intervention as of right under Rule 24(a) of the Federal Rules of Civil Procedure, specifically, the requirement that Webster show that his interest could not be adequately represented by Pontiac. Magistrate Judge Cudmore further concluded that while Webster would most likely be able to intervene permissively under Rule 24(b), he failed to show his motion was timely, which is required under both Rule 24(a) and 24(b). Accordingly, Magistrate Judge Cudmore recommended that the Motion to Intervene filed by Webster's estate be denied.

Webster, in turn, has filed timely written objections to Magistrate Judge Cudmore's R & R.

## II.
## LEGAL STANDARD

Within ten working days after being served with a copy of a magistrate judge's R & R, any party to the action may serve and file written objections to the magistrate judge's proposed

findings and recommendations.  28 U.S.C. § 636 (b)(1);  Fed. R.
Civ. P. 72(b).  However, as the Seventh Circuit has pointed out,
Rule 72(b) contemplates "written, specific objections" to the
report and recommendation.  Johnson v. Zema Sys. Corp., 170 F.3d
734, 739 (7th Cir. 1999).

Therefore, a district court reviews *de novo* only "those
portions of the magistrate judge's [proposed findings and
recommendations] to which specific written objection is made."
Id.  In doing so, the district judge should "give fresh
consideration to those issues" by "consider[ing] the record
which has been developed before the magistrate and mak[ing] his
own determination on the basis of that record, without being
bound to adopt the findings and conclusions of the magistrate."
United States v. Raddatz, 447 U.S. 667, 675 (1980).  In other
words, "[a] judge of the court may accept, reject, or modify, in
whole or in part, the findings or recommendations made by the
magistrate.  The judge may also receive further evidence or
recommit the matter to the magistrate with instructions."  Id.
at 674 (quoting 28 U.S.C. § 636(b)(1)).

If no objection or only partial objection is made, the
district court judge reviews those unobjected portions of the
magistrate judge's proposed findings and recommendations for
clear error.  Johnson, 170 F.3d at 739.  As a result, failure to
timely object in the district court constitutes a waiver of any

objection on appeal.   See id.; Video Views Inc. v. Studio 21 Ltd., 797 F.2d 538 (7th Cir. 1986).

## III.
### ANALYSIS

In his R & R, Magistrate Judge Cudmore concluded that intervention as of right was not warranted under Rule 24(a), because Pontiac was already adequately representing the interest of Webster's estate.   Although Magistrate Judge Cudmore noted that under different circumstances Webster's estate might have been able to intervene permissively, he ultimately concluded that the Motion to Intervene was not timely under both Rule 24(a) and 24(b).   He therefore recommended that Webster's estate not be allowed to intervene.   For the reasons stated below, this Court agrees with Magistrate Judge Cudmore's recommendation.

### TIMELINESS FACTOR

"The purpose of the [timeliness] requirement is to prevent a tardy intervenor from derailing a lawsuit within the sight of the terminal." Sokaogon Chippewa Cmty. v. Babbitt, 214 F.3d 941, 949 (7th Cir. 2000) (internal quotations omitted). "Whether a motion to intervene was made in a timely fashion is determined by reference to the totality of the circumstances[,]" Shea v. Angulo, 19 F.3d 343, 348 (7th Cir. 1994) (citations omitted), and is "committed to the sound discretion of the district judge[,]" South v. Rowe, 759 F.2d 610, 612 (7th Cir. 1985).

Therefore courts often look to four factors when considering whether a motion to intervene is timely: "(1) the length of time the intervenor knew or should have known of his interest in the case, (2) the prejudice caused to the original parties by the delay, (3) the prejudice to the intervenor if the motion is denied, and (4) any other unusual circumstances." <u>Reid L. v. Illinois State Bd. Of Educ.</u>, 289 F.3d 1009, 1018 (7th Cir. 2002) (citing <u>Ragsdale v. Turnock</u>, 941 F.2d 501, 504 (7th Cir. 1991)).

1.  <u>*The length of Time Webster's Estate Knew or Should Have Known of their Interest in the Case*</u>.

The issue to be determined under this factor is at what point-in-time did Webster's estate learn that its interest "might" be impaired.  <u>See</u> <u>Babbitt</u>, 214 F.3d at 949.  As the Seventh Circuit has made abundantly clear, "[a]s soon as a prospective intervenor ***knows or has reason to know*** that his interests ***might*** be adversely affected by the outcome of the litigation he ***must move promptly*** to intervene."  <u>Id.</u> (emphases added) (quoting <u>United States v. South Bend Cmty. Sch. Corp.</u>, 710 F.2d 394, 396 (7th Cir. 1983).

However, "we don't want a rule that would require a potential intervenor to intervene at the drop of a hat; that would just clog the district courts with motions to intervene." <u>Aurora Loan Servs., Inc. v. Craddieth</u>, 442 F.3d 1018, 1027 (7th

6

Cir. 2006) (holding that in the absence of any prejudice to the original parties, a mere six-week delay would not necessarily be untimely). But, unlike in <u>Craddieth</u>, -- where the intervenor's interest was merely speculative up until six-weeks prior to seeking intervention -- Webster's estate did not seek intervention until over a year after their need became urgent.

Webster's estate argues that it was not necessary to intervene in the third-party action until after this Court granted National Union's motion for summary judgment on August 19, 2005--which held that National Union had no duty to defend Pontiac in any action arising from the plane crash. The Webster's argue that prior to this Court's decision in favor of National Union, they had no reason to know that their interests "might" be adversely affected. In other words, Webster's estate argues that their interest in the third-party action did not arise until this Court found that National Union had no duty to defend Pontiac in any action brought by Webster's estate. This contention, however, is incorrect. The Webster's interest in the third-party action became urgent as soon as they became a party to the National Union suit.

On September 9, 2003, National Union initiated a suit against Pontiac, seeking a declaration that it owed no duty to indemnify Pontiac for the loss of its aircraft (the Air Tractor 503), which crashed in May of 2003. On October 30, 2003,

Pontiac instituted a third-party suit against Hardy, claiming that -- in the event that this Court found in favor of National Union, on its claims against Pontiac regarding its duty to defend Pontiac in any suit arising from the plane crash -- Hardy was negligent in failing to procure sufficient insurance to cover the accident. Then, in June 2004, after Webster's estate filed suit against Pontiac in state court, National Union filed a motion for leave to amend its complaint -- adding Webster as a party to the National Union suit. See [Doc. #31]. This Court granted National Union's request to amend its complaint on June 21, 2004, and, one week later, Webster's estate was provided with notice of its addition to the instant case by being served with a summons. See [Doc. #28].

It is at this point-in-time that Webster's estate's interest in Pontiac's third-party claim against Hardy was no longer speculative; but, instead had indeed become urgent. As Magistrate Judge Cudmore correctly pointed out, when Webster's estate became a party to the National Union case, it should have known at that time that National Union might win, thereby leaving only Pontiac's claim against Hardy to be decided by this Court. See [Doc. #98, pg. 8]. However, Webster's estate did not move to intervene in Pontiac's action against Hardy until October, 2005; more than a year later.

The determination as to when a potential intervenor's interest is indeed urgent is a question to be left to the sound discretion of the district judge.  See South v. Rowe, 759 F.2d at 612.  And here, it is difficult for the Court to understand how Pontiac was able to clearly recognize that it had an urgent interest in seeking a third-party claim against Hardy for failing to obtain the proper insurance coverage, but yet, Webster's estate was not able to come to the same realization until over a year later.

2.  *Prejudice Caused to the Original Parties by the Delay.*

In regards to the prejudice prong of the timeliness test, this Court is convinced that allowing Webster's estate to intervene at such a late stage in the litigation would cause prejudice to the original parties.  In fact, the Webster's delay in intervening has already caused prejudice to the original parties.

In a Text Order dated September 9, 2005, Magistrate Judge Cudmore pointed out that fact discovery for Pontiac's third-party action against Hardy was closed.  He also set the deadline for expert discovery to be closed on December, 16, 2005, and the deadline for all dispositive motions to be filed by January 13, 2006.  Furthermore, he stated that the final pretrial and trial dates would be set as soon as the dispositive motion deadline had run.  However, as a result of the Webster's year-long delay

in petitioning to intervene, the remaining deadlines have all
been stayed.

Therefore, Pontiac and Hardy have undoubtedly been
prejudiced by not being able to resolve the third-party claim in
a timely manner, not to mention the fact that evidence becomes
stale and less reliable over time.  Furthermore, the original
parties to the third-party claim will undoubtedly continue to be
prejudiced if the Webster's are permitted to intervene -- as
this will cause even further delay in the resolution of an
already prolonged case.[1]

3.  *Resulting Prejudice to Webster's estate if the Court Denies*
    *Intervention.*

Although Webster's estate may be prejudiced if denied the
right to intervene, this prejudice is slight in comparison to
the totality of the circumstances.  Despite the Webster's
contention, a denial of their petition to intervene will not
foreclose their ability to recover damages resulting from the
plane crash.  In fact, Webster's estate already has a suit
pending against Pontiac in state court that would allow them to
adequately protect their interest.

Furthermore, it is unclear as to whether Webster's estate

---

[1] As Magistrate Judge Cudmore correctly pointed out, allowing
Webster's estate to intervene "would insert new and potentially
thorny legal issues into this litigation—primarily, whether
[Webster's estate can be deemed a third-party beneficiary to the
National Union—Pontiac insurance policy]." [Doc. #98, pg. 9].

even has a valid third-party claim against Hardy that would be prejudiced by an unfavorable decision in the instant action. As this Court concluded in its Order dated August 19, 2005, Webster was considered to be a "passenger" on the Air Tractor 503 (excluding him from coverage under the insurance policy) and, therefore, was not an intended third-party beneficiary to the insurance contract between National Union and Pontiac. <u>See</u> [Doc. #86].

Thus, in an attempt to circumvent the general rule that "[o]nly third parties who are direct beneficiaries have rights under a contract[,]" <u>see</u> <u>155 Harbor Drive Condo. Ass'n v. Harbor Point, Inc.</u>, 209 Ill. App. 3d 631, 646 (1st Dist. 1991), Webster's estate relies on an Illinois public policy exception articulated in <u>Gothberg v. Nemerovski</u>, 58 Ill. App. 2d 372 (1st Dist. 1965). The <u>Gothberg</u> decision, however, appears to apply only to automobile liability insurance policies.[2] <u>See id.</u> at 685-87. Indeed, subsequent Illinois cases have indicated that this exception should be limited to such policies. <u>See</u> <u>Caswell v. Zoya Int'l</u>, 274 Ill. App. 3d 1072, 1076 (1st Dist. 1995); <u>Harbor Point</u>, 209 Ill. App. 3d at 647; <u>Pratt v. Andrews</u>, 164

---

[2] In <u>Gothberg</u>, the court held that "[b]ecause of the peculiar significance of automobile liability insurance[,]" such policies have "connotations extending to the general public above and beyond the private interests of the two contracting parties." <u>Id.</u> at 385-86. As a result, the general public is automatically deemed a third-party beneficiary to an automobile liability insurance policy. <u>See id.</u> at 385-87.

Ill. App. 3d 606, (1st Dist. 1987). Therefore, it is questionable whether Webster's estate even has a cause of action against Hardy -- making any possible prejudice against Webster's estate slim at most.

In summary, since Webster's estate can still recovery damages in the state court action and, there are no other unusual circumstances counseling in favor of intervention, any possible prejudice to Webster's estate "is not the kind of prejudice that should weigh in favor of a long-delayed motion for intervention." See Reid L., 289 F.3d at 1018. As the Supreme Court has recognized, even a 17-day delay in intervention may be deemed untimely where it is incumbent upon potential interveners to take steps to protect their interests. See N.A.A.C.P. v. New York, 413 U.S. 345, 367 (1973). As such, this Court finds that the Webster's year-long delay in filing their Motion to Intervene [Doc. #91] is untimely, and therefore must be denied.


IT IS THEREFORE ORDERED that Magistrate Judge Cudmore's Report & Recommendation is ADOPTED and the Motion to Intervene filed by Webster's estate is DENIED.


ENTERED this  6th  day of July, 2006.

                              /s/ Joe B. McDade
                              Joe Billy McDade
                        United States District Judge


12