**E-FILED**
Friday, 01 September, 2006  02:31:46 PM
Clerk, U.S. District Court, ILCD

<u>**THIRD PARTY DEFENDANT'S
EXHIBIT NO. 2**</u>

  

**AMERICAN HOME COMPANY**
ASSURANCE COMPANY
NEW YORK, NEW YORK · A CAPITAL STOCK COMPANY FOUNDED 1903

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.
70 PINE STREET, NEW YORK, N.Y. 10005

THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA

**PART 2**                                    **DECLARATIONS**
Policy Number ___AV 3391999-04___          Previous Policy Number ___AV 3391999-03___

This page with "Policy Provisions -- Part 1" Form AG01(9/98) and all endorsements attached hereto completes this numbered aviation physical damage and liability policy, issued by the company as indicated by an "X" in the box to the left of the company's name (hereinafter called the Company).

**CERTIFIED COPY**

- [ ] AMERICAN HOME ASSURANCE COMPANY
- [X] NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.
- [ ] THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA

**ITEM 1.**  PONTIAC FLYING SERVICE, INC.
                NAMED INSURED
                15755 E 2000 NORTH ROAD, PONTIAC, IL  61764
                ADDRESS

**ITEM 2.**  Policy Period:  From ___MAY 19, 2002___ to ___MAY 19, 2003___ 12:01 A.M. Standard Time at the address in Item 1.  The insurance afforded is only with respect to such and so many of the following coverages as are indicated by specified premium charge or charges.  The limit of the Company's liability against such coverage shall be as stated herein, subject to all of the terms of this policy having reference thereto.

| ITEM 3.  Liability Coverages | LIMITS OF LIABILITY | | LIABILITY PREMIUMS |
|---|---|---|---|
| | NON-CHEMICAL | CHEMICAL | |
| A. Bodily Injury -- excluding Passengers | $ 100,000. each person<br>300,000. each occurrence aggregate | $ 100,000. each person<br>300,000. each occurrence<br>300,000. aggregate | $ 3,407. |
| B. Property Damage | 100,000. each occurrence aggregate | 100,000. each occurrence<br>100,000. aggregate | 6,328. |
| C. Passenger Liability | each person<br>each occurrence | Not applicable<br>Not applicable | |
| D. Single Limit -- Property Damage & Bodily Injury, excluding Passengers | each occurrence aggregate | each occurrence aggregate | |
| E. Medical Expense -- excluding Crew | each person<br>each occurrence | Not applicable<br>Not applicable | |

Chemical Limits of Liability are part of and not in addition to the Non-chemical Limits of Liability.   LIAB. TOTAL $ 9,735.
All liability arising from any one occurrence shall not exceed the Non-chemical Limits of Liability.

**ITEM 4.**   Description of Aircraft and Physical Damage Coverage hereunder:

| F.A.A. CERT. NO. | MAKE AND MODEL | YEAR BUILT | SEATS PASS | INSURED VALUE | COVERAGE PHYSICAL DAMAGE | COVERAGE CHEM | PHYSICAL DAMAGE PREMIUMS | DEDUCTIBLES NOT IN MOTION | DEDUCTIBLES IN MOTION, INGESTION, OR MOORING |
|---|---|---|---|---|---|---|---|---|---|
| N503D | AIR TRACTOR 503 | 91 | 0 | $ 350,000. | F | CC | $ 21,030. | 500. | $ 35,000. |
| N48468 | AG CAT G164A | 76 | 0 | 90,000. | F | CC | 6,412. | 500. | 9,000. |
| N8762H | AG CAT G164A | 75 | 0 | 45,000. | H | N/A | 1,385. | 500. | N/A |

| PHYSICAL DAMAGE Coverage Identified: | CHEMICAL CATEGORY: | PHYSICAL DAMAGE TOTAL | POLICY PREMIUM |
|---|---|---|---|
| F. All Risks: Ground & Flight<br>G. All Risks: Not In Flight<br>H. All Risks: Not In Motion | CC Comprehensive Chemical<br>RC Restricted Chemical<br>XC Excluding Chemical<br>N/A Not Applicable | $ 28,827. | $ 38,562. |

**ITEM 5.**   When in flight the aircraft will be piloted only by SEE AG018

**ITEM 6.**   The aircraft will be used only for the purpose Aerial Application.

**ITEM 7.**   LOSS PAYABLE: Any loss under coverage F, G, and H is payable as interest may appear to the Named Insured and

**ITEM 8.**   The aircraft will be principally based at ___PONTIAC MUNICIPAL___ Airport, ___PONTIAC___ City, ___IL___ State.

Producer  HARDY AVIATION INSURANCE, INC

Countersigned _____

At _____

By _____
        (Authorized Representative)

Approved By _____
                    (Authorized Representative)


EXHIBIT
_A_

AG04 (9/98)

CERTIFIED COPY

## DEDUCTIBLE LIABILITY INSURANCE ENDORSEMENT

In consideration of __Included_____ premium of $ __Included_____ , this policy is amended as follows:

### SCHEDULE

| COVERAGE | AMOUNT AND BASIS OF DEDUCTIBLE |
|---|---|

Coverage B.
    **Property Damage** Liability
        Arising from **Chemicals**         $ 1,000._____ each occurrence
        Arising from other than **Chemicals**    $ 250._____ each occurrence

Coverage D.
    **Property Damage** Liability
        Arising from **Chemicals**         $ Not Covered_____ each occurrence
        Arising from other than **Chemicals**    $ Not Covered_____ each occurrence

APPLICATION OF ENDORSEMENT (Enter below any limitations on the application of this endorsement. If no limitation is entered, the deductibles apply to damages for all **property damage**, however caused):

1.  The obligation of the Company under Coverage B or D to pay damages on behalf of the **Insured** applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as applicable to such coverages, and the limits of insurance applicable to each **occurrence** for such coverages will be reduced by the application of such deductible amount.

2.  The deductible amounts stated in the Schedule apply as follows:

        **Per Occurrence Basis** - if the deductible is on a per **occurrence** basis, the deductible amount applies under Coverage B or D to all damages because of **property damage** as the result of any one **occurrence** regardless of the number of persons or organizations who sustain damages because of that **occurrence**.

3.  The terms of this insurance, including those with respect to:

    A)  the Company's right and duty to defend any suits seeking those damages, and

    B)  the **Named Insured's** duties in the event of an **occurrence**, claim or suit

apply irrespective of the application of the deductible amount.

4.  The Company may pay any part or all of the deductible amount to effect settlement of any claim or suit and, upon notification of the action taken, the **Named Insured** shall promptly reimburse the Company for such part of the deductible amount as has been paid by the Company.

CERTIFIED COPY

All other provisions of this policy remain the same.

This endorsement becomes effective _____ MAY 19, 2002 _____ to be attached to and hereby made a part of

Policy No. ___ AV 3391999-04 ___ issued to PONTIAC FLYING SERVICE, INC

By National Union Fire Insurance Company of Pittsburgh, PA

Endorsement No. ___ 1 ___ page 2 of 2

Date of Issue _____ 6-14-02   bp

By _____
(Authorized Representative)

AG016 (2/00)

## PILOT WARRANTY ENDORSEMENT
## (AERIAL APPLICATOR AIRCRAFT)

CERTIFIED COPY

This policy is amended as follows:

When in flight, the aircraft will only be operated by the pilot/s specified below who possess the logged hours, the current and valid ratings and certificates specified below, and a current and valid Medical Certificate.

As respects piston engine powered fixed-wing aircraft:
- [X] Named pilot(s) SCOTT PETERSEN
- [X] Any pilot maintaining a commercial or more advanced pilot certificate who has flown a minimum pilot in command time of __1,000__ (1,000 if nothing else is shown) hours in fixed-wing aircraft engaged in **aerial application**, including at least __100__ (100 if nothing else is shown) hours in aircraft of the same make and model being flown.

As respects piston engine powered rotorcraft:
- [ ] Named pilot(s) _____
- [ ] Any pilot maintaining a commercial or more advanced pilot certificate who has flown a minimum pilot in command time of _____ (1,000 if nothing else is shown) hours in rotorcraft engaged in aerial application, including at least _____ (100 if nothing else is shown) hours in aircraft of the same make and model being flown.

As respects turbine powered fixed-wing aircraft:
- [X] Named pilot(s) SCOTT PETERSEN
- [X] Any pilot maintaining a commercial or more advanced pilot certificate who has flown a minimum pilot in command time of __1,000__ (1,000 if nothing else is shown) hours in fixed-wing aircraft engaged in **aerial application**, including at least __100__ (100 if nothing else is shown) hours in aircraft of the same make and model being flown.

As respects turbine powered rotorcraft:
- [ ] Named pilot(s) _____
- [ ] Any pilot maintaining a commercial or more advanced pilot certificate who has flown a minimum pilot in command time of _____ (1,000 if nothing else is shown) hours in rotorcraft engaged in **aerial application**, including at least _____ (100 if nothing else is shown) hours in aircraft of the same make and model being flown.

As respects all turbine powered aircraft/rotorcraft:
- [ ] In addition to the above, the following pilots must also have successfully completed the aircraft manufacturer's ground and flight training program for the aircraft being flown or, if the aircraft has a turbine engine conversion, the pilot must have successfully completed formalized ground and flight training with the aircraft's conversion facility:
  _____
  _____
  _____

All other provisions of this policy remain the same.

~~This endorsement becomes effective~~ MAY 19, 2002 ~~to be attached to and hereby made a part of~~
Policy No. __AV 3391999-04__ issued to PONTIAC FLYING SERVICE, INC

By National Union Fire Insurance Company of Pittsburgh, PA

Endorsement No. __2__

Date of Issue __6-14-02  bp__

By _____
(Authorized Representative)

AG018 (6/98)

## LIABILITY AMENDMENT ENDORSEMENT
### (AERIAL APPLICATOR)

CERTIFIED COPY

In consideration of  INCLUDED         premium of $        INCLUDED , this policy is amended as follows:

Liability Coverages set forth in the Declarations are    completed   as follows with respect to the following:
N503D ONLY

| Liability Coverages | LIMITS OF LIABILITY | |
| --- | --- | --- |
| | NON-CHEMICAL | CHEMICAL |
| D.  Single Limit - Property Damage & Bodily Injury Excluding Passengers | $1,000,000.  EACH OCCURRENCE | |

ANNUAL PREMIUMS

| Coverage | Premium |
| --- | --- |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

Subject to the following:

CHEMICAL COVERAGES A & B REMAIN AS SHOWN IN ITEM 3. OF THE DECLARATIONS.

THIS ENDOSEMENT APPLIES ONLY AS RESPECTS OPERATIONS UNDER THE NAMED INSURED'S GYPSY MOTH CONTRACTS.

All other provisions of this policy remain the same.

This endorsement becomes effective        MAY 19, 2002        to be attached to and hereby made a part of
Policy No.    AV 3391999-04    issued to  PONTIAC FLYING SERVICE, INC

By   National Union Fire Insurance Company of Pittsburgh, PA

Endorsement No.       3

Date of Issue         6-14-02   bp

By _____
(Authorized Representative)

AG427 (4/02)

## ADDITIONAL INSURED ENDORSEMENT

CERTIFIED COPY

In consideration of ___INCLUDED___ premium of $ ___INCLUDED___ , this policy is amended as follows:

The following is included as an additional **Insured**, but only with respect to the operation of the aircraft by the **Named Insured**:

THE FARMER, OWNER, AND/OR GROWER FOR WHOM AERIAL APPLICATION IS BEING PERFORMED. COVERAGE IS EXTENDED TO INCLUDE STATE AND COUNTY GOVERNMENT AGENCIES AND CONSTRACT HOLDERS REQUIRED FOR CONTRACT WORK TO BE DONE.


AL'S AERIAL SPRAYING, INC


For the purposes of this endorsement only, coverage

1)  only applies with respect to such insurance as is afforded by coverages A, B, C, or D;
2)  does not apply to any liability arising from the selection or use of chemicals manufactured, sold, handled, or distributed by the additional Insured;
3)  is excess coverage only and applies only after all other coverage available to the Insured has been exhausted;
4)  is further subject to the following:
    THIS EXTENSION OF COVERAGE ONLY APPLIES WITH RESPECT TO THE VICARIOUS RESPONSIBILITY OF THE ADDITIONAL INSURED FOR THE CONDUCT OF AERIAL APPLICATION BY THE NAMED INSURED.


All other provisions of this policy remain the same.

This endorsement becomes effective ———— MAY 19, 2002 ———— to be attached to and hereby made a part of
Policy No. ___AV 3391999-04___ issued to PONTIAC FLYING SERVICE, INC

By National Union Fire Insurance Company of Pittsburgh, PA


Endorsement No. ___4___

Date of Issue ___6-14-02  bp___

By _____
(Authorized Representative)

AG010 (9/98)

CERTIFIED COPY

## ADJACENT FIELDS LIABILITY

In consideration of  INCLUDED            premium of $  INCLUDED       , this policy is amended as follows:


Exclusion 7. c) is deleted, subject to the following:

NO CHANGE


All other provisions of this policy remain the same.

This endorsement becomes effective        MAY 19, 2002         to be attached to and hereby made a part of
Policy No.    AV 3391999-04     issued to  PONTIAC FLYING SERVICE, INC

By   National Union Fire Insurance Company of Pittsburgh, PA


Endorsement No.      5

Date of Issue         6-14-02  bp                              By

                                                              (Authorized Representative)

AG013 (6/98)

CERTIFIED COPY

## ILLINOIS SPECIAL LIMITS ENDORSEMENT

In consideration of additional premium of $ __INCLUDED__ . this policy is amended as follows:

As respects **aerial application** within the State of Illinois, the Limits of Liability shall be the greater of:

a)    The amounts as shown on the Declarations; or

b)    The following limits if a premium is shown on the Declarations for the coverage(s):

|  |  |
|---|---|
| Coverage A | $ 50,000. each person |
|  | $100,000. each **occurrence** |
|  | $500,000. aggregate |
| Coverage B | $ 50,000. each **occurrence** |
|  | $ 50,000. aggregate |
| Coverage D | $100,000. each **occurrence** |
|  | $500,000. aggregate |

All other provisions of this policy remain the same.

This endorsement becomes effective _____ MAY 19, 2002 _____ to be attached to and hereby made a part of

Policy No. __AV 3391999-04__ issued to PONTIAC FLYING SERVICE, INC

By __National Union Fire Insurance Company of Pittsburgh, PA__

Endorsement No. ____7____

Date of Issue ____6-14-02  bp____

By _____
(Authorized Representative)

AG003 (6/99)

CERTIFIED COPY

## RESIDENTIAL AREAS ENDORSEMENT

In consideration of __INCLUDED__ premium of $ __INCLUDED__ , this policy is amended as follows:

Exclusion 5. k) is deleted in its entirety and replaced with the following:

5.  k)  to claims arising from the **aerial application** to any residential area except with respect to aerial application
of the following chemicals __THOSE REQUIRED FOR GYPSY MOTH CONTRACTS__

to the village, town or city of __THOSE REQUIRED FOR GYPSY MOTH CONTRACTS__

All other provisions of this policy remain the same.

This endorsement becomes effective ____MAY 19, 2002____ to be attached to and hereby made a part of
Policy No. ____AV 3391999-04____ issued to __PONTIAC FLYING SERVICE, INC__

By __National Union Fire Insurance Company of Pittsburgh, PA__

Endorsement No. ____6____

Date of Issue ____6-14-02  bp____                    By _____
                                                    (Authorized Representative)

AG004 (5/99)

PURPOSE OF USE ENDORSEMENT          CERTIFIED COPY

This policy is amended as follows:

The Purpose of Use set forth in the Declarations is    completed    as follows:

AS RESPECTS ALL  AIRCRAFT

Purpose of Use shall be only as follows:

THIS POLICY IS AMENDED AS FOLLOWS:

THE PURPOSE OF USE SET FORTH IN THE DECLARATIONS IS AMENDED AS FOLLOWS:

AS RESPECTS AIRCRAFT WHILE OPERATING WITHIN, ON OR ABOVE THE COMMONWEALTH OF KENTUCKY

PURPOSE OF USE SHALL BE ONLY AS FOLLOWS:

PLEASURE AND BUSINESS USE ONLY, AND EXCLUDING AERIAL APPLICATION

All other provisions of this policy remain the same.

This endorsement becomes effective        MAY 19, 2002        to be attached to and hereby made a part of

Policy No. ___AV 3391999-04___ issued to PONTIAC FLYING SERVICE, INC

By __National Union Fire Insurance Company of Pittsburgh, PA__

Endorsement No. ____8____

Date of Issue ____6-14-02   bp____

By _____
                                            (Authorized Representative)

AV122 (1/01)

CERTIFIED COPY

## TERRITORY AMENDMENT ENDORSEMENT

In consideration of  INCLUDED            premium of $  INCLUDED        , this policy is amended as follows:

Exclusion 5. f) shall not apply to the following states:

WEST VIRGINIA, VIRGINIA, OHIO, MICHIGAN, MARYLAND

All other provisions of this policy remain the same.

This endorsement becomes effective          MAY 19, 2002          to be attached to and hereby made a part of
Policy No.    AV 3391999-04      issued to  PONTIAC FLYING SERVICE, INC

By  National Union Fire Insurance Company of Pittsburgh, PA

Endorsement No.        9

Date of Issue        6-14-02   bp                                    By _____
                                                                       (Authorized Representative)

AG019 (1/99)

## EQUIPMENT EXCLUSION

CERTIFIED COPY

This policy is amended as follows:

The coverage afforded by this policy shall not apply to the following aircraft equipment:

EXCLUDES GLOBAL POSITIONING SYSTEM

All other provisions of this policy remain the same.

This endorsement becomes effective _____ MAY 19, 2002 _____ to be attached to and hereby made a part of
Policy No. ___ AV 3391999-04 ___ issued to  PONTIAC FLYING SERVICE, INC _____

By __ National Union Fire Insurance Company of Pittsburgh, PA _____

Endorsement No. _____ 10 _____

Date of Issue _____ 6-14-02  bp _____

By _____
(Authorized Representative)

LAD111 (9/99)

## LOSS PAYABLE ENDORSEMENT

CERTIFIED COPY

In consideration of additional premium of $ _____INCLUDED_____ , this policy is amended as follows:

Any loss under Coverage F, G, and H is payable as interest may appear to the **Named Insured** and the following Loss Payable:

As respects   N48468 AND N8762H _____

PEOPLES BANK
PO BOX 460
GRIDLEY, IL  61744


AS RESPECTS N503D:


BANK OF PONTIAC
300 W WASHINGTON
PONTIAC, IL  67764

All other provisions of this policy remain the same.

This endorsement becomes effective _____MAY 19, 2002_____ to be attached to and hereby made a part of
Policy No. ____AV 3391999-04____ issued to  PONTIAC FLYING SERVICE, INC _____

By ___National Union Fire Insurance Company of Pittsburgh, PA_____

Endorsement No. _____11_____

Date of Issue _____6-14-02  bp_____

By _____
(Authorized Representative)

AV83 (3/01)

## WAR, HI-JACKING AND OTHER PERILS EXCLUSION CLAUSE (AVIATION)

CERTIFIED COPY

This policy is amended as follows:

In the event any of the provisions of this endorsement are in conflict with any provisions, exclusions, conditions or terms forming part of this policy, this endorsement shall take precedence.

This policy does not cover claims caused by:

(a) War, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, martial law, military or usurped power or attempts at usurpation of power;

(b) Any hostile detonation of any weapon of war employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter;

(c) Strikes, riots, civil commotions or labor disturbances;

(d) Any act of one or more persons, whether or not agents of a sovereign power, for political or terrorist purposes and whether the loss or damage resulting therefrom is accidental or intentional;

(e) Any malicious act or act of sabotage;

(f) Confiscation, nationalization, seizure, restraint, detention, appropriation, requisition for title or use by or under the order of any Government (whether civil, military or de facto) or public or local authority;

(g) Hi-jacking or any unlawful seizure or wrongful exercise of control of the aircraft or crew in flight (including any attempt at such seizure or control) made by any person or persons on board the aircraft acting without the consent of the Insured.

Furthermore, this policy does not cover claims arising whilst the aircraft is outside the control of the Insured by reason of any of the above perils.

The aircraft shall be deemed to have been restored to the control of the Insured on the safe return of the aircraft to the Insured at an airfield not excluded by the geographical limits of this policy, and entirely suitable for the operation of the aircraft (such safe return shall require that the aircraft be parked with engines shut down and under no duress).

All other provisions of this policy remain the same.

This endorsement becomes effective _____ MAY 19, 2002 _____ to be attached to and hereby made a part of Policy No. ____ AV 3391999-04 ____ issued to __ PONTIAC FLYING SERVICE, INC __

By __ National Union Fire Insurance Company of Pittsburgh, PA __

Endorsement No. _____ 12 _____

Date of Issue _____ 6-14-02   bp _____

[X] AIG Aviation, Inc.
[ ] AIG Aviation Insurance Services
[ ] AIG Aviation (Canada), Inc.
[ ] AIG Aviation (Illinois) Corporation
[ ] AIG Aviation (Texas), Inc.
[ ] American International Aviation Agency, Inc.
[ ]

By _____
(Authorized Representative)

AVN48B (1/02)

# NUCLEAR RISKS EXCLUSION CLAUSE    CERTIFIED COPY

This policy is amended as follows:

In the event any of the provisions of this endorsement are in conflict with any provisions, exclusions, conditions or terms forming part of this policy, this endorsement shall take precedence.

1.  This policy does not cover:

    (i)   loss or destruction of or damage to any property whatsoever or any loss or expense whatsoever resulting or arising therefrom or any consequential loss

    (ii)  any legal liability of whatsoever nature

    directly or indirectly caused by or contributed to by or arising from:

        (a)  the radioactive, toxic, explosive or other hazardous properties of any explosive nuclear assembly or nuclear component thereof;

        (b)  the radioactive properties of, or a combination of radioactive properties with toxic, explosive or other hazardous properties of, any other radioactive material in the course of carriage as cargo, including storage or handling incidental thereto;

        (c)  ionizing radiations or contamination by radioactivity from, or the toxic, explosive or other hazardous properties of, any other radioactive source whatsoever.

2.  It is understood and agreed that such radioactive material or other radioactive source in paragraph 1. (b) and (c) above shall not include:

    (i)   depleted uranium and natural uranium in any form;

    (ii)  radioisotopes which have reached the final stage of fabrication so as to be usable for any scientific, medical, agricultural, commercial, educational or industrial purpose.

3.  This policy, however, does not cover loss of or destruction of or damage to any property or any consequential loss or any legal liability of whatsoever nature with respect to which:

    (i)   the Insured under this policy is also an insured or an additional insured under any other insurance policy, including any nuclear energy liability policy; or

    (ii)  any person or organization is required to maintain financial protection pursuant to legislation in any country; or

    (iii) the Insured under this policy is, or had this policy not been issued would be, entitled to indemnification from any government or agency thereof.

'ERTIFIED COPY

4.  Loss, destruction, damage, expense or legal liability in respect of the nuclear risks not excluded by reason of paragraph 2. shall (subject to all other terms, conditions, limitations, warranties and exclusions of this policy) be covered, provided that:

(i)   in the case of any claim in respect of radioactive material in the course of carriage as cargo, including storage or handling incidental thereof, such carriage shall in all respects have complied with the full International Civil Aviation Organization "Technical Instructions for the Safe Transport of Dangerous Goods by Air", unless the carriage shall have been subject to any more restrictive legislation, when it shall in all respects have complied with such legislation;

(ii)  this policy shall only apply to an incident happening during the period of this policy and where any claim by the Insured against the Company or by any claimant against the Insured arising out of such incident shall have been made within three years after the date thereof;

(iii) in the case of any claim for the loss of or destruction of or damage to or loss of use of an aircraft caused by or contributed to by radioactive contamination, the level of such contamination shall have exceeded the maximum permissible level set out in the following scale:

| Emitter<br><br>(IAEA Health and Safety Regulations | Maximum permissible level of non-fixed radioactive surface contamination (Averaged over 300 cm$^2$) |
|---|---|
| Beta, gamma and low toxicity alpha emitters | Not exceeding 4 Bequerels / cm$^2$ ($10^{-4}$ microcuries / cm$^2$) |
| All other alpha emitters | Not exceeding 0.4 Bequerels / cm$^2$ ($10^{-5}$ microcuries / cm$^2$) |

(iv)  the cover afforded hereby may be cancelled at any time by the Company giving seven days' notice of cancellation.

All other provisions of this policy remain the same.

This endorsement becomes effective _____ MAY 19, 2002 _____ to be attached to and hereby made a part of Policy No. ___ AV 3391999-04 ___ issued to ___ PONTIAC FLYING SERVICE, INC ___

By ___ National Union Fire Insurance Company of Pittsburgh, PA ___

Endorsement No. ___ 13 ___

Date of Issue ___ 6-14-02   bp ___

[X] AIG Aviation, Inc.
[ ] AIG Aviation Insurance Services
[ ] AIG Aviation (Canada), Inc.
[ ] AIG Aviation (Illinois) Corporation
[ ] AIG Aviation (Texas), Inc.
[ ] American International Aviation Agency, Inc.
[ ]

By _____
        (Authorized Representative)

CERTIFIED COPY

## NOISE AND POLLUTION AND OTHER PERILS EXCLUSION CLAUSE

This policy is amended as follows:

In the event any of the provisions of this endorsement are in conflict with any provisions, exclusions, conditions or terms forming part of this policy, this endorsement shall take precedence.

1.   This policy does not cover claims directly or indirectly occasioned by, happening through or in consequence of:

   (a)   noise (whether audible to the human ear or not), vibration, sonic boom and any phenomena associated therewith,

   (b)   pollution and contamination of any kind whatsoever,

   (c)   electrical and electromagnetic interference,

   (d)   interference with the use of property;

   unless caused by or resulting in a crash, fire, explosion or collision or a recorded in-flight emergency causing abnormal aircraft operation.

2.   With respect to any provision in the policy concerning any duty of the Company to investigate or defend claims, such provision shall not apply and the Company shall not be required to defend:

   (a)   claims excluded by paragraph 1., or

   (b)   a claim or claims covered by the policy when combined with any claims excluded by paragraph 1. (referred to below as "Combined Claims").

3.   In respect of any Combined Claims, the Company shall (subject to proof of loss and the limits of the policy) reimburse the Insured for that portion of the following items which may be allocated to the claims covered by the policy:

   (a)   damages awarded against the Insured and

   (b)   defense fees and expenses incurred by the Insured.

4.   Nothing herein shall override any radioactive contamination or other exclusion clause attached to or forming part of this policy.

All other provisions of this policy remain the same.

This endorsement becomes effective _____MAY 19, 2002_____ to be attached to and hereby made a part of Policy No. ___AV 3391999-04___ issued to ___PONTIAC FLYING SERVICE, INC___

By ___National Union Fire Insurance Company of Pittsburgh, PA___

Endorsement No. _____14_____

Date of Issue _____6-14-02   bp_____

☒ AIG Aviation, Inc.
☐ AIG Aviation Insurance Services
☐ AIG Aviation (Canada), Inc.
☐ AIG Aviation (Illinois) Corporation
☐ AIG Aviation (Texas), Inc.
☐ American International Aviation Agency, Inc.
☐

By _____
(Authorized Representative)

AVN46B (1/02)

## FUNGUS EXCLUSION ENDORSEMENT    CERTIFIED COPY

This policy shall not apply under any coverage section to:

1.  **bodily injury**; sickness; disease; occupational disease; headaches; dizziness; neurological disorders of any kind; mental or physical stress, anguish, or injury of any kind; **property damage** or grounding or any other claim whatsoever nor

    any loss, cost, or expense including, but not limited to, losses, costs, or expenses related to, arising from, or associated with testing for, cleaning up, remediation, containment, removal, or abatement, nor

    any obligation to defend or indemnify due in whole or in part to any claim or suit against the **insured** alleging damages arising from or caused by, directly or indirectly, in whole or in part, by

    (a)  any **fungus(i)**, **molds**, mildew or yeast, or

    (b)  any **spore(s)**, or toxins created or produced by or emanating from such **fungus(i)**, **mold(s)**, mildew or yeast, or

    (c)  any substance, vapor gas, or other emission or organic or inorganic body or substance produced by or arising out of any fungus(i), mold(s), mildew or yeast, or

    (d)  any material, product, building component, building or structure or any concentration of moisture, water or other liquid within such material, product, building component, building or structure that contains, harbors, nurtures, or acts as a medium for any fungus(i), mold(s), mildew or yeast, or **spore(s)** or toxins emanating therefrom,

    regardless of any other cause, event material, product and/or building component that contributed concurrently or in any sequence to any alleged loss or subsequent claim.

2.  For the purposes of this endorsement, the following definitions are added to the policy:

    **Fungus(i)** includes, but is not limited to, any of the plants or organisms belonging to the major group Fungi, lacking chlorophyll, and including **mold(s)**, rusts, mildews, smuts, and mushrooms.

    **Mold(s)** includes, but is not limited to, any superficial growth produced on damp or decaying organic matter or on living organisms, and **fungi** that produce **molds**.

    **Spore(s)** means any dormant or reproductive body produced by or arising or emanating out of any **fungus(i)**, **mold(s)**, mildew, plants, organisms, or microorganisms.

All other provisions of this policy remain the same.

This endorsement becomes effective _____ MAY 19, 2002 _____ to be attached to and hereby made a part of Policy No. ___ AV 3391999-04 ___ issued to PONTIAC FLYING SERVICE, INC

By ___ National Union Fire Insurance Company of Pittsburgh, PA ___

Endorsement No. ____ 15 ____

Date of Issue _____ 6-14-02   bp _____

☒ AIG Aviation, Inc.
☐ AIG Aviation Insurance Services
☐ AIG Aviation (Canada), Inc.
☐ AIG Aviation (Illinois) Corporation
☐ AIG Aviation (Texas), Inc.
☐ American International Aviation Agency, Inc.
☐

By _____
(Authorized Representative)

AV855  (2/02)

## DATE RECOGNITION EXCLUSION CLAUSE CERTIFIED COPY

This Policy does not cover any claim, damage, injury, loss, cost, expense or liability (whether in contract, tort, negligence, product liability, misrepresentation, fraud or otherwise) of any nature whatsoever arising from or occasioned by or in consequence of (whether directly or indirectly and whether wholly or partly):

(a)  the failure or inability of any computer hardware, software, integrated circuit, chip or information technology equipment or system (whether in the possession of the Insured or of any third party) accurately or completely to process, recognize, exchange or transfer year, date or time data or information in connection with any change of year, date or time;

   whether on or before or after such change of year, date or time;

(b)  any implemented or attempted change or modification of any computer hardware, software, integrated circuit, chip or information technology equipment or system (whether in the possession of the Insured or of any third party) in anticipation of or in response to any such change of year, date or time, or any advice given or services performed in connection with any such change or modification;

(c)  any non-use or unavailability for use of any property or equipment of any kind whatsoever resulting from any act, failure to act or decision of the Insured or of any third party related to any such change of year, date or time;

and any provision in this Policy concerning any duty of the Company to investigate or defend claims shall not apply to any claims so excluded.

All other provisions of this policy remain the same.

This endorsement becomes effective _____ MAY 19, 2002 _____ to be attached to and hereby made a part of
Policy No. ___ AV 3391999-04 ___ issued to __ PONTIAC FLYING SERVICE, INC _____

By __ National Union Fire Insurance Company of Pittsburgh, PA _____

Endorsement No. _____ 16 _____

Date of Issue _____ 6-14-02   bp _____

[X] AIG Aviation, Inc.
[ ] AIG Aviation Insurance Services
[ ] AIG Aviation (Canada), Inc.
[ ] AIG Aviation (Illinois) Corporation
[ ] AIG Aviation (Texas), Inc.
[ ] American International Aviation Agency, Inc.
[ ]

By _____
                    (Authorized Representative)

AVN2000A (1/02)

ILLINOIS CANCE____ ___ION / NONRENEWAL ENDO____ ____NT - AVIATION

Wherever used in this endorsement: 1) "we", "us", "our", and "Insurer" mean the insurance company which issued this policy; and 2) "you", "your", "Named Insured", "First Named Insured", and "Insured" mean the Named Corporation, Named Organization, Named Sponsor, Named Insured, or Insured stated in the Declarations page; and 3) "Other Insured(s)" means all other persons or entities afforded coverage under the policy.

<u>CANCELLATION AND NONRENEWAL</u>

CERTIFIED COPY

A)   The cancellation condition of this policy is replaced by the following:

CANCELLATION

1.   The Named Insured may cancel this policy by mailing to the Insurer advance written notice of cancellation.

2.   If this policy has been in effect for sixty (60) days or less, the insurer may cancel this policy by mailing to the Named Insured written notice of cancellation at least:

   a)   Ten (10) days before the effective date of cancellation if the Insurer cancels for nonpayment of premium; or

   b)   Thirty (30) days before the effective date of cancellation if the Insurer cancels for any other reason.

3.   If this policy has been in effect for more than sixty (60) days the Insurer may cancel this policy only for one or more of the following reasons:

   a)   Nonpayment of premium;

   b)   The policy was obtained through a material misrepresentation;

   c)   The Named Insured or Other Insured(s) have violated any of the terms and conditions of the policy;

   d)   The risk originally accepted has measurably increased;

   e)   Certification to the Director of Insurance of the loss of reinsurance by the Insurer which provided coverage to the Insurer for all or a substantial part of the underlying risk insured; or

   f)   A determination by the Director that the continuation of the policy could place the Insurer in violation of the insurance laws of this State.

   If the Insurer cancels this policy based on one or more of the above reasons except for nonpayment of premium, the Insurer will mail written notice to the Named Insured at least sixty (60) days before the effective date of cancellation. When cancellation is for nonpayment of premium, the Insurer will mail notice at least ten (10) days before the effective date of cancellation.

4.   The Insurer will mail the notice to the Named Insured and the agent or broker at the last addresses known to the Insurer.

5.   Notice of cancellation will state the effective date of cancellation and a specific explanation of the reason or reasons for cancellation. The policy period will end on that date.

6.   If this policy is cancelled, the Insurer will send the Named Insured any premium refund due. If the Insurer cancels, the refund will be pro rata. If the Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if the Insurer has not made or offered a refund.

7.   Proof of mailing will be sufficient proof of notice.

SE52142(11/94)   Page 1 of Endorsement No. ___17___

B) The following is added:

CERTIFIED COPY

 NONRENEWAL

If the Insurer decides not to renew this policy, the Insurer will mail written notice stating the reason for nonrenewal to the Named Insured's last mailing address known to the Insurer at least sixty (60) days before the expiration date of the policy. A copy of the notice will also be sent to:

a)    The broker, if known to the Insurer, or the agent of record; and

b)    The last known mortgagee or lienholder named in the policy at the last mailing address known to the Insurer.

This paragraph does not apply if the Insurer has manifested a willingness to renew directly to the Named Insured.

All other provisions of this policy remain the same.

This endorsement becomes effective _____ MAY 19, 2002 _____ to be attached to and hereby made a part of Policy No. ___ AV 3391999-04 ___ issued to PONTIAC FLYING SERVICE, INC

By National Union Fire Insurance Company of Pittsburgh, PA

Endorsement No. ___ 17 ___

Date of Issue ___ 6-14-02  bp ___

☒ AIG Aviation, Inc.
☐ AIG Aviation Insurance Services
☐ AIG Aviation (Canada), Inc.
☐ AIG Aviation (Illinois) Corporation
☐ AIG Aviation (Texas), Inc.
☐

By _____
(Authorized Representative)

SE52142(11/94)    Page 2

CERTIFIED COPY

# TERRORISM EXCLUSION
(Terrorism Risk Insurance Act of 2002)

This policy is amended as follows:

This policy does not cover claims caused by any losses, damages, or injuries arising directly or indirectly as a result of a certified "Act of Terrorism" defined by Section 102. Definitions of the Terrorism Risk Insurance Act of 2002 and any revisions or amendments.

Solely with respect to this endorsement and to ensure compliance with the Terrorism Risk Insurance Act of 2002, an "Act of Terrorism" shall mean:

(1) Act of Terrorism:
   (A) Certification - The term "act of terrorism" means any act that is certified by the Secretary of the Treasury of the United States, in concurrence with the Secretary of State and the Attorney General of the United States:
      (i)  to be an act of terrorism;
      (ii)  to be a violent act or an act that is dangerous to:
         (I)  human life;
         (II)  property; or
         (III)  infrastructure;
      (iii)  to have resulted in damage within the United States or outside of the United States in the case of:
         (I)  an air carrier or commercial vessel defined as one principally based in the United States, on which United States income tax is paid, and whose insurance coverage is subject to regulation in the United States;
         (II)  the premises of a United States mission; and
      (iv)  to have been committed by an individual(s) acting on behalf of any foreign person or interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.
   (B) Limitation - No act shall be certified by the Secretary as an act of terrorism if:
      (i)  the act is committed as part of the course of war declared by the Congress, except that this clause shall not apply with respect to any coverage for workers' compensation; or
      (ii)  property and casualty insurance losses resulting from the act, in the aggregate, do not exceed $5,000,000.
   (C) Determinations Final - Any certification of, or determination not to certify, an act of terrorism under this paragraph shall be final, and shall not be subject to judicial review.
   (D) Nondelegation - The Secretary may not delegate or designate to any other officer, employee, or person, any determination under this paragraph of whether, during the effective period of the Program, an act of terrorism has occurred.

---

> THE PROVISIONS OF THIS ENDORSEMENT SHALL APPLY SOLELY TO THE TERRORISM RISK INSURANCE ACT OF 2002 AND SHALL IN NO WAY CONFLICT WITH THOSE OF AVN48B AND AMENDMENTS THERETO.

All other provisions of this policy remain the same.

This endorsement becomes effective   __NOVEMBER 26, 2002__   to be attached to and hereby made a part of Policy No. __AV 3391999-04__ issued to __PONTIAC FLYING SERVICE, INC.__

By __National Union Fire Insurance Company of Pittsburgh, PA__

Endorsement No. _____18_____

Date of Issue ____APRIL 11, 2003 JT____

By _____
(Authorized Representative)

AV856 (1/03)

CERTIFIED COPY

## POLICY PERIOD REVISION

In consideration of  INCLUDED                premium $  INCLUDED            , Item  2  · Policy Period · is
amended to read as follows:

From _____ MAY 19, 2002 _____ to _____ JULY 6, 2003 _____ both at 12:01 A.M. Standard time at the
address in Item  1   of the Declarations Page.

All other provisions of this policy remain the same.

This endorsement becomes effective _____ MAY 19, 2003 _____ to be attached to and hereby made a part of
Policy No. ___ AV 3391999-04 ___ issued to PONTIAC FLYING SERVICE, INC.

By  National Union Fire Insurance Company of Pittsburgh, PA

Endorsement No. _____ 19 _____

Date of Issue _____ MAY 6, 2003 bp _____

By _____
                    (Authorized Representative)

AV116 (1/99)


**AMERICAN HOME ASSURANCE COMPANY**
NEW YORK, NEW YORK • A CAPITAL STOCK COMPANY FOUNDED 1899


NATIONAL UNION
FIRE INSURANCE COMPANY
OF PITTSBURGH, PA.
A CAPITAL STOCK COMPANY
70 PINE STREET, NEW YORK, N.Y.


THE INSURANCE COMPANY OF
THE STATE OF PENNSYLVANIA
INCORPORATED
Philadelphia, Pa.

# AERIAL APPLICATOR AIRCRAFT POLICY

Policy Provisions - Part 1 - Form AG01 (9/98)

The Company as shown in Part 2 - Declarations (hereinafter called the Company), in consideration of the payment of the premium, in reliance upon the statements of the Declarations made a part hereof, subject to all of the terms of this policy including the applicable limits of liability, the Company agrees with the **Named Insured** with respect to those coverages indicated in Items 3 and 4 of the Declarations.

## INSURING AGREEMENTS

CERTIFIED COPY

### I.  LIABILITY COVERAGES

**Coverage A - Bodily Injury** Liability Excluding **Passengers** - To pay on behalf of the **Insured** those sums which the **Insured** shall become legally obligated to pay as damages because of **bodily injury** sustained by any person excluding any **passenger,**

**Coverage B - Property Damage** Liability - To pay on behalf of the **Insured** those sums which the **Insured** shall become legally obligated to pay as damages because of **property damage,**

**Coverage C - Passenger Bodily Injury** Liability - To pay on behalf of the **Insured** those sums which the **Insured** shall become legally obligated to pay as damages because of **bodily injury** sustained by any **passenger,**

**Coverage D** - Single Limit **Bodily Injury** and **Property Damage** Liability - To pay on behalf of the **Insured** those sums which the **Insured** shall become legally obligated to pay as damages because of **bodily injury** sustained by any person (excluding any **passenger** unless the words "including **passengers**" appear in Item 3 of the Declarations) and **property damage,**

caused by an **occurrence** and arising out of the ownership, maintenance or use of the **aircraft.**

### II.  MEDICAL EXPENSE COVERAGE

**Coverage E - Medical Expense** - To pay that reasonable **medical expense** incurred within one year from the date of injury, to or for each **passenger** (excluding any **crew** unless the words "including **crew**" appear in Item 3 of the Declarations) who sustains **bodily injury** caused by an **occurrence,** provided the **aircraft** is being used by or with the permission of the **Named Insured.**

### III.  PHYSICAL DAMAGE COVERAGES

**Coverage F - All Risk Basis** - To pay for **physical damage** loss to the **aircraft,** including **disappearance** of the **aircraft** unless otherwise described in this policy.

**Coverage G - All Risk Basis Not in Flight** - To pay for **physical damage** loss to the **aircraft** sustained while the **aircraft** is not **in flight** and which is not the result of fire or explosion following crash or collision while the **aircraft** was **in flight** unless otherwise described in this policy.

**Coverage H - All Risk Basis Not in Motion** - To pay for **physical damage** loss to the **aircraft** sustained while the **aircraft** is not in **motion** and which is not the result of fire or explosion following crash or collision while the **aircraft** was in **motion** unless otherwise described in this policy.

## IV. DEFENSE, SETTLEMENT AND SUPPLEMENTARY PAYMENTS
### Coverages A, B, C, and D

The Company shall have the right and duty to defend any suit against the **Insured** seeking damages on account of such **bodily injury** or **property damage**, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the Company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the Company's liability has been exhausted by payment of judgments or settlements.

During such time as the Company is obligated to defend a claim or claims under the provisions of the preceding paragraph, the Company will pay with respect to such claim, in addition to the applicable limit of liability:

a) all expenses incurred by the Company, all costs taxed against the **Insured** in any suit defended by the Company and all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before the Company has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the Company's liability thereon;

b) premiums on appeal bonds required in any such suit, premiums on bonds to release attachments in any such suit for an amount not in excess of the applicable limit of liability of this policy, and the cost of bail bonds required of the **Insured** because of an **occurrence** or violation of law or a regulation for civil aviation arising out of the use of the **aircraft**, not to exceed $1,000. per bail bond, but the Company shall have no obligation to apply for or furnish any such bonds;

c) expenses incurred by the **Insured** for first aid to others at the time of an accident, for **bodily injury** to which this policy applies, not to exceed $5,000. per **occurrence**;

d) all reasonable expenses incurred by the **Insured** at the Company's request to assist the Company in the investigation or defense of the claim or suit, including actual loss of earnings up to $100. per day because of time off from work.

## V. UNITED STATES ARMY, NAVY AND AIR FORCE INSURANCE REQUIREMENTS
### Coverages A, B, C, and D

If the **Aviation Managers** issues a Civil Aircraft Certificate of Insurance Form DD 2400, or any replacement thereof, as required by regulations of the U.S. Army, Navy or Air Force, then the insurance policy provisions shall conform to the minimum requirements of that regulation.

## VI. POLICY PERIOD, TERRITORY
### All Coverages

This policy applies only to **bodily injury** or **property damage** which occurs, and to **physical damage** losses to the **aircraft** which are sustained during the policy period, while the **aircraft** is within the 48 contiguous United States of America.

## VII. TWO OR MORE AIRCRAFT
### All Coverages

Except with respect to any Aggregate Limit(s) of Liability, when two or more **aircraft** are insured under this policy, the terms of this policy shall apply separately to each.

## - EXCLUSIONS

This policy does not apply:

1.  a)  while the **aircraft** is being operated with the knowledge and consent of the **Insured** or of any executive officer or partner thereof, for any unlawful purpose, or for any purpose or use other than **aerial application**, unless specifically endorsed on the policy;

    b)  if the **aircraft** has been modified, unless such modifications have been noted on the application for insurance or specifically endorsed on this policy;

    c)  if the **aircraft** is leased, rented or loaned to anyone other than the **Named Insured**;

    d)  while the **aircraft** is subject to any lease, lien, conditional sale, mortgage or other encumbrance not specifically declared and described in the policy.

CERTIFIED COPY

2.  While the **aircraft** is **in flight**

    a)  if piloted by other than the pilot or pilots designated in the Declarations, except while the **aircraft** is under the care, custody or control of a **Federal Aviation Administration (FAA)** approved repair station for the purpose of maintenance, repair or test flights and if piloted by an employee of such repair station;

    b)  unless the **aircraft** has a valid "Standard" or "Restricted" category Airworthiness Certificate in full force and effect, as issued by the **Federal Aviation Administration**;

    c)  unless the pilot(s) designated in the Declarations maintains a current and valid pilot certificate as required by the **Federal Aviation Administration** for the flight involved;

    d)  while the **aircraft** is engaged in **aerial application** unless the pilot maintains and is not in violation of any certificate required by any governmental authority having jurisdiction over **aerial application**;

    e)  while the **aircraft** is used for smoke or fire patrol, fire fighting or control, or any activity in support of those uses;

    f)  while the **aircraft** is used for **aerial application** unless the Named Insured has complied with all federal, state and local laws and regulations which apply to **aerial application**;

    g)  under conditions requiring a special permit or waiver from the **Federal Aviation Administration**, other than a permit or waiver which has been granted to the **Named Insured** for **aerial application**;

    h)  in violation of any Federal Aviation Regulation which applies to repairs, alterations or inspections of the **aircraft**.

3.  To

    a)  loss of or destruction of or damage to any property whatsoever or any loss or expense whatsoever resulting or arising therefrom or any consequential loss

    b)  any legal liability of whatsoever nature

    directly or indirectly caused or contributed to, by or arising from:

    1)  the radioactive, toxic, explosive or other hazardous properties of any explosive nuclear assembly or nuclear component thereof;

2) the radioactive properties of, or the combination of radioactive properties with toxic, explosive or other hazardous properties of, any other radioactive material in the course of carriage of cargo, including storage or handling incidental thereto;

3) ionizing radiations or contamination by radioactivity from, or the toxic, explosive or other hazardous properties of, any other radioactive source whatsoever.

4. To claims caused by

a) War, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, marital law, military or usurped power or attempts at usurpation of power.

b) Any hostile detonation of any weapon of war employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter.

c) Strikes, riots, civil commotions or labor disturbances.

d) Any act of one or more person, whether or not agents of a sovereign power, for political or terrorist purposes and whether the loss or damage resulting therefrom is accidental or intentional.

e) Any malicious act or act of sabotage.

f) Confiscation, nationalization, seizure, restraint, detention, appropriation, requisition for title or use by or under the order of any Government (whether civil, military or de facto) or public or local authority.

g) Hi-jacking or any unlawful seizure or wrongful exercise of control of the **aircraft** or **crew in flight** (including any attempt at such seizure or control) made by any person or persons on board the **aircraft** acting without the consent of the **Insured.**

Furthermore this policy does not cover claims arising while the **aircraft** is outside the control of the **Insured** by reason of any of the above perils. The **aircraft** shall be deemed to have been restored to the control of the **Insured** on the safe return of the **aircraft** to the **Insured** at an airfield not excluded by the geographical limits of this policy, and entirely suitable for the operation of the **aircraft** (such safe return shall require that the **aircraft** be parked with engines shut down and under no duress).

5. Under Coverages A, B, C, D and E

a) to liability assumed by the **Insured** under any contract or agreement;

b) to an **Insured** under this policy who is also an **Insured** under a contract of nuclear energy liability insurance issued by the Nuclear Energy Liability Insurance Association or the Mutual Atomic Energy Liability Underwriters and in effect at the time of the **occurrence** resulting in such injury, sickness, disease, death or destruction; provided, such contract of nuclear energy liability insurance shall be deemed to be in effect at the time of such **occurrence** notwithstanding such contract has terminated upon exhaustion of its limit of liability;

c) 1) To claims directly or indirectly occasioned by, happening through or in consequence of:

a) noise (whether audible to the human ear or not), vibration, sonic boom and any phenomena associated therewith,

b) pollution and contamination of any kind whatsoever,

c) electrical and electromagnetic interference,

d)    interference with the use of property,

unless caused by a crash or collision of aircraft or a recorded **in flight** emergency causing abnormal **aircraft** operation.

Exclusion 5. c) 1) b) does not apply to liability arising specifically from direct and intended spraying, emitting or application during the policy period by **aircraft** while **in flight** or by agricultural ground spraying equipment, of seeds, fertilizers or chemicals which result in **bodily injury** or **property damage** otherwise covered by this insurance.

2)    With respect to any provision in the policy concerning any duty of the Company to investigate or defend claims, such provision shall not apply and the Company shall not be required to defend:

a)    claims excluded by paragraph 5. c) 1) or

b)    a claim or claims covered by the policy when combined with any claims excluded by paragraph 5. c) 1) referred to below as "Combined Claims."

3)    In respect of any Combined Claims, the Company shall (subject to proof of loss and the limits of the policy) reimburse the **Insured** for that portion of the following items, which may be allocated to the claim or claims covered by the policy:

a)    damages awarded against the **Insured** and

CERTIFIED COPY

b)    defense fees and expenses incurred by the **Insured.**

d)    to any direction, demand, order or request that any **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to or assess the effects of pollution or contamination of any kind whatsoever, or contribute to or reimburse others for the cost thereof, whether or not the **Insured** is liable for such pollution or contamination and regardless of whether such liability arises or is deemed to arise from a claim for legal damages or equitable relief; or any claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to, or assessing the effects of pollution or contamination of any kind whatsoever;

e)    to damages arising from a hostile fire.  As used in this exclusion, a hostile fire means one that becomes uncontrollable or breaks out from where it was intended to be.

f)    to claims arising from **aerial application** unless within the state where the **aircraft** is principally based or a state within the United States of America adjacent to that state;

g)    to claims arising from the **aerial application** to rights-of-way or easements for public or quasi-public persons or bodies, waterways, railroads, pipelines or utility companies;

h)    to claims arising from **chemicals** or combination of **chemicals**, unless all **chemicals** are included in the Chemical Category designated for the **aircraft** involved in the **occurrence**;

i)    to claims arising from **chemicals** excluded in the Chemical Category definitions for "CC", "RC", and "XC";

j)    to claims arising from **aerial application** involving two or more **aircraft** owned or operated by the **Named Insured**, unless all such **aircraft** involved in the same **occurrence** are insured by the Company for the same Chemical Category;

k)    to claims arising from the **aerial application** to any residential area;

l) to claims arising from the **aerial application** of herbicides or Glyphosate to forests, woods, timberlands or tree farms;

m) to claims arising from controlled and/or prescribed burning;

n) to claims arising from any intentional act or omission that causes **bodily injury** or **property damage**;

o) except with respect to **bodily injury** or **property damage** resulting from efforts to prevent dangerous interference with the operation of the **aircraft**, to those **occurrences** either expected or intended from the standpoint of the **Insured**;

6. Under Coverages A, C and D

a) to any obligation for which the **Insured** or any carrier as his insurer may be held liable under any workers' compensation, unemployment compensation or disability benefits law, or under any similar law;

b) to **bodily injury** to any employee of the **Insured** arising out of and in the course of his employment by the **Insured**;

c) to **bodily injury** of any person who is a **Named Insured**;

d) to **bodily injury** of any person who is a pilot under contract to the **Named Insured**;

e) to **bodily injury** to any member of the **Named Insured's** family or household;

f) to any **bodily injury** caused by or resulting in any manner from the rendering of any professional services, or the omission thereof, or any medical or surgical treatments by any doctor, nurse or other professional attendant;

g) to **bodily injury** to any **passenger** while the **aircraft** is being used for **aerial application**.

7. Under Coverages B and D

a) to **property damage** to property owned, occupied, rented or used by the **Insured** or in the care, custody or control of the **Insured** or as to which the **Insured** is for any purpose exercising physical control or transported by the **Insured**;

b) to any **property damage** arising from direct **aerial application**;

c) to any **property damage** to a field, premises or property owned, occupied or rented by or in the care, custody or control of anyone for whom **aerial application** is performed.

8. Under Coverages F, G. and H

a) to loss or damage due to conversion, embezzlement, secretion, repossession or sale by any person with legal right of and who is in possession of the **aircraft**, nor for any loss or damage during or resulting therefrom;

b) to loss or damage to tires except where such loss or damage is caused by fire, theft, windstorm or vandalism or is the direct result of **physical damage** covered by this policy;

c) to loss or damage which is due and confined to:

1) wear, tear, deterioration, freezing;

98)                                    . 7 .

any *electrical* malfunction or failure of any electronic component(s), accessory(ies), or electrically powered equipment;

3)   any mechanical, hydraulic, pneumatic, or structural malfunction or failure,

*unless any such loss or damage in 1), 2) and 3) is the direct result of other* **physical damage** covered by this policy.

Damage resulting from electrical malfunction or failure of any electronic component(s), accessory(ies), or electrically powered equipment is considered breakdown of the entire electrical system containing such electronic component(s), accessory(ies), or electrically powered equipment.

Damage resulting from the breakdown, failure or malfunction of an engine component, accessory or part is considered mechanical breakdown of the entire engine.

d)   to loss or damage to turbine aircraft engines and auxiliary power units insured under this policy if such damage is caused by:

1)   foreign objects unless a result of **ingestion**;

2)   heat or temperature change from the operation, attempted operation or shutdown of the engine;

unless any such loss or damage is the direct result of other **physical damage** covered by this policy.

## LIMIT OF THE COMPANY'S LIABILITY    CERTIFIED COPY

**ALL COVERAGES**
**(Other Insurance)**

Except with respect to insurance specifically purchased by the **Insured** to apply in excess of this policy, if there is other insurance in the **Insured's** name or otherwise, against loss, liability or expense covered by this policy, the Company shall not be liable under this policy for a greater proportion of such loss, liability or expense than the applicable limit of the Company's liability bears to the total applicable limit of liability of all valid and collectible insurance against such loss, liability or expense. If collectible insurance (other than insurance purchased to apply as excess hereof) under any other policy of the Company is available to the **Insured** covering a loss covered hereunder, the Company's total liability will in no event exceed the greater or greatest limit applicable to such loss under this or any such policy.

**COVERAGES A, B, C AND D**
**(Total Liability)**

Regardless of the number of (1) **Insureds** under this policy, (2) persons or organizations who sustain **bodily injury** or **property damage**, (3) claims made or suits brought (derivative or otherwise) on account of **bodily injury** or **property damage**, or (4) **aircraft** to which this policy applies, the Company's liability is limited as follows:

Coverages A. The total liability of the Company for all damages, including all **related derivative claims** and all damages for care and loss of services, because of **bodily injury** sustained by any person as the result of any one **occurrence** shall not exceed the limit of liability stated in the Declarations as applicable to "each person". Subject to the above provision respecting "each person", the total liability of the Company for all damages, including all **related derivative claims** and all damages for care and loss of services, because of **bodily injury** sustained by two or more persons as the result of any one **occurrence** shall not exceed the limit of liability stated in the Declarations as applicable to "each **occurrence**" and in the aggregate.

Coverage B.  The total liability of the Company for all damages because of all **property damage** sustained by one or more persons or organizations as the result of any one **occurrence** shall not exceed the limit of liability stated in the Declarations as applicable to "each **occurrence**" and in the aggregate.

Coverages C.  The total liability of the Company for all damages, including all **related derivative claims** and all damages for care and loss of services, because of **bodily injury** sustained by any person as the result of any one **occurrence** shall not exceed the limit of liability stated in the Declarations as applicable to "each person". Subject to the above provision respecting "each person", the total liability of the Company for all damages, including all **related derivative claims** and all damages for care and loss of services, because of **bodily injury** sustained by two or more persons as the result of any one **occurrence** shall not exceed the limit of liability stated in the Declarations as applicable to "each **occurrence**".

Coverage D.  The Total liability of the Company for all damages, including all **related derivative claims** and all damages for care and loss of services, because of **bodily injury** or **property damage** sustained by one or more persons or organizations as the result of any one **occurrence** shall not exceed the limit of liability stated in the Declarations as applicable to "each **occurrence**" and in the aggregate.

For the purpose of determining the limit of the Company's liability, all **bodily injury** and **property damage** arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one **occurrence.**

## COVERAGE E
**(Total Liability)**

The limit of liability stated in the Declarations as applicable to "each person" is the limit of the Company's liability for all expenses incurred by or on behalf of each person who sustains **bodily injury** in any one **occurrence**; the limit of liability stated in the Declarations for Coverage E as applicable to "each **occurrence**" is, subject to the above provision respecting each person, the total limit of the Company's liability for all expenses incurred by or on behalf of two or more persons who sustain **bodily injury** in any one such **occurrence**.

## COVERAGES F, G and H
**(Total Liability)**

With respect to **total loss**, the Company will pay the insured value of the **aircraft**, as stated in the Declarations, subject to any applicable deductible.

With respect to **partial loss**, the Company may pay for the least expensive and most reasonable means to repair the aircraft or may pay for the loss in money, subject to any applicable deductible, as hereinafter provided:

1.  if repairs are made by other than the **Named Insured**, the total of the following:

    a)  cost to repair the damaged property with material of like kind and quality (excluding any charges for overtime);

    b)  cost of the least expensive and most reasonable method of transporting new and/or damaged parts and/or the damaged **aircraft** to the place of repair and the return of the repaired **aircraft** to the place where the loss occurred or the place where the **aircraft** is regularly based, whichever is nearer;

2.  if repairs are made by the **Named Insured**, the total of the following;

    a)  actual cost to the **Insured** of material of like kind and quality;

    b)  actual wages paid for labor, excluding any overtime;

c) up to 150% of item b) in lieu of overhead and supervisory services;

d) cost of the least expensive and most reasonable method of transporting new and/or damaged parts and/or the damaged **aircraft** to the place of repair and the return of the repaired **aircraft** to the place where the loss occurred or the place where the **aircraft** is regularly based, whichever is nearer.

With respect to any **partial loss** or **total loss**:

1) the amount due under this policy shall not exceed the amount due were the loss payable as a **total loss**;

2) any salvage value remaining shall inure to the benefit of the Company and the **Named Insured** shall provide clear title thereto;

3) any equipment attached to the **aircraft**, even if subsequent to the effective date of coverage, shall be considered a part of the **aircraft**;

4) there shall be no abandonment of any damaged property without the consent of the Company.

If the loss is due to theft or **disappearance**, the Company shall have the right to return the stolen property at any time prior to actual payment of the claim hereunder, with payment for any **physical damage** sustained thereto.

CERTIFIED COPY

## DEFINITIONS

When appearing in this policy in **bold face print**:

"**Aerial Application**" means the application by aircraft of seeds, fertilizers or chemicals and includes flights required in direct support thereof.

"**Aircraft**" means the **aircraft** described in Item 4 of the Declarations including the propulsion system and equipment usually attached to the **aircraft** (1) while attached to the **aircraft**, (2) while temporarily removed from the **aircraft** and (3) while removed from the **aircraft** for replacement until such time as replacement by a similar item has commenced; also tools and equipment which are specially designed for the **aircraft** and which are ordinarily carried therein.

"**Aviation Managers**" mean AIG Aviation, Inc., American International Aviation Agency, Inc., or any of their subsidiary or affiliated companies, branch offices or authorized representatives.

"**Bodily Injury**" means bodily injury, sickness, disease and, if arising out of the foregoing, mental anguish sustained by any person which occurs during the policy period, including death at any time resulting therefrom.

"**Chemical(s)**" means any substance or mixture of substances intended to prevent, destroy, repel or mitigate any pest, or any substance or mixture of substances intended for use as a plant or tree regulator, defoliant or desiccant. The common name of a **chemical** includes preparations of the **chemical**, in any form, having a trade or proprietary name.

"**Comprehensive Chemical (CC)**" means seeds, fertilizers, or any **chemical** except Picloram; or any defoliant or desiccant applied in dust form; or any inorganic arsenical compound, except arsenic acid used in liquid spray form as a cotton desiccant or defoliant.

"**Restricted Chemical (RC)**" means seeds, fertilizers, insecticides or fungicides only.

"**Excluding Chemical (XC)**" means seeds or fertilizers only.



The release or distribution of sterile insects, predatory/beneficial insects, bacteria, fungi or viruses for the purpose of controlling, mitigating or exterminating insects or other pests or weeds is included within the definitions of **Comprehensive Chemical (CC)** and **Restricted Chemical (RC)** and excluded from the definition of **Excluding Chemical (XC)**.

"**Crew**" means the pilot in-command, co-pilot, flight engineer, flight attendant or anyone else who is in, on, or boarding the **aircraft** for assisting in the operation of the **aircraft**.

"**Disappearance**" means missing **in flight** and not reported for sixty days after commencing a flight.

"**Federal Aviation Administration (FAA)**" means the duly constituted authority of the United States of America having jurisdiction over civil aviation, or its duly constituted equivalent in any other country.

"**In Flight**" means, with respect to fixed wing **aircraft**, the time commencing with the actual take-off run of the **aircraft** and continuing thereafter until it has completed its landing run; and if the **aircraft** is a rotorcraft, from the time the rotors start to rotate under power for the purpose of flight until they subsequently cease to rotate after landing.

"**In Motion**" means while the **aircraft** is moving under its own power or the momentum generated therefrom or while it is **in flight** and, if the **aircraft** is a rotorcraft, any time that the rotors are rotating or while it is **in flight**.

"**Ingestion**" means damage to **aircraft** turbine engines or turbine auxiliary power units (if a part of the **aircraft** as defined) caused by objects or substances not a part of the engine or its accessories, nor intended to be used in the engine, which occurs during the policy period and is the result of a single incident and of sufficient severity to require (or would require if its severity were known) immediate repair before further use.

"**Insured**" means with respect to Coverages A, B, C and D, not only the **Named Insured** but also officers, directors and employees of the **Named Insured** and pilots under contract to the **Named Insured**, but only while acting within the scope of their duties as such and provided the actual use of the **aircraft** is with the express permission of the **Named Insured**. Except with respect to the **Named Insured** the provisions of this paragraph do not apply:

a)  to any employee with respect to **bodily injury** of another employee of the same employer injured in the course of such employment;

b)  to any person or organization or to any agent or employee thereof (other than any employee of the **Named Insured** while acting in the course of his employment by the **Named Insured**):

   1)  who manufactures, builds, sells or distributes aircraft, aircraft engines, aircraft components, aircraft accessories or fuel used in aircraft;

   2)  who is engaged in the operation of an aircraft repair shop, aircraft sales agency, aircraft rental service, aircraft flying school, aircraft management service, aircraft aerial application service, aircraft inspection, appraisal, certification or examination service, commercial flying service, airline, airport, hangar, or pilot training center;

   3)  who is engaged in the activity of instruction, evaluation, examination or certification of any pilot or **crew** member or prospective pilot or **crew** member;

   4)  who is charging a fee and/or receiving any remuneration or benefit for providing any type of service whatsoever in connectionwith the ownership, maintenance or use of any insured **aircraft**.

c)  to any person or organization operating the **aircraft** under the terms of any rental agreement or training program which provides any remuneration or benefit to the **Named Insured** for the use of the **aircraft**;

"**Medical Expense**" means expenses for necessary medical, surgical, x-ray or dental services, including prosthetic devices, and necessary ambulance, hospital, professional nursing and funeral services.

"**Mooring**" shall mean while the **aircraft** is on water, or during launching onto or hauling up therefrom (except under its own power or momentum).

"**Named Insured**" means the person or organization named in Item 1 of the Declarations.

"**Occurrence**" means an accident, including continuous or repeated exposure to conditions, which results in **bodily injury** or **property damage** during the policy period. In the event of continuing or progressively deteriorating damage over any length of time, such damage shall be deemed to be one **occurrence**, and shall be deemed to occur only when such damage first commences.

"**Partial Loss**" means any **physical damage** loss which is not a **total loss**.

"**Passenger**" means any person in, on, or boarding the **aircraft** for the purpose of riding or flying therein or alighting therefrom after a flight or attempted flight therein, including **crew** member(s).

"**Physical Damage**" means direct and accidental physical loss of or damage to the **aircraft**, hereinafter called loss, but does not include loss of use or any residual depreciation or diminution in value (including loss of quaranty or warranty), if any, after repairs have been made.

"**Pleasure and Business**" means used in the business of the **Insured** including personal and pleasure uses but excluding any operation for hire or reward. Cost reimbursement shall be included within the definition of **Pleasure and Business** provided that such cost reimbursement is limited to:

1)  fuel, oil, lubricants, and other additives;

2)  travel expenses of the **crew**, including food, lodging, and ground transportation;

3)  hangar and tie-down costs away from the **aircraft's** base of operation;

4)  insurance obtained for the specific flight;

5)  landing fees, airport taxes, and similar assessments;

6)  customs, foreign permit, and similar fees directly related to the flight;

7)  **in flight** food and beverages;

8)  **passenger** ground transportation;

9)  flight planning and weather contact services;

10) an additional charge equal to 100% of the expenses lists in subparagraph 1) of this paragraph.

"**Property Damage**" means direct physical injury to or destruction of tangible property which occurs during the policy period, including loss of use thereof at any time resulting therefrom.

"**Related Derivative Claims**" means all claims for care and loss of service, loss of society and consortium, mental anguish, emotional distress, loss of support, medical and funeral expenses, and any and all other damages from or related to **bodily injury** to any person or **passenger**. Notwithstanding anything to the contrary in the definition of **bodily injury**, the Company's liability and coverage for damages for both **bodily injury** and **related derivative claims**

CERTIFIED COPY

are included and combined within the "each person", "each **occurrence**" and aggregate Limits of Liability specified in the Declarations, as applicable, and there are no separate or additional Limits of Liability for related derivative claims.

"**Total Loss**" means any **physical damage** loss for which the "cost to repair" when added to the "salvage value" (the value of the **aircraft** after physical damage and prior to repairs) equals or exceeds the Insured Value of the **aircraft** as set forth in Item 4 of the Declarations. **Disappearance** or theft of the entire **aircraft** shall be considered as a **total loss**.

## CONDITIONS

### APPLICABLE TO COVERAGES A, B, C, AND D (BODILY INJURY AND PROPERTY DAMAGE)

1.  **ACTION AGAINST THE COMPANY**

    No person or organization has a right under this policy:

    a)  to join the Company as a party or otherwise bring the Company into a suit asking for damages from an **Insured**;
    b)  to sue on this policy unless all of its terms have been fully complied with.

    A person or organization may sue the Company to recover on an agreed settlement or on a final judgment against an **Insured** obtained after an actual trial; but the Company will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by the Company, the **Insured** and the claimant or the claimant's legal representative. Service of process may be made upon the **Aviation Managers** on behalf of the Company. However the Company does not waive its right to commence an acction in any court of competent jurisdiction or to seek a transfer to another court as permitted by law.

2.  **FINANCIAL RESPONSIBILITY**

    If this policy is certified as proof of insurance under any governmental financial responsibility law applicable to aircraft, the Company will pay the minimum amounts required by that law which do not exceed the limit of liability of this policy. The **Named Insured** agrees to reimburse the Company promptly for any amounts the Company would not have had to pay were it not for this clause.

3.  **NOTICE OF OCCURRENCE, LOSS, CLAIM OR SUIT**

    a)  The **Named Insured** must see to it that the **Aviation Managers** are promptly notified in writing at the nearest office, whose addresses is listed on the back of the policy cover, of an **occurrence** that may result in a claim. Notice shall include:

        1)  particulars sufficient enough to identify the **Insured**; and

        2)  how, when and where the **occurrence** took place; and

        3)  the names and addresses of any injured persons and witnesses.

    b)  If a claim is made or suit is brought against any **Insured**, the **Named Insured** must see to it that the **Aviation Managers** receive prompt written notice of the claim or suit. The **Named Insured** and any other **Insured** involved must:

AG01 (9/98)                              - 13 -

AG01 (9/98)                                          - 13 -

1)  immediately send the **Aviation Managers** copies of any demands, notices, summonses or legal papers received in connection with the claim or suit;

2)  authorize the **Aviation Managers** to obtain records and other information;

3)  cooperate with the **Aviation Managers** in the investigation, settlement or defense of the claim or suit;

4)  assist the **Aviation Managers**, upon the **Aviation Managers'** request, in the enforcement of any right against any person or organization which may be liable to the **Insured** because of injury or damage to which the insurance may also apply.

c)  No **Insured** will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid to others, without the **Aviation Managers'** consent.

4.  **SEVERABILITY OF INTEREST**

Except with respect to the Limit of the Company's Liability and any rights or duties specifically assigned in this policy to the first **Named Insured**, this insurance applies:

a)  as if each **Named Insured** were the only **Named Insured**;

b)  separately to each **Insured** against whom claim is made or suit is brought.     CERTIFIED COPY

**APPLICABLE TO COVERAGE E  (MEDICAL EXPENSE)**

5.  **ACTION AGAINST COMPANY**

No person or organization has the right under this policy to sue on this policy unless all its terms have been fully complied with and until thirty (30) days after the required proofs of claim have been filed with the Company.

6.  **MEDICAL REPORTS: PROOF AND PAYMENT OF CLAIM**

a)  The injured person or someone on his or her behalf, as soon as practical after the accident, must give the **Aviation Managers** written proof of claim and if requested by the **Aviation Managers**:

1)  provide his or her sworn statement under oath;

2)  authorize the **Aviation Managers** to obtain medical reports and copies of records;

3)  submit to physical examination by a physician selected by the **Aviation Managers**, when and as often as the **Aviation Managers** may reasonably require.

b)  The Company may pay the injured person or any person or organization rendering the services and such payment:

1)  shall reduce the amount payable for the injury;

2)  shall not constitute admission of liability by an **Insured** or the **Aviation Managers**.

**PPLICABLE TO COVERAGES F, G, AND H (PHYSICAL DAMAGE)**

**ACTION AGAINST THE COMPANY AND PAYMENT OF LOSS**

The Company does not have to pay, and the **Named Insured** does not have the right to sue on this policy, unless all of its terms have been fully complied with and until thirty (30) days after the required proofs of loss have been filed with the Company and the amount of loss is determined as provided by the policy, nor at all unless commenced within twelve (12) months after the date of the loss.

**APPRAISAL OF LOSS**

If the **Named Insured** and the Company fail to agree as to the amount of loss, each shall upon written notice to the other, hire at its own expense an independent aircraft appraiser. The appraisers will then agree on a knowledgeable and neutral umpire. If they cannot agree on the umpire in fifteen (15) days, a Judge of the county of the pending appraisal will appoint the umpire. Agreement by any two of these three shall determine the amount of loss. The **Named Insured** and the Company will share the umpire's cost equally. But this clause shall not deprive or waive any rights of the Company.

**. AUTOMATIC REINSTATEMENT**

In the event of loss, whether or not covered by this policy, the amount of insurance in respect to any **aircraft** shall be reduced as of the time and date of loss by the amount of such loss. Such reduced value shall continue until repairs are commenced, and the amount of insurance shall be automatically increased by the value of the completed repairs until the amount of insurance is fully reinstated or the policy has expired.

**10. INSURED'S DUTIES WHEN LOSS OCCURS**

When loss occurs the **Insured** shall:

a) take all reasonable precautions to protect the property or **aircraft** after an **occurrence**. The Company shall reimburse the **Insured** all reasonable cost in affording such protection;

b) not abandon the property or **aircraft**;

c) immediately contact the nearest **Aviation Managers** and provide prompt written notice at the address appearing on the back of the policy cover, including the:

1) time, place and description of events;

2) description and location of the **aircraft**;

d) promptly report theft and vandalism to the **Aviation Managers** and local police;

e) do nothing after the loss to harm the Company's rights of recovery against any person or organization;

f) allow the **Aviation Managers** to inspect the property;

g) submit to examination under oath if requested by the Company;

h) allow the Company to inspect all **aircraft** records, pilot logbooks, repair and service invoices, sales receipts and any other pertinent records until settlement of the loss;

i) file proof of loss with the **Aviation Managers** within sixty (60) days after the date of loss, in the form of a sworn statement to include:

AG91 (9/98)

1)   the interest of the **Named Insured** and of all other parties affected;

2)   any encumbrances thereon;

3)   the actual cash value of the property at the time of the loss;

4)   the amount, place, time and cause of such loss;

5)   the description and amounts of all other insurance covering such property;

unless such time is extended in writing by the **Aviation Managers.**

## 11. NO BENEFIT TO BAILEE

The insurance afforded by this policy shall not inure directly or indirectly to the benefit of any carrier or bailee liable for loss to the **aircraft.**

**CERTIFIED COPY**

## APPLICABLE TO ALL COVERAGES

## 12. ASSISTANCE AND COOPERATION OF THE INSURED

The **Insured** shall cooperate with the Company and, upon the Company's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits. The **Insured** shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for such immediate medical and surgical relief to others as shall be imperative at the time of an **occurrence.**

## 13. BANKRUPTCY

Bankruptcy or insolvency of the **Insured** or of the **Insured's** estate shall not relieve the Company of its obligations under this policy.

## 14. CANCELLATION

a)   The first **Named Insured** shown in the Declarations may cancel this policy by mailing or delivering to the Company or **Aviation Managers** advance written notice of cancellation.

b)   The Company or **Aviation Managers** may cancel this policy by mailing or delivering to the first **Named Insured** written notice of cancellation at least ten (10) days before the effective date of cancellation.

c)   The Company or **Aviation Managers** will mail or deliver notice to the first **Named Insured's** last mailing address known to the Company or **Aviation Managers.**

d)   If this policy is cancelled, the **Aviation Managers** will return any premium refund due. If the Company or **Aviation Managers** cancel, the refund will be pro rata. The cancellation will be effective even if the **Aviation Managers** have not made or offered a refund. The Company or **Aviation Managers** shall not be liable for any return of the **physical damage** premium in respect to any **aircraft** on which a **total loss** has been paid.

e)   If notice is mailed, proof of mailing will be sufficient proof of notice.

f)   If the first Named Insured cancels this policy or requests substitution, addition or deletion of aircraft and/or alteration of coverage, the minimum earned premium shall be computed according to the following schedule:

AG01 (9/98)

| Days Policy In Force | Minimum Earned Premium |
|---|---|
| Less than 31 days | 33-1/3% of annual premium |
| 31 days or more but less than 61 days | 60% of annual premium |
| 61 days or more but less than 91 days | 75% of annual premium |
| 91 days or more but less than 120 days | 85% of annual premium |
| 120 days or more | 100% of annual premium |

Cancellation for non-payment of premium shall be considered cancellation by the **Named Insured**. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but tender of unearned premium is not a condition of cancellation.

## 15. CHANGES

This policy contains all the agreements between the **Named Insured** and the Company concerning the insurance that is afforded. The first **Named Insured** shown in the Declarations is authorized to make changes in the terms of this policy with the **Aviation Managers** consent. This policy's terms can be amended or waived only by endorsement signed and issued by the **Aviation Managers** and made a part of this policy.

## 16. EXAMINATION OF INSURED'S BOOKS AND RECORDS

The **Aviation Managers** may examine and audit the **Insured's** books and records as they relate to this policy at any time during the policy period and up to three (3) years afterward.

## 17. FRAUD OR MISREPRESENTATION

This policy shall be void if the **Named Insured** has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof or in case of any fraud, attempted fraud or false swearing by the **Named Insured** touching any matter relating to this insurance or the subject thereof, whether before or after a loss.

## 18. INSPECTION AND SURVEYS

The Company or **Aviation Managers** have the right but are not obligated to:

a)  make inspections and surveys at any time;

b)  give the Named Insured reports on the conditions found;

c)  recommend changes.

•  Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. The Company or **Aviation Managers** do not make safety inspections. The Company or **Aviation Managers** do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. The Company or **Aviation Managers** do not warrant that conditions:

1)  are safe and healthful;

2)  comply with laws, regulations, codes or standards.

This condition applies not only to the Company or **Aviation Managers**, but also to any rating, advisory, rate service or similar organization that makes insurance inspection, surveys, reports or recommendations.

AG01 (9/98)

### 19. NONRENEWAL

If the Company decides not to renew this coverage, the **Aviation Managers** will mail or deliver to the first **Named Insured** shown in the Declarations written notice of the nonrenewal not less than thirth (30) days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

### 20. PREMIUMS

The first **Named Insured** shown in the Declarations is responsible for the payment of all premiums.

### 21. REPRESENTATIONS

CERTIFIED COPY

By accepting this policy, the **Named Insured** agrees:

a)   the statements in the Declarations are accurate and complete;

b)   those statements are based upon representations of the **Named Insured** to the Company, **Aviatior Managers** and any of their agents relating to this insurance;

c)   the **Aviation Managers** have issued this policy in reliance upon the **Named Insured's** representations.

### 22. STATE STATUTES

If the terms of this policy are in conflict with or inconsistent with the statutes of any state where this policy is in effect, the Company will conform to those state statutes.

### 23. SUBROGATION

If the **Insured** has rights to recover all or part of any payment the Company has made under this plicy, those rights are transferred to the Company. The **Insured** must do nothing after loss to impair them. At the request of the Company or **Aviation Managers**, the **Insured** will bring suit or transfer those rights to the Company and do whatever else is necessary to secure such rights. The **Insured** shall do nothing after a loss to prejudice such rights. This condition shall not apply respect **Coverage E -Medical Expense.**

### 24. TRANSFER OF THE NAMED INSURED'S RIGHTS AND DUTIES UNDER THIS POLICY

The **Named Insured's** rights and duties under this policy may not be transferred without the **Aviation Managers** written consent except in the case of the death or bankruptcy of an individual **Named Insured.**

If such individual **Named Insured** dies or is adjudged bankrupt or insolvent, his or her rights and duties will be transferred to the **Named Insured's** legal representative but only while acting within the scope of duties as such. Until the **Named Insured's** legal representative is appointed, anyone having proper temporary custody of the **Named Insured's** property will have such **Named Insured's** rights and duties but only with respect to that property, but in no event for more than sixty (60) days following such death or adjudication.

AG01 (9/98)

IN WITNESS WHEREOF, the Company specified on the Declaration Page has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned on the Declarations Page by a duly authorized agent of the Company and approved by the **Aviation Managers.**

National Union Fire Insurance Company of Pittsburgh, Pa.

President

American Home Assurance Company

President

The Insurance Company of the State of Pennsylvania

President

Secretary
National Union Fire Insurance Company of Pittsburgh, Pa.
The Insurance Company of the State of Pennsylvania
American Home Assurance Company

AG01 (9/98)                                    - 19 -