E-FILED
Friday, 01 September, 2006  02:32:12 PM
Clerk, U.S. District Court, ILCD

**THIRD PARTY DEFENDANT'S**
**EXHIBIT NO. 3**

11/19/03

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

NATIONAL UNION FIRE COMPANY ⟩
OF PITTSBURGH, PA, ⟩
⟩
Plaintiff, ⟩
⟩
vs. ⟩ No. 03-1288
⟩
PONTIAC FLYING SERVICE, INC., ⟩
⟩
Defendants. ⟩

## ANSWER TO
## COMPLAINT FOR DECLARATORY JUDGMENT

Now comes the Defendant, PONTIAC FLYING SERVICE, INC., ("PONTIAC") by its

attorney, DAVID B. MUELLER of the firm of CASSIDY & MUELLER, and for answer to the

Complaint for Declaratory Judgment states:

## COMMON ALLEGATIONS

### Parties

1.    The Plaintiff, NATIONAL UNION FIRE INSURANCE COMPANY OF

PITTSBURGH, PA. ("NATIONAL UNION") is an insurance company organized and existing

under the laws of Pennsylvania with its principal place of business in Pennsylvania and is

authorized to issue policies of insurance in the State of Illinois.

**ANSWER**:    PONTIAC admits the allegations of paragraph 1.

2.    Defendant, PONTIAC FLYING SERVICE, INC. ("PONTIAC FLYING") is a

corporation incorporated under the laws of the state of Illinois, with its principal place of

business in Pontiac, Illinois, and is doing business at 15755 E. 2000 N. Road, Pontiac, Illinois.

On or about May 5, 2003, PONTIAC FLYING was insured under a policy of insurance issued by NATIONAL UNION.

**ANSWER:** PONTIAC admits the allegations of paragraph 2.

### Jurisdiction and Venue

3.    The Court has jurisdiction over the subject matter of this action pursuant to Title 28, United States Code, Section 1332 (diversity of citizenship), inasmuch as the parties are domiciled in diverse states (Pennsylvania and Illinois), and, based upon information and belief, the amount in controversy exceeds $75,000 exclusive of interest and costs.

**ANSWER:** PONTIAC admits the allegations of paragraph 3.

4.    Venue within this United States District Court for the Central District of Illinois is proper pursuant to Title 28, United States Code, Section 1391.

**ANSWER:** PONTIAC admits the allegations of paragraph 4.

5.    A genuine, actual and justiciable controversy exists between NATIONAL UNION and PONTIAC FLYING as to whether NATIONAL UNION has any obligation to indemnify PONTIAC FL YING with regard to the loss of an a certain aircraft.

**ANSWER:** PONTIAC admits the allegations of paragraph 5.

### Statement of Case

6.    This action seeks a declaration of the parties' rights and obligations under a policy of insurance, bearing policy number A V3391999-04, which NATIONAL UNION issued to

PONTIAC FLYING. That policy provided coverage with respect to a 1991 Air Tractor AT503A, N503D ("Air Tractor"), which was involved in an aircraft accident on May 5, 2003 in Pontiac, Illinois.

**ANSWER:** PONTIAC admits the allegations of paragraph 6.

## Background

7.    PONTIAC FLYING is in the business of, *inter alia,* aerial application of agricultural products.

**ANSWER:** PONTIAC admits the allegations of paragraph 7.

8.    Upon information and belief, on or about May 5, 2003, PONTIAC FLYING was operating as an agricultural flight training school, which included the use of the Air Tractor for turbine transition flight instruction.

**ANSWER:** PONTIAC denies the allegations of paragraph 8 in the sense that they differentiate "turbine transition flight instruction" from aerial application. Further answering, PONTIAC states that proper education and training of aerial application pilots is a necessary component of aerial application.

9.    PONTIAC FLYING advertised its turbine transition training course, and its use of the Air Tractor for such instruction, in "Ag Air Update," including the April 2003 issue.

**ANSWER:** PONTIAC admits the allegations of paragraph 9.

10.    On or before May 5, 2003, PONTIAC FLYING hired the services of Richard P.

Lucente, Jr. ("Lucente") to provide turbine transition flight instruction in the Air Tractor to Neil

T. Webster ("Webster").

**ANSWER:**    PONTIAC denies that Lucente was an employee of PONTIAC FLYING.

Further answering, PONTIAC states that Lucente was an independent contractor in providing

turbine transition flight instruction to Webster.

11.    Webster was referred to PONTIAC FLYING for turbine transition training by Del

Finup ("Finup") of Lakeview, Michigan.

**ANSWER:**    PONTIAC admits the allegations of paragraph 11.

12.    Finup agreed pay PONTIAC FLYING the sum of $5,200 to complete Webster's

turbine transition training.

**ANSWER:**    PONTIAC admits the allegations of paragraph 12.

13.    In furtherance of the agreement to provide Webster's turbine transition training,

the Air Tractor departed from Pontiac Municipal Airport on May 5, 2003 with Lucente acting as

pilot in command and Webster as student pilot passenger.

**ANSWER:**    PONTIAC admits the allegations of paragraph 13.

14.    The Air Tractor impacted the ground at some point after its departure from

Pontiac Municipal Airport on May 5, 2003 resulting in the death of Lucente and Webster and the

destruction of the Air Tractor.

ANSWER:    PONTIAC admits the allegations of paragraph 14.

15.    On May 5, 2003, PONTIAC FLYING reported the loss of the Air Tractor to its insurance agent, Hardy Aviation Insurance, Inc.

ANSWER:    PONTIAC admits that it reported the loss to HARDY AVIATION INSURANCE, INC. Further answering PONTIAC states that it lacks knowledge regarding the legal relationship between HARDY AVIATION INSURANCE and PONTIAC or HARDY AVIATION INSURANCE and NATIONAL UNION and therefore denies the remaining allegations of paragraph 15.

16.    NATIONAL UNION denied coverage for the loss of the aircraft by letter dated July 31, 2003 to PONTIAC FLYING.

ANSWER:    PONTIAC admits the allegations of paragraph 16.

### The Policy

17.    NATIONAL UNION issued a liability insurance policy to PONTIAC FLYING under Policy No. A V 3391999-04, effective May 19, 2002 to July 6, 2003. A copy of the NATIONAL UNION policy is attached hereto as Exhibit "A."

ANSWER:    PONTIAC admits the allegations of paragraph 17.

18.    The NATIONAL UNION policy covered three aircraft, including the Air Tractor, and provided non-chemical and chemical liability coverage and physical damage coverage. The Physical Damage Coverage identified for the Air Tractor includes an Insured Value of $350,000.

**ANSWER:**    PONTIAC admits that the National Union policy provided the coverages which are alleged but further answering states that the policy also provided the liability coverages which are specified therein.

19.    The NATIONAL UNION policy provided coverage as follows under INSURING AGREEMENTS.

### AERIAL APPLICATOR AIRCRAFT POLICY

#### INSURING AGREEMENTS

The Company. . . in consideration of the payment of the premium, in reliance upon the statements of the Declarations made a part hereof, subject to all of the terms of this policy including the applicable limits of liability, the Company agrees with the **Named Insured** with respect to those coverages in Items 3 and 4 of the Declarations.

1.    **LIABILITY COVERAGES**

. . .

**Coverage B - Property Damage** Liability - To pay on behalf of the **Insured** those sums which the **Insured** shall become legally obligated to pay as damages because of **property damage.**

. . .

caused by an **occurrence** and arising out of the ownership, maintenance or use of the **aircraft.**

\*        \*        \*

III.    **PHYSICAL DAMAGE COVERAGES**

Coverage F - All Risk Basis - To pay for physical damage loss to the aircraft, including disappearance of the aircraft unless otherwise described in this policy.

\*        \*        \*

(Exhibit A.)

**ANSWER:**    PONTIAC admits that the policy contains the provisions which are set forth in paragraph 19.

20.    The Declarations page of the NATIONAL UNION Policy provides, in part:

DECLARATIONS

ITEM 6. The aircraft will be used only for the purpose Aerial Application.

*        *        *

(Exhibit A.)

**ANSWER:**    PONTIAC admits that the policy contains the provisions which are set forth in paragraph 20.

21.    The NATIONAL UNION policy provides as follows under DEFINITIONS:

DEFINITIONS

. . ."Aerial Application" means the application by aircraft of seeds, fertilizers or chemicals and includes flights required in direct support thereof.

*        *        *

(Exhibit A.)

**ANSWER:**    PONTIAC admits that the policy contains the provisions which are set forth in paragraph 21.

22.    The NATIONAL UNION policy includes the following exclusions:

EXCLUSIONS

This policy does not apply:

1.    a)    while the aircraft is being operated with the knowledge and consent of the Insured or of any executive officer or partner thereof, for any unlawful purpose, or for any purpose or use other than aerial application, unless specifically endorsed on the policy;

*    *    *

(Exhibit A.)

**ANSWER**:    PONTIAC admits that the policy contains the provisions which are set forth in paragraph 22.


## Claim For Declaratory Relief

23.    "Aerial application" is the only purpose specifically declared and authorized by the NATIONAL UNION policy, as expressly identified by Item 6 of the Declarations page and incorporated into the insuring agreement.

**ANSWER**:    PONTIAC admits the allegations of paragraph 23.


24.    At the time of the accident, PONTIAC FLYING was not using the Air Tractor for "aerial application."

**ANSWER**:    PONTIAC denies the allegations of paragraph 24. Further answering PONTIAC states that the definition of "aerial application" as used in the policy includes flights which are required for the direct support of the application by aircraft of seeds, fertilizers, or chemicals. In that regard pilot education and training is essential to and directly supports that activity.

25.    At the time of the accident, PONTIAC FLYING was using the Air Tractor for turbine transition training.

**ANSWER:**   PONTIAC denies the allegations of paragraph 25 in the sense that it infers that turbine transition training is not required for aerial application involving the covered aircraft and therefore is not in direct support of the application by aircraft of seeds, fertilizers or chemicals.

26.    Turbine transition training is not included in the definition of "aerial application" under the NATIONAL UNION policy and was not a covered purpose of use under the policy.

**ANSWER:**   PONTIAC denies the allegations of paragraph 26 and further answering states that flights which are required to train pilots in the application by covered aircraft of seeds, fertilizers or chemicals are in direct support of aerial application.

27.    Exclusion lea) of the NATIONAL UNION policy applies to exclude coverage for the loss of the Air Tractor because at the time of the accident the Air Tractor was being operated with the knowledge and consent of PONTIAC FLYING for a purpose or use other than "aerial application. "

**ANSWER:**   PONTIAC denies the allegations of paragraph 27.

28.    The loss of the Air Tractor does not come within the coverage of the NATIONAL UNION policy, and is also expressly excluded under the policy, because the loss resulted from a purpose of use other than "aerial application" and therefore NATIONAL UNION has no duty to indemnify PONTIAC FLYING in connection with the loss of the Air Tractor.

**ANSWER**:   PONTIAC denies the allegations of paragraph 28 and further answering states that NATIONAL UNION is obligated to indemnify PONTIAC FLYING in connection with the loss of the Air Tractor.

WHEREFORE, Defendant, PONTIAC FLYING SERVICE, INC., prays that the court declare that:

A.   NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA. is obligated to indemnify PONTIAC FLYING in connection with the loss of the Air Tractor under its Policy No. A V 3391999-04;

B.   NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURG, PA is also obligated to the Bank of Pontiac, Pontiac, Illinois, as "loss payee" under the Policy;

C.   NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA is also obligated under the liability coverage of the Policy to defend and indemnify PONTIAC FLYING SERVICE, INC. against any claims for personal injury or death arising out of the May 5, 2003 accident, and

D.   Such other and further relief as may be appropriate.

## DEFENSES

Now comes the Defendant, PONTIAC FLYING SERVICE, INC., and asserts the following defenses to the Complaint:

## FIRST DEFENSE

For its first defense, PONTIAC FLYING SERVICE, INC., states that the Complaint fails to state a claim upon which relief may be granted.

WHEREFORE, Defendant, PONTIAC FLYING SERVICE, INC., prays that the Complaint be dismissed.

## SECOND DEFENSE

For its second defense, PONTIAC FLYING SERVICE, INC., states that the Plaintiff,

through its agent, has waived the limited interpretation which it gives the term "aerial

application" in the Complaint.

WHEREFORE, Defendant, PONTIAC FLYING SERVICE, INC., prays that the

Complaint be dismissed.

## THIRD DEFENSE

For its third defense, PONTIAC FLYING SERVICE, INC., states that the Plaintiff,

acting through its agent, is estopped to assert the limited interpretation which it gives to the term

"aerial application" in its Complaint.

WHEREFORE, Defendant, PONTIAC FLYING SERVICE, INC., prays that the

Complaint be dismissed.

CASSIDY & MUELLER

By: _____
Attorneys for Defendant,
PONTIAC FLYING SERVICE, INC.

PROOF OF SERVICE

The undersigned certifies that on _____, 2003 a copy of the
foregoing document was served upon all counsel of record at their
respective addresses by:

CASSIDY & MUELLER
323 Commerce Bank Building
416 Main Street
Peoria, Illinois 61602
Telephone: 309/676-0591

_____ Deposit in the U.S. Mail
_____ Hand Delivery
_____ Fax
_____ Federal Express

By: _____