**JAMES RANDALL HARDY**
July 19, 2004    02-1288-JBM-BGC    # 111-8    Page 1 of 32

National Union Fire Company   v.
Pontiac Flying Services Inc.

E-FILED
Friday, 06 October, 2006  11:57:36 AM
Clerk, U.S. District Court, ILCD

Page 133

[1] Q: And there was none; correct?

[2] A: There was coverage —

[3] MS. BARON: None what? Object to the

[4] form.

[5]     BY MR. MUELLER:

[6] Q: Was there coverage for the aircraft when it was

[7] being used to train Scott after it was

[8] purchased and there were two people in the

[9] cockpit, one of them giving transition training

[10] coverage to Scott. Was there coverage on the

[11] plane for that training?

[12] MR. BANOVETZ: Wait. Object to form.

[13] The question is assuming facts that

[14] haven't been established.

[15] MS. BARON: I again object to the

[16] hypothetical nature.

[17] MR. BANOVETZ: If you were going to

[18] ask it as a hypothetical, I wouldn't

[19] object.

[20]     BY MR. MUELLER:

[21] Q: Let me ask it as a hypothetical then. If you

[22] assume that Scott Petersen received additional

[23] transition training in that aircraft after

[24] March 1, 2002, which involved another pilot,

[25] were you aware that he was receiving that

Page 134

[1] training, first of all?

[2] MS. BARON: Objection again to the

[3] hypothetical nature of the question. You

[4] can answer.

[5]     BY MR. MUELLER:

[6] Q: Were you aware that he received that training?

[7] A: No.

[8] Q: Now if he received that training in that plane,

[9] was there coverage for that under this policy?

[10] MS. BARON: Same objection to the

[11] hypothetical nature. You can answer.

[12] A: Hypothetically speaking, as long as Scott was

[13] the person receiving the training, not turning

[14] around and doing training as a business, the

[15] airplane may have been covered. I don't

[16] interpret the policy completely and I'll have

[17] to let AIG interpret answer that. The airplane

[18] had it had an accident could have been covered

[19] maybe, however, the passenger that was in the

[20] airplane with him would not have had any

[21] insurance. There would have been no passenger

[22] coverage on that airplane, however, because it

[23] was in the scope of Scott flying the airplane

[24] and receiving his own training or update or

[25] getting — feeling better or at the beginning

Page 135

[1] of every season every ag pilot goes out and

[2] flies for a few hours before they start in

[3] again to get comfortable again in the airplane,

[4] but the difference is when you are receiving

[5] training for yourself versus you now as a

[6] business want to charge and give training to

[7] others.

[8] Q: So my question is strictly limited to Scott

[9] Petersen receiving training in that plane. If

[10] you assume that after he purchased it and

[11] during the month of March, 2002, he received

[12] additional training in that plane, if the plane

[13] had gone down, was there property coverage for

[14] that plane? That's the question.

[15] A: I would have to refer to AIG to see if their

[16] policy would cover that.

[17] Q: And if Scott were told that there was coverage,

[18] would that have come from you or AIG or do you

[19] know?

[20] A: Any conversations between the client regarding

[21] his coverage generally comes from us as the

[22] agency because we are an agent for that client.

[23] Q: Since you don't recall it, would you agree that

[24] if you had said to Scott that he had that

[25] coverage, you would have received the

Page 136

[1] authorization from AIG?

[2] MS. BARON: I'm just going to object

[3] to the hypothetical nature of the question

[4] again.

[5] A: I don't want to answer that if I don't have to.

[6]     BY MR. MUELLER:

[7] Q: Well, you got to. You got no choice.

[8] A: Okay. State the question again, please.

[9] MR. MUELLER: Would you read it back?

[10] (At this time the reporter read

[11] the following: "Q Since you don't

[12] recall it, would you agree that if

[13] you had said to Scott that he had

[14] that coverage, you would have

[15] received the authorization from

[16] AIG?")

[17] A: Yes.

[18]     BY MR. MUELLER:

[19] Q: When you're communicating in your e-mail which

[20] was on pages 121 and 122 of Exhibit E with Mary

[21] Beth Schwaegel and you say to her: I would

[22] like to work on this in the effort to clear

[23] this up, were you trying to convince her that

[24] there was coverage?

[25] A: My intent was to work on behalf of my client,

Page 137

[1] Petersens, to —

[2] Q: Convince her that there was coverage?

[3] A: No. No, not to convince her that there was

[4] coverage but to share with her that Sarah and

[5] Scott might have had confusion over this but —

[6] and again my attempt with the company was just

[7] to try and see if I can get them to pay for a

[8] policy and pay for a loss so that we didn't

[9] have to go to this extent that we're in right

[10] now.

[11] Q: And yet you've testified that your relationship

[12] is with the insured, in this case with Scott

[13] and Sarah —

[14] A: Yes.

[15] Q: — right? And you having studied in the area,

[16] are you aware that that is what is known as a

[17] fiduciary relationship?

[18] MS. BARON: Object to the extent it

[19] calls for a legal conclusion.

[20] MR. MUELLER: I'm going to ask for

[21] his understanding of that. I know as

[22] someone who has been involved in the

[23] brokerage business and has gone to the

[24] courses he has heard of that.

[25] A: I've heard the term. If you want to — I don't

Page 138

[1] think I could explain it to you right here.

[2] BY MR. MUELLER:

[3] Q: What is your understanding of the fiduciary

[4] relationship that you owed to Scott and Sarah

[5] regarding coverage under this policy?

[6] MS. BARON: Object because he just

[7] said he couldn't explain it right here.

[8] If he has anything further in response, he

[9] can certainly answer.

[10] A: No, I don't.

[11] BY MR. MUELLER:

[12] Q: Well, that's the darn'dest answer I've ever

[13] heard. I'm sorry, I can't explain it, but if

[14] you come back tomorrow or write me a week from

[15] Sunday I can tell you. What is it about the

[16] term fiduciary responsibility as you understand

[17] it that causes you to say you can't answer the

[18] question now?

[19] A: Well, explain fiduciary to me.

[20] Q: That was the question to you. What is your

[21] understanding of the fiduciary relationship

[22] that you owed to Scott and Sarah?

[23] A: Well, quite honestly, at this moment in time

[24] I'm drawing a blank on it. That's why I'm

[25] saying that.

Page 139

[1] Q: The last sentence in your letter, would you

[2] read that? Last sentence in the last full

[3] paragraph.

[4] A: I felt that since I knew more information today

[5] regarding the loss, I need to advise you as

[6] well to date this is what we know.

[7] Q: I'm referring to the sentence in the paragraph

[8] immediately above it starting with "I don't

[9] know". Could you read that?

[10] A: I don't know what's in the best interests now

[11] for both AIG and Hardy should this become a

[12] situation.

[13] Q: And then addressing that, do you make any

[14] reference to what's in the best interests for

[15] Scott and Sarah?

[16] A: No.

[17] Q: Are you looking out for Scott and Sarah in that

[18] sentence when you're talking about the best

[19] interests for AIG?

[20] A: I guess you could view it as looking out for

[21] the best interests, that if I could get the

[22] insurance company to pay this we wouldn't have

[23] to go to the extent we are today, so that would be

[24] in the best interests of my client.

[25] Q: Best interests of AIG.

Page 140

[1] A: And my client.

[2] Q: Does it say AIG and my client, Scott and Sarah?

[3] It says AIG and Hardy so it seems to me you

[4] were looking out for AIG and you were looking

[5] out for yourself.

[6] MS. BARON: Is that a question?

[7] BY MR. MUELLER:

[8] Q: It's a statement. Is that who you were looking

[9] out for, AIG and Hardy, when you were

[10] considering best interests?

[11] MR. BANOVETZ: Object to the form of

[12] the question because what we're doing is

[13] we're now asking — using part of that

[14] sentence and not the second half of the

[15] sentence which obviously I don't think you

[16] can isolate.

[17] MR. MUELLER: You mean should this

[18] become a situation?

[19] MR. BANOVETZ: That's correct.

[20] BY MR. MUELLER:

[21] Q: What did you mean when you said should this

[22] become a situation?

[23] A: Well, we're in the situation, so my —

[24] Q: You filed it. Made work for all of us.

[25] A: My meaning of this sentence, in best interests

Page 141

[1] now for both Hardy and AIG should this become a
[2] situation, we all know that if life were
[3] perfect AIG would pay the claim, go on down the
[4] road even though Scott and Sarah made a mistake
[5] and did not bring the coverage forth to us and
[6] all that kind of stuff, that to simplify things
[7] if they just paid the coverage it would be in
[8] the best interests of both Mark who's having to
[9] come here, Diane and you as well as my clients
[10] not having to bring this to me. So even though
[11] I only mentioned AIG and Hardy, my interest was
[12] trying to alleviate any hassles for everybody
[13] and I guess in this case it means AIG pay it,
[14] but it was in no way trying to indicate that I
[15] felt like they had to pay it. I was just
[16] asking if they would.
[17]   **Q:** Would you agree that when you use the term best
[18] interests of AIG and referring to the situation
[19] as a potential lawsuit that you're saying they
[20] would be better off to own up and pay out under
[21] the policy than they would be to have this go
[22] to a lawsuit?
[23]   **A:** No.
[24]   (Discussion held off the record.)
[25] MR. MUELLER: I think that's it.

Page 142

[1]   MS. BARON: I don't have any
[2] questions.
[3]   MR. BANOVETZ: I don't either.
[4]
[5]
[6]
[7]
[8]
[9]
[10]
[11]
[12]
[13]
[14]
[15]
[16]
[17]
[18]
[19]
[20]
[21]
[22]
[23]
[24]
[25]

Page 143

[1]   I, JAMES RANDALL HARDY, the witness
[2] herein, have read the transcript of my testimony,
[3] and the same is true and correct to the best of my
[4] knowledge, with the exception of the changes noted
[5] on a separate page, together with notation of the
[6] reasons for making such corrections.
[7]
[8]
[9]   JAMES RANDALL HARDY
[10]
      STATE OF KANSAS                    )
[11]                                      ) ss:
      SEDGWICK COUNTY                    )
[12]
[13]   Subscribed and sworn to before me, the
[14] undersigned authority, this _____ day of
[15] _____, 2004.
[16]
[17]
[18]
         Notary Public, _____ County
[19]      State of Kansas
[20]
      My appointment expires:
[21]
[22]
[23] Janelle E. Goddard, C.S.R.
[24]
[25]

Page 144

[1]   CERTIFICATE
[2]
[3] STATE OF KANSAS                      )
                                         ) ss:
[4] SEDGWICK COUNTY                      )
[5]
[6]   I, Janelle E. Goddard, certify that the
[7] foregoing deposition was stenographically recorded
[8] by me as stated in the caption. The deponent was
[9] duly sworn to tell the truth, the whole truth, and
[10] nothing but the truth. The colloquies, statements,
[11] questions and answers thereto were reduced to
[12] typewriting under my direction and supervision and
[13] the deposition is a true and correct record of the
[14] testimony/evidence given by the deponent.
[15]   I further certify that I am not a relative
[16] or employee or attorney or counsel of any of the
[17] parties, nor am I a relative or employee of such
[18] attorney or counsel, nor am I financially interested
[19] in the action.
[20]   WITNESS my hand and official seal at
[21] Wichita, Sedgwick County, Kansas, this 20th day of
[22] July, 2004.
[23]
         JANELLE E. GODDARD, C.S.R.
[24]      Certified Shorthand Reporter
[25] Costs:_____

**PART 2**

CERTIFIED COPY

Policy Number    AV 3391999-04    **DECLARATIONS**    Previous Policy Number    AV 3391999-03

This page with "Policy Provisions – Part 1" Form AG0019/98) and all endorsements attached hereto completes this numbered availa phys/ical damage and liability policy, issued by the company as indicated by an "X" in the box to the left of the company's name there after called the Company).

☐ AMERICAN HOME ASSURANCE COMPANY
☒ NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.
☐ THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA

**ITEM 1.**    NAMED INSURED    PONTIAC FLYING SERVICE, INC.
ADDRESS    15755 E 2000 NORTH ROAD, PONTIAC, IL  61764

**ITEM 2.**    Policy Period: From    MAY 19, 2002    to    MAY 19, 2003    12:01 A.M. Standard Time at th address in Item 1. The insurance afforded is only with respect to such and so many of the following coverages as are indicated b specified premium charge or charges. The limit of the Company's liability against such coverage shall be as stated herein, subject to t of the terms of this policy having reference thereto.

**ITEM 3.**    Liability Coverages

| | NON-CHEMICAL LIMITS OF LIABILITY | | CHEMICAL | | LIABILITY PREMIUM |
|---|---|---|---|---|---|
| A. Bodily Injury – excluding Passengers | 100,000.  each person  300,000.  each occurrence  aggregate | | 100,000.  each person  300,000.  each occurrence  300,000.  aggregate | | 3,407. |
| B. Property Damage | 100,000.  each occurrence  aggregate | | 100,000.  each occurrence  100,000.  aggregate | | 6,326. |
| C. Passenger Liability | each occurrence  aggregate | | Not applicable  Not applicable | | |
| D. Single Limit – Property Damage & Bodily Injury, excluding Passengers | each occurrence  aggregate | | Not applicable  aggregate | | |
| E. Medical Expense – cluding Crew | | | Not applicable | | |

Chemical Limits of Liability are part of and not in addition to the Non-Chemical Limits of Liability.  LIAB. TOTAL $    9,735.
All liability arising from any one occurrence shall not exceed the Non-Chemical Limits of Liability.

**ITEM 4.**    Description of Aircraft and Physical Damage Coverage hereunder:

| F.A.A. CERT. NO. | MAKE AND MODEL | YEAR BUILT | SEATS PASS | INSURED VALUE | COVERAGE (check) | | PHYSICAL DAMAGE PREMIUMS | DEDUCTIBLES NOT IN MOTION | IN MOTION, INGESTION, OR MOORING |
|---|---|---|---|---|---|---|---|---|---|
| N5000 | AIR TRACTOR 503 | 91 | 0 1 | 350,000. | F | CC | 21,030.0 | 500. | 35,000. |
| N484-08 | AG CAT G164A | 76 | 0 1 | 90,000. | F | CC | 6,412. | 500. | 9,000. |
| N876 2H | AG CAT S164A | 75 | 0 1 | 45,000. | F | CC | 1,385. | 500. | N/A |

PHYSICAL DAMAGE Coverage Identified:
F. All Risks: Ground & Flight
G. All Risks:  Not In Flight
H. All Risks:  Not In Motion

CHEMICAL CATEGORY:
CC Comprehensive Chemical
RC Restricted Chemical
XC Excluding Chemical
N/A Not Applicable

PHYSICAL DAMAGE TOTAL    $    28,827.    POLICY PREMIUM    $    38,562.

**ITEM 5.**    When in flight the aircraft will be piloted only by SEE AG018
**ITEM 6.**    The aircraft will be used only for the purpose Aerial Application.
**ITEM 7.**    LOSS PAYABLE:  Any loss under coverage F, G, and H is payable as interest may appear to the Named Insured and

ITEM 8.    When in flight the aircraft will be principally based at PONTIAC MUNICIPAL  Airport,  PONTIAC    City  IL    State.

Producer    HARDY AVIATION INSURANCE, INC

Countersigned

At

By _____
(Authorized Representative)

EXHIBIT  A

Approved By _____
(Authorized Representative)

AG04 (9/98)

---

**DEDUCTIBLE LIABILITY INSURANCE ENDORSEMENT**

CERTIFIED COPY

In consideration of  Included    premium of $  Included  , this policy is amended as follows:

**SCHEDULE**

COVERAGE    AMOUNT AND BASIS OF DEDUCTIBLE

Coverage B.
    Property Damage Liability
        Arising from Chemicals    $ 1,000.    each occurrence
        Arising from other than Chemicals    $ 250.    each occurrence

Coverage D.
    Property Damage Liability
        Arising from Chemicals    $Not Covered    each occurrence
        Arising from other than Chemicals    $Not Covered    each occurrence

APPLICATION OF ENDORSEMENT  (Enter below any limitations on the application of this endorsement. If n limitation is entered, the deductibles apply to damages for all property damage, however caused):

1.    The obligation of the Company under Coverage B or D to pay damages on behalf of the Insured applies only t the amount of damages in excess of any deductible amounts stated in the Schedule above as applicable t such coverages, and the limits of insurance applicable to each occurrence for such coverages will be reduce by the application of such deductible amount.

2.    The deductible amounts stated in the Schedule apply as follows:

    Per Occurrence Basis - if the deductible is on a per occurrence basis, the deductible amount applies unde Coverage B or D to all damages because of property damage as the result of any one occurrence regardless of the number of persons or organizations within sustains damages because of that occurrence.

3.    The terms of this insurance, including those with respect to:

    A)    the Company's right and duty to defend any suits seeking those damages, and

    B)    the Named Insured's duties in the event of an occurrence, claim or suit

    apply irrespective of the application of the deductible amount.

AG016 (3/00)    Endorsement No. 1

---

4.    The Company may pay any part or all of the deductible amount to effect settlement of any claim or suit and, upon notification of the action taken, the Named Insured shall promptly reimburse the Company for such part of the deductible amount as has been paid by the Company.

CERTIFIED COPY

All other provisions of this policy remain the same.
This endorsement becomes effective    MAY 19, 2002    to be attached to and hereby made a part of Policy No.    AV 3391999-04    issued to PONTIAC FLYING SERVICE, INC

By National Union Fire Insurance Company of Pittsburgh, PA

Endorsement No.    1    page 2 of 2

Date of Issue    6-14-02    bp    By _____
(Authorized Representative)
AG016 (3/00)

---

**PILOT WARRANTY ENDORSEMENT**
**(AERIAL APPLICATOR AIRCRAFT)**

CERTIFIED COPY

This policy is amended as follows:

When in flight, the aircraft will only be operated by the pilot/s specified below who possess the logged hours, t current and valid ratings and certificates specified below, and a current and valid Medical Certificate.

As respects piston powered fixed-wing aircraft:
☒ Named pilot/s) SCOTT PETERSEN
☒ Any pilot maintaining a commercial or more advanced pilot certificate who has flown a minimum command time of  1,000  (1,000 if nothing else is shown) hours in fixed-wing aircraft engaged in aer application, including at least  100  (100 if nothing else is shown) hours in aircraft of the same make a model being flown.

As respects piston engine powered rotorcraft:
☐ Named pilot/s)
☐ Any pilot maintaining a commercial or more advanced pilot certificate who has flown a minimum pilot command time of _____ (1,000 if nothing else is shown) hours in rotorcraft engaged in aerial applicatic including at least _____ (100 if nothing else is shown) hours in aircraft of the same make and model bei

As respects turbine powered fixed-wing aircraft:
☒ Named pilot/s) SCOTT PETERSEN
☒ Any pilot maintaining a commercial or more advanced pilot certificate who has flown a minimum pilot command time of  1,000  (1,000 if nothing else is shown) hours in fixed-wing aircraft engaged in aer application, including at least  100  (100 if nothing else is shown) hours in aircraft of the same make a model being flown.

As respects turbine powered rotorcraft:
☐ Named pilot/s)
☐ Any pilot maintaining a commercial or more advanced pilot certificate who has flown a minimum command time of _____ (1,000 if nothing else is shown) hours in rotorcraft engaged in aerial applicatio including at least _____ (100 if nothing else is shown) hours in aircraft of the same make and model flown.

As respects all turbine powered aircraft/rotorcraft:
☐ In addition to the above, the following pilots must also have successfully completed the aircraft manufactur ground and flight training program for the aircraft being flown or, if the aircraft has a turbine engi conversion, the pilot must have successfully completed formalized ground and flight training with the aircraf conversion facility.

All other provisions of this policy remain the same.
This endorsement becomes effective    MAY 19, 2002    to be attached to and hereby made a part of Policy No.    AV 3391999-04    issued to PONTIAC FLYING SERVICE, INC

By National Union Fire Insurance Company of Pittsburgh, PA

Endorsement No.    2

Date of Issue    6-14-02  bp    By _____
(Authorized Representative)
AG018 (6/98)

## LIABILITY AMENDMENT ENDORSEMENT
### (AERIAL APPLICATOR)

CERTIFIED COPY

In consideration of INCLUDED premium $ INCLUDED this policy is amended as follows:

Liability Coverages set forth in the Declarations are completed as follows with respect to the following:
N 5030 ONLY

| Liability Coverages | LIMITS OF LIABILITY | |
|---|---|---|
| | NON-CHEMICAL | CHEMICAL |
| D. Single Limit - Property Damage & Bodily Injury Excluding Passengers | $1,000,000. EACH OCCURRENCE | |

ANNUAL PREMIUMS

| Coverage | Premium |
|---|---|
| | |
| | |
| | |

Subject to the following:

CHEMICAL COVERAGES A & B REMAIN AS SHOWN IN ITEM 3. OF THE DECLARATIONS.

THIS ENDOSEMENT APPLIES ONLY AS RESPECTS OPERATIONS UNDER THE NAMED INSURED'S GYPSY MOTH CONTRACTS.

All other provisions of this policy remain the same.

This endorsement becomes effective MAY 19, 2002 to be attached to and hereby made a part of Policy No. AV 3391999-04 issued to PONTIAC FLYING SERVICE, INC

By National Union Fire Insurance Company of Pittsburgh, PA

Endorsement No. 3

Date of Issue 6-14-02 bp

By _(signature)_ (Authorized Representative)

AG427 (4/02)

---

## ADDITIONAL INSURED ENDORSEMENT

CERTIFIED COPY

In consideration of INCLUDED premium $ INCLUDED this policy is amended as follows:

The following is included as an additional insured, but only with respect to the operation of the aircraft by the Named insured:

THE FARMER, OWNER, AND/OR GROWER FOR WHOM AERIAL APPLICATION IS BEING PERFORMED. COVERAGE IS EXTENDED TO INCLUDE STATE AND COUNTY GOVERNMENT AGENCIES AND CONTRACT HOLDERS REQUIRED FOR CONTRACT WORK TO BE DONE.

A L'S AERIAL SPRAYING, INC

For the purposes of this endorsement only, coverage

1) only applies with respect to such insurance as is afforded by coverages A, B, C, or D;
2) does not apply to any liability arising from the selection or use of chemicals manufactured, sold, handled, distributed by the additional insured;
3) is excess coverage only and applies only after all other coverage available to the insured has been exhausted;
4) is further subject to the following:
   THIS EXTENSION OF COVERAGE ONLY APPLIES WITH RESPECT TO THE VICARIOUS RESPONSIBILITY OF THE ADDITIONAL INSURED FOR THE CONDUCT OF AERIAL APPLICATION BY THE NAMED INSURED.

All other provisions of this policy remain the same.

This endorsement becomes effective MAY 19, 2002 to be attached to and hereby made a part of Policy No. AV 3391999-04 issued to PONTIAC FLYING SERVICE, INC

By National Union Fire Insurance Company of Pittsburgh, PA

Endorsement No. 4

Date of Issue 6-14-02 bp

By _(signature)_ (Authorized Representative)

---

## ADJACENT FIELDS LIABILITY

CERTIFIED COPY

In consideration of INCLUDED premium $ INCLUDED this policy is amended as follows:

Exclusion 7. c) is deleted, subject to the following:

NO CHANGE

All other provisions of this policy remain the same.

This endorsement becomes effective MAY 19, 2002 to be attached to and hereby made a part of Policy No. AV 3391999-04 issued to PONTIAC FLYING SERVICE, INC

By National Union Fire Insurance Company of Pittsburgh, PA

Endorsement No. 5

Date of Issue 6-14-02 bp

By _(signature)_ (Authorized Representative)

---

## RESIDENTIAL AREAS ENDORSEMENT

CERTIFIED COPY

In consideration of INCLUDED premium $ INCLUDED this policy is amended as follows:

Exclusion 5. k) is deleted in its entirety and replaced with the following:

5. k) to claims arising from the aerial application to any residential area except with respect to aerial application of the following chemicals THOSE REQUIRED FOR GYPSY MOTH CONTRACTS

to the village, town or city of THOSE REQUIRED FOR GYPSY MOTH CONTRACTS

All other provisions of this policy remain the same.

This endorsement becomes effective MAY 19, 2002 to be attached to and hereby made a part Policy No. AV 3391999-04 issued to PONTIAC FLYING SERVICE, INC

By National Union Fire Insurance Company of Pittsburgh, PA

Endorsement No. 6

Date of Issue 6-14-02 bp

By _(signature)_ (Authorized Representative)

ILLINOIS SPECIAL LIMITS ENDORSEMENT

In consideration of additional premium of $ INCLUDED , this policy is amended as follows:

As respects aerial application within the State of Illinois, the Limits of Liability shall be the greater of:

a)  The amounts as shown on the Declarations; or

b)  The following limits if a premium is shown on the Declarations for the coverage(s):

Coverage A      $ 50,000. each person
                $100,000. each occurrence
                $500,000. aggregate

Coverage B      $ 50,000. each occurrence
                $ 50,000. aggregate

Coverage D      $100,000. each occurrence
                $500,000. aggregate

All other provisions of this policy remain the same.
This endorsement becomes effective      MAY 19, 2002      to be attached to and hereby made a part of
Policy No.    AV 3391999-04    issued to  PONTIAC FLYING SERVICE, INC

By    National Union Fire Insurance Company of Pittsburgh, PA

Endorsement No.      7

Date of Issue        6-14-02  bp                    By _____
                                                         (Authorized Representative)

---

PURPOSE OF USE ENDORSEMENT          CERTIFIED COPY

This policy is amended as follows:

The Purpose of Use set forth in the Declarations is   completed   as follows:

AS RESPECTS ALL AIRCRAFT

    Purpose of Use shall be only as follows:

    THIS POLICY IS AMENDED AS FOLLOWS:

    THE PURPOSE OF USE SET FORTH IN THE DECLARATIONS IS AMENDED AS FOLLOWS:

    AS RESPECTS AIRCRAFT WHILE OPERATING WITHIN, ON OR ABOVE THE COMMONWEALTH OF
    KENTUCKY

    PURPOSE OF USE SHALL BE ONLY AS FOLLOWS:

    PLEASURE AND BUSINESS USE ONLY, AND EXCLUDING AERIAL APPLICATION

All other provisions of this policy remain the same.
This endorsement becomes effective      MAY 19, 2002      to be attached to and hereby made a part of
Policy No.    AV 3391999-04    issued to  PONTIAC FLYING SERVICE, INC

By    National Union Fire Insurance Company of Pittsburgh, PA

Endorsement No.      8

Date of Issue        6-14-02  bp                    By _____
AV122 (1/01)                                              (Authorized Representative)

---

CERTIFIED COPY

TERRITORY AMENDMENT ENDORSEMENT

In consideration of  INCLUDED      premium of $ INCLUDED , this policy is amended as follows:

Exclusion 5. f) shall not apply to the following states:

WEST VIRGINIA, VIRGINIA, OHIO, MICHIGAN, MARYLAND

All other provisions of this policy remain the same.
This endorsement becomes effective      MAY 19, 2002      to be attached to and hereby made a part of
Policy No.    AV 3391999-04    issued to  PONTIAC FLYING SERVICE, INC

By    National Union Fire Insurance Company of Pittsburgh, PA

Endorsement No.      9

Date of Issue        6-14-02  bp                    By _____
                                                         (Authorized Representative)

---

EQUIPMENT EXCLUSION          CERTIFIED COPY

This policy is amended as follows:

The coverage afforded by this policy shall not apply to the following aircrafts equipment:

EXCLUDES GLOBAL POSITIONING SYSTEM

All other provisions of this policy remain the same.
This endorsement becomes effective      MAY 19, 2002      to be attached to and hereby made a part of
Policy No.    AV 3391999-04    issued to  PONTIAC FLYING SERVICE, INC

By    National Union Fire Insurance Company of Pittsburgh, PA

Endorsement No.      10

Date of Issue        6-14-02  bp                    By _____
                                                         (Authorized Representative)

## LOSS PAYABLE ENDORSEMENT    CERTIFIED COPY

In consideration of additional premium of $ ___ INCLUDED ___ , this policy is amended as follows:

Any loss under Coverage F, G, and H is payable as interest may appear to the Named Insured and the following Loss Payable:

As respects  N4846B AND N6762H

PEOPLES BANK
PO BOX 460
GRIDLEY, IL  61744

AS RESPECTS N503D:

BANK OF PONTIAC
300 W WASHINGTON
PONTIAC, IL  67764

All other provisions of this policy remain the same.

This endorsement becomes effective ___ MAY 19, 2002 ___ to be attached to and hereby made a part of
Policy No. ___ AV 3391999-04 ___ issued to ___ PONTIAC FLYING SERVICE, INC

By ___ National Union Fire Insurance Company of Pittsburgh, PA

Endorsement No. ___ 11

Date of Issue ___ 6-14-02  bp      By _____
                                        (Authorized Representative)

---

## WAR, HI-JACKING AND OTHER PERILS EXCLUSION CLAUSE (AVIATION)
## CERTIFIED COPY

This policy is amended as follows:

In the event any of the provisions of this endorsement are in conflict with any provisions, exclusions, conditions or terms forming part of this policy, this endorsement shall take precedence.

This policy does not cover claims caused by:

(a) War, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, martial law, military or usurped power or attempts at usurpation of power;

(b) Any hostile detonation of any weapon of war employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter;

(c) Strikes, riots, civil commotions or labor disturbances;

(d) Any act of one or more persons, whether or not agents of a sovereign power, for political or terrorist purposes and whether the loss or damage resulting therefrom is accidental or intentional;

(e) Any malicious act or act of sabotage;

(f) Confiscation, nationalization, seizure, restraint, detention, appropriation, requisition for title or use by or under the order of any Government (whether civil, military or de facto) or public or local authority;

(g) Hi-jacking or any unlawful seizure or wrongful exercise of control of the aircraft or crew in flight (including any attempt at such seizure or control) made by any person or persons on board the aircraft acting without the consent of the Insured.

Furthermore, this policy does not cover claims arising whilst the aircraft is outside the control of the Insured by reason of any of the above perils.

The aircraft shall be deemed to have been restored to the control of the Insured on the safe return of the aircraft to the Insured at an airfield not excluded by the geographical limits of this policy, and entirely suitable for the operation of the aircraft (such safe return shall require that the aircraft be parked with engines shut down and under no duress).

All other provisions of this policy remain the same.

This endorsement becomes effective ___ MAY 19, 2002 ___ to be attached to and hereby made a part of
Policy No. ___ AV 3391999-04 ___ issued to ___ PONTIAC FLYING SERVICE, INC

By ___ National Union Fire Insurance Company of Pittsburgh, PA

Endorsement No. ___ 12

Date of Issue ___ 6-14-02  bp

☒ AIG Aviation, Inc.
☐ AIG Aviation Insurance Services
☐ AIG Aviation (Canada), Inc.
☐ AIG Aviation (Illinois) Corporation
☐ AIG Aviation (Texas), Inc.
☐ American International Aviation Agency, Inc.
☐

By _____

---

## NUCLEAR RISKS EXCLUSION CLAUSE    CERTIFIED COPY

This policy is amended as follows:

In the event any of the provisions of this endorsement are in conflict with any provisions, exclusions, conditions or terms forming part of this policy, this endorsement shall take precedence.

1. This policy does not cover:

   (i) loss or destruction of or damage to any property whatsoever or any loss or expense whatsoever resulting or arising therefrom or any consequential loss

   (ii) any legal liability of whatsoever nature

   directly or indirectly caused by or contributed to by or arising from:

   (a) the radioactive, toxic, explosive or other hazardous properties of any explosive nuclear assembly or nuclear component thereof;

   (b) the radioactive properties of, or a combination of radioactive properties with toxic, explosive or other hazardous properties of, any other radioactive material in the course of carriage as cargo, including storage or handling incidental thereto;

   (c) ionizing radiations or contamination by radioactivity from, or the toxic, explosive or other hazardous properties of, any other radioactive source whatsoever.

2. It is understood and agreed that such radioactive material or other radioactive source in paragraph 1. (b) and (c) above shall not include:

   (i) depleted uranium and natural uranium in any form;

   (ii) radioisotopes which have reached the final stage of fabrication so as to be usable for any scientific, medical, agricultural, commercial, educational or industrial purpose.

3. This policy, however, does not cover loss of or destruction of or damage to any property or any consequential loss or any legal liability of whatsoever nature with respect to which:

   (i) the Insured under this policy is also an insured or an additional insured under any other insurance policy, including any nuclear energy liability policy; or

   (ii) any person or organization is required to maintain financial protection pursuant to legislation in any country; or

   (iii) the Insured under this policy is, or had this policy not been issued would be, entitled to indemnification from any government or agency thereof.

---

### CERTIFIED COPY

a. Loss, destruction, damage, expense or legal liability in respect of the nuclear risks not excluded by reason of paragraph 2. shall (subject to all other terms, conditions, limitations, warranties and exclusions of this policy) be covered, provided that:

   (i) in the case of any claim in respect of radioactive material in the course of carriage as cargo, including storage or handling incidental thereof, such carriage shall in all respects have complied with the International Civil Aviation Organization "Technical Instructions for the Safe Transport of Dangerous Goods by Air", unless the carriage shall have been subject to any more restrictive legislation, when it shall in all respects have complied with such legislation;

   (ii) this policy shall only apply to an incident happening during the period of this policy and where any claim by the Insured against the Company or by any claimant against the Insured arising out of such incident shall have been made within three years after the date thereof;

   (iii) in the case of any claim for the loss of or destruction of or damage to or loss of use of an aircraft caused by or contributed to by radioactive contamination, the level of such contamination shall have exceeded the maximum permissible level set out in the following scale:

| Emitter | Maximum permissible level of non-fixed radioactive surface contamination (Averaged over 300 cm²) |
| --- | --- |
| (IAEA Health and Safety Regulations) | |
| Beta, gamma and low toxicity alpha emitters | Not exceeding 4 Bequerels / cm² (10⁻⁴ microcuries / cm²) |
| All other alpha emitters | Not exceeding 0.4 Bequerels / cm² (10⁻⁵ microcuries / cm²) |

   (iv) the cover afforded hereby may be cancelled at any time by the Company giving seven days' notice of cancellation.

All other provisions of this policy remain the same.

This endorsement becomes effective ___ MAY 19, 2002 ___ to be attached to and hereby made a part of
Policy No. ___ AV 3391999-04 ___ issued to ___ PONTIAC FLYING SERVICE, INC

By ___ National Union Fire Insurance Company of Pittsburgh, PA

Endorsement No. ___ 13

Date of Issue ___ 6-14-02  bp

☒ AIG Aviation, Inc.
☐ AIG Aviation Insurance Services
☐ AIG Aviation (Canada), Inc.
☐ AIG Aviation (Illinois) Corporation
☐ AIG Aviation (Texas), Inc.
☐ American International Aviation Agency, Inc.

By _____

## NOISE AND POLLUTION AND OTHER PERILS EXCLUSION CLAUSE

This policy is amended as follows:

In the event any of the provisions of this endorsement are in conflict with any provisions, exclusions, conditions or terms forming part of this policy, this endorsement shall take precedence.

1.   This policy does not cover claims directly or indirectly occasioned by, happening through or in consequence of:

  (a)  noise (whether audible to the human ear or not), vibration, sonic boom and any phenomena associated therewith,

  (b)  pollution and contamination of any kind whatsoever,

  (c)  electrical and electromagnetic interference,

  (d)  interference with the use of property;

  unless caused by or resulting in a crash, fire, explosion or collision or a recorded in-flight emergency causing abnormal aircraft operation.

2.   With respect to any provision in this policy concerning any duty of the Company to investigate or defend claims, such provision shall not apply and the Company shall not be required to defend:

  (a)  claims excluded by paragraph 1., or

  (b)  a claim or claims covered by the policy when combined with any claims excluded by paragraph 1. (referred to below as "Combined Claims").

3.   In respect of any Combined Claims, the Company shall (subject to proof of loss and the limits of the policy) reimburse the Insured for that portion of the following items which may be allocated to the claims covered by the policy:

  (a)  damages awarded against the Insured and

  (b)  defense fees and expenses incurred by the Insured.

4.   Nothing herein shall override any radioactive contamination or other exclusion clause attached to or forming part of this policy.

All other provisions of this policy remain the same.

This endorsement becomes effective _____ MAY 19, 2002 _____ to be attached to and hereby made a part of
Policy No. _____ AV 3391999-04 _____ issued to PONTIAC FLYING SERVICE, INC

By  National Union Fire Insurance Company of Pittsburgh, PA

Endorsement No.      14

Date of Issue _____ 6-14-02   bp

☒ AIG Aviation, Inc.
☒ AIG Aviation Insurance Services
☒ AIG Aviation (Canada), Inc.
☐ AIG Aviation (Illinois) Corporation
☐ AIG Aviation (Texas), Inc.
☐ American International Aviation Agency, Inc.

---

## FUNGUS EXCLUSION ENDORSEMENT

This policy shall not apply under any coverage section to:

1.   bodily injury; sickness; disease; occupational disease; headaches; dizziness; neurological disorders of any kind mental or physical stress, anguish, or injury of any kind; property damage or grounding or any other claim whatsoever nor

  any loss, cost, or expense including, but not limited to, losses, costs, or expenses related to, arising from, o associated with testing for, cleaning up, remediation, containment, removal, or abatement, nor

  any obligation to defend or indemnify due in whole or in part to any claim or suit against the insured alleging damages arising from or caused by, directly or indirectly, in whole or in part, by

  (a)  any fungus(i), molds, mildew or yeast, or

  (b)  any spore(s), or toxins created or produced by or emanating from such fungus(i), mold(s), mildew or yeast, or

  (c)  any substance, vapor gas, or other emission or organic or inorganic body or substance produced by o arising out of any fungus(i), mold(s), mildew or yeast, or

  (d)  any material, product, building component, building or structure or any concentration of moisture, water or other liquid within such material, product, building component, building or structure that contains, harbors, nurtures, or acts as a medium for any fungus(i), mold(s), mildew or yeast; or spore(s) or toxins emanating therefrom,

  regardless of any other cause, event material, product and/or building component that contributed concurrently or in any sequence to any alleged loss or subsequent claim.

2.   For the purposes of this endorsement, the following definitions are added to the policy:

  Fungus(i) includes, but is not limited to, any of the plants or organisms belonging to the major group Fungi, lacking chlorophyll, and including mold(s), rusts, mildews, smuts, and mushrooms.

  Mold(s) includes, but is not limited to, any superficial growth produced on damp or decaying organic matter or on living organisms, and fungi that produce molds.

  Spore(s) means any dormant or reproductive body produced by or arising or emanating out of any fungus(i), mold(s), mildew, plants, organisms, or microorganisms.

All other provisions of this policy remain the same.

This endorsement becomes effective _____ MAY 19, 2002 _____ to be attached to and hereby made a part of
Policy No. _____ AV 3391999-04 _____ issued to PONTIAC FLYING SERVICE, INC

By  National Union Fire Insurance Company of Pittsburgh, PA

Endorsement No.      15

Date of Issue _____ 6-14-02   bp

☒ AIG Aviation, Inc.
☒ AIG Aviation Insurance Services
☒ AIG Aviation (Canada), Inc.
☐ AIG Aviation (Illinois) Corporation
☐ AIG Aviation (Texas), Inc.
☐ American International Aviation Agency, Inc.

---

## DATE RECOGNITION EXCLUSION CLAUSE

This Policy does not cover any claim, damage, injury, loss, cost, expense or liability (whether in contract, tort, negligence, product liability, misrepresentation, fraud or otherwise) of any nature whatsoever arising from or occasioned by or in consequence of (whether directly or indirectly and whether wholly or partly):

  (a)  the failure or inability of any computer hardware, software, integrated circuit, chip or information technology equipment or system (whether in the possession of the Insured or of any third party) accurately or completely to process, recognize, exchange or transfer year, date or time data or information in connection with any change of year, date or time;

  whether on or before or after such change of year, date or time;

  (b)  any implemented or attempted change or modification of any computer hardware, software, integrated circuit, chip or information technology equipment or system (whether in the possession of the Insured or of any third party) in anticipation of or in response to any such change of year, date or time, or any advice given or services performed in connection with any such change or modification;

  (c)  any non-use or unavailability for use of any property or equipment of any kind whatsoever resulting from any act, failure to act or decision of the Insured or of any third party related to any such change of year, date or time;

and any provision in this Policy concerning any duty of the Company to investigate or defend claims shall not apply to any claims so excluded.

All other provisions of this policy remain the same.

This endorsement becomes effective _____ MAY 19, 2002 _____ to be attached to and hereby made a part of
Policy No. _____ AV 3391999-04 _____ issued to PONTIAC FLYING SERVICE, INC

By  National Union Fire Insurance Company of Pittsburgh, PA

Endorsement No.      16

Date of Issue _____ 6-14-02   bp

☒ AIG Aviation, Inc.
☒ AIG Aviation Insurance Services
☒ AIG Aviation (Canada), Inc.
☐ AIG Aviation (Illinois) Corporation
☐ AIG Aviation (Texas), Inc.
☐ American International Aviation Agency, Inc.

---

## ILLINOIS CANCELLATION / NONRENEWAL ENDORSEMENT - AVIATION

Wherever used in this endorsement: 1) "we", "us", "our", and "insurer" mean the insurance company which issued this policy; and 2) "you", "your", "Named Insured", "First Named Insured", and "Insured" mean the Named Corporation, Named Organization, Named Sponsor, Named Insured, or Insured stated in the Declarations page; and 3) "Other Insured(s)" means all other persons or entities afforded coverage under this policy.

### CANCELLATION AND NONRENEWAL

A)  The cancellation condition of this policy is replaced by the following:

### CANCELLATION

1.   The Named Insured may cancel this policy by mailing to the Insurer advance written notice of cancellation.

2.   If this policy has been in effect for sixty (60) days or less, the Insurer may cancel this policy by mailing t the Named Insured written notice of cancellation at least:

  a)  Ten (10) days before the effective date of cancellation if the Insurer cancels for nonpayment c premium; or

  b)  Thirty (30) days before the effective date of cancellation if the Insurer cancels for any other reason.

3.   If this policy has been in effect for more than sixty (60) days the Insurer may cancel this policy only fo one or more of the following reasons:

  a)  Nonpayment of premium;

  b)  The policy was obtained through a material misrepresentation;

  c)  The Named Insured or Other Insured(s) have violated any of the terms and conditions of the policy;

  d)  The risk originally accepted has measurably increased;

  e)  Certification to the Director of Insurance of the loss of reinsurance by the Insurer which provide coverage to the Insurer for all or a substantial part of the underlying risk insured; or

  f)  A determination by the Director that the continuation of the policy could place the Insurer in violatio of the insurance laws of this State.

  If the Insurer cancels this policy based on one or more of the above reasons except for nonpayment o premium, the Insurer will mail written notice to the Named Insured at least sixty (60) days before the effective date of cancellation. When cancellation is for nonpayment of premium, the Insurer will mai notice at least ten (10) days before the effective date of cancellation.

4.   The Insurer will mail the notice to the Named Insured and the agent or broker at the last addresses known to the Insurer.

5.   Notice of cancellation will state the effective date of cancellation and a specific explanation of the reason or reasons for cancellation. The policy period will end on that date.

6.   If this policy is cancelled, the Insurer will send the Named Insured any premium refund due. If the Insurer cancels, the refund will be pro rata. If the Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if the Insurer has not made or offered a refund.

7.   Proof of mailing will be sufficient proof of notice.

**NONRENEWAL**

**CERTIFIED COPY**

If the Insurer decides to not renew this policy, the Insurer will mail written notice stating the reason for nonrenewal to the Named Insured's last mailing address known to the Insurer at least sixty (60) days before the expiration date of the policy. A copy of the notice will also be sent to:

a)  The broker, if known to the Insurer, or the agent of record; and

b)  The last known mortgagee or lienholder named in the policy at the last mailing address known to the Insurer.

This paragraph does not apply if the Insurer has manifested a willingness to renew directly to the Named Insured.

All other provisions of this policy remain the same.

This endorsement becomes effective ___MAY 19, 2002___ to be attached to and hereby made a part of Policy No. ___AV 3391999-04___ issued to ___PONTIAC FLYING SERVICE, INC.___

By  National Union Fire Insurance Company of Pittsburgh, PA

Endorsement No. ___17___

Date of Issue ___6-14-02   bp___

☐ AIG Aviation, Inc.
☐ AIG Aviation Insurance Services
☐ AIG Aviation (Canada), Inc.
☐ AIG Aviation (Illinois) Corporation
☐ AIG Aviation (Texas), Inc.

By _____
(Authorized Representative)

SE52142(11/94)  Page 2

---

**TERRORISM EXCLUSION**
(Terrorism Risk Insurance Act of 2002)

**CERTIFIED COPY**

This policy is amended as follows:

This policy does not cover claims caused by any losses, damages, or injuries arising directly or indirectly as result of a certified "Act of Terrorism" defined by Section 102, Definitions of the Terrorism Risk Insurance Act of 2002 and any revisions or amendments.

Solely with respect to this endorsement and to ensure compliance with the Terrorism Risk Insurance Act of 2002, an "Act of Terrorism" shall mean:

(1)  Act of Terrorism:

(A)  Certification - The term "act of terrorism" means any act that is certified by the Secretary of the Treasury of the United States, in concurrence with the Secretary of State and the Attorney General of the United States:
(i)  to be an act of terrorism;
(ii)  to be a violent act or an act that is dangerous to:
(I)  human life;
(II)  property; or
(III)  infrastructure;
(iii)  to have resulted in damage within the United States or outside of the United States in the case of:
(I)  an air carrier or commercial vessel defined as one principally based in the United States, on which United States income tax is paid, and whose insurance coverage is subject to regulation in the United States; or
(II)  the premises of a United States mission; and
(iv)  to have been committed by an individual(s) acting on behalf of any foreign person or interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.
(B)  Limitation - No act shall be certified by the Secretary as an act of terrorism if:
(i)  the act is committed as part of the course of war declared by the Congress, except that this clause shall not apply with respect to any coverage for workers' compensation; or
(ii)  property and casualty insurance losses resulting from the act, in the aggregate, do not exceed $5,000,000.
(C)  Determinations Final - Any certification of, or determination not to certify, an act of terrorism under this paragraph shall be final, and shall not be subject to judicial review.
(D)  Nondelegation - The Secretary may not delegate or designate to any other officer, employee, or person, any determination under this paragraph of whether, during the effective period of the Program, an act of terrorism has occurred.

THE PROVISIONS OF THIS ENDORSEMENT SHALL APPLY SOLELY TO THE TERRORISM RISK INSURANCE ACT OF 2002 AND SHALL IN NO WAY CONFLICT WITH THOSE OF AVN48B AND AMENDMENTS THERETO.

All other provisions of this policy remain the same.

This endorsement becomes effective ___NOVEMBER 26, 2002___ to be attached to and hereby made a part of Policy No. ___AV 3391999-04___ issued to ___PONTIAC FLYING SERVICE, INC.___

By  National Union Fire Insurance Company of Pittsburgh, PA

Endorsement No. ___18___

Date of Issue ___APRIL 11, 2003  JT___   By _____
(Authorized Representative)

AV856 (1/03)

---

**POLICY PERIOD REVISION**

**CERTIFIED COPY**

In consideration of ___INCLUDED___ premium $ ___INCLUDED___ , Item 2 - Policy Period - is amended to read as follows:

From ___MAY 19, 2002___ to ___JULY 6, 2003___ both at 12:01 A.M. Standard time at the address in Item 1 of the Declarations Page.

All other provisions of this policy remain the same.

This endorsement becomes effective ___MAY 19, 2003___ to be attached to and hereby made a part of Policy No. ___AV 3391999-04___ issued to ___PONTIAC FLYING SERVICE, INC.___

By  National Union Fire Insurance Company of Pittsburgh, PA

Endorsement No. ___19___

Date of Issue ___MAY 6, 2003  bp___   By _____
(Authorized Representative)

AV116 (1/99)

---

  

AMERICAN HOME ASSURANCE COMPANY          NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA          THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA

**AERIAL APPLICATOR AIRCRAFT POLICY**

Policy Provisions - Part 1 - Form AG01 (9/98)

**INSURING AGREEMENTS**          **CERTIFIED COPY**

The Company as shown in Part 2 - Declarations (hereinafter called the Company), in consideration of the payment of the premium, in reliance upon the statements of the Declarations made a part hereof, subject to all of the terms of this policy including the applicable limits of liability, the Company agrees with the Named Insured with respect to those coverages indicated in Items 3 and 4 of the Declarations.

**I.  LIABILITY COVERAGES**

**Coverage A - Bodily Injury Liability Excluding Passengers** - To pay on behalf of the Insured those sums which the Insured shall become legally obligated to pay as damages because of bodily injury sustained by any person excluding any passenger,

**Coverage B - Property Damage Liability** - To pay on behalf of the Insured those sums which the Insured shall become legally obligated to pay as damages because of property damage,

**Coverage C - Passenger Bodily Injury Liability** - To pay on behalf of the Insured those sums which the Insured shall become legally obligated to pay as damages because of bodily injury sustained by any passenger,

**Coverage D - Single Limit Bodily Injury and Property Damage Liability** - To pay on behalf of the Insured those sums which the Insured shall become legally obligated to pay as damages because of bodily injury sustained by any person (excluding any passenger unless the words "including passengers" appear in Item 3 of the Declarations) and property damage,

caused by an occurrence and arising out of the ownership, maintenance or use of the aircraft.

**II.  MEDICAL EXPENSE COVERAGE**

**Coverage E - Medical Expense** - To pay that reasonable medical expense incurred within one year from the date of injury, to or for each passenger (excluding any crew unless the words "including crew" appear in Item 3 of the Declarations) who sustains bodily injury caused by an occurrence, provided the aircraft is being used by or with the permission of the Named Insured.

**III.  PHYSICAL DAMAGE COVERAGES**

**Coverage F - All Risk Basis** - To pay for physical damage loss to the aircraft, including disappearance of the aircraft unless otherwise described in this policy.

**Coverage G - All Risk Basis Not in Flight** - To pay for physical damage loss to the aircraft sustained while the aircraft is not in flight and which is not the result of fire or explosion following crash or collision while the aircraft was in flight unless otherwise described in this policy.

AG01 (9/98)

**Coverage H - All Risk Basis Not in Motion** - To pay for physical damage loss to the aircraft sustained while the aircraft is not in motion and which is not the result of fire or explosion following crash or collision while the aircraft was in motion unless otherwise described in this policy.

## IV. DEFENSE, SETTLEMENT AND SUPPLEMENTARY PAYMENTS
### Coverages A, B, C, and D

The Company shall have the right and duty to defend any suit against the Insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the Company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the Company's liability has been exhausted by payment of judgments or settlements.

During such time as the Company is obligated to defend a claim or claims under the provisions of the preceding paragraph, the Company will pay, with respect to such claim, in addition to the applicable limit of liability:

a) all expenses incurred by the Company, all costs taxed against the Insured in any suit defended by the Company and all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before the Company has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the Company's liability thereon;

b) premiums on appeal bonds required in any such suit, premiums on bonds to release attachments in any such suit for an amount not in excess of the applicable limit of liability of this policy, and the cost of bail bonds required of the Insured because of an occurrence or violation of law or a regulation for civil aviation arising out of the use of the aircraft, not to exceed $1,000, per bail bond, but the Company shall have no obligation to apply for or furnish any such bonds;

c) expenses incurred by the Insured for first aid to others at the time of an accident, for bodily injury to which this policy applies, not to exceed $5,000. per occurrence;

d) all reasonable expenses incurred by the Insured at the Company's request to assist the Company in the investigation or defense of the claim or suit, including actual loss of earnings up to $100. per day because of time off from work.

## V. UNITED STATES ARMY, NAVY AND AIR FORCE INSURANCE REQUIREMENTS
### Coverages A, B, C, and D

If the Aviation Managers issue a Civil Aircraft Certificate of Insurance Form DD 2400, or any replacement thereof, as required by regulations of the U.S. Army, Navy or Air Force, then the insurance policy provisions shall conform to the minimum requirements of that regulation.

## VI. POLICY PERIOD, TERRITORY
### All Coverages

This policy applies only to bodily injury or property damage which occurs, and to physical damage losses to the aircraft which are sustained during the policy period, while the aircraft is within the 48 contiguous United States of America.

## VII. TWO OR MORE AIRCRAFT
### All Coverages

Except with respect to any Aggregate Limit(s) of Liability, when two or more aircraft are insured under this policy, the terms of this policy shall apply separately to each.

---

2) the radioactive properties of, or the combination of radioactive properties with toxic, explosive or other hazardous properties of, any other radioactive material in the course of carriage of cargo, including storage or handling incidental thereto;

3) ionizing radiations or contamination by radioactivity from, or the toxic, explosive or other hazardous properties of, any other radioactive source whatsoever.

4. To claims caused by

a) War, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, mutual law, military or usurped power or attempts at usurpation of power.

b) Any hostile detonation of any weapon of war employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter.

c) Strikes, riots, civil commotions or labor disturbances.

d) Any act of one or more person, whether or not agents of a sovereign power, for political or terrorist purposes and whether the loss or damage resulting therefrom is accidental or intentional.

e) Any malicious act or act of sabotage.

f) Confiscation, nationalization, seizure, restraint, detention, appropriation, requisition for title or use by or under the order of any Government (whether civil, military or de facto) or public or local authority.

g) Hi-jacking or any unlawful seizure or wrongful exercise of control of the aircraft or crew in flight (including any attempt at such seizure or control) made by any person or persons on board the aircraft acting without the consent of the Insured.

Furthermore this policy does not cover claims arising while the aircraft is outside the control of the Insured by reason of any of the above perils. The aircraft shall be deemed to have been restored to the control of the Insured on the safe return of the aircraft to the Insured at an airfield not excluded by the geographical limits of this policy, and entirely suitable for the operation of the aircraft (such safe return shall require that the aircraft be parked with engines shut down and under no duress).

5. Under Coverages A, B, C, D and E

a) to liability assumed by the Insured under any contract or agreement;

b) to an Insured under this policy who is also an Insured under a contract of nuclear energy liability insurance issued by the Nuclear Energy Liability Insurance Association or the Mutual Atomic Energy Liability Underwriters and in effect at the time of the occurrence resulting in such injury, sickness, disease, death or destruction; provided, such contract of nuclear energy liability insurance shall be deemed to be in effect at the time of such occurrence notwithstanding such contract has terminated upon exhaustion of its limit of liability;

c) 1) To claims directly or indirectly occasioned by, happening through or in consequence of:

a) noise (whether audible to the human ear or not), vibration, sonic boom and any phenomena associated therewith,

b) pollution and contamination of any kind whatsoever,

c) electrical and electromagnetic interference,

---

## EXCLUSIONS

This policy does not apply:

1. a) while the aircraft is being operated with the knowledge and consent of the Insured or of any executive officer or partner thereof, for any unlawful purpose, or for any purpose or use other than aerial application, unless specifically endorsed on the policy;

b) if the aircraft has been modified, unless such modifications have been noted on the application for insurance or specifically endorsed on this policy;

c) if the aircraft is leased, rented or loaned to anyone other than the Named Insured;

d) while the aircraft is subject to any lease, lien, conditional sale, mortgage or other encumbrance not specifically declared and described in this policy.  CERTIFIED COPY

2. While the aircraft is in flight

a) if piloted by other than the pilot or pilots designated in the Declarations, except while the aircraft is under the care, custody or control of a Federal Aviation Administration (FAA) approved repair station for the purpose of maintenance, repair or test flights and if piloted by an employee of such repair station;

b) unless the aircraft has a valid "Standard" or "Restricted" category Airworthiness Certificate in full force and effect, as issued by the Federal Aviation Administration;

c) unless the pilot(s) designated in the Declarations maintains a current and valid pilot certificate as required by the Federal Aviation Administration for the flight involved;

d) while the aircraft is engaged in aerial application unless the pilot maintains and is not in violation of any certificate required by any governmental authority having jurisdiction over aerial application;

e) while the aircraft is used for smoke or fire patrol, fire fighting or control, or any activity in support of those uses;

f) while the aircraft is used for aerial application unless the Named Insured has complied with all federal, state and local laws and regulations which apply to aerial application;

g) under conditions requiring a special permit or waiver from the Federal Aviation Administration, other than a permit or waiver which has been granted to the Named Insured for aerial application;

h) in violation of any Federal Aviation Regulation which applies to repairs, alterations or inspections of the aircraft.

3. To

a) loss of or destruction of or damage to any property whatsoever or any loss or expense whatsoever resulting or arising therefrom or any consequential loss

b) any legal liability whatsoever

directly or indirectly caused or contributed to, by or arising from:

1) the radioactive, toxic, explosive or other hazardous properties of any explosive nuclear assembly or nuclear component thereof;

AG01 (9/98)

---

d) interference with the use of property,

unless caused by a crash or collision of aircraft or a recorded in flight emergency causing abnormal aircraft operation.

Exclusion 5. c) 1) does not apply to liability arising specifically from direct and intended spraying, emitting or application during the policy period by aircraft while in flight or by agricultural ground spraying equipment, of seeds, fertilizers or chemicals which result in bodily injury or property damage otherwise covered by this insurance.

2) With respect to any provision in the policy concerning any duty of the Company to investigate or defend claims, such provision shall not apply and the Company shall not be required to defend:

a) claims excluded by paragraph 5. c) 1) or

b) a claim or claims covered by the policy when combined with any claims excluded by paragraph 5. c) 1) referred to below as "Combined Claims".

3) In respect of any Combined Claims, the Company shall (subject to proof of loss and the limits of the policy) reimburse the Insured for that portion of the following items, which may be allocated to the claim or claims covered by the policy:

a) damages awarded against the Insured and   CERTIFIED COPY

b) defense fees and expenses incurred by the Insured.

d) to any direction, demand, order or request that any Insured or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to or assess the effects of pollution or contamination of any kind whatsoever, or to contribute to or reimburse others for the cost thereof, whether or not the Insured is liable for such pollution or contamination and regardless of whether such liability arises or is deemed to arise from a claim for legal damages or equitable relief; or any claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to, or assessing the effects of pollution or contamination of any kind whatsoever;

e) to damages arising from a hostile fire. As used in this exclusion, a hostile fire means one that becomes uncontrollable or breaks out from where it was intended to be,

f) to claims arising from aerial application unless within the state where the aircraft is principally based or a state within the United States of America adjacent to that state;

g) to claims arising from the aerial application to rights-of-way or easements for public or quasi-public persons or bodies, waterways, railroads, pipelines or utility companies;

h) to claims arising from chemicals or contamination of chemicals, unless all chemicals are included in the Chemical Category designated for the aircraft involved in the occurrence;

i) to claims arising from chemicals excluded in the Chemical Category Definitions for "CC", "RC", and "XC";

j) to claims arising from aerial application involving two or more aircraft owned or operated by the Named Insured, unless all such aircraft involved in the same occurrence are insured by the Company for the same Chemical Category;

k) to claims arising from the aerial application to any residential area;

AG01 (9/98)    - 6 -

t)   to claims arising from the aerial application of herbicides or Glyphosate to forests, woods, timberlands or tree farms;

s)   to claims arising from controlled and/or prescribed burning;

a)   to claims arising from any intentional act or omission that causes bodily injury or property damage;

d)   except with respect to bodily injury or property damage resulting from efforts to prevent dangerous interference with the operation of the aircraft, to those occurrences either expected or intended from the standpoint of the Insured.

6.   Under Coverages A, C and D

a)   to any obligation for which the Insured or any carrier as his insurer may be held liable under any workers' compensation, unemployment compensation or disability benefits law, or under any similar law;

b)   to bodily injury to any employee of the Insured arising out of and in the course of his employment by the Insured;

c)   to bodily injury of any person who is a Named Insured;

d)   to bodily injury of any person who is a pilot under contract to the Named Insured;

e)   to bodily injury to any member of the Named Insured's family or household;

f)   to any bodily injury caused by or resulting in any manner from the rendering of any professional services, or the omission thereof, or any medical or surgical treatments by any doctor, nurse or other professional attendant;

g)   to bodily injury to any passenger while the aircraft is being used for aerial application.

7.   Under Coverages B and D

a)   to property damage to property owned, occupied, rented or used by the Insured or in the care, custody or control of the Insured or as to which the Insured is for any purpose exercising physical control or transported by the Insured;

b)   to any property damage arising from direct aerial application;

c)   to any property damage to a field, premises or property owned, occupied or rented by or in the care, custody or control of anyone for whom aerial application is performed.

8.   Under Coverages F, G, and H

a)   to loss or damage due to conversion, embezzlement, secretion, repossession or sale by any person with legal right of who is in possession of the aircraft, nor for any loss or damage during or resulting therefrom;

b)   to loss or damage to tires except where such loss or damage is caused by fire, theft, windstorm or vandalism or is the direct result of physical damage covered by this policy;

c)   to loss or damage which is due and confined to:

   1)   wear, tear, deterioration, freezing;

---

Coverage B.   The total liability of the Company for all damages because of all property damage sustained by one or more persons or organizations as the result of any one occurrence shall not exceed the limit of liability stated in the Declarations as applicable to "each occurrence" and in the aggregate.

Coverages C.   The total liability of the Company for all damages, including all related derivative claims and all damages for care and loss of services, because of bodily injury sustained by any person as the result of any one occurrence shall not exceed the limit of bodily injury stated in the Declarations as applicable to "each person". Subject to the above provision respecting "each person", the total liability of the Company for all damages, including all related derivative claims and all damages for care and loss of services, because of bodily injury sustained by two or more persons as the result of any one occurrence shall not exceed the limit of liability stated in the Declarations as applicable to "each occurrence".

Coverage D.   The Total liability of the Company for all damages, including all related derivative claims and all damages for care and loss of services, because of bodily injury or property damage sustained by one or more persons or organizations as the result of any one occurrence shall not exceed the limit of liability stated in the Declarations as applicable to "each occurrence" and in the aggregate.

For the purpose of determining the limit of the Company's liability, all bodily injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence.

**COVERAGE E**
(Total Liability)

The limit of liability stated in the Declarations as applicable to "each person" is the limit of liability for all expenses incurred by or on behalf of each person who sustains bodily injury in any one occurrence; the limit of liability stated in the Declarations for Coverage E as applicable to "each occurrence" is, subject to the above provision respecting each person, the total limit of the Company's liability for all expenses incurred by or on behalf of two or more persons who sustain bodily injury in any one such occurrence.

**COVERAGES F, G and H**
(Total Liability)

With respect to total loss, the Company will pay the insured value of the aircraft, as stated in the Declarations, subject to any applicable deductible.

With respect to partial loss, the Company may pay for the least expensive and most reasonable means to repair the aircraft or may pay for the loss in money, subject to any applicable deductible, as hereinafter provided:

1.   if repairs are made by other than the Named Insured, the total of the following:

a)   cost to repair the damaged property with material of like kind and quality (excluding any charges for overtime);

b)   cost of the least expensive and most reasonable method of transporting new and/or damaged parts and/or the damaged aircraft to the place of repair and the return of the repaired aircraft to the place where the loss occurred or the place where the aircraft is regularly based, whichever is nearer;

2.   if repairs are made by the Named Insured, the total of the following:

a)   actual cost to the Insured of material of like kind and quality;

b)   actual wages paid for labor, excluding any overtime;

---

2)   any electrical malfunction or failure of any electronic component(s), accessory(ies), or electrically powered equipment;

3)   any mechanical, hydraulic, pneumatic, or structural malfunction or failure,

unless any such loss or damage in 1), 2) and 3) is the direct result of other physical damage covered by this policy.

Damage resulting from electrical malfunction or failure of any electronic component(s), accessory(ies), or electrically powered equipment is considered breakdown of the entire electrical system containing such electronic component(s), accessory(ies), or electrically powered equipment.

Damage resulting from the breakdown, failure or malfunction of an engine component, accessory or part is considered mechanical breakdown of the entire engine.

d)   to loss or damage to turbine aircraft engines and auxiliary power units insured under this policy if such damage is caused by:

   1)   foreign objects unless a result of ingestion;

   2)   heat or temperature change from the operation, attempted operation or shutdown of the engine;

unless any such loss or damage is the direct result of other physical damage covered by this policy.

**LIMIT OF THE COMPANY'S LIABILITY**   CERTIFIED COPY

**ALL COVERAGES**
(Other Insurance)

Except with respect to insurance specifically purchased by the Insured to apply in excess of this policy, if there is other insurance in the Insured's name or otherwise, against loss, liability or expense covered by this policy, the Company shall not be liable under this policy for a greater proportion of such loss, liability or expense than the applicable limit of the Company's liability bears to the total applicable limit of liability of all valid and collectible insurance against such loss, liability or expense. If collectible insurance (other than insurance purchased to apply as excess hereof) under any other policy of the Company is available to the Insured covering a loss covered hereunder, the Company's total liability will in no event exceed the greater or greatest limit applicable to such loss under this or any such policy.

**COVERAGES A, B, C AND D**
(Total Liability)

Regardless of the number of (1) Insureds under this policy, (2) persons or organizations who sustain bodily injury or property damage, (3) claims made or suits brought (derivative or otherwise) on account of bodily injury or property damage, or (4) aircraft to which this policy applies, the Company's liability is limited as follows:

Coverages A.   The total liability of the Company for all damages, including all related derivative claims and all damages for care and loss of services, because of bodily injury sustained by any person as the result of any one occurrence shall not exceed the limit of liability stated in the Declarations as applicable to "each person". Subject to the above provision respecting "each person", the total liability of the Company for all damages, including all related derivative claims and all damages for care and loss of services, because of bodily injury sustained by two or more persons as the result of any one occurrence shall not exceed the limit of liability stated in the Declarations as applicable to "each occurrence" and in the aggregate.

---

c)   up to 150% of item b) in lieu of overhead and supervisory services;

d)   cost of the least expensive and most reasonable method of transporting new and/or damaged parts and/or the damaged aircraft to the place of repair and the return of the repaired aircraft to the place where the loss occurred or the place where the aircraft is regularly based, whichever is nearer.

With respect to any partial loss or total loss:

1)   the amount due under this policy shall not exceed the amount due were the loss payable as a total loss;

2)   any salvage value remaining shall inure to the benefit of the Company and the Named Insured shall provide clear title thereto;

3)   any equipment attached to the aircraft, even if subsequent to the effective date of coverage, shall be considered a part of the aircraft;

4)   there shall be no abandonment of any damaged property without the consent of the Company.

If the loss is due to theft or disappearance, the Company shall have the right to return the stolen property at any time prior to actual payment of the claim hereunder, with payment for any physical damage sustained thereto.

**DEFINITIONS**   CERTIFIED COPY

When appearing in this policy in bold face print:

"Aerial Application" means the application by aircraft of seeds, fertilizers or chemicals and includes flights required in direct support thereof.

"Aircraft" means the aircraft described in Item 4 of the Declarations including the propulsion system and equipment usually attached to the aircraft (1) while attached to the aircraft, (2) while temporarily removed from the aircraft and (3) while removed from the aircraft for replacement until such time as replacement by a similar item has commenced; also tools and equipment which are specially designed for the aircraft and which are ordinarily carried therein.

"Aviation Managers" mean AIG Aviation, Inc., American International Aviation Agency, Inc., or any of their subsidiary or affiliated companies, branch offices or authorized representatives.

"Bodily Injury" means bodily injury, sickness, disease and, if arising out of the foregoing, mental anguish sustained by any person which occurs during the policy period, including death at any time resulting therefrom.

"Chemical(s)" means any substance or mixture of substances intended to prevent, destroy, repel or mitigate any pest, or any substance or mixture of substances intended for use as a plant or tree regulator, defoliant or desiccant. The common name of a chemical includes preparations of the chemical, in any form, having a trade or proprietary name.

"Comprehensive Chemical (CC)" means seeds, fertilizers, or any chemical except Picloram; or any defoliant or desiccant applied in dust form; or any inorganic arsenical compound, except arsenic acid used in liquid spray form as a cotton desiccant or defoliant.

"Restricted Chemical (RC)" means seeds, fertilizers, insecticides or fungicides only.

"Excluding Chemical (XC)" means seeds or fertilizers only.

The release or distribution of sterile insects, predatory/beneficial insects, bacteria, fungi or viruses for the purpose of controlling, mitigating or exterminating insects or other pests or weeds is included within the definitions of Comprehensive Chemical (CC) and Restricted Chemical (RC) and excluded from the definition of Excluding Chemical (XC).

"Crew" means the pilot in-command, co-pilot, flight engineer, flight attendant or anyone else who is in, on, or boarding the aircraft for assisting in the operation of the aircraft.

"Disappearance" means missing in flight and not reported for sixty days after commencing a flight.

"Federal Aviation Administration (FAA)" means the duly constituted authority of the United States of America having jurisdiction over civil aviation, or its duly constituted equivalent in any other country.

"In Flight" means, with respect to fixed wing aircraft, the time commencing with the actual take-off run of the aircraft and continuing thereafter until it has completed its landing run; and if the aircraft is a rotorcraft, from the time the rotors start to rotate under power for the purpose of flight until they subsequently cease to rotate after landing.

"In Motion" means while the aircraft is moving under its own power or the momentum generated therefrom or while it is in flight and, if the aircraft is a rotorcraft, any time that the rotors are rotating or while it is in flight.

"Ingestion" means damage to aircraft turbine engines or turbine auxiliary power units (if a part of the aircraft as defined) caused by objects or substances not a part of the engine or its accessories, not intended to be used in the engine, which occurs during the policy period and is the result of a single incident and of sufficient severity to require (or would require if its severity were known) immediate repair before further use.

"Insured" means with respect to Coverages A, B, C and D, not only this Named Insured but also officers, directors and employees of the Named Insured and pilots under contract to the Named Insured, but only while acting within the scope of their duties as such and provided the actual use of the aircraft is with the express permission of the Named Insured. Except with respect to the Named Insured the provisions of this paragraph do not apply:

a)   to any employee with respect to bodily injury of another employee of the same employer injured in the course of such employment;

b)   to any person or organization or to any agent or employee thereof (other than an employee of the Named Insured while acting in the course of his employment by the Named Insured);

   1)   who manufactures, builds, sells or distributes aircraft, aircraft engines, aircraft components, aircraft accessories or fuel used in aircraft;

   2)   who is engaged in the operation of an aircraft repair shop, aircraft sales agency, aircraft rental service, aircraft flying school, aircraft management service, aircraft aerial application service, aircraft inspection, appraisal, certification or examination service, commercial flying service, airline, airport, hangar, or pilot training center;

   3)   who is engaged in the activity of instruction, evaluation, examination or certification of any pilot or crew member or prospective pilot or crew member;

   4)   who is charging a fee and/or receiving any remuneration or benefit for providing any type of service whatsoever in connection with the ownership, maintenance or use of any insured aircraft.

c)   to any person or organization operating the aircraft under the terms of any rental agreement or training program which provides any remuneration or benefit to the Named Insured for the use of the aircraft;

are included and combined within the "each person", "each occurrence" and aggregate Limits of Liability specified in the Declarations, as applicable, and there are no separate or additional Limits of Liability for related derivative claims.

"Total Loss" means any physical damage loss for which the "cost to repair" when added to the "salvage value" (the value of the aircraft after physical damage and prior to repairs) equals or exceeds the Insured Value of the aircraft as set forth in Item 4 of the Declarations. Disappearance or theft of the entire aircraft shall be considered as a total loss.

## CONDITIONS

### APPLICABLE TO COVERAGES A, B, C, AND D (BODILY INJURY AND PROPERTY DAMAGE)

**1.   ACTION AGAINST THE COMPANY**

No person or organization has a right under this policy:

   a)   to join the Company as a party or otherwise bring the Company into a suit asking for damages from an Insured;

   b)   to sue on this policy unless all of its terms have been fully complied with.

A person or organization may sue the Company to recover on an agreed settlement or on a final judgment against an Insured obtained after an actual trial; but the Company will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by the Company, the Insured and the claimant or the claimant's legal representative. Service of process may be made upon the Aviation Managers on behalf of the Company. However the Company does not waive its right to commence an action in any court of competent jurisdiction or to seek a transfer to another court as permitted by law.

**2.   FINANCIAL RESPONSIBILITY**

If this policy is certified as proof of insurance under any governmental financial responsibility law applicable to aircraft, the Company will pay the minimum amounts required by that law which do not exceed the limit of liability of this policy. The Named Insured agrees to reimburse the Company promptly for any amounts the Company would not have had to pay were it not for this clause.

**3.   NOTICE OF OCCURRENCE, LOSS, CLAIM OR SUIT**

   a)   The Named Insured must see to it that the Aviation Managers are promptly notified in writing at the nearest office, whose addresses is listed on the back of the policy cover, of an occurrence that may result in a claim. Notice shall include:

       1)   particulars sufficient enough to identify the Insured; and

       2)   how, when and where the occurrence took place; and

       3)   the names and addresses of any injured persons and witnesses.

   b)   If a claim is made or suit is brought against any Insured, the Named Insured must see to it that the Aviation Managers receive prompt written notice of the claim or suit. The Named Insured and any other Insured involved must:

       1)   immediately send the Aviation Managers copies of any demands, notices, summonses or legal papers received in connection with the claim or suit;

       2)   authorize the Aviation Managers to obtain records and other information;

       3)   cooperate with the Aviation Managers in the investigation, settlement or defense of the claim or suit;

       4)   assist the Aviation Managers, upon the Aviation Managers' request, in the enforcement of any right against any person or organization which may be liable to the Insured because of injury or damage to which the insurance may also apply.

   c)   No Insured will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid to others, without the Aviation Managers' consent.

**4.   SEVERABILITY OF INTEREST**

Except with respect to the Limit of the Company's Liability and any rights or duties specifically assigned in this policy to the first Named Insured, this insurance applies:

   a)   as if each Named Insured were the only Named Insured;

   b)   separately to each Insured against whom claim is made or suit is brought.

### APPLICABLE TO COVERAGE E (MEDICAL EXPENSE)

**5.   ACTION AGAINST COMPANY**

No person or organization has the right under this policy to sue on this policy unless all its terms have been fully complied with and until thirty (30) days after the required proofs of claim have been filed with the Company.

**6.   MEDICAL REPORTS; PROOF AND PAYMENT OF CLAIM**

   a)   The injured person or someone on his or her behalf, must give the Aviation Managers written proof of claim and if requested by the Aviation Managers:

       1)   provide his or her sworn statement under oath;

       2)   authorize the Aviation Managers to obtain medical reports and copies of records;

       3)   submit to physical examination by a physician selected by the Aviation Managers, when and as often as the Aviation Managers may reasonably require.

   b)   The Company may pay the injured person or any person or organization rendering the services and such payment:

       1)   shall reduce the amount payable for the injury;

       2)   shall not constitute admission of liability by an Insured or the Aviation Managers.

"Medical Expense" means expenses for necessary medical, surgical, x-ray or dental services, including prosthetic devices, and necessary ambulance, hospital, professional nursing and funeral services.

"Mooring" shall mean while the aircraft is on water, or during launching onto or hauling up therefrom (except under its own power or momentum).

"Named Insured" means the person or organization named in Item 1 of the Declarations.

"Occurrence" means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage during the policy period. In the event of continuing or progressively deteriorating damage over any length of time, such damage shall be deemed to be one occurrence, and shall be deemed to occur only when such damage first commences.

"Partial Loss" means any physical damage loss which is not a total loss.

"Passenger" means any person in, on, or boarding the aircraft for the purpose of riding or flying therein or alighting therefrom after a flight or attempted flight therein, including crew member(s).

"Physical Damage" means direct and accidental physical loss of or damage to the aircraft, hereinafter called loss, but does not include loss of use or any residual depreciation or diminution in value (including loss of quaranty or warranty), if any, after repairs have been made.

"Pleasure and Business" means used in the business of the Insured including personal and pleasure uses but excluding any operation for hire or reward. Cost reimbursement shall be included within the definition of Pleasure and Business provided that such cost reimbursement is limited to:

   1)   fuel, oil, lubricants, and other additives;

   2)   travel expenses of the crew, including food, lodging, and ground transportation;          CERTIFIED COPY

   3)   hangar and tie-down costs away from the aircraft's base of operation;

   4)   insurance obtained for the specific flight;

   5)   landing fees, airport taxes, and similar assessments;

   6)   customs, foreign permit, and similar fees directly related to the flight;

   7)   in flight food and beverages;

   8)   passenger ground transportation;

   9)   flight planning and weather contact services;

   10)  an additional charge equal to 50% of the expenses lists in subparagraph 1) of this paragraph.

"Property Damage" means direct physical injury to or destruction of tangible property which occurs during the policy period, including loss of use thereof at any time resulting therefrom.

"Related Derivative Claims" means all claims for care and loss of service, loss of society and consortium, mental anguish, emotional distress, loss of support, medical and funeral expenses, and any and all other damages from or related to bodily injury to any person or passenger. Notwithstanding anything to the contrary in the definition of bodily injury, the Company's liability and coverage for damages for both bodily injury and related derivative claims

AG01 (9/98)

- 12 -

AG01 (9/98)

- 14 -

**APLICABLE TO COVERAGES F, G, AND H (PHYSICAL DAMAGE)**

**ACTION AGAINST THE COMPANY AND PAYMENT OF LOSS**

The Company does not have to pay, and the Named Insured does not have the right to sue on this policy, unless all of its terms have been fully complied with and until thirty (30) days after the required proofs of loss have been filed with the Company and the amount of loss is determined as provided by the policy, nor at all unless commenced within twelve (12) months after the date of loss.

**APPRAISAL OF LOSS**

If the Named Insured and the Company fail to agree as to the amount of loss, each shall upon written notice to the other, hire at its own expense an independent aircraft appraiser. The appraisers will then agree on a knowledgeable and neutral umpire. If they cannot agree on the umpire in fifteen (15) days, a Judge of the courty of the pending appraisal will appoint the umpire. Agreement by any two of these three shall determine the amount of loss. The Named Insured and the Company will share the umpire's cost equally. But this clause shall not deprive or waive any rights of the Company.

**AUTOMATIC REINSTATEMENT**

In the event of loss, whether or not covered by this policy, the amount of insurance in respect to any aircraft shall be reduced as of the time and date of loss by the amount of such loss. Such reduced value shall continue until repairs are commenced, and the amount of insurance shall be automatically increased by the value of the completed repairs until the amount of insurance is fully reinstated or the policy has expired.

**INSURED'S DUTIES WHEN LOSS OCCURS**

When loss occurs the Insured shall:

a)  take all reasonable precautions to protect the property or aircraft after an occurrence. The Company shall reimburse the Insured all reasonable cost in affording such protection;

b)  not abandon the property or aircraft;

c)  immediately contact the nearest Aviation Managers and provide prompt written notice at the address appearing on the back of the policy cover, including the:

　　1)  time, place and description of events;

　　2)  description and location of the aircraft;

d)  promptly report theft and vandalism to the Aviation Managers and local police;

e)  do nothing after the loss to harm the Company's rights of recovery against any person or organization;

f)  allow the Aviation Managers to inspect the property;

g)  submit to examination under oath if requested by the Company;

h)  allow the Company to inspect all aircraft records, pilot logbooks, repair and service invoices, sales receipts and any other pertinent records until settlement of the loss;

i)  file proof of loss with the Aviation Managers within sixty (60) days after the date of loss, in the form of a sworn statement to include:

| Days Policy In Force | Minimum Earned Premium |
|---|---|
| Less than 31 days | 33-1/3% of annual premium |
| 31 days or more but less than 61 days | 60% of annual premium |
| 61 days or more but less than 91 days | 75% of annual premium |
| 91 days or more but less than 120 days | 85% of annual premium |
| 120 days or more | 100% of annual premium |

Cancellation for non-payment of premium shall be considered cancellation by the Named Insured. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but tender of unearned premium is not a condition of cancellation.

**5.  CHANGES**

This policy contains all the agreements between the Named Insured and the Company concerning the insurance that is afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with the Aviation Managers consent. This policy's terms can be amended or waived only by endorsement signed and issued by the Aviation Managers and made a part of this policy.

**6.  EXAMINATION OF INSURED'S BOOKS AND RECORDS**

The Aviation Managers may examine and audit the Insured's books and records as they relate to this policy at any time during the policy period and up to three (3) years afterward.

**7.  FRAUD OR MISREPRESENTATION**

This policy shall be void if the Named Insured has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof or in case of any fraud, attempted fraud or false swearing by the Named Insured touching any matter relating to this insurance or the subject thereof, whether before or after a loss.

**8.  INSPECTION AND SURVEYS**

The Company or Aviation Managers have the right but are not obligated to:

a)  make inspections and surveys at any time;

b)  give the Named Insured reports on the conditions found;

c)  recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. The Company or Aviation Managers do not make safety inspections. The Company or Aviation Managers do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. The Company or Aviation Managers do not warrant that conditions:

　　1)  are safe and healthful;

　　2)  comply with laws, regulations, codes or standards.

This condition applies not only to the Company or Aviation Managers, but also to any rating, advisory, rate service or similar organization that makes insurance inspection, surveys, reports or recommendations.

---

1)  the interest of the Named Insured and of all other parties affected;

2)  any encumbrances thereon;

3)  the actual cash value of the property at the time of the loss;

4)  the amount, place, time and cause of such loss;

5)  the description and amounts of all other insurance covering such property;

unless such time is extended in writing by the Aviation Managers.

**11.  NO BENEFIT TO BAILEE**

The insurance afforded by this policy shall not inure directly or indirectly to the benefit of any carrier or bailee liable for loss to the aircraft.

**APPLICABLE TO ALL COVERAGES**

**12.  ASSISTANCE AND COOPERATION OF THE INSURED**

The Insured shall cooperate with the Company and, upon the Company's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits. The Insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for such immediate medical and surgical relief to others as shall be imperative at the time of an occurrence.

**13.  BANKRUPTCY**

Bankruptcy or insolvency of the Insured or of the Insured's estate shall not relieve the Company of its obligations under this policy.

**14.  CANCELLATION**

a)  The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to the Company or Aviation Managers advance written notice of cancellation.

b)  The Company or Aviation Managers may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least ten (10) days before the effective date of cancellation.

c)  The Company or Aviation Managers will mail or deliver notice to the first Named Insured's last mailing address known to the Company or Aviation Managers

d)  If this policy is cancelled, the Aviation Managers will return any premium refund due. If the Company or Aviation Managers cancel, the refund will be pro rata. The cancellation will be effective even if the Company or Aviation Managers have not made or offered a refund. The Company or Aviation Managers shall not be liable for any return of the physical damage premium in respect to any aircraft on which a total loss has been paid.

e)  If notice is mailed, proof of mailing will be sufficient proof of notice.

f)  If the first Named Insured cancels this policy or requests substitution, addition or deletion of aircraft and/or alteration of coverage, the minimum earned premium shall be computed according to the following schedule:

AG01 (9/98)                                             16 -

---

AG01 (9/98)

**19.  NONRENEWAL**

If the Company decides not to renew this coverage, the Aviation Managers will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than thirty (30) days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**20.  PREMIUMS**

The first Named Insured shown in the Declarations is responsible for the payment of all premiums.

**21.  REPRESENTATIONS**

By accepting this policy, the Named Insured agrees:

a)  the statements in the Declarations are accurate and complete;

b)  those statements are based upon representations of the Named Insured to the Company, Aviation Managers and any of their agents relating to this insurance;

c)  the Aviation Managers have issued this policy in reliance upon the Named Insured's representations.

**22.  STATE STATUTES**

If the terms of this policy are in conflict with or inconsistent with the statutes of any state where this policy is in effect, the Company will conform to those state statutes.

**23.  SUBROGATION**

If the Insured has rights to recover all or part of any payment the Company has made under this policy, those rights are transferred to the Company. The Insured must do nothing after loss to impair them. At the request of the Company or Aviation Managers, the Insured will bring suit or transfer those rights to the Company and do whatever else is necessary to secure such rights. The Insured shall do nothing after a loss to prejudice such rights. This condition shall not apply respect Coverage E -Medical Expense.

**24.  TRANSFER OF THE NAMED INSURED'S RIGHTS AND DUTIES UNDER THIS POLICY**

The Named Insured's rights and duties under this policy may not be transferred without the Aviation Managers written consent except in the case of the death or bankruptcy of an individual Named Insured.

If such individual Named Insured dies or is adjudged bankrupt or insolvent, his or her rights and duties will be transferred to the Named Insured's legal representative but only while acting within the scope of duties as such. Until the Named Insured's legal representative is appointed, anyone having proper temporary custody of the Named Insured's property will have such Named Insured's rights and duties but only with respect to that property, but in no event for more than sixty (60) days following such death or adjudication.

AG01 (9/98)                                             - 18 -

CERTIFIED COPY

---

**Page 001 (bottom-right):**

23-5324-00-1

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

NATIONAL UNION FIRE INSURANCE COMPANY OF    )
PITTSBURGH, PA.,                            )
                                            )
                    Plaintiffs,             )
                                            )
        vs.                                 )    No. 03-1288
                                            )
PONTIAC FLYING SERVICES, INC.,              )
                                            )
                    Defendants and          )
                    Third-Party Plaintiff,  )
                                            )
        vs.                                 )
                                            )
HARDY AVIATION INSURANCE, INC.,             )
                                            )
                    Third-Party Defendant.  )

**HARDY AVIATION INSURANCE, INC.'S
RESPONSE TO PONTIAC FLYING
SERVICE'S REQUEST FOR PRODUCTION**

NOW COMES the Third-Party Defendant, HARDY AVIATION INSURANCE, INC. (hereinafter "HARDY") by its attorneys, DIANE M. BARON and CLAUSEN MILLER P.C., and for its Response to Third-Party Plaintiff PONTIAC FLYING SERVICES, INC.'S (hereinafter "PONTIAC") First Request for Production of Documents, states as follows:

1.    Copies of any and all documents which are identified in HARDY's Rule 26 disclosure.

RESPONSE:    Copies are attached.

2.    A copy of HARDY's complete file regarding PONTIAC FLYING, including without limitation, communications by and between HARDY and PONTIAC FLYING, both

EXHIBIT
E

---

**Page 002 (bottom-left):**

written and electronic, memoranda, diaries or other notations regarding communications with PONTIAC FLYING, insurance policies, including all endorsements thereto which were procured for or issued to PONTIAC FLYING at any time, and communications, both written and electronic, by and between HARDY and any insurers regarding PONTIAC FLYING

RESPONSE:    See No. 1 above.  Hardy objects to the request to the extent it requests information and documents regarding aircraft policies not at issue in this litigation as being overly broad and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to said objection, Hardy states that it has voluminous documents going back to 1998 and will send them to a copy service for copying at Pontiac's request and expense; however Hardy believes copies of these documents were already produced by National Union in this case.

3.    Copies of any and all documents of whatsoever nature regarding the relationship at any time by and between HARDY and the Plaintiff, NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, ("NATIONAL UNION").

RESPONSE:    None.

4.    Copies of any and all documents of whatsoever nature regarding the relationship at any time by and between HARDY and NATIONAL UNION, as defined herein.

RESPONSE:    None.

5.    Copies of any and all documents showing or in any way reflecting instances where HARDY bound coverage on behalf of NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

RESPONSE:    HARDY has no binding authority.  Coverage is bound by NATIONAL UNION.

6.    Copies of any and all documents by and between HARDY and NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA wherein coverage was sought or rejected for flight instruction or training in the Ag Tractor 503 in support of the aerial application of seeds, fertilizers or chemicals.

---

**Page 003 (top-right):**

RESPONSE:    None.

7.    Copies of any and all documents of whatsoever nature regarding the relationship at any time by and between HARDY and AIG.

RESPONSE:    A copy of the premium payment agreement is attached.

8.    Copies of any and all documents of whatsoever nature regarding the relationship at any time by and between HARDY and Phoenix.

RESPONSE:    A copy of the premium payment agreement is attached.

9.    Copies of any and all documents received by HARDY from the Plaintiff, NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA regarding insurance contracts written by NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, including without limitation, instructional materials, manuals, newsletters, and other writing, which describe the coverages afforded by those insurance contracts and the definition of any terms which are contained within those insurance contracts.

RESPONSE:    None.

10.    Copies of any and all documents regarding the accident of May 5, 2003.

RESPONSE:    See attached documents.

11.    Copies of any and all documents of whatsoever nature regarding coverage under NATIONAL UNION Policy No. A V 3391999-04 regarding the accident, whether relating to property damage or liability, including without limitation, communications, written and electronic, by and between HARDY and PONTIAC FLYING and HARDY and NATIONAL UNION.

RESPONSE:    None other than the policy itself, a copy of which is attached as Exhibit A to National Union's Complaint for Declaratory Judgment in this case.

---

**Page 004 (top-left):**

12.    Copies of any and all documents of whatsoever nature which in any respect purport to define the term "flights required in direct support thereof" as it is used in the following policy provision:

"Aerial Application" means the application by aircraft of seeds, fertilizers or chemicals and includes flights required in direct support thereof.

RESPONSE:    None other than the policy itself, a copy of which is attached as Exhibit A to National Union's Complaint for Declaratory Judgment in this case.

13.    A complete copy of HARDY's file regarding insurance sought by or coverage provided for Harold Miller and Harold Miller Flying Service.

RESPONSE:    Objection as this request calls for the production of irrelevant and immaterial documents and is not reasonably calculated to lead to the discovery of relevant and admissible evidence.  Furthermore, it requests documents which contain personal and confidential financial information of another individual and entity who are not parties to this litigation and constitutes an invasion of their privacy rights.

14.    Copies of any and all documents which are identified in your answers to PONTIAC FLYING's Interrogatories.

RESPONSE:    See attached documents.

15.    Copies of any and all communications since the accident of May 5, 2003, by and between HARDY and NATIONAL UNION FIRE COMPANY OF PITTSBURGH, PA, including without limitation, communications and between attorneys for HARDY and attorneys for NATIONAL UNION FIRE COMPANY OF PITTSBURGH, PA regarding the production of HARDY's files, the relationship between HARDY and NATIONAL UNION FIRE COMPANY OF PITTSBURGH, PA or otherwise down to and including the present time.

National Union Fire Insurance v. Pontiac Flying, Hardy Aviation
File No. 23 53 24 00 1

SERVICE LIST

Counsel for Plaintiff NATIONAL UNION

Jeffrey B. Rock
HASKLBERG ROCK BELL & KUPPLER
Suite 200 - Associated Bank Building
4600 N. Brandywine Drive
Peoria, Illinois 61614
Tel. No. 309.688.9490
Fax 309.688.9439

Mark T. Banovetz
TRESSLER SODERSTROM MALONEY & PRIESS
Sears Tower - 22nd Floor
233 South Wacker Drive
Chicago, Illinois 60606
Tel. No. 312.627.4000
Fax No. 312.627.1717

Counsel for Third-Party Plaintiff

David D. Mueller
CASSIDY & MUELLER
323 Commerce Bank Building
416 Main Street
Peoria, IL 61602
Tel. No. 309.676.0591
Fax No. 309-676-8036

#10002.1

---

Subscribed and sworn to before me

this 30 day of June, 2004.

_Deborah Amedee_
Notary Public

```
OFFICIAL SEAL
DEBORAH AMEDEE
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 10-19-2005
```

007

917833.1

---

23-5324-00-1

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

NATIONAL UNION FIRE INSURANCE       )
COMPANY OF PITTSBURGH, PA.,          )
                                     )
                Plaintiff,           )
                                     )      No. 03-1288
        vs.                          )
                                     )
PONTIAC FLYING SERVICES, INC.        )
                Defendant and        )
        Third-Party Plaintiff,       )
                                     )
        vs.                          )
                                     )
HARDY AVIATION INSURANCE, INC.,      )
                                     )
        Third-Party Defendant.       )

RECEIVED
JUL 01 2004
CASSIDY & MUELLER

CERTIFICATE OF SERVICE

The undersigned, being first duly sworn upon oath, deposes and states that the attached
Hardy's Aviation Insurance, Inc.'s Response to Pontiac Flying Service's Request for Production
was served via overnight mail to All Counsel of Record (see attached Service List) on the 30th
day of June, 2004 at 5:00 p.m. from 10 S. LaSalle, Chicago, Illinois 60603.

_Carolyn Clay_

006

917833.1

---

RESPONSE:   None.

_Diane M. Baron_
DIANE M. BARON
CLAUSEN MILLER P.C.

DIANE M. BARON
CLAUSEN MILLER P.C.
10 South LaSalle Street
Chicago, Illinois 60603-1098
312/855-1010

Attorneys for Third-Party Defendant,
HARDY AVIATION INSURANCE, INC.

005

902536.1                                           5

**PILOT WARRANTY ENDORSEMENT**
**(AERIAL APPLICATOR AIRCRAFT)**
This policy is amended as follows:

When in flight, the aircraft will only be operated by the pilot/s specified below who possess the logged hours, the current and valid ratings and certificates specified below, and a current and valid Medical Certificate.

As respects piston engine powered fixed-wing aircraft:
- ☒ Named pilot(s) SCOTT PETERSEN
- ☒ Any pilot maintaining a commercial or more advanced pilot certificate who has flown a minimum pilot in command time of  1,000  (1,000 if nothing else is shown) hours in fixed-wing aircraft engaged in aerial application, including at least  100  (100 if nothing else is shown) hours in aircraft of the same make and model being flown.

As respects piston engine powered rotorcraft:
- ☐ Named pilot(s)
- ☐ Any pilot maintaining a commercial or more advanced pilot certificate who has flown a minimum pilot in command time of _____ (1,000 if nothing else is shown) hours in rotorcraft engaged in aerial application, including at least _____ (100 if nothing else is shown) hours in aircraft of the same make and model being flown.

As respects turbine powered fixed-wing aircraft:
- ☒ Named pilot(s) SCOTT PETERSEN
- ☒ Any pilot maintaining a commercial or more advanced pilot certificate who has flown a minimum pilot in command time of  1,000  (1,000 if nothing else is shown) hours in fixed-wing aircraft engaged in aerial application, including at least  100  (100 if nothing else is shown) hours in aircraft of the same make and model being flown.

As respects turbine powered rotorcraft:
- ☐ Named pilot(s)
- ☐ Any pilot maintaining a commercial or more advanced pilot certificate who has flown a minimum pilot in command time of _____ (1,000 if nothing else is shown) hours in rotorcraft engaged in aerial application, including at least _____ (100 if nothing else is shown) hours in aircraft of the same make and model being flown.

As respects all turbine powered aircraft/rotorcraft:
- ☐ In addition to the above, the following pilots must also have successfully completed the aircraft manufacturer's ground and flight training program for the aircraft being flown or, if the aircraft has a turbine engine conversion, the pilot must have successfully completed formalized ground and flight training with the aircraft's conversion facility:

All other provisions of this policy remain the same.

This endorsement becomes effective _____MAY 19, 2002_____ to be attached to and hereby made a part of Policy No.  AV 3391999-04  issued to PONTIAC FLYING SERVICE, INC

By National Union Fire Insurance Company of Pittsburgh, PA

Endorsement No.  2
Date of Issue  6-14-02  bp                                    By _____ (Authorized Representative)

AG018 (0/98)                                                                                  011.

---

**4.** The Company may pay any part or all of the deductible amount to effect settlement of any claim or suit and, upon notification of the action taken, the Named Insured shall promptly reimburse the Company for such part of the deductible amount as has been paid by the Company.

All other provisions of this policy remain the same.

This endorsement becomes effective _____MAY 19, 2002_____ to be attached to and hereby made a part of Policy No.  AV 3391999-04  issued to PONTIAC FLYING SERVICE, INC

By National Union Fire Insurance Company of Pittsburgh, PA

Endorsement No.  1    page 2 of 2
Date of Issue  6-14-02  bp                     010.     By _____ (Authorized Representative)

AG016 (2/00)

---

**DEDUCTIBLE LIABILITY INSURANCE ENDORSEMENT**

In consideration of  Included  premium of $  Included  , this policy is amended as follows:

**SCHEDULE**

| COVERAGE | AMOUNT AND BASIS OF DEDUCTIBLE |
|---|---|
| Coverage B. | |
| Property Damage Liability | |
| Arising from Chemicals | $ 1,000.  each occurrence |
| Arising from other than Chemicals | $ 250.  each occurrence |
| Coverage D. | |
| Property Damage Liability | |
| Arising from Chemicals | $ Not Covered  each occurrence |
| Arising from other than Chemicals | $ Not Covered  each occurrence |

APPLICATION OF ENDORSEMENT (Enter below any limitations on the application of this endorsement. If no limitation is entered, the deductibles apply to damages for all property damage, however caused):

1. The obligation of the Company under Coverage B or D to pay damages on behalf of the Insured applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as applicable, to such coverages, and the limits of insurance applicable to each occurrence for such coverages will be reduced by the application of such deductible amount.

2. The deductible amounts stated in the Schedule apply as follows:

   Per Occurrence Basis - if the deductible is on a per occurrence basis, the deductible amount applies under Coverage B or D to all damages because of property damage as the result of any one occurrence regardless of the number of persons or organizations who sustain damages because of that occurrence.

3. The terms of this insurance, including those with respect to:

   A) the Company's right and duty to defend any suits seeking those damages, and

   B) the Named Insured's duties in the event of an occurrence, claim or suit

   apply irrespective of the application of the deductible amount.

[  009

AG016 (2/00)    Endorsement No.  1  , page 1 of 2

---

AMERICAN HOME  ☐HOME        NATIONAL UNION
ASSURANCE COMPANY        FIRE INSURANCE COMPANY
                         OF PITTSBURGH, PA.        THE INSURANCE COMPANY OF
                                                  THE STATE OF PENNSYLVANIA

PART 2                                                              **DECLARATIONS**
Policy Number  AV 3391999-04                          Previous Policy Number   AV 3391999-03

This page reads "Policy Provisions – Part 1" from AG018(9/98) and all endorsements attached herewith completes this numbered aviation physical damage and liability policy, issued by the company as indicated by an "X" in the box to the left of the company's name, hereinafter called the Company.

☐ AMERICAN HOME ASSURANCE COMPANY
☒ NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.
☐ THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA

ITEM 1.   PONTIAC FLYING SERVICE, INC.
                NAMED INSURED
          15755 E 2000 NORTH ROAD, PONTIAC, IL  61764
                ADDRESS

ITEM 2.   Policy Period: From   MAY 19, 2002   to   MAY 19, 2003   12:01 A.M. Standard Time at address in Item 1. This insurance afforded is only with respect to such and as many of the following coverages as are indicated specified premium charge or charges. The limit of the Company's liability against such coverage shall be as stated herein, subject to all of the terms of the policy having reference thereto.

| ITEM 3.   Liability Coverages | LIMITS OF LIABILITY | | LIABILITY PREMIUM |
|---|---|---|---|
| | NON-CHEMICAL | CHEMICAL | |
| A. Bodily Injury – excluding Passengers | 100,000.  each person  300,000.  each occurrence  each occurrence aggregate | 100,000.  each person  300,000.  each occurrence  aggregate | 3,40 |
| B. Property Damage | 100,000.  each occurrence  aggregate | 100,000.  each occurrence  100,000.  aggregate | 6,3: |
| C. Passenger Liability | each occurrence  aggregate | Not applicable  Not applicable | |
| D. Single Limit – Property Damage & Bodily Injury, excluding Passengers | each occurrence  aggregate | each occurrence  aggregate | |
| E. Medical Expense – excluding Crew | each occurrence  each occurrence | Not applicable  Not applicable | |
| | | LIAB. TOTAL $ | 9,7: |

All liability arising from any one occurrence shall not exceed the Non-chemical Limits of Liability.

ITEM 4.   Description of Aircraft and Physical Damage Coverage hereunder:

| F.A.A. CERT. NO. | MAKE AND MODEL | YEAR BUILT | SEATS PASS | INSURED VALUE | PHYSICAL DAMAGE COVG | DEDUCTIBLES |  | PHYSICAL DAMAGE PREMIUMS | NOT IN MOTION | IN MOTION |
|---|---|---|---|---|---|---|---|---|---|---|
| INSURED | AIR TRACTOR 503 | 91 | 0 | 390,000. | F | CC | 21,039. | 500. | 35,00 |
| N4846SR | AG CAT G164A | 76 | 0 | 90,000. | F | CC | 6,512. | 500. | 8,00 |
| N3763FL | AG CAT G164A | 75 | 0 | 45,000. | H | N/A | 1,285. | 500. | |

PHYSICAL DAMAGE Coverage Identified:        CHEMICAL CATEGORY:
F. All Risks: Ground & Flight          CC Comprehensive Chemical         PHYSICAL DAMAGE TOTAL        28,827.        38,5
G. All Risks: Not in Flight            RC Restricted Chemical
H. All Risks: Not in Motion            XC Excluding Chemical
                                       N/A Not Applicable

ITEM 5.   When in flight the aircraft will be piloted only by SEE AG018
ITEM 6.   The aircraft will be used only for the purpose Aerial Application.
ITEM 7.   LOSS PAYABLE: Any loss under coverage F, G, and H is payable as interest may appear to the Named Insured and

ITEM 8.   The aircraft will be principally based at  PONTIAC MUNICIPAL  Airport, PONTIAC  City, IL  St

Producer   HARDY AVIATION INSURANCE, INC

Countersigned _____
At _____
By _____ (Authorized Representative)        Approved By _____ (Authorized Representative)

AG04 (9/98)        .008

**AIRCRAFT POLICY — LIMITS ENDORSEMENT**

In consideration of additional premium of $ __INCLUDED__ , this policy is amended as follows:

As respects aerial application within the State of Illinois, the Limits of Liability shall be the greater of:

a) The amounts as shown on the Declarations; or

b) The following limits if a premium is shown on the Declarations for the coverage(s):

Coverage A   $ 50,000. each person
             $100,000. each occurrence
             $500,000. aggregate

Coverage B   $ 50,000. each occurrence
             $ 50,000. aggregate

Coverage D   $100,000. each occurrence
             $500,000. aggregate

All other provisions of this policy remain the same.

This endorsement becomes effective ___MAY 19, 2002___ to be attached to and hereby made a part of
Policy No. __AV 3391999-04__ issued to PONTIAC FLYING SERVICE, INC

By   National Union Fire Insurance Company of Pittsburgh, PA

Endorsement No.   7

Date of Issue   6-14-02  bp

AG003 (6/99)                    015   By [Authorized Representative]

---

**ADJACENT FIELDS LIABILITY**

In consideration of __INCLUDED__ premium of $ __INCLUDED__ , this policy is amended as follows:

Exclusion 7. c) is deleted, subject to the following:

NO CHANGE

All other provisions of this policy remain the same.

This endorsement becomes effective ___MAY 19, 2002___ to be attached to and hereby made a part of
Policy No. __AV 3391999-04__ issued to PONTIAC FLYING SERVICE, INC

By   National Union Fire Insurance Company of Pittsburgh, PA

Endorsement No.   5

Date of Issue   6-14-02  bp

AG013 (6/98)                    014   By [Authorized Representative]

---

**ADDITIONAL INSURED ENDORSEMENT**

In consideration of __INCLUDED__ premium of $ __INCLUDED__ , this policy is amended as follows:

The following is included as an additional insured, but only with respect to the operation of the aircraft by the Named Insured:

THE FARMER, OWNER, AND/OR GROWER FOR WHOM AERIAL APPLICATION IS BEING PERFORMED. COVERAGE IS EXTENDED TO INCLUDE STATE AND COUNTY GOVERNMENT AGENCIES AND CONSTRACT HOLDERS REQUIRED FOR CONTRACT WORK TO BE DONE.

AL'S AERIAL SPRAYING, INC

For the purposes of this endorsement only, coverage

1) only applies with respect to such insurance as is afforded by coverages A, B, C, or D;
2) does not apply to any liability arising from the selection or use of chemicals manufactured, sold, handled, or distributed by the additional insured;
3) is excess coverage only and applies only after all other coverage available to the insured has been exhausted;
4) is further subject to the following:
   THIS EXTENSION OF COVERAGE ONLY APPLIES WITH RESPECT TO THE VICARIOUS RESPONSIBILITY OF THE ADDITIONAL INSURED FOR THE CONDUCT OF AERIAL APPLICATION BY THE NAMED INSURED.

All other provisions of this policy remain the same.

This endorsement becomes effective ___MAY 19, 2002___ to be attached to and hereby made a part of
Policy No. __AV 3391999-04__ issued to PONTIAC FLYING SERVICE, INC

By   National Union Fire Insurance Company of Pittsburgh, PA

Endorsement No.   4

Date of Issue   6-14-02  bp

AG010 (9/98)                    013   By [Authorized Representative]

---

**LIABILITY AMENDMENT ENDORSEMENT
(AERIAL APPLICATOR)**

In consideration of __INCLUDED__ premium of $ __INCLUDED__ , this policy is amended as follows:

Liability Coverages set forth in the Declarations are __completed__ as follows with respect to the following:
N5O3D ONLY

| Liability Coverages | LIMITS OF LIABILITY | |
|---|---|---|
| | NON-CHEMICAL | CHEMICAL |
| D.  Single Limit - Property Damage & Bodily Injury Excluding Passengers | $1,000,000. EACH OCCURRENCE | |

**ANNUAL PREMIUMS**

| Coverage | Premium |
|---|---|
| | |

Subject to the following:

CHEMICAL COVERAGES A & B REMAIN AS SHOWN IN ITEM 3. OF THE DECLARATIONS.

THIS ENDOSEMENT APPLIES ONLY AS RESPECTS OPERATIONS UNDER THE NAMED INSURED'S GYPSY MOTH CONTRACTS.

All other provisions of this policy remain the same.

This endorsement becomes effective ___MAY 19, 2002___ to be attached to and hereby made a part of
Policy No. __AV 3391999-04__ issued to PONTIAC FLYING SERVICE, INC

By   National Union Fire Insurance Company of Pittsburgh, PA

Endorsement No.   3

Date of Issue   6-14-02  bp

AG427 (4/02)                    012   By [Authorized Representative]

EQUIPMENT EXCLUSION

This policy is amended as follows:

The coverage afforded by this policy shall not apply to the following aircraft equipment:

EXCLUDES GLOBAL POSITIONING SYSTEM

All other provisions of this policy remain the same.

This endorsement becomes effective _____ MAY 19, 2002 _____ to be attached to and hereby made a part of Policy No. _____ AV 3391999-04 _____ issued to PONTIAC FLYING SERVICE, INC

By _____ National Union Fire Insurance Company of Pittsburgh, PA

Endorsement No. _____ 10

Date of Issue _____ 6-14-02  bp          019  By _____
                                                  (Authorized Representative)
LAD111 (9/99)

---

TERRITORY AMENDMENT ENDORSEMENT

In consideration of _INCLUDED_ premium of $ _INCLUDED_ , this policy is amended as follows:

Exclusion 5. l) shall not apply to the following states:

WEST VIRGINIA, VIRGINIA, OHIO, MICHIGAN, MARYLAND

All other provisions of this policy remain the same.

This endorsement becomes effective _____ MAY 19, 2002 _____ to be attached to and hereby made a part of Policy No. _____ AV 3391999-04 _____ issued to PONTIAC FLYING SERVICE, INC

By National Union Fire Insurance Company of Pittsburgh, PA

Endorsement No. _____ 9

Date of Issue _____ 6-14-02  bp          018  By _____
                                                  (Authorized Representative)
AG019 (1/99)

---

PURPOSE OF USE ENDORSEMENT

This policy is amended as follows:

The Purpose of Use set forth in the Declarations is    completed    as follows:

AS RESPECTS ALL AIRCRAFT

Purpose of Use shall only be as follows:

THIS POLICY IS AMENDED AS FOLLOWS:

THE PURPOSE OF USE SET FORTH IN THE DECLARATIONS IS AMENDED AS FOLLOWS:

AS RESPECTS AIRCRAFT WHILE OPERATING WITHIN, ON OR ABOVE THE COMMONWEALTH OF KENTUCKY

PURPOSE OF USE SHALL BE ONLY AS FOLLOWS:

PLEASURE AND BUSINESS USE ONLY, AND EXCLUDING AERIAL APPLICATION

All other provisions of this policy remain the same.

This endorsement becomes effective _____ MAY 19, 2002 _____ to be attached to and hereby made a part of Policy No. _____ AV 3391999-04 _____ issued to PONTIAC FLYING SERVICE, INC

By _____ National Union Fire Insurance Company of Pittsburgh, PA

Endorsement No. _____ 8

Date of Issue _____ 6-14-02  bp          017  By _____
                                                  (Authorized Representative)
AV122 (1/01)

---

RESIDENTIAL AREAS ENDORSEMENT

In consideration of _INCLUDED_ premium of $ _INCLUDED_ , this policy is amended as follows:

Exclusion 5. k) is deleted in its entirety and replaced with the following:

5.    k)    to claims arising from the aerial application to any residential area except with respect to aerial application of the following chemicals _THOSE REQUIRED FOR GYPSY MOTH CONTRACTS_

to the village, town or city of _THOSE REQUIRED FOR GYPSY MOTH CONTRACTS_

All other provisions of this policy remain the same:

This endorsement becomes effective _____ MAY 19, 2002 _____ to be attached to and hereby made a part of Policy No. _____ AV 3391999-04 _____ issued to PONTIAC FLYING SERVICE, INC

By _____ National Union Fire Insurance Company of Pittsburgh, PA

Endorsement No. _____ 6

Date of Issue _____ 6-14-02  bp          016  By _____
                                                  (Authorized Representative)
AG004 (5/99)

Loss, damage or expense caused by or resulting from ... incident ... the nuclear risks ... Section B ...
... conditions, limitations, warranties and exclusions of this policy)
be covered, provided that:

(i) in the case of any claim in respect of radioactive material on the course of carriage as cargo, including
storage or handling incidental thereof, such carriage shall in all respects have complied with the full
International Civil Aviation Organization "Technical Instructions for the Safe Transport of Dangerous
Goods by Air", unless the carriage shall have been subject to any more restrictive legislation, when it shall
in all respects have complied with such legislation;

(ii) this policy shall only apply to an incident happening during the period of this policy and where any claim
by the Insured against the Company or by any claimant against the Insured arising out of such incident
shall have been made within three years after the date thereof;

(iii) in the case of any claim for the loss or destruction of or damage to or loss of use of an aircraft caused
by or contributed to by radioactive contamination, the level of such contamination shall have exceeded the
maximum permissible level set out in the following scale:

| Emitter | Maximum permissible level |
|---|---|
| (IAEA Health and Safety Regulations) | of non-fixed radioactive surface contamination (Averaged over 300 cm²) |
| Beta, gamma and low toxicity alpha emitters | Not exceeding 4 Becquerels / cm² (10⁻⁴ microcuries / cm²) |
| All other alpha emitters | Not exceeding 0.4 Becquerels / cm² (10⁻⁵ microcuries / cm²) |

(iv) the cover afforded hereby may be cancelled at any time by the Company giving seven days' notice of
cancellation.

All other provisions of this policy remain the same.

This endorsement becomes effective _____ MAY 19, 2002 _____ to be attached to and hereby made a part of
Policy No. _ AV 3391999-04 _ issued to PONTIAC FLYING SERVICE, INC

By National Union Fire Insurance Company of Pittsburgh, PA

Endorsement No. _____ 13 _____

Date of Issue _____ 6-14-02 bp _____

☒ AIG Aviation, Inc.
☐ AIG Aviation Insurance Services
☐ AIG Aviation (Canada), Inc.
☐ AIG Aviation (Illinois) Corporation
☐ AIG Aviation (Texas), Inc.
☐ American International Aviation Agency, Inc.

023

AVN38B (1/02)          Page 2          By _____ (Authorized Representative)

---

## NUCLEAR RISKS EXCLUSION CLAUSE

This policy is amended as follows:

In the event of the provisions of this endorsement are in conflict with any provisions, exclusions, conditions or
terms forming part of this policy, this endorsement shall take precedence.

1.  This policy does not cover:

    (i) loss or destruction of or damage to any property whatsoever or any loss or expense whatsoever resulting
    or arising therefrom or any consequential loss

    (ii) any legal liability of whatsoever nature

    directly or indirectly caused by or contributed to by or arising from:

    (a) the radioactive, toxic, explosive or other hazardous properties of any explosive nuclear assembly or
    nuclear component thereof;

    (b) the radioactive properties of, or a combination of radioactive properties with toxic, explosive or other
    hazardous properties of, any other radioactive material in the course of carriage as cargo, including
    storage or handling incidental thereof;

    (c) ionizing radiations or contamination by radioactivity from, or the toxic, explosive or other hazardous
    properties of, any other radioactive source whatsoever.

2.  It is understood and agreed that such radioactive material or other radioactive source in paragraph 1. (b) and
    (c) above shall not include:

    (i) depleted uranium and natural uranium in any form;

    (ii) radioisotopes which have reached the final stage of fabrication so as to be usable for any scientific,
    medical, agricultural, commercial, educational or industrial purpose.

3.  This policy, however, does not cover loss of or destruction of or damage to any property or any consequential
    loss or any legal liability of whatsoever nature with respect to which:

    (i) the Insured under this policy is also an Insured or an additional insured under any other insurance policy,
    including any nuclear energy liability policy; or

    (ii) any person or organization is required to maintain financial protection pursuant to legislation in any
    country; or

    (iii) the Insured under this policy is, or had this policy not been issued would be, entitled to indemnification
    from any government or agency thereof.

022

AVN38B (1/02)          Page 1 of Endorsement No. _____ 13

---

## WAR, HI-JACKING AND OTHER PERILS EXCLUSION CLAUSE (AVIATION)

This policy is amended as follows:

In the event any of the provisions of this endorsement are in conflict with any provisions, exclusions, conditions or
terms forming part of this policy, this endorsement shall take precedence.

This policy does not cover claims caused by:

(a) War, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion,
revolution, insurrection, martial law, military or usurped power or attempts at usurpation of power;

(b) Any hostile detonation of any weapon of war employing atomic or nuclear fission and/or fusion or other like
reaction or radioactive force or matter;

(c) Strikes, riots, civil commotions or labor disturbances;

(d) Any act of one or more persons, whether or not agents of a sovereign power, for political or terrorist purposes
and whether the loss or damage resulting therefrom is accidental or intentional;

(e) Any malicious act or act of sabotage;

(f) Confiscation, nationalization, seizure, restraint, detention, appropriation, requisition for title or use by or under
the order of any Government (whether civil, military or de facto) or public or local authority;

(g) Hijacking or any unlawful seizure or wrongful exercise of control of the aircraft or crew in flight (including any
attempt at such seizure or control) made by any person or persons on board the aircraft acting without the
consent of the Insured.

Furthermore, this policy does not cover claims arising whilst the aircraft is outside the control of the Insured by
reason of any of the above perils.

The aircraft shall be deemed to have been restored to the control of the Insured on the safe return of the aircraft to
the Insured at an airfield not excluded by the geographical limits of this policy, and entirely suitable for the
operation of the aircraft (such safe return shall require that the aircraft be parked with engines shut down and
under no duress).

All other provisions of this policy remain the same.

This endorsement becomes effective _____ MAY 18, 2002 _____ to be attached to and hereby made a part of
Policy No. _ AV 3391999-04 _ issued to PONTIAC FLYING SERVICE, INC

By National Union Fire Insurance Company of Pittsburgh, PA

Endorsement No. _____ 12 _____

Date of Issue _____ 6-14-02 bp _____

☒ AIG Aviation, Inc.
☐ AIG Aviation Insurance Services
☐ AIG Aviation (Canada), Inc.
☐ AIG Aviation (Illinois) Corporation
☐ AIG Aviation (Texas), Inc.
☐ American International Aviation Agency, Inc.

021

AVN48B (1/02)          By _____ (Authorized Representative)

---

## LOSS PAYABLE ENDORSEMENT

In consideration of additional premium of $ _____ INCLUDED _____ , this policy is amended as follows:

Any loss under Coverage F, G, and H is payable as interest may appear to the Named Insured and the following
Loss Payable:

As respects : N40468 AND N87G2H

PEOPLES BANK
PO BOX 460
GRIDLEY, IL 61744

AS RESPECTS N503D:

BANK OF PONTIAC
300 W WASHINGTON
PONTIAC, IL 61764

All other provisions of this policy remain the same.

This endorsement becomes effective _____ MAY 19, 2002 _____ to be attached to and hereby made a part of
Policy No. _ AV 3391999-04 _ issued to PONTIAC FLYING SERVICE, INC

By National Union Fire Insurance Company of Pittsburgh, PA

Endorsement No. _____ 11

Date of Issue _____ 6-14-02 bp _____ By _____ (Authorized Representative)

020

AV83 (3/01)

## FUNGUS EXCLUSION ENDORSEMENT

This policy shall not apply under any coverage section to:

1. bodily injury; sickness; disease; occupational disease; headaches; dizziness; neurological disorders of any kind; mental or physical stress, anguish, or injury of any kind; property damage or grounding or any other claim whatsoever nor

   any loss, cost, or expense including, but not limited to, losses, costs, or expenses related to, arising from, or associated with testing for, cleaning up, remediation, containment, removal, or abatement, nor

   any obligation to defend or indemnify due in whole or in part to any claim or suit against the insured alleging damages arising from or caused by, directly or indirectly, in whole or in part, by

   (a) any fungus(i), molds, mildew or yeast, or

   (b) any spore(s), or toxins created or produced by or emanating from such fungus(i), mold(s), mildew or yeast, or

   (c) any substance, vapor gas, or other emission or organic or inorganic body or substance produced by or arising out of any fungus(i), mold(s), mildew or yeast, or

   (d) any material, product, building component, building or structure or any concentration of moisture, water or other liquid within such material, product, building component, building or structure that contains, harbors, nurtures, or acts as a medium for any fungus(i), mold(s), mildew or yeast, or spore(s) or toxins emanating therefrom,

   regardless of any other cause, event material, product and/or building component that contributed concurrently or in any sequence to any alleged loss or subsequent claim.

2. For the purposes of this endorsement, the following definitions are added to the policy:

   Fungus(i) includes, but is not limited to, any of the plants or organisms belonging to the major group Fungi, lacking chlorophyll, and including mold(s), rusts, mildews, smuts, and mushrooms.

   Mold(s) includes, but is not limited to, any superficial growth produced on damp or decaying organic matter or on living organisms, and fungi that produce molds.

   Spore(s) means any dormant or reproductive body produced by or arising or emanating out of any fungus(i), mold(s), mildew, plants, organisms, or microorganisms.

All other provisions of this policy remain the same.

This endorsement becomes effective    MAY 19, 2002    to be attached to and hereby made a part of Policy No.    AV 3391999-04    issued to    PONTIAC FLYING SERVICE, INC

By    National Union Fire Insurance Company of Pittsburgh, PA

Endorsement No.    15

Date of Issue    6-14-02  bp

☒ AIG Aviation, Inc.
☐ AIG Aviation Insurance Services
☐ AIG Aviation (Canada), Inc.
☐ AIG Aviation (Illinois) Corporation
☐ AIG Aviation (Texas), Inc.
☐ American International Aviation Agency, Inc.

By    [signature]
   (Authorized Representative)

AV865 (2/02)    025

---

## NOISE AND POLLUTION AND OTHER PERILS EXCLUSION CLAUSE

This policy is amended as follows:

In the event any of the provisions of this endorsement are in conflict with any provisions, exclusions, conditions o terms forming part of this policy, this endorsement shall take precedence.

1. This policy does not cover claims directly or indirectly occasioned by, happening through or in consequence of

   (a) noise (whether audible to the human ear or not), vibration, sonic boom and any phenomena associate therewith,

   (b) pollution and contamination of any kind whatsoever,

   (c) electrical and electromagnetic interference,

   (d) interference with the use of property;

   unless caused by or resulting in a crash, fire, explosion or collision or a recorded in-flight emergency causing abnormal aircraft operation.

2. With respect to any provision in the policy concerning any duty of the Company to investigate or defen claims, such provision shall not apply and the Company shall not be required to defend:

   (a) claims excluded by paragraph 1., or

   (b) a claim or claims covered by the policy when combined with any claims excluded by paragraph 1 (referred to below as "Combined Claims").

3. In respect of any Combined Claims, the Company shall (subject to proof of loss and the limits of the policy reimburse the Insured for that portion of the following items which may be allocated to the claims covered b the policy:

   (a) damages awarded against the Insured and

   (b) defense fees and expenses incurred by the Insured.

4. Nothing herein shall override any radioactive contamination or other exclusion clause attached to or formin part of this policy.

All other provisions of this policy remain the same.

This endorsement becomes effective    MAY 19, 2002    to be attached to and hereby made a part o Policy No.    AV 3391999-04    issued to    PONTIAC FLYING SERVICE, INC

By    National Union Fire Insurance Company of Pittsburgh, PA

Endorsement No.    14

Date of Issue    6-14-02  bp

☒ AIG Aviation, Inc.
☐ AIG Aviation Insurance Services
☐ AIG Aviation (Canada), Inc.
☐ AIG Aviation (Illinois) Corporation
☐ AIG Aviation (Texas), Inc.
☐ American International Aviation Agency, Inc.

By    [signature]
   (Authorized Representative)

AVN46B (1/02)    024




**PART 2**

Policy Number AV 3391999-03   **DECLARATIONS**   Previous Policy Number AV 3391999-02

This page with "Policy Provisions - Part 1" Form AG01(9/98) and all endorsements attached hereto completes this numbered aviation physical damage and liability policy, issued by the company as indicated by an "X" in the box to the left of the company's name, thereinafter called the Company).

☐ AMERICAN HOME ASSURANCE COMPANY
☒ NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.
☐ THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA

**ITEM 1.** ✗ PONTIAC FLYING SERVICE
NAMED INSURED
5750 EAST 2000 NORTH ROAD, PONTIAC, IL 61764
ADDRESS

**ITEM 2.** Policy Period: From   APRIL 10, 2001   to   APRIL 10, 2002   12:01 A.M. Standard Time at the address in Item 1. The insurance afforded is only with respect to such and so many of the following coverages as are indicated by the specified premium charge or charges. The limit of the Company's liability against such coverage shall be as stated herein, subject to all of the terms of this policy having reference thereto.

**ITEM 3.** Liability Coverages

| ITEM | Liability Coverages | LIMITS OF LIABILITY | | | LIABILITY PREMIUMS |
| --- | --- | --- | --- | --- | --- |
| | | NON-CHEMICAL | | CHEMICAL | |
| A. | Bodily Injury, excluding Passengers | $ 100,000 each person 300,000 each occurrence aggregate | $ 100,000 each person 300,000 each occurrence 300,000 aggregate | | 900 |
| B. | Property Damage | 100,000 each occurrence aggregate | 100,000 each occurrence aggregate | | |
| C. | Passenger Liability | | Not applicable Not applicable | | 1672 |
| D. | Single Limit - Property Damage & Bodily Injury, excluding Passengers | each occurrence aggregate | each occurrence aggregate | | |
| E. | Medical Expense - excluding Crew | each person each occurrence | Not applicable Not applicable | | |

Chemical Limits of Liability are part of and not in addition to the Non-chemical Limits of Liability. LIAB. TOTAL $ 2572
All liability arising from any one occurrence shall not exceed the Non-chemical Limits of Liability.

**ITEM 4.** Description of Aircraft and Physical Damage Coverage hereunder:

| F.A.A. CERT. NO. | MAKE AND MODEL | YEAR BUILT | SEATS PASS | INSURED VALUE | COVERAGE NOT IN MOTION | IN MOTION | PHYSICAL DAMAGE PREMIUMS | DEDUCTIBLES NOT IN MOTION | IN MOTION (INGESTION) OR MOORING |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| N3842E | GRUMMAN AG CAT | 76 | 0 | 90,000 | 11 | N/A | 5879 | 500 | 9000 |
| N87621H | GRUMMAN AG CAT | 75 | 0 | 45,000 | 11 | N/A | | 500 | 9000 |

PHYSICAL DAMAGE Coverage Identified:
At All Risks: Ground & Flight    CHEMICAL CATEGORY:
At All Risks: Not In Flight    CC Comprehensive Chemical
At All Risks: Not In Motion    CR Restricted Chemical    PHYSICAL DAMAGE TOTAL $ 5879    POLICY PREMIUM    9605
                          XC Excluding Chemical
                          N/A Not Applicable

**ITEM 5.** When in flight the aircraft will be primed only by ab11 AG018

**ITEM 6.** The aircraft will be used only for the purpose Aerial Application.

**ITEM 7.** LOSS PAYABLE: Any loss under coverage F, G, and H is payable as interest may appear to the Named Insured and

**ITEM 8.** The aircraft will be principally based at PONTIAC MUNICIPAL Airport, PONTIAC, City, IL, State.

Producer HARDY AVIATION INSURANCE, INC

Countersigned _____

At _____

By _____
(Authorized Representative)

Approved _____
(Authorized Representative)

AG04 (9/98)    029 1

---

**b)** The following is added:

**NONRENEWAL**

If the Insurer decides not to renew this policy, the insurer will mail written notice stating the reason for nonrenewal to the Named Insured's last mailing address known to the Insurer at least sixty (60) days before the expiration date of the policy. A copy of the notice will also be sent to:

a) The broker, if known to the Insurer, or the agent of record, and

b) The last known mortgagee or lienholder named in the policy at the last mailing address known to the Insurer.

This paragraph does not apply if the Insurer has manifested a willingness to renew directly to the Named Insured.

All other provisions of this policy remain the same.

This endorsement becomes effective _____ MAY 19, 2002 _____ to be attached to and hereby made a part of Policy No. _____ AV 3391999-04 _____ issued to PONTIAC FLYING SERVICE, INC

By National Union Fire Insurance Company of Pittsburgh, PA

Endorsement No. _____ 17 _____

Date of Issue _____ 6-14-02 _____ bp

☒ AIG Aviation, Inc.
☐ AIG Aviation Insurance Services
☐ AIG Aviation (Canada), Inc.
☐ AIG Aviation (Illinois) Corporation
☐ AIG Aviation (Texas), Inc.

By _____
(Authorized Representative)

SE52142(11/94)    Page 2    028

---

**ILLINOIS CANCELLATION / NONRENEWAL ENDORSEMENT - AVIATION**

Wherever used in this endorsement: 1) "we", "us", "our", and "Insurer" mean the insurance company which issued this policy; and 2) "you", "your", "Named Insured", "First Named Insured", and "Insured" mean the Named Corporation, Named Organization, Named Sponsor, Named Insured, or Insured stated in the Declarations page; and 3) "Other Insured(s)" means all other persons or entities afforded coverage under the policy.

**CANCELLATION AND NONRENEWAL**

A) The cancellation condition of this policy is replaced by the following:

**CANCELLATION**

1. The Named Insured may cancel this policy by mailing to the Insurer advance written notice of cancellation.

2. If this policy has been in effect for sixty (60) days or less, the Insurer may cancel this policy by mailing to the Named Insured written notice of cancellation at least:

   a) Ten (10) days before the effective date of cancellation if the Insurer cancels for nonpayment of premium; or

   b) Thirty (30) days before the effective date of cancellation if the Insurer cancels for any other reason.

3. If this policy has been in effect for more than sixty (60) days the Insurer may cancel this policy only for one or more of the following reasons:

   a) Nonpayment of premium;

   b) The policy was obtained through a material misrepresentation;

   c) The Named Insured or Other Insured(s) have violated any of the terms and conditions of the policy;

   d) The risk originally accepted has measurably increased;

   e) Certification to the Director of Insurance of the loss of reinsurance by the Insurer which provided coverage to the Insurer for all or a substantial part of the underlying risk insured; or

   f) A determination by the Director that the continuation of the policy could place the Insurer in violation of the insurance laws of this State.

   If the Insurer cancels this policy based on one or more of the above reasons except for nonpayment of premium, the Insurer will mail written notice to the Named Insured at least sixty (60) days before the effective date of cancellation. However, for nonpayment of premium, the Insurer will mail notice at least ten (10) days before the effective date of cancellation.

4. The Insurer will mail the notice to the Named Insured and the agent or broker at the last addresses known to the Insurer.

5. Notice of cancellation will state the effective date of cancellation and a specific explanation of the reason or reasons for cancellation. The policy period will end on that date.

6. If this policy is cancelled, the Insurer will send the Named Insured any premium refund due. If the Insurer cancels, the refund will be pro rata. If the Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if the Insurer has not made or offered a refund.

7. Proof of mailing will be sufficient proof of notice.

SE52142(11/94)    Page 1 of Endorsement No. 17    027

---

**DATE RECOGNITION EXCLUSION CLAUSE**

This Policy does not cover any claim, damage, injury, loss, cost, expense or liability (whether in contract, tort, negligence, product liability, misrepresentation, fraud or otherwise) of any nature whatsoever arising from or occasioned by (whether directly or indirectly and whether wholly or partly):

(a) the failure or inability of any computer hardware, software, integrated circuit, chip or information technology equipment or system (whether in the possession of the Insured or of any third party) accurately or completely to process, recognize, exchange or transfer year, date or time data or information in connection with any change of year, date or time;

   whether on or before or after such change of year, date or time;

(b) any implemented or attempted change or modification of any computer hardware, software, integrated circuit, chip or information technology equipment or system (whether in the possession of the Insured or of any third party) in anticipation of or in response to any such change of year, date or time, or any advice given or services performed in connection with any such change or modification;

(c) any non-use or unavailability for use of any property or equipment of any kind whatsoever resulting from any act, failure to act or decision of the Insured or of any third party related to any such change of year, date or time;

and any provision in this Policy concerning any duty of the Company to investigate or defend claims shall not apply to any claims so excluded.

All other provisions of this policy remain the same.

This endorsement becomes effective _____ MAY 19, 2002 _____ to be attached to and hereby made a part of Policy No. _____ AV 3391999-04 _____ issued to PONTIAC FLYING SERVICE, INC

By National Union Fire Insurance Company of Pittsburgh, PA

Endorsement No. _____ 16 _____

Date of Issue _____ 6-14-02 _____ bp

☒ AIG Aviation, Inc.
☐ AIG Aviation Insurance Services
☐ AIG Aviation (Canada), Inc.
☐ AIG Aviation (Illinois) Corporation
☐ AIG Aviation (Texas), Inc.
☐ American International Aviation Agency, Inc.

By _____
(Authorized Representative)

AVN2000A (1/02)    026

This policy is amended as follows:

When in flight, the aircraft will only be operated by the pilot/s specified below who possess the logged hours, the current and valid ratings and certificates specified below, and a current and valid Medical Certificate.

As respects piston engine powered fixed-wing aircraft:
☒ Named pilot(s) SCOTT PETERSEN
☒ Any pilot maintaining a commercial or more advanced pilot certificate who has flown a minimum pilot in command time of _____ (1,000 if nothing else is shown) hours in fixed-wing aircraft engaged in aerial application, including at least _____ (100 if nothing else is shown) hours in aircraft of the same make and model being flown.

As respects piston engine powered rotorcraft:
☐ Named pilot(s) _____
☐ Any pilot maintaining a commercial or more advanced pilot certificate who has flown a minimum pilot in command time of _____ (1,000 if nothing else is shown) hours in rotorcraft engaged in aerial application, including at least _____ (100 if nothing else is shown) hours in aircraft of the same make and model being flown.

As respects turbine powered fixed-wing aircraft:
☐ Named pilot(s) _____
☐ Any pilot maintaining a commercial or more advanced pilot certificate who has flown a minimum pilot in command time of _____ (1,000 if nothing else is shown) hours in fixed-wing aircraft engaged in aerial application, including at least _____ (100 if nothing else is shown) hours in aircraft of the same make and model being flown.

As respects turbine powered rotorcraft:
☐ Named pilot(s) _____
☐ Any pilot maintaining a commercial or more advanced pilot certificate who has flown a minimum pilot in command time of _____ (1,000 if nothing else is shown) hours in rotorcraft engaged in aerial application, including at least _____ (100 if nothing else is shown) hours in aircraft of the same make and model being flown.

As respects all turbine powered aircraft/rotorcraft:
☐ In addition to the above, the following pilots must also have successfully completed the aircraft manufacturer's ground and flight training program for the aircraft being flown or, if the aircraft has a turbine engine conversion, the pilot must have successfully completed formalized ground and flight training with the aircraft's conversion facility:
_____
_____
_____

All other provisions of this policy remain the same.

This endorsement becomes effective _____ APRIL 10, 2001 _____ to be attached to and hereby made a part of Policy No. _____ AV 3391999-03 _____ issued to PONTIAC FLYING SERVICE

By National Union Fire Insurance Company of Pittsburgh, PA

Endorsement No. ___ 3

Date of Issue ___ 5-9-01 HLU

By _____ (Authorized Representative)

AG010 (6/98)      033

---

### LIABILITY AMENDMENT ENDORSEMENT

In consideration of $ INCLUDED _____ INCLUDED _____ premium, the limits of liability set forth under Item 3 of the Declarations Page are deleted and the following shall apply:

| Liability Coverages | Limits of Liability |
|---|---|
| AS REPSECTS GRUMMAN AG CAT, N8762H: | |

COVERAGE A & B ARE DELETED.

All other provisions of this policy remain the same.

This endorsement becomes effective _____ APRIL 10, 2001 _____ to be attached to and hereby made a part of Policy No. _____ AV 3391999-03 _____ issued to PONTIAC FLYING SERVICE

By National Union Fire Insurance Company of Pittsburgh, PA

Endorsement No. ___ 1

Date of Issue ___ 5-9-01 HLU

☒ AIG Aviation, Inc.
☐ AIG Aviation Insurance Services
☐ AIG Aviation (Canada), Inc.
☐ AIG Aviation (Illinois) Corporation
☐ AIG Aviation (Texas), Inc.

By _____ (Authorized Representative)

AV78(1/96)      031

---

4.  The Company may pay any part or all of the deductible amount to effect settlement of any claim or suit and, upon notification of the action taken, the Named Insured shall promptly reimburse the Company for such part of the deductible amount as has been paid by the Company.

All other provisions of this policy remain the same.

This endorsement becomes effective _____ APRIL 10, 2001 _____ to be attached to and hereby made a part of Policy No. _____ AV 3391999-03 _____ issued to PONTIAC FLYING SERVICE

By National Union Fire Insurance Company of Pittsburgh, PA

Endorsement No. ___ 2 ___ page 2 of 2

Date of Issue ___ 5-9-01 HLU

By _____ (Authorized Representative)

AG016 (2/00)      032

---

### DEDUCTIBLE LIABILITY INSURANCE ENDORSEMENT

In consideration of INCLUDED _____ premium of $ INCLUDED _____, this policy is amended as follows:

#### SCHEDULE

| COVERAGE | AMOUNT AND BASIS OF DEDUCTIBLE | |
|---|---|---|
| Coverage B. | | |
| Property Damage Liability | | |
| Arising from Chemicals | $ 1000 | each occurrence |
| Arising from other than Chemicals | $ 250 | each occurrence |
| Coverage D. | | |
| Property Damage Liability | | |
| Arising from Chemicals | $N/A | each occurrence |
| Arising from other than Chemicals | $N/A | each occurrence |

APPLICATION OF ENDORSEMENT (Enter below any limitations on the application of this endorsement. If no limitation is entered, the deductibles apply to damages for all property damage, however caused):

1.  The obligation of the Company under Coverage B or D to pay damages on behalf of the Insured applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as applicable to such coverages, and the limits of insurance applicable to each occurrence for such coverages will be reduced by the application of such deductible amount.

2.  The deductible amounts stated in the Schedule apply as follows:

Per Occurrence Basis - if the deductible is on a per occurrence basis, the deductible amount applies under Coverage B or D to all damages because of property damage as the result of any one occurrence regardless of the number of persons or organizations who sustain damages because of that occurrence.

3.  The terms of this insurance, including those with respect to:

A)  the Company's right and duty to defend any suits seeking those damages, and

B)  the Named Insured's duties in the event of an occurrence, claim or suit

apply irrespective of the application of the deductible amount.

AG016 (2/00)      030      Endorsement No. 1 , page 1 of 2

MILLENNIUM ENDORSEMENT

This Policy does not cover any claim, damage, injury, loss, cost, expense or liability (whether in contract, tort, negligence, product liability, misrepresentation, fraud or otherwise) of any nature whatsoever arising from or occasioned by or in consequence of (whether directly or indirectly and whether wholly or partly):

a) the failure or inability of any computer hardware, software, integrated circuit, chip, computer component or other information technology equipment or system (whether in the possession of the Insured or of any third party) accurately or completely to process, recognize, exchange or transfer year, date or time data or information in connection with:

· the change of year from 1999 to 2000; and/or
· the change of date from 21 August 1999 to 22 August 1999; and/or
· any other change of year, date or time;

whether on or before or after such change of year, date or time;

b) any implemented or attempted change or modification of any computer hardware, software, integrated circuit, chip, computer component or other information technology equipment or system (whether in the possession of the Insured or of any third party) in anticipation of or in response to any such change of year, date or time or any advice given, or services performed in connection with any such change or modification;

c) any non-use or unavailability for use of any property or equipment of any kind whatsoever resulting from any act, failure to act or decision of the Insured or of any third party related to any such change of year, date or time;

and any provision in this Policy concerning any duty of the Company to investigate or defend claims shall not apply to any claims so excluded.

All other provisions of this policy remain the same.

This endorsement becomes effective _____ APRIL 10, 2001 _____ to be attached to and hereby made a part of Policy No. ___ AV 3391999-03 ___ issued to PONTIAC FLYING SERVICE

By National Union Fire Insurance Company of Pittsburgh, PA

Endorsement No. ___ 7 ___

Date of Issue ___ 5-9-01 HLU ___

☒ AIG Aviation, Inc.
☐ AIG Aviation Insurance Services
☐ AIG Aviation (Canada), Inc.
☐ AIG Aviation (Illinois) Corporation
☐ AIG Aviation (Texas), Inc.
☐ American International Aviation Agency, Inc.

69718 (7/98)          037          By _____ (Authorized Representative)

---

LOSS PAYABLE CLAUSE

In consideration of $ ___ INCLUDED ___ additional premium, item 7 of the Declarations Page is completed to read as follows as respects #48468, N8762H

The Named Insured is the sole owner of aircraft and the aircraft is not subject to any encumbrance other than as indicated herein.

Loss Payable:   AMCORE BANK
                PO BOX 200
                MENDOTA, IL 61342-0200

All other provisions of this policy remain the same.

This endorsement becomes effective _____ APRIL 10, 2001 _____ to be attached to and hereby made a part of Policy No. ___ AV 3391999-03 ___ issued to PONTIAC FLYING SERVICE

By National Union Fire Insurance Company of Pittsburgh, PA

Endorsement No. ___ 6 ___

Date of Issue ___ 5-9-01 HLU ___

☒ AIG Aviation, Inc.
☐ AIG Aviation Insurance Services
☐ AIG Aviation (Canada), Inc.
☐ AIG Aviation (Illinois) Corporation
☐ AIG Aviation (Texas), Inc.

AV82(5/94)          036          By _____ (Authorized Representative)

---

ILLINOIS SPECIAL LIMITS ENDORSEMENT

In consideration of additional premium of $ INCLUDED _____, this policy is amended as follows:

As respects aerial application within the State of Illinois, the Limits of Liability shall be the greater of:

a) The amounts as shown on the Declarations; or

b) The following limits if a premium is shown on the Declarations for the coverage(s):

| Coverage A | $ 50,000. each person |
| | $100,000. each occurrence |
| | $500,000. aggregate |
| Coverage B | $ 50,000. each occurrence |
| | $ 50,000. aggregate |
| Coverage D | $100,000. each occurrence |
| | $500,000. aggregate |

All other provisions of this policy remain the same.

This endorsement becomes effective _____ APRIL 10, 2001 _____ to be attached to and hereby made a part of Policy No. ___ AV 3391999-03 ___ issued to PONTIAC FLYING SERVICE

By National Union Fire Insurance Company of Pittsburgh, PA

Endorsement No. ___ 5 ___

Date of Issue ___ 5-9-01 HLU ___          035          By _____ (Authorized Representative)

AG003 (6/99)

---

ADJACENT FIELDS LIABILITY

In consideration of INCLUDED _____ premium of $ INCLUDED _____, this policy is amended as follows:

Exclusion 7. c) is deleted, subject to the following:

NO CHANGE

All other provisions of this policy remain the same.

This endorsement becomes effective _____ APRIL 1, 2001 _____ to be attached to and hereby made a part of Policy No. ___ AV 3391999-03 ___ issued to PONTIAC FLYING SERVICE

By National Union Fire Insurance Company of Pittsburgh, PA

Endorsement No. ___ 4 ___

Date of Issue ___ 5-9-01 HLU ___          034          By _____ (Authorized Representative)

AG013 (6/98)

## AIRCRAFT ENDORSEMENT
### (AERIAL APPLICATOR)

In consideration of  AN ADDITIONAL  premium of $ 2,598. , this policy is amended by the
ADDITION  of the aircraft described below:

The insurance afforded is only with respect to such and so many of the following coverages as are indicated by specified premium charge or charges. The limit of the Company's liability against such coverage shall be as stated herein, subject to all of the terms of this policy having reference thereto. If more than one aircraft is insured hereunder, the terms of this policy shall apply separately to each.

| ITEM 3.  Liability Coverages | LIMITS OF LIABILITY | | | | LIABILITY PREMIUMS |
|---|---|---|---|---|---|
| | NON-CHEMICAL | | CHEMICAL | | |
| A. Bodily Injury – excluding Passengers | 100,000. each person<br>300,000. each occurrence aggregate | | 100,000. each person<br>300,000. each occurrence<br>300,000. aggregate | | |
| B. Property Damage | 100,000. each occurrence aggregate | | 100,000. each occurrence<br>100,000. aggregate | | 99. |
| C. Passenger Liability | each person<br>each occurrence | | Not applicable<br>Not applicable | | 184. |
| D. Single Limit – Property Damage & Bodily Injury, excluding Passengers | each occurrence aggregate | | each occurrence aggregate | | |
| E. Medical Expense – excluding Crew | each occurrence | | Not applicable<br>Not applicable | | |

Chemical Limits of Liability are part of and not in addition to the Non-chemical Limits of Liability.  UAB. TOTAL  $ ___ 283.
All liability arising from any one occurrence shall not exceed the Non-chemical Limits of Liability.

| ITEM 4.  Description of Aircraft and Physical Damage Coverage hereunder: | | | | | COVERAGE | PHYSICAL DAMAGE PREMIUMS | DEDUCTIBLES | |
| F.A.A.<br>CERT.<br>NO. | MAKE AND MODEL | YEAR<br>BUILT | SEATS<br>PASS. | INSURED<br>VALUE | PHYSICAL<br>DAMAGE | IGN | | NOT IN<br>MOTION | IN MOTION,<br>INGESTION,<br>OR MOORING |
|---|---|---|---|---|---|---|---|---|---|
| N503D | AIR TRACTOR 503 | .91 | 0.1 | 350,000. | | CG | 2,315. | 500. | 39,900. |

PHYSICAL DAMAGE Coverage Identified:
F. All Risks: Ground & Flight
G. All Risks: Not In Flight
H. All Risks: Not In Motion

CHEMICAL CATEGORY:
CC Comprehensive Chemical
RC Restricted Chemical
XC Excluding Chemical
N/A Not Applicable

PHYSICAL DAMAGE TOTAL  $ ___ 2,315.
POLICY PREMIUM  $ ___ 2,598.

### ANNUAL PREMIUMS
| Coverage | Premium |
|---|---|
| A. | 900. |
| B. | 1,672. |
| F. | 21,047. |
| P/R .110 | |

All other provisions of this policy remain the same.

This endorsement becomes effective  MARCH 1, 2002  to be attached to and hereby made a part of
Policy No.  AV 3391999-03  issued to PONTIAC FLYING SERVICE

By National Union Fire Insurance Company of Pittsburgh, PA

Endorsement No.  10

Date of Issue  MARCH 5, 2002 JT          041  By _____ (Authorized Representative)

AG017 (9/98)

---

B)  The following is added:

✓  NONRENEWAL

If the Insurer decides not to renew this policy, the Insurer will mail written notice stating the reason for nonrenewal to the Named Insured's last mailing address known to the Insurer at least sixty (60) days before the expiration date of the policy. A copy of the notice will also be sent to:

a)  The broker, if known to the Insurer, or the agent of record; and

b)  The last known mortgagee or lienholder named in the policy at the last mailing address known to the Insurer.

This paragraph does not apply if the Insurer has manifested a willingness to renew directly to the Named Insured.

All other provisions of this policy remain the same.

This endorsement becomes effective  APRIL 10, 2001  to be attached to and hereby made a part of
Policy No.  AV 3391999-03  Issued to PONTIAC FLYING SERVICE

By National Union Fire Insurance Company of Pittsburgh, PA

Endorsement No.  9

Date of Issue  5-9-01 HLU

☒ AIG Aviation, Inc.
☐ AIG Aviation Insurance Services
☐ AIG Aviation (Canada), Inc.
☐ AIG Aviation (Illinois) Corporation
☐ AIG Aviation (Texas), Inc.

By _____ (Authorized Representative)

SE52142(11/94)  Page 2          039

---

This policy is amended as follows:

Insuring Agreement VI. POLICY PERIOD, TERRITORY is amended to read as follows:

WEST VIRGINIA

All other provisions of this policy remain the same.

This endorsement becomes effective  APRIL 10, 2001  to be attached to and hereby made a part of
Policy No.  AV 3391999-03  issued to PONTIAC FLYING SERVICE

By National Union Fire Insurance Company of Pittsburgh, PA

Endorsement No.  9

Date of Issue  5-30-01 bp

☒ AIG Aviation, Inc.
☐ AIG Aviation Insurance Services
☐ AIG Aviation (Canada), Inc.
☐ AIG Aviation (Illinois) Corporation
☐ AIG Aviation (Texas), Inc.

AV117(5/94)          040          By _____ (Authorized Representative)

---

## ILLINOIS CANCELLATION / NONRENEWAL ENDORSEMENT - AVIATION

Wherever used in this endorsement:  1) "we", "us", "out", and "Insurer" mean the insurance company which issued this policy; and 2) "you", "your", "Named Insured", "First Named Insured", and "Insured" mean the Named Corporation, Named Organization, Named Sponsor, Named Insured, or Insured stated in the Declarations page; and 3) "Other Insured(s)" means all other persons or entities afforded coverage under the policy.

### CANCELLATION AND NONRENEWAL

A)  The cancellation condition of this policy is replaced by the following:

CANCELLATION

1.  The Named Insured may cancel this policy by mailing to the Insurer advance written notice of cancellation.

2.  If this policy has been in effect for sixty (60) days or less, the Insurer may cancel this policy by mailing to the Named Insured written notice of cancellation at least:

   a)  Ten (10) days before the effective date of cancellation if the Insurer cancels for nonpayment of premium; or

   b)  Thirty (30) days before the effective date of cancellation if the Insurer cancels for any other reason.

3.  If this policy has been in effect for more than sixty (60) days the Insurer may cancel this policy only for one or more of the following reasons:

   a)  Nonpayment of premium;

   b)  The policy was obtained through a material misrepresentation;

   c)  The Named Insured or Other Insured(s) have violated any of the terms and conditions of the policy;

   d)  The risk originally accepted has measurably increased;

   e)  Certification to the Director of Insurance of the loss of reinsurance by the Insurer which provided coverage to the Insurer for all or a substantial part of the underlying risk insured; or

   f)  A determination by the Director that the continuation of the policy could place the Insurer in violation of the insurance laws of this State.

   If the Insurer cancels this policy based on one or more of the above reasons except for nonpayment of premium, the Insurer will mail written notice to the Named Insured at least sixty (60) days before the effective date of cancellation. When cancellation is for nonpayment of premium, the Insurer will mail notice at least ten (10) days before the effective date of cancellation.

4.  The Insurer will mail the notice to the Named Insured and the agent or broker at the last addresses known to the Insurer.

5.  Notice of cancellation will state the effective date of cancellation and a specific explanation of the reason or reasons for cancellation. The policy period will end on that date.

6.  If this policy is cancelled, the Insurer will send the Named Insured any premium refund due. If the Insurer cancels, the refund will be pro rata. If the Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if the Insurer has not offered or offered a refund.

7.  Proof of mailing will be sufficient proof of notice.

SE52142(11/94)  Page 1 of Endorsement No.  8          038

```
▪▪▪  TX REPORT  ▪▪▪
TRANSMISSION OK

TX/RX NO                4580
CONNECTION TEL.
SUBADDRESS                      14806998375
CONNECTION ID           KARYBETH
ST. TIME                02/12 17:29
USAGE T                 00'32
PGS. SENT               1
RESULT                  OK
```

---

**Copy 1 (top left):**

P.O. Box 12010
Wichita, KS 67277-2010

# HARDY
### Aviation Insurance, Inc.

Phone:      (316)945-6733
Toll Free:  (800)721-6733
Fax:        (316)945-2330
E-Mail: hardy@hardyaviationins.com

To:    Mary Beth          Date:   February 12, 2002
At:    AIG                Fax #:
From:  Angie Banz         Pages:  1

Subject: Pontiac Flying Service   AV 3391999 03

The insured is thinking of purchasing an AT503 valued at $350,000., for ag use only.

Scott has been through Harold Miller's turbine transition course and has 40 turbine hours now.   In addition, he attended Covington's PT-6 ground course.

Can you give us a quote for this 503?

Thanks!



045

---

**Copy 2 (top right):**

P.O. Box 12010
Wichita, KS 67277-2010

# HARDY
### Aviation Insurance, Inc.

Phone:      (316)945-6733
Toll Free:  (800)721-6733
Fax:        (316)945-2330
E-Mail: hardy@hardyaviationins.com



To:    Mary Beth          Date:   February 12, 2002
At:    AIG                Fax #:
From:  Angie Banz         Pages:  1

Subject: Pontiac Flying Service   AV 3391999 03

The insured is thinking of purchasing an AT503 valued at $350,000., for ag use only.

Scott has been through Harold Miller's turbine transition course and has 40 turbine hours now.   In addition, he attended Covington's PT-6 ground course.

Can you give us a quote for this 503?

Thanks!

044

---

**Copy 3 (bottom left):**

P.O. Box 12010
Wichita, KS 67277-2010

# HARDY
### Aviation Insurance, Inc.

Phone:      (316)945-6733
Toll Free:  (800)721-6733
Fax:        (316)945-2330
E-Mail: hardy@hardyaviationins.com

To:    Mary Beth          Date:   February 12, 2002
At:    AIG                Fax #:
From:  Angie Banz         Pages:  1

Subject: Pontiac Flying Service   AV 3391999 03

The insured is thinking of purchasing an AT503 valued at $350,000., for ag use only.

Scott has been through Harold Miller's turbine transition course and has 40 turbine hours now.   In addition, he attended Covington's PT-6 ground course.

Can you give us a quote for this 503?

Thanks!

*6.9 hull rate*
*10% deduct*

*MFS*
*2/12/02*

043

---

**Copy 4 (bottom right):**

P.O. Box 12010
Wichita, KS 67277-2010

# HARDY
### Aviation Insurance, Inc.

Phone:      (316)945-6733
Toll Free:  (800)721-6733
Fax:        (316)945-2330
E-Mail: hardy@hardyaviationins.com

To:    Mary Beth          Date:   February 12, 2002
At:    AIG                Fax #:
From:  Angie Banz         Pages:  1

Subject: Pontiac Flying Service   AV 3391999 03

The insured is thinking of purchasing an AT503 valued at $350,000., for ag use only.

Scott has been through Harold Miller's turbine transition course and has 40 turbine hours now.   In addition, he attended Covington's PT-6 ground course.

Can you give us a quote for this 503?

Thanks!



*6.33 - revised 3/1/02  MFS*
*to 7 hull rate*
*10% deduct*

*MFS*
*2/12/02*

042

**LOSS REPORTS**
* file Copy*

(1) Policy Number  __AV 351049 01__  Closed __4-28-00__
U/W Company  __ASG__
Date of Loss  __10-10-99__    Paid $ __No Payment__
Aircraft  __No Ag Cat Mueller__
Pilot  __Scott Peterson__
Details  __sprayed need of Clarity on corn. Alleged__   Reserve Amount
__drift to soybeans. Claimant: Kenny Haldsworth__

(2) Policy Number  __AV 3529 1099 01__    Claim #
U/W Company  __ASG__   Closed __4-25-00__
Date of Loss  __10-11-99__    Paid $ __7,000__
Aircraft  __No Ag Cat Mueller__
Pilot  __Scott Peterson__    Reserve Amount
Details  __sprayed close load off corn herbicide__
__to chemist. Ag sprayer. Alleged drift to soybeans__
__Claimant: Archie Burnside__

(3) Policy Number  _____    Claim #
U/W Company  _____   Closed _____
Date of Loss  _____    Paid $ _____
Aircraft  _____
Pilot  _____    Reserve Amount
Details  _____

(4) Policy Number  _____    Claim #
U/W Company  _____   Closed _____
Date of Loss  _____    Paid $ _____
Aircraft  _____
Pilot  _____    Reserve Amount
Details  _____

HA109.xls
—049—

---

**HARDY** Aviation Insurance, Inc.

P.O. Box 12010
Wichita, KS  67277-2010
Phone:     (316)945-6733
Toll Free:  (800)721-6733
Fax:        (316)945-2330
E-Mail:  hardy@hardyaviationins.com

To:    Frank                  Date:  February 21, 2002
At:    USAIG                  Fax #:
From:  Angie Banz            Pages: 1

Subject:  Pontiac Flying Service, Inc.    Prospect

Frank, I faxed you a submission on this April 10 ag account which we currently write through AIG.

The insured is in the process of purchasing an AT503 from the operator who set up in business and I really need another quote, because the hull rate quoted so far is astronomical.

It is my understanding that the if the insured purchases the 503, he will sell at least one and perhaps both of his Ag Cats, so if need be, we can stop his current policy and rewrite a new annual policy for this 503, if we can get a better rate.

The 503 is a 1991 model, N503D, valued at $350,000.  Scott Peterson will be the pilot and he has been through Harold Miller's turbine transition course, in addition to attending Covington's PT-6 ground course.  Scott now has 40 turbine hours.

Frank, can you go ahead and give me a quote on this risk, including this 503?

Thanks!

*Angie*

048

---

```
*************************
      TX REPORT
*************************

TRANSMISSION OK

TX/RX NO             4044
CONNECTION TEL       18158442401
SUBADDRESS
CONNECTION ID
ST. TIME         02/18 15:30
USAGE T          00'40
PGS. SENT             1
RESULT           OK
```

**HARDY** Aviation Insurance, Inc.

P.O. Box 12010
Wichita, KS  67277-2010
Phone:     (316)945-6733
Toll Free:  (800)721-6733
Fax:        (316)945-2330
E-Mail:  hardy@hardyaviationins.com



To:    Scott Peterson        Date:  February 18, 2002
At:    Pontiac Flying Svc    Fax #: 815 844 2401
From:  Angie Banz            Pages: 1

Subject:  AT503 quote

AIG, your current carrier, has quoted an annual premium of $24,150., for the AT503 you may be purchasing.

The liability premium would be $2,572., as on your Ag Cat.

Let us know if you need to add this aircraft to your policy.

Thanks!

*Angie*

047

---

**HARDY** Aviation Insurance, Inc.

P.O. Box 12010
Wichita, KS  67277-2010
Phone:     (316)945-6733
Toll Free:  (800)721-6733
Fax:        (316)945-2330
E-Mail:  hardy@hardyaviationins.com

To:    Scott Peterson        Date:  February 18, 2002
At:    Pontiac Flying Svc    Fax #: 815 844 2401
From:  Angie Banz            Pages: 1

Subject:  AT503 quote

AIG, your current carrier, has quoted an annual premium of $24,150., for the AT503 you may be purchasing.

The liability premium would be $2,572., as on your Ag Cat.

Let us know if you need to add this aircraft to your policy.

Thanks!

*Angie*

046



**HARDY**
AVIATION INSURANCE

## Aerial Application Coverage Confirmation

Insurance Company
USAIG

Pontiac Flying Service, Inc.

15755 E 2000 North Road
Pontiac, IL 61764

Effective Dates: April 10, 2002 to April 10, 2003

Aircraft:  N 48468    1976 Ag Cat G164A
           N 8762H    1975 Ag Cat G164A
*Coverage information for individual aircraft listed separately.*
           N 503D     1991 Air Tractor AT503

Total Aircraft Premium: $33,830.00

Airport Premises: $1,000,000 CSL (Separate Policy)
Liability Coverage: Pontiac Municipal Airport & Incidental Locations
Additional Insured: City of Pontiac, IL

Airport Premises
Liability Premium: $1,000.00  *850*

---
HARDY Aviation Insurance, Inc.          Date
James (Randy) Hardy, President

*This is a general outline of coverage only. The actual policy determines all coverage provisions and conditions.*

P.O. BOX 12010
WICHITA, KS 67277-2010                 PHONE: (316) 945-6733
                                       FAX: (316) 945-2330
            053                        1-800-721-6733

---



**HARDY**
AVIATION INSURANCE

## *INVOICE*

| Customer Number | | Date | Invoice Number |
|---|---|---|---|
| 1516 | | 03/15/2002 | 6919 |

Pontiac Flying Service

15755 E 2000 North Road
Pontiac, IL 61764

| Policy Period | Description | Premium |
|---|---|---|
| 04/10/2001 to 04/10/2002 | AERIAL APPLICATION INSURANCE Add 1991 AT503, N503D | $2,598.00 |

Insurance Company: AIG
Premium Due 03/30/2002

Invoice Amount
$2,596.00

Please indicate invoice# on check          Thank You!



P.O. BOX 12010
WICHITA, KS 67277-2010                 PHONE: (316) 945-6733
                                       FAX: (316) 945-2330
            052                        1-800-721-6733

---

**HARDY**
AVIATION INSURANCE

March 15, 2002

Pontiac Flying Service
15755 E 2000 N Road
Pontiac IL 61764

RE:  AERIAL APPLICATION INSURANCE AV 3391099 03
     1991 AIR TRACTOR 503, N503D

Dear Scott & Sarah:

This will confirm that the captioned aircraft was added to your policy effective March 1, 2002 at an insured value of $350,000., with liability at the current policy limits, including comprehensive chemical liability.

Enclosed is our invoice representing the additional pro-rata premium for this aircraft addition, along with the policy endorsements evidencing this aircraft addition. Please file the endorsements with your policy as they form part of the policy terms.

We appreciate your business and welcome your call should you have any questions.

Cordially,

ANGIE BANZ
Executive Assistant

/AB

Enclosures

P.O. BOX 12010
WICHITA, KS 67277-2010                 PHONE: (316) 945-6733
                                       FAX: (316) 945-2330
            051                        1-800-721-6733

---

**HARDY**
Aviation Insurance, Inc.

P.O. Box 12010
Wichita, KS 67277-2010

Phone:      (316) 945-6733
Toll Free:  (800) 721-6733
Fax:        (316) 945-2330
E-Mail: hardy@hardyaviationins.com

To:    Mary Beth          Date: March 1, 2002
At:    AIG                Fax #:
From:  Angie Banz         Pages: 1

Subject: Pontiac Flying Service  AV 3391999 03

I need help!!!

We need to insure the 1991 503, N503D, because the insured finally closed on their loan today.

However, the 6.9 hull rate is killing me!!!  Even after PAASS, the pro-rata premium on this will be $2,792., for 6 weeks of coverage, when they're not even spraying.

Are we stuck with this, or can you help out on the hull rate any at all at this point?

One way or the other, I need coverage in effect today.

Thanks!

*Angie*

                                            050

---

**Left form (top):**

Pontiac Flying Service

Information on Aircraft 2 of 2

Insurance Company
AIG Aviation, Inc.

N# 8762H

Ag Cat G164A

## LIABILITY COVERAGES

| LIABILITY NON-CHEMICAL | | LIABILITY CHEMICAL | |
|---|---|---|---|
| Bodily Injury: $0.00 Each Person | | Bodily Injury: $0.00 Each Person | |
| Property Damage: $0.00 Each Occurrence | | Property Damage: $0.00 Each Occurrence | |
| Single Limit Bodily Injury and Property Damage: $0.00 Each Occurrence | | Single Limit Bodily Injury and Property Damage: $0.00 Each Occurrence | |
| ☐ Passengers included ☐ Passengers excluded | | Chemical Deductible: $0.00 | |

Coverage Required: ☐ Excluding Chemical ☐ Restricted Chemical ☑ Comprehensive Chemical

Liability Coverage Notes:
NO LIABILITY

Chemical Coverage Includes: ☐ Pastures ☐ Farmer/Owner/Grower ☐ Crops Treated ☐ Adjacent Fields ☐ Other:

## HULL COVERAGES

Insured Value: $45,000.00
Coverage Type: Ground not in Motion

Deductibles - Not In Motion: $500.00
Deductibles - In Motion:

Hull Coverage Notes:

## PILOTS

☑ Open Pilot Clause    ☑ Named Pilots
Commercial Pilot w/Min    N/A
Total Hours
Total Ag Hours
Total Turbine Hours
Total Make/Model Hours
Other:

## AIRCRAFT USE(s)

☐ Application of Chemicals, Seeds Fertilizers
☐ Pleasure and Business Transportation *
☐ External Load
☐ Sales Demonstration
☐ Fire Suppression
☑ Other: Storage Only

LIENHOLDER: Amcore Bank, P.O. Box 200, Mendota, IL 61342-0200

## PREMIUM

| Liability Coverage: | $0.00 |
| Hull Coverage: | $1,154.00 |
| Add'l Coverage: | $0.00 |
| SubTotal: | $1,154.00 |

Premium Notes:
Premium includes PAASS Discount of $61.00

HARDY Aviation Insurance, Inc.

057

---

**Right form (top):**

Pontiac Flying Service

Information on Aircraft 1 of 2

Insurance Company
AIG Aviation, Inc.

N# 48468

Ag Cat G164A

## LIABILITY COVERAGES

| LIABILITY NON-CHEMICAL | | LIABILITY CHEMICAL | |
|---|---|---|---|
| Bodily Injury: $100,000.00 Each Person | | Bodily Injury: $100,000.00 Each Person | |
| Property Damage: $300,000.00 Each Occurrence | | Property Damage: $300,000.00 Each Occurrence | |
| Single Limit Bodily Injury and Property Damage: $100,000.00 Each Occurrence | | Property Damage: $100,000.00 Each Occurrence | |
| ☐ Passengers included ☑ Passengers excluded | | Single Limit Bodily Injury and Property Damage: $0.00 Each Occurrence | |
| | | Chemical Deductible: $1,000.00 | |

Coverage Required: ☐ Excluding Chemical ☐ Restricted Chemical ☑ Comprehensive Chemical

Liability Coverage Notes:
IL Bodily Injury Aggregate Endorsement Included

Chemical Coverage Includes: ☐ Pastures ☐ Farmer/Owner/Grower ☐ Crops Treated ☑ Adjacent Fields ☐ Other:

## HULL COVERAGES

Insured Value: $100,000.00
Coverage Type: All Risk

Deductibles - Not In Motion: $500.00
Deductibles - In Motion: $9,000.00

Hull Coverage Notes:

## PILOTS

☐ Open Pilot Clause    ☑ Named Pilots
Commercial Pilot w/Min    Scott Peterson
Total Hours
Total Ag Hours
Total Turbine Hours
Total Make/Model Hours
Other:

## AIRCRAFT USE(s)

☑ Application of Chemicals, Seeds Fertilizers
☐ Pleasure and Business Transportation *
☐ External Load
☐ Sales Demonstration
☐ Fire Suppression
☐ Other:

LIENHOLDER: Amcore Bank, P O Box 200, Mendota, IL 61342-0200

## PREMIUM

| Liability Coverage: | $2,230.00 |
| Hull Coverage: | $5,870.00 |
| Add'l Coverage: | $335.00 |
| SubTotal: | $8,451.00 |

Premium Notes:
Additional Coverage premium is for Adjacent Crops. Premium incls PAASS Discount of $444.00.

HARDY Aviation Insurance, Inc.

056

---

**Left form (bottom):**

HARDY
AVIATION INSURANCE

### Aerial Application Coverage Confirmation

Insurance Company
AIG Aviation, Inc.

Pontiac Flying Service, Inc.
15755 E 2000 North Road
Pontiac, IL 61764

Effective Dates: April 10, 2001 to April 10, 2002

Aircraft: N 48468    1976 Ag Cat G164A
N 8762H    1975 Ag Cat G164A

*Coverage information for individual aircraft listed separately.

Total Aircraft Premium: $9,605.00

Airport Premises Liability Coverage: $1,000,000 CSL (Separate Policy)
Pontiac Municipal Airport & Incidental Locations
Additional Insured: City of Pontiac, IL

Airport Premises Liability Premium: $903.00

_____    _____
HARDY Aviation Insurance, Inc.    Date
James (Randy) Hardy, President

This is a general outline of coverage only. The actual policy determines all coverage provisions and conditions.

P.O. BOX 12010
WICHITA, KS 67277-2010

055

PHONE: (316) 945-6733
FAX: (316) 945-2330
1-800-721-6733

---

**Right form (bottom):**

HARDY
AVIATION INSURANCE

### Aerial Application Coverage Confirmation

Insurance Company
AIG Aviation, Inc.

Pontiac Flying Service, Inc.
15755 E 2000 North Road
Pontiac, IL 61764

Effective Dates: May 19, 2002 to May 19, 2003

Aircraft: N 48468    1976 Ag Cat G164A
N 8762H    1975 Ag Cat G164A
N 503D    1991 Air Tractor AT503

*Coverage information for individual aircraft listed separately.

Total Aircraft Premium: $38,564.00

Airport Premises Liability Coverage: $1,000,000 CSL (Separate Policy)
Pontiac Municipal Airport & Incidental Locations
Additional Insured: City of Pontiac, IL

Airport Premises Liability Premium: $1,187.00

_____    _____
HARDY Aviation Insurance, Inc.    Date
James (Randy) Hardy, President

This is a general outline of coverage only. The actual policy determines all coverage provisions and conditions.

P.O. BOX 12010
WICHITA, KS 67277-2010

054

PHONE: (316) 945-6733
FAX: (316) 945-2330
1-800-721-6733

Pontiac Flying Service
Information on Aircraft 1 of 3
AIG Aviation, Inc.

## N# 48468
## Ag Cat G164A

### LIABILITY COVERAGES

| LIABILITY NON-CHEMICAL | | LIABILITY CHEMICAL | |
|---|---|---|---|
| Bodily Injury: | $100,000.00 Each Person | Bodily Injury: | $100,000.00 Each Person |
| | $300,000.00 Each Occurrence | | $300,000.00 Each Occurrence |
| Property Damage: | $100,000.00 Each Occurrence | Property Damage: | $100,000.00 Each Occurrence |
| Single Limit Bodily | | Single Limit Bodily | |
| Injury | $1,000,000.00 Each Occurrence | Injury | $0.00 Each Occurrence |
| ☐ Passengers included  ☑ Passengers excluded | | Chemical Deductible: | $1,000.00 |

Coverage Required: ☐ Excluding Chemical
☐ Restricted Chemical
☑ Comprehensive Chemical

Liability Coverage Notes:
IL Bodily Injury Aggregate Endorsement

Chemical Coverage Includes: ☑ Pictures
☐ Farmer/Owner/Grower
☐ Crops Treated
☑ Adjacent Fields
☐ Other

### HULL COVERAGES

Insured Value: $90,000.00

Coverage Type: All Risk

Deductibles - Not In Motion: $500.00
Deductibles - In Motion: $9,000.00

Hull Coverage Notes:
Exclude GPS

### PILOTS

☑ Open Pilot Clause       ☐ Named Pilots
Commercial Pilot with:    Scott Peterson
_____ Total Hours
1000 Total Ag Hours
_____ Total Turbine Hours
100 Total Make/Model Hours
Other _____

### AIRCRAFT USE(s)

☑ Application of Chemicals, Seeds Fertilizers
☐ Pleasure and Business Transportation *
   *including personal use which is charge to use
☐ Instructional Flight
☐ External Load
☐ Sales Demonstration
☐ Fire Suppression
☐ Other:

LIENHOLDER:   Ancore Bank
              P O Box 200, Mendota IL 61342-0200

### PREMIUM

| Liability Coverage: | $2,440.00 | | Premium Notes: |
| Hull Coverage: | $6,413.00 | | Additional Coverage is: $366. Adjacent Fields |
| Add'l Coverage: | $366.00 | | Premium includes PASS Discount of $485. |
| SubTotal: | $9,218.00 | | |

HARDY Aviation Insurance, Inc.

---



HARDY
AVIATION INSURANCE

## Aerial Application Insurance Quote

Insurance Company
AIG Aviation, Inc.
Pontiac Flying Service
15755 E 2000 North Road
Pontiac, IL 61764

Renewal Date: 04/10/2002

| Aircraft: | N 48468 | 1976 Ag Cat G164A |
| | N 8762H | 1975 Ag Cat G164A |
| | N 503D | 1991 Air Tractor AT503 |

*Coverage information
for individual aircraft
listed separately.

Total Aircraft Premium: $35,864.00

Approved By: _____
             Insured's Signature        Date

Airport Premises
Liability Coverage: $1,000,000 CSL (Separate Policy)
Pontiac Municipal Airport & Incidental Locations
Additional Insured: City of Pontiac, IL

Airport Premises
Liability Premium: $1,187.00

Approved By: _____
             Insured's Signature        Date

P.O. BOX 12010                    PHONE: (316) 945-6733
WICHITA, KS 67277-2010            FAX: (316) 945-2330
                                  1-800-721-6733

---



HARDY
Aviation Insurance, Inc.

March 26, 2002

Pontiac Flying Service
15755 E 2000 North Road
Pontiac, IL 61764

RE: Renewal Quote for Aerial Application Insurance

Dear Scott & Sarah:

We are pleased to offer a renewal quotation for your aerial application insurance coverages. Please review the attached quote(s) carefully and notify our office of any necessary changes.

Aircraft insurance policies do not renew automatically and there is no grace period. Please confirm your desire to renew this policy by either signing and returning the desired renewal quote, or by calling our office. Please allow enough time for us to forward certificates if required.

Higher limits of liability protection are sometimes available. If you desire information regarding higher limits, please contact our office.

We appreciate your business and welcome your call should you have any questions.

Cordially,

HARDY Aviation Insurance, Inc.
Angela K. Banz
Executive Assistant
/ab
Enclosure

P.O. BOX 12010                    PHONE: (316) 945-6733
WICHITA, KS 67277-2010            FAX: (316) 945-2330
                                  1-800-721-6733

---

HARDY
Aviation Insurance, Inc.

P.O. Box 12010
Wichita, KS 67277-2010

Phone:     (316) 945-6733
Toll Free: (800) 721-6733
Fax:       (316) 945-2330
E-Mail:    hardy@hardyaviationins.com

| To:   | Scott & Sarah Peterson | Date:   | April 3, 2002 |
| At:   | Pontiac Flying Service  | Fax #:  | 815 844-2401 |
| From: | Angie Banz              | Pages:  | 5 |

Subject: Revised Ag Quote

Following is the quote we have received from USAIG for your ag coverage.

Note, all coverage limits and insured values are the same as through AIG. USAIG has offered a lower deductible and hull rate on the 503, however, the open pilot provisions are more restrictive.

Please review this quote and sign and return the cover page of either this quote or the AIG quote, whichever you would rather bind for renewal.

Thanks!

Angie

**HARDY** AVIATION INSURANCE

## Aerial Application Coverage Confirmation

Insurance Company

**USAIG**

Pontiac Flying Service

15755 E 2000 North Road
Pontiac, IL 61764

Effective Dates: April 10, 2001 to April 10, 2002

| Aircraft: | N 48468 | 1976 Ag Cat G164A |
|---|---|---|
| *Coverage information for individual aircraft listed separately. | N 8762H | 1975 Ag Cat G164A |
| | N 503D | 1991 Air Tractor AT503 |

Total Aircraft Premium: $33,830.00

Airport Premises: $1,000,000 CSL (Separate Policy)
Liability Coverage: Pontiac Municipal Airport & Incidental Locations
Additional Insured: City of Pontiac, IL

Airport Premises
Liability Premium: $1,000.00

HARDY Aviation Insurance, Inc. _____ Date
James (Randy) Hardy, President

This is a general outline of coverage only. The actual policy determines all coverage provisions and conditions.

P.O. BOX 12010
WICHITA, KS 67277-2010

065

PHONE: (316) 945-6733
FAX: (316) 945-2330
1-800-721-6733

---

**HARDY** AVIATION INSURANCE        *Quote*

## Aerial Application Coverage Confirmation

Insurance Company

**USAIG**

Pontiac Flying Service

15755 E 2000 North Road
Pontiac, IL 61764

Effective Dates: April 10, 2001 to April 10, 2002

| Aircraft: | N 48468 | 1976 Ag Cat G164A |
|---|---|---|
| *Coverage information for individual aircraft listed separately. | N 8762H | 1975 Ag Cat G164A |
| | N 503D | 1991 Air Tractor AT503 |

*Approved by Scott Kes*  4-3-0:
*Insured's Signature*   *Date*

Total Aircraft Premium: $33,830.00

Airport Premises: $1,000,000 CSL (Separate Policy)
Liability Coverage: Pontiac Municipal Airport & Incidental Locations
Additional Insured: City of Pontiac, IL

Airport Premises
Liability Premium: $1,000.00

HARDY Aviation Insurance, Inc. _____ Date
James (Randy) Hardy, President

This is a general outline of coverage only. The actual policy determines all coverage provisions and conditions.

*Approved by Scott Kes*  4-3-02
*Insured's Signature*   *Date*

P.O. BOX 12010
WICHITA, KS 67277-2010

064

PHONE: (816) 945-6733
FAX: (816) 945-2330
1-800-721-6733

---

Pontiac Flying Service

information on Aircraft 3 of 3
Insurance Company
AIG Aviation, Inc.

### N# 503D
Air Tractor AT503

#### LIABILITY COVERAGES

**LIABILITY NON-CHEMICAL**

| | | |
|---|---|---|
| Bodily Injury: | $100,000.00 | Each Person |
| | $300,000.00 | Each Occurrence |
| Property Damage: | $100,000.00 | Each Occurrence |

☐ Passengers Included  ☐ Passengers excluded

**Liability Coverage Notes:**
$1 mil non-chemical respects gypsy moth contracts / $1 bodily injury aggregate endorsement

**LIABILITY CHEMICAL**

| | | |
|---|---|---|
| Bodily Injury: | $100,000.00 | Each Person |
| | $300,000.00 | Each Occurrence |
| Property Damage: | $100,000.00 | Each Occurrence |
| Single Unit Bodily Injury | $0.00 | Each Occurrence |
| Chemical Deductible: | $1,000.00 | |

Coverage Required: ☐ Excluding Chemical
☐ Restricted Chemical
☑ Comprehensive Chemical

Chemical Coverage Includes: ☐ Picloram
☐ Farmer/Owner/Grower
☐ Crops Treated
☑ Adjacent Fields
☐ Other

#### HULL COVERAGES

Insured Value: $350,000.00
Coverage Type: All Risk
Deductibles - Not in Motion: $500.00
Deductibles - In Motion: $35,000.00

**Hull Coverage Notes:**
Exclude GPS

#### PILOTS

☑ Open Pilot Clause      ☐ Named Pilots
Commercial Pilot with:                Scott Peterson
Total Hours
1000  Total Ag Hours
Total Turbine Hours
100  Total Make/Model Hours
Other

#### AIRCRAFT USE(s)

☑ Application of Chemicals, Seeds Fertilizers
☑ Pleasure and Business Transportation *
*including non-commercial aircraft which might be made
☐ External Load
☐ Sales Demonstration
☐ Fire Suppression
☐ Other:

#### LIENHOLDER:

#### PREMIUM

| | |
|---|---|
| Liability Coverage: | $2,440.00 |
| Hull Coverage: | $21,031.00 |
| Add'l Coverage: | $1,791.00 |
| SubTotal: | $25,262.00 |

**Premium Notes:**
Add'l Cov/g: $366 adjacent fields / $1,425. $1 mil non chemical for gypsy moth. Premium includes $1,329. PAASS discount

HARDY Aviation Insurance, Inc.

063

---

Pontiac Flying Service

information on Aircraft 2 of 3
Insurance Company
AIG Aviation, Inc.

### N# 8762H
Ag Cat G164A

#### LIABILITY COVERAGES

**LIABILITY NON-CHEMICAL**

| | | |
|---|---|---|
| Bodily Injury: | $0.00 | Each Person |
| | $0.00 | Each Occurrence |
| Property Damage: | $0.00 | Each Occurrence |

☐ Passengers Included  ☐ Passengers excluded

**Liability Coverage Notes:**
NO LIABILITY

**LIABILITY CHEMICAL**

| | | |
|---|---|---|
| Bodily Injury: | $0.00 | Each Person |
| | $0.00 | Each Occurrence |
| Property Damage: | $0.00 | Each Occurrence |
| Single Unit Bodily Injury | $0.00 | Each Occurrence |
| Chemical Deductible: | $0.00 | |

Coverage Required: ☑ Excluding Chemical
☑ Restricted Chemical
☑ Comprehensive Chemical

Chemical Coverage Includes: ☐ Picloram
☐ Farmer/Owner/Grower
☐ Crops Treated
☐ Adjacent Fields
☐ Other

#### HULL COVERAGES

Insured Value: $45,000.00
Coverage Type: Ground not in Motion
Deductibles - Not in Motion: $500.00
Deductibles - In Motion: $0.00

**Hull Coverage Notes:**
STORAGE ONLY

#### PILOTS

☑ Open Pilot Clause      ☑ Named Pilots
Commercial Pilot with:                N/A
Total Hours
Total Ag Hours
Total Turbine Hours
Total Make/Model Hours
Other

#### AIRCRAFT USE(s)

☐ Application of Chemicals, Seeds Fertilizers
☐ Pleasure and Business Transportation *
*including non-commercial aircraft which might be made
☐ External Load
☐ Sales Demonstration
☐ Fire Suppression
☑ Other:  Storage Only

#### LIENHOLDER:  Amcore Bank, P.O. Box 200, Mendota, IL 61342-0200

#### PREMIUM

| | |
|---|---|
| Liability Coverage: | $0.00 |
| Hull Coverage: | $1,385.00 |
| Add'l Coverage: | $0.00 |
| SubTotal: | $1,385.00 |

**Premium Notes:**
Premium Includes PAASS Discount of $73.00.

HARDY Aviation Insurance, Inc.

062

## Top-Left (069)

### AIRCRAFT LIABILITY COVERAGES

HARDY Aviation Insurance, Inc.                    Pontiac Flying Service, Inc.

| | | | | |
|---|---|---|---|---|
| Bodily Injury | $100,000.00 Each Person | Bodily Injury | $100,000.00 Each Person | |
| | $300,000.00 Each Occurrence | | $300,000.00 Each Occurrence | |
| Property Damage | $100,000.00 Each Occurrence | Property Damage | $100,000.00 Each Occurrence | |
| Single Unit Bodily Injury & Property Damage | $1,000,000.00 | Single Limit Bodily Injury & Property Damage | $0.00 | |
| ☐ Passengers Included  ☑ Passengers Excluded | | Chemical Deductible: | $1,000.00 | |

**Liability and Hull Coverage**
Ground Nut Only on N87628 - No liability
$1 mil non-chem on N5030 for gypsy moth
A/S Aerial Spraying x65 Insured N5010

**Coverages Required:**       **Chemical Coverage Includes:**
☐ Excluding Chemical            ☑ Picboam
☐ Restricted Chemical           ☑ Farmer/Owner/Grower
☑ Comprehensive Chemical     ☑ Crops Treated
                                ☑ Adjacent Fields

### PILOT INFORMATION

As pilot, any accidents, citations or FAR violations / limitations?  ☑ Yes  ☐ No
If yes, explain for loss of use

Any physical impairments/limitations or medical waivers?  ☐ Yes  ☑ No
If yes, explain

Any felony convictions/license suspensions for auto operation?  ☐ Yes  ☑ No
If yes, explain

Any arrests for reckless driving or DUI?  ☐ Yes  ☑ No
If yes, explain

**Open Pilot Provisions:** Commercial pilots with 1000 ag hours and 100 hours make/model

| Named Pilots<br>Birthdate<br>Class # | Age | Medical/<br>Airman<br>FAA/US Cert | BFR<br>Date | Total<br>Hours | AC<br>Hours | Turbine<br>Hours | Retracting<br>Ag Hours | Make/Model | Last<br>12 Mos |
|---|---|---|---|---|---|---|---|---|---|
| Scott Peterson<br>05/16/1958 | 49 | M/II | 7/00 | 1867 | 1898 | | Cert/Comm/Inst | | |
| SSN 99-9998 | | | | | | | Rating-TR | 1096 | 350 |

I / We authorize HARDY Aviation Insurance, Inc. Wichita, KS to represent me / us in placing of this insurance. I / We further affirm that the statements in this application are true and correct and are made in good faith and no information to withheld which would adversely affect the approval of any insurer. It is also understood that no coverage is afforded by this application until completed and accepted by the insuring.

*Signature of applicant or authorized officer*        *Date* 6-28-02

## Top-Right (068)

HARDY Aviation Insurance, Inc.
P.O. Box 12010, Wichita, KS  67277-2010
(800)-721-6733  Fax(316)-945-2330

### Agricultural Aircraft Insurance Application

| Applicant Name, Address, and Phone | Applicant is: | Coverage Effective Dates |
|---|---|---|
| Pontiac Flying Service, Inc. | ☑ Individual<br>☐ Corporation<br>☐ Partnership | May 19, 2002 to May 19, 2003<br>Underwriting Manager<br>AIG Aviation, Inc. |
| 15755 E 2000 North Road | | |
| Pontiac, IL  61764 | | |
| ☎ (815) 842-3738 | | |

Names of All Partners or Officers, if any:  Scott & Sarah Peterson

Name(s) used in any former Aerial Application business:

Operations in other states (list):

Home Airport: Pontiac Municipal       Airport ID 188    Length: 4000     Surface: asphalt

Aircraft are  ☑ Hangared           Secondary Location:

Years of Aerial Application Experience:  4    Will aircraft be used for herbicide work?  ☑ Yes  ☐ No

Number of aircraft owned/operated/leased by insured:  2

Has any insurer cancelled, declined, or refused to renew any aviation insurance coverage?  ☐ Yes  ☐ No
If yes, explain:

Has insured or any pilot had any hull, liability or chemical claims during the last 5 years?  ☑ Yes  ☐ No
If yes, explain:  6-99 herbicide drift to soybeans pilot Scott Peterson - Paid $7,000.00

#### AIRCRAFT HULL COVERAGES

| Make/Model | Reg<br>Number | Engine<br>H.P. | Insured<br>Value | All Risk or<br>Ground Only | Deductibles<br>NM | Deductibles<br>IM |
|---|---|---|---|---|---|---|
| 1976  Air Cat G164A | N4846B | 600 | $90,000.00 | All Risk | $500.00 | $5,000.00 |
| 1975  Air Cat G164A | N8762H | 0 | $45,000.00 | Ground not In Motion | $500.00 | $0.00 |
| 1991  Air Tractor AT503 | N5030 | 0 | $350,000.00 | All Risk | $500.00 | $35,000.00 |

Do all aircraft have valid restricted airworthiness certificates?  ☑ Yes  ☐ No
If so, explain:

| Type Owner | Name/Address of co-owner, lessor, or lienholder (if any) | Aircraft Used: |
|---|---|---|
| ☐ Sole Owner | *2 Lienholder, indicate loan amount & Loss Payee or breach of Warranty | Chemical, seed, fertilizer application |
| ☐ Co-Owner | 1) People's Bank, P.O. Box 400, Gridley IL 61744-0460 | |
| ☐ Lessor | 2) People's Bank, P.O. Box 400, Gridley IL 61744-0460 | |
| ☑ Lienholder | 3) Bank of Pontiac, 300 W. Washington, Pontiac  IL  61764 | If P & B, *excluding any operation for which a charge is made |
| | 4) | |

## Bottom-Left (067)



**HARDY**
Aviation Insurance, Inc.

Phone:     (316)945-6733
Toll Free:  (800)721-6733
Fax:       (316)945-2330
E-Mail:  hardy@hardyaviationins.com

To:    Frank            Date:  May 17, 2002
At:    USAIG            Fax #:
From:  Angie Banz       Pages:  1

Subject:  Pontiac Flying Service, Inc.  400AC 42678

Coverage has been placed through AIG Aviation effective May 19, 2002, to meet the insured's requirements for residential area coverage due to gypsy moth contracts.

We understand you will cancel the captioned policy on a pro-rata basis effective May 19, since USAIG is unable to provide the coverage required.

Thanks for your assistance, sorry we had to put you through all the paperwork only to have the gypsy moth work be more of a problem than originally anticipated.

*Angie*

## Bottom-Right (066)

P.O. Box 1...10
Wichita, KS  67277-2010



**HARDY**
Aviation Insurance, Inc.

Phone:     (316)945-6733
Toll Free:  (800)721-6733
Fax:       (316)945-2330
E-Mail:  hardy@hardyaviationins.com

To:    Mary Beth         Date:  May 17, 2002
At:    AIG               Fax #:
From:  Angie Banz        Pages:  2

Subject:  Pontiac Flying Service, Inc.  AV 3391999 03

Please bind, effective May 19, 2002, per your attached quote.

Pardon all my chicken scratch, but I wrote in all the figures after PAASS.

We need the following states:  W VA, VA, OH, IN, IL, WI, for now.  We have advised the insured they can't do Kentucky.

Also need to bind the premises per your quote at the $1,187.

Thanks!

*Angie*

## Top Left — Aircraft 2 of 3

Information on Aircraft 2 of 3
Insurance Company
USAIG

N# 8762H
Ag Cat G164A

### LIABILITY COVERAGES

**LIABILITY NON-CHEMICAL**

Bodily Injury: $0.00 Each Person
$0.00 Each Occurrence
Property Damage: $0.00 Each Occurrence
Single Limit Bodily Injury & Property Damage: $0.00 Each Occurrence
☐ Passengers Included ☐ Passengers Excluded

**LIABILITY CHEMICAL**

Bodily Injury: $0.00 Each Person
$0.00 Each Occurrence
Property Damage: $0.00 Each Occurrence
Single Limit Bodily Injury: $0.00 Each Occurrence
Chemical Deductible: $0.00

Coverages Required: ☑ Excluding Chemical ☐ Restricted Chemical ☐ Comprehensive Chemical

Chemical Coverage Includes: ☐ Pickram ☐ Farmer/Owner/Grower ☐ Crops Treated ☐ Adjacent Fields ☐ Other

**Liability Coverage Notes:**
NO LIABILITY

### HULL COVERAGES

Insured Value: $45,000.00
Coverage Type: Ground not in Motion
Deductibles - Not in Motion: $500.00
Deductibles - In Motion: $0.00

**Hull Coverage Notes:**
STORAGE ONLY

### PILOTS

☑ Open Pilot Clause
Commercial Pilot with: ☑ Named Pilots N/A
Total Hours
Total Ag Hours
Total Turbine Hours
Total Make/Model Hours
Other

### AIRCRAFT USE(s)

☐ Application of Chemicals, Seeds Fertilizers
☐ Pleasure and Business Transportation *
☐ External Load
☐ Sales Demonstration
☐ Fire Suppression
☑ Other: Storage Only

### LIENHOLDER:
Amcore Bank, P.O. Box 200, Mendota, IL 61342-0200

### PREMIUM

Liability Coverage: $0.00
Hull Coverage: $1,350.00
Addtl Coverage: $0.00
SubTotal: $1,350.00

**Premium Notes:**

HARDY Aviation Insurance, Inc.

073

## Top Right — Aircraft 1 of 3

Pontiac Flying Service

Information on Aircraft 1 of 3
Insurance Company
USAIG

N# 48468
Ag Cat G164A

### LIABILITY COVERAGES

**LIABILITY NON-CHEMICAL**

Bodily Injury: $100,000.00 Each Person
$300,000.00 Each Occurrence
Property Damage: $100,000.00 Each Occurrence
Single Limit Bodily Injury: $0.00 Each Occurrence
☐ Passengers Included ☑ Passengers excluded

**LIABILITY CHEMICAL**

Bodily Injury: $100,000.00 Each Person
$300,000.00 Each Occurrence
Property Damage: $100,000.00 Each Occurrence
Single Limit Bodily Injury: $0.00 Each Occurrence
Chemical Deductible: $1,000.00

Coverages Required: ☐ Excluding Chemical ☐ Restricted Chemical ☑ Comprehensive Chemical

Chemical Coverage Includes: ☐ Pickram ☐ Farmer/Owner/Grower ☐ Crops Treated ☑ Adjacent Fields ☐ Other

**Liability Coverage Notes:**
IL Bodily Injury Aggregate Endorsement Incl

### HULL COVERAGES

Insured Value: $50,000.00
Coverage Type: All Risk
Deductibles - Not in Motion: $500.00
Deductibles - In Motion: $9,000.00

**Hull Coverage Notes:**
Exclude GPS

### PILOTS

☑ Open Pilot Clause
Commercial Pilot with: ☐ Named Pilots Scott Peterson
1500 Total Hours
750 Total Ag Hours
25 Total Turbine Hours
Total Make/Model Hours
Other

### AIRCRAFT USE(s)

☑ Application of Chemicals, Seeds Fertilizers
☐ Pleasure and Business Transportation *
☐ External Load
☐ Sales Demonstration
☐ Fire Suppression
☐ Other:

### LIENHOLDER:
Amcore Bank P O Box 200, Mendota, IL 61342-0200

### PREMIUM

Liability Coverage: $3,000.00
Hull Coverage: $5,580.00
Addtl Coverage: $1,150.00
SubTotal: $9,730.00

**Premium Notes:**
Additional Coverage: $400. IL bodily injury aggregate
$750. Adjacent fields

HARDY Aviation Insurance, Inc.

072

## Bottom Left — Aircraft Liability Coverages

HARDY Aviation Insurance, Inc.     Pontiac Flying Service, Inc.

### AIRCRAFT LIABILITY COVERAGES

**LIABILITY NON-CHEMICAL**

Bodily Injury: $100,000.00 Each Person
$300,000.00 Each Occurrence
Property Damage: $100,000.00 Each Occurrence
Single Limit Bodily Injury & Property Damage: $1,000,000.00
☐ Passengers Included ☑ Passengers Excluded

**LIABILITY CHEMICAL**

Bodily Injury: $100,000.00 Each Person
$300,000.00 Each Occurrence
Property Damage: $100,000.00 Each Occurrence
Single Limit Bodily Injury & Property Damage: $1,000,000.00
Chemical Deductible: $1,000.00

**Liability and Hull Coverage**
IL Bodily Injury Aggregate Endorsement / Ground Hull Only on N8762H - No Liability
$1 mil non-chem on N503D for gypsy moth

Coverages Required:
☐ Excluding Chemical
☐ Restricted Chemical
☑ Comprehensive Chemical

Chemical Coverage Includes:
☐ Pickram
☑ Farmer/Owner/Grower
☐ Crops Treated
☑ Adjacent Fields

### PILOT INFORMATION

As pilot, any accidents, citations or FAR violations / limitations? ☑ Yes ☐ No
If yes, explain: See front of app

Any physical impairments/limitations or medical waivers? ☐ Yes ☑ No
If yes, explain:

Any felony convictions/license suspensions for auto operation? ☐ Yes ☑ No
If yes, explain:

Any arrests for reckless driving or DUI? ☐ Yes ☑ No
If yes, explain:

**Open Pilot Provisions:** N48468: Comm/1500 total/750 ag/25 make & model
N503D: Comm/2000 total/1000 ag/500 turbine/25 make & model and turbine engine school

| Named Pilots/Relative Cert # | Age | Med/State /Class /Rating Cert. | BFR Date | Total Hours | AG Hours | Turbine Hours | Make/Model | Hours | Last 12 Mo Hours |
|---|---|---|---|---|---|---|---|---|---|
| Scott Peterson 09/18/1960 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 | 40 | 3/01 II | 7200 | 1867 | 1288 | | Ag Cat | 1096 | 350 |

Certification Type: Com
Rating: BFR

**SIGN HERE**

*I/We warrant to Hardy Aviation Insurance, Inc., Wichita, KS, to represent me / us in placing of this insurance. I/We further affirm that the statements in this application are true and correct and are made in good faith and no information is withheld which would adversely affect the approval of any insurer. It is also understood that no coverage is afforded by this application until accepted by the insuring*

Scott Peterson (signature)
Signature of applicant or authorized officer                    Date

071

## Bottom Right — Application

### HARDY Aviation Insurance, Inc.

P.O. Box 12010, Wichita, KS 67277-2010
Phone 800-721-6733 fax316-945-2330

# Agricultural Aircraft Insurance Application

| Applicant Name, Address, and Phone | Applicant is | Coverage Effective Dates |
|---|---|---|
| Pontiac Flying Service, Inc. | ☑ Individual | April 10, 2002 to April 10, 2003 |
| 15755 E 2000 North Road | ☐ Corporation | Underwriting Manager |
| Pontiac, IL 61764 | ☐ Partnership | USAIG |
| (815) 842-3738 | | |

Names of All Partners or Officers, if any: Scott & Sarah Peterson

Name(s) used in any former Aerial Application business:

Operations in other states (list):

Home Airport: Pontiac Municipal    Airport ID: 188    Length: 4000    Surface: asphalt

Aircraft are: Hangared    Secondary Location:

Years of Aerial Application Experience: 4    Will aircraft be used for herbicide work? ☑ Yes ☐ No

Number of aircraft owned/operated/leased by insured: 2

Has any insurer cancelled, declined, or refused to renew any aviation insurance coverage? ☐ Yes ☐ No
If yes, explain:

Has insured or any pilot had any hull, liability or chemical claims during the last 5 years? ☑ Yes ☐ No
If yes, explain: 6-99 herbicide drift to soybeans pilot Scott Peterson - Paid $7,000.00

### AIRCRAFT HULL COVERAGES

| | Make/Model | Reg Number | Engine H.P. | Insured Value | All Risk or Ground Only | Deductibles NIM | Deductibles IM |
|---|---|---|---|---|---|---|---|
| 1976 | Ag Cat G164A | N 48468 | 600 | $50,000.00 | All Risk | $500.00 | $9,000.00 |
| 1975 | Ag Cat G164A | N 8762H | 0 | $45,000.00 | Ground not in Motion | $500.00 | $0.00 |
| 1991 | Air Tractor AT503 | N503D | 0 | $350,000.00 | All Risk | $500.00 | $17,500.00 |

Do all aircraft have valid restricted airworthiness certificates? ☑ Yes ☐ No
If no, explain:

| Type Owner | Name/Address of co-owner, lessor, or lienholder (if any) | Aircraft Use(s) |
|---|---|---|
| ☑ Sole Owner | *If lienholder, indicate lien amount & Loss Payee or Breach of Warranty | Chemical, seed, fertilizer application |
| ☐ Co-Owner | 1) People's Bank, P.O. Box 460, Gridley IL 61744-0460 | |
| ☐ Lessor | 2) People's Bank, P.O. Box 460, Gridley IL 61744-0460 | |
| ☑ Lienholder | 3) Bank of Pontiac, 300 W. Washington, Pontiac IL 61764 | |
| | 4) | If B/B, *excluding any operation for which a charge is made |

070