E-FILED
Friday, 06 October, 2006  11:58:53 AM
Clerk, U.S. District Court, ILCD

## Top Left — N# 503D, Air Tractor AT503

Information on Aircraft  3 of 3
Insurance Company
USAIG

### LIABILITY COVERAGES

**LIABILITY NON-CHEMICAL**

| | | |
|---|---|---|
| Bodily Injury: | $100,000.00 | Each Person |
| | $300,000.00 | Each Occurrence |
| Property Damage: | $100,000.00 | Each Occurrence |
| Single Limit Bodily Injury | | Each Occurrence |
| ☐ Passengers included  ☐ Passengers excluded | | |

**LIABILITY CHEMICAL**

| | | |
|---|---|---|
| Bodily Injury: | $100,000.00 | Each Person |
| | $300,000.00 | Each Occurrence |
| Property Damage: | $100,000.00 | Each Occurrence |
| Single Unit Bodily Injury | $0.00 | Each Occurrence |
| Chemical Deductible: | $1,000.00 | |

Coverage Required: ☐ Excluding Chemical ☐ Restricted Chemical ☑ Comprehensive Chemical

Chemical Coverage Includes: ☐ Pickrram ☐ Farmer/Owner/Grower ☐ Crops Treated ☑ Adjacent Fields ☐ Other

**Liability Coverage Notes:**
$1 mil non chemical respects gypsy moth contracts / IL bodily injury aggregate endorsed

### HULL COVERAGES

Insured Value: $350,000.00
Coverage Type: All Risk
Deductibles - Not In Motion: $500.00
Deductibles - In Motion: $17,500.00

**Hull Coverage Notes:**
Exclude GPS

### PILOTS

☑ Open Pilot Clause   ☐ Named Pilots   Scott Petersen
Commercial Pilot with:
2000   Total Hours
1000   Total Ag Hours
500    Total Turbine Hours
25     Total Make/Model Hours
Other: approved turbine engine schooling

### AIRCRAFT USE(s)

☑ Application of Chemicals, Seeds Fertilizers
☐ Pleasure and Business Transportation *
☐ External Load
☐ Sales Demonstration
☐ Fire Suppression
☐ Other:

### LIENHOLDER:

Bank of Pontiac
300 W Washington, Pontiac IL 61764

### PREMIUM

Liability Coverage: $3,000.00
Hull Coverage: $17,500.00
Add'l Coverage: $2,250.00
SubTotal: $22,750.00

**Premium Notes:**
Add'l Coverage: $400. IL bodily injury aggregate $750. Adjacent fields, $1,100. For $1 mil non-chemical liability for gypsy moth

HARDY Aviation Insurance, Inc.

077

---

## Top Right — N# 8762H

Information on Aircraft  2 of 3
Insurance Company
USAIG

### LIABILITY COVERAGES

**LIABILITY NON-CHEMICAL**

| | | |
|---|---|---|
| Bodily Injury: | $0.00 | Each Person |
| | $0.00 | Each Occurrence |
| Property Damage: | $0.00 | Each Occurrence |
| Single Limit Bodily Injury | | Each Occurrence |
| ☐ Passengers included  ☐ Passengers excluded | | |

**LIABILITY CHEMICAL**

| | | |
|---|---|---|
| Bodily Injury: | $0.00 | Each Person |
| | $0.00 | Each Occurrence |
| Property Damage: | $0.00 | Each Occurrence |
| Single Limit Bodily Injury | $0.00 | Each Occurrence |
| Chemical Deductible: | $0.00 | |

Coverage Required: ☑ Excluding Chemical ☐ Restricted Chemical ☐ Comprehensive Chemical

Chemical Coverage Includes: ☐ Pickrram ☐ Farmer/Owner/Grower ☐ Crops Treated ☐ Adjacent Fields ☐ Other

**Liability Coverage Notes:**
NO LIABILITY

### HULL COVERAGES

Insured Value: $45,000.00
Coverage Type: Ground not in Motion
Deductibles - Not In Motion: $500.00
Deductibles - In Motion: $0.00

**Hull Coverage Notes:**
STORAGE ONLY

### PILOTS

☑ Open Pilot Clause   ☐ Named Pilots   N/A
Commercial Pilot with:
Total Hours
Total Ag Hours
Total Turbine Hours
Total Make/Model Hours
Other

### AIRCRAFT USE(s)

☐ Application of Chemicals, Seeds Fertilizers
☐ Pleasure and Business Transportation *
☐ External Load
☐ Sales Demonstration
☐ Fire Suppression
☑ Other: Storage Only

### LIENHOLDER:

People's Bank
P.O. Box 200, Mendota, IL 61342-0200

### PREMIUM

Liability Coverage: $0.00
Hull Coverage: $1,350.00
Add'l Coverage: $0.00
SubTotal: $1,350.00

**Premium Notes:**

HARDY Aviation Insurance, Inc.

076

---

## Bottom Left — N# 48468, Ag Cat G164A

Pontiac Flying Service, Inc.

Information on Aircraft  1 of 3
Insurance Company
USAIG

### LIABILITY COVERAGES

**LIABILITY NON-CHEMICAL**

| | | |
|---|---|---|
| Bodily Injury: | $100,000.00 | Each Person |
| | $300,000.00 | Each Occurrence |
| Property Damage: | $100,000.00 | Each Occurrence |
| Single Limit Bodily Injury | | Each Occurrence |
| ☐ Passengers included  ☐ Passengers excluded | | |

**LIABILITY CHEMICAL**

| | | |
|---|---|---|
| Bodily Injury: | $100,000.00 | Each Person |
| | $300,000.00 | Each Occurrence |
| Property Damage: | $100,000.00 | Each Occurrence |
| Single Limit Bodily Injury | $0.00 | Each Occurrence |
| Chemical Deductible: | $1,000.00 | |

Coverage Required: ☐ Excluding Chemical ☐ Restricted Chemical ☑ Comprehensive Chemical

Chemical Coverage Includes: ☐ Pickrram ☐ Farmer/Owner/Grower ☐ Crops Treated ☑ Adjacent Fields ☐ Other

**Liability Coverage Notes:**
IL Bodily Injury Aggregate Endorsement End

### HULL COVERAGES

Insured Value: $90,000.00
Coverage Type: All Risk
Deductibles - Not In Motion: $500.00
Deductibles - In Motion: $9,000.00

**Hull Coverage Notes:**
Exclude GPS

### PILOTS

☑ Open Pilot Clause   ☐ Named Pilots   Scott Petersen
Commercial Pilot with:
1500   Total Hours
750    Total Ag Hours
Total Turbine Hours
Total Make/Model Hours
Other

### AIRCRAFT USE(s)

☑ Application of Chemicals, Seeds Fertilizers
☐ Pleasure and Business Transportation *
☐ External Load
☐ Sales Demonstration
☐ Fire Suppression
☐ Other:

### LIENHOLDER:

People's Bank
P.O. Box 200, Mendota IL 61342-0200

### PREMIUM

Liability Coverage: $3,000.00
Hull Coverage: $5,580.00
Add'l Coverage: $1,150.00
SubTotal: $9,730.00

**Premium Notes:**
Additional Coverage: $400. IL bodily injury aggregate $750. Adjacent fields

HARDY Aviation Insurance, Inc.

075

---

## Bottom Right — N# 503D, Air Tractor AT503

Pontiac Flying Service

Information on Aircraft  3 of 3
Insurance Company
USAIG

### LIABILITY COVERAGES

**LIABILITY NON-CHEMICAL**

| | | |
|---|---|---|
| Bodily Injury: | $100,000.00 | Each Person |
| | $300,000.00 | Each Occurrence |
| Property Damage: | $100,000.00 | Each Occurrence |
| Single Limit Bodily Injury | $1,000,000.00 | Each Occurrence |
| ☐ Passengers included  ☐ Passengers excluded | | |

**LIABILITY CHEMICAL**

| | | |
|---|---|---|
| Bodily Injury: | $100,000.00 | Each Person |
| | $300,000.00 | Each Occurrence |
| Property Damage: | $100,000.00 | Each Occurrence |
| Single Limit Bodily Injury | $0.00 | Each Occurrence |
| Chemical Deductible: | $1,000.00 | |

Coverage Required: ☐ Excluding Chemical ☐ Restricted Chemical ☑ Comprehensive Chemical

Chemical Coverage Includes: ☐ Pickrram ☐ Farmer/Owner/Grower ☐ Crops Treated ☑ Adjacent Fields ☐ Other

**Liability Coverage Notes:**
$1 mil non chemical respects gypsy moth contracts / IL bodily injury aggregate endorsed

### HULL COVERAGES

Insured Value: $350,000.00
Coverage Type: All Risk
Deductibles - Not In Motion: $500.00
Deductibles - In Motion: $17,500.00

**Hull Coverage Notes:**
Exclude GPS

### PILOTS

☑ Open Pilot Clause   ☐ Named Pilots   Scott Petersen
Commercial Pilot with:
2000   Total Hours
1000   Total Ag Hours
500    Total Turbine Hours
25     Total Make/Model Hours
Other: approved turbine engine schooling

### AIRCRAFT USE(s)

☑ Application of Chemicals, Seeds Fertilizers
☐ Pleasure and Business Transportation *
☐ External Load
☐ Sales Demonstration
☐ Fire Suppression
☐ Other:

### LIENHOLDER:

### PREMIUM

Liability Coverage: $3,000.00
Hull Coverage: $17,500.00
Add'l Coverage: $2,250.00
SubTotal: $22,750.00

**Premium Notes:**
Add'l Coverage: $400. IL bodily injury aggregate $750. Adjacent fields, $1,100. For $1 mil non-chemical liability for gypsy moth

HARDY Aviation Insurance, Inc.

074

## PILOT WARRANTY ENDORSEMENT
### (PARTIAL APPLICATION OF AIRCRAFT)

This policy is amended as follows:

When in flight, the aircraft will only be operated by the pilots specified below who possess the logged hours, the current and valid ratings and certificates specified below, and a current and valid Medical Certificate.

As respects piston engine powered fixed-wing aircraft:
- ☒ Named pilot(s) SCOTT PETERSEN
- ☐ Any pilot maintaining a commercial or more advanced pilot certificate who has flown a minimum pilot in command time of _1,000_ (1,000 if nothing else is shown) hours in fixed-wing aircraft engaged in aerial application, including at least _1,000_ (100 if nothing else is shown) hours in aircraft of the same make and model being flown.

As respects piston engine powered rotorcraft:
- ☐ Named pilot(s) _____
- ☐ Any pilot maintaining a commercial or more advanced pilot certificate who has flown a minimum pilot in command time of _____ (1,000 if nothing else is shown) hours in rotorcraft engaged in aerial application, including at least _____ (100 if nothing else is shown) hours in aircraft of the same make and model being flown.

As respects turbine powered fixed-wing aircraft:
- ☒ Named pilot(s) SCOTT PETERSEN
- ☒ Any pilot maintaining a commercial or more advanced pilot certificate who has flown a minimum pilot in command time of _1,000_ (1,000 if nothing else is shown) hours in fixed-wing aircraft engaged in aerial application, including at least _100_ (100 if nothing else is shown) hours in aircraft of the same make and model being flown.

As respects turbine powered rotorcraft:
- ☐ Named pilot(s) _____
- ☐ Any pilot maintaining a commercial or more advanced pilot certificate who has flown a minimum pilot in command time of _____ (1,000 if nothing else is shown) hours in rotorcraft engaged in aerial application, including at least _____ (100 if nothing else is shown) hours in aircraft of the same make and model being flown.

As respects all turbine powered aircraft/rotorcraft:
- ☐ In addition to the above, the following pilots must also have successfully completed the aircraft manufacturer's ground and flight training program for the aircraft being flown or, if the aircraft has a turbine engine conversion, the pilot must have successfully completed formalized ground and flight training with the aircraft's conversion facility:

All other provisions of this policy remain the same.

This endorsement becomes effective _MAY 19, 2002_ to be attached to and hereby made a part of Policy No. _AV 3391999-04_ issued to _PONTIAC FLYING SERVICE, INC_

By National Union Fire Insurance Company of Pittsburgh, PA

Endorsement No. _2_

Date of Issue _6-14-02   tjp_

By _[signature]_ (Authorized Representative)

AG018 (6/98)        081

---

### N# 503D
### Air Tractor AT503

#### LIABILITY COVERAGES

| LIABILITY NON-CHEMICAL | | | LIABILITY CHEMICAL | | |
|---|---|---|---|---|---|
| Bodily Injury: | $100,000.00 | Each Person | Bodily Injury: | $100,000.00 | Each Person |
| | | | | $300,000.00 | Each Occurrence |
| Property Damage: | $100,000.00 | Each Occurrence | Property Damage: | $100,000.00 | Each Occurrence |
| Single Limit Bodily Injury: | $1,000,000.00 | Each Occurrence | Single Limit Bodily Injury: | $0.00 | Each Occurrence |
| | | | Chemical Deductible: | $1,000.00 | |
| ☐ Passengers Included | ☐ Passengers excluded | | Coverages Required: | ☐ Excluding Chemical | |
| | | | | ☐ Restricted Chemical | |
| | | | | ☒ Comprehensive Chemical | |

Liability Coverage Notes: $1 mil chemical respects aggregate only contracts / $1 Aerial Spraying mdvl as Insured   KR excluded

Chemical Coverage Includes:
- ☒ Pickrum
- ☒ Farmer/Owner/Grower
- ☒ Crops Treated
- ☒ Adjacent Fields
- ☒ Other  Res. Excl. Dusted

#### HULL COVERAGES

| | |
|---|---|
| Insured Value: | $150,000.00 |
| Coverage Type: | All Risk |
| Deductibles - Not in Motion: | $500.00 |
| Deductibles - In Motion: | $15,000.00 |

Hull Coverage Notes: Exclude GPS

#### PILOTS

| | |
|---|---|
| ☒ Open Pilot Clause | ☐ Named Pilots |
| Commercial Pilot with: | Scott Peterson |
| 1000  Total Ag Hours | |
| 1000  Total Turbine Hours | |
| 100  Total Make/Model Hours | |
| Other | |

#### AIRCRAFT USE(s)
- ☒ Application of Chemicals, Seeds Fertilizers
- ☒ Pleasure and Business Transportation *
- * excluding any carriage in which a charge is made
- ☐ External Load
- ☐ Sales Demonstration
- ☐ Fire Suppression
- ☐ Other:

#### LIENHOLDER:
Bank of Pontiac
300 W Washington, Pontiac IL  61764

#### PREMIUM
| | |
|---|---|
| Liability Coverage: | $2,440.00 |
| Hull Coverage: | $21,021.00 |
| Add'l Coverage: | $3,350.00 |
| SubTotal: | $26,861.00 |

Premium Notes: Add'l Cover: $366. A/S Fields / $1,425. 1 mil XC / $695. Res. Excl. / $444. Farmer/Owner/Grower / $500. for A/S Aerial as additional insured

HARDY Aviation Insurance, Inc.        080

---

### N# 8762H
### Ag Cat G164A

#### LIABILITY COVERAGES

| LIABILITY NON-CHEMICAL | | | LIABILITY CHEMICAL | | |
|---|---|---|---|---|---|
| Bodily Injury: | $0.00 | Each Person | Bodily Injury: | $0.00 | Each Person |
| | | | | $0.00 | Each Occurrence |
| Property Damage: | $0.00 | Each Occurrence | Property Damage: | $0.00 | Each Occurrence |
| Single Limit Bodily Injury: | $0.00 | Each Occurrence | Single Limit Bodily Injury: | $0.00 | Each Occurrence |
| | | | Chemical Deductible: | $0.00 | |
| ☐ Passengers Included | ☐ Passengers excluded | | Coverages Required: | ☒ Excluding Chemical | |
| | | | | ☐ Restricted Chemical | |
| | | | | ☐ Comprehensive Chemical | |

Liability Coverage Notes: NO LIABILITY

Chemical Coverage Includes:
- ☐ Pickrum
- ☐ Farmer/Owner/Grower
- ☐ Crops Treated
- ☐ Other

#### HULL COVERAGES

| | |
|---|---|
| Insured Value: | $45,000.00 |
| Coverage Type: | Ground Not in Motion |
| Deductibles - Not in Motion: | $500.00 |
| Deductibles - In Motion: | $0.00 |

Hull Coverage Notes: STORAGE ONLY

#### PILOTS

| | |
|---|---|
| ☒ Open Pilot Clause | ☒ Named Pilots |
| Commercial Pilot with: | N/A |
| _____ Total Ag Hours | |
| _____ Total Turbine Hours | |
| _____ Total Make/Model Hours | |
| Other | |

#### AIRCRAFT USE(s)
- ☐ Application of Chemicals, Seeds Fertilizers
- ☐ Pleasure and Business Transportation *
- * excluding any carriage in which a charge is made
- ☐ External Load
- ☐ Sales Demonstration
- ☐ Fire Suppression
- ☒ Other: Storage Only

#### LIENHOLDER:
People's Bank
P O Box 460, Gridley IL  61744-0460

#### PREMIUM
| | |
|---|---|
| Liability Coverage: | $0.00 |
| Hull Coverage: | $1,385.00 |
| Add'l Coverage: | $0.00 |
| SubTotal: | $1,385.00 |

Premium Notes:

HARDY Aviation Insurance, Inc.        079

---

### N# 48468
### Ag Cat G164A

#### LIABILITY COVERAGES

| LIABILITY NON-CHEMICAL | | | LIABILITY CHEMICAL | | |
|---|---|---|---|---|---|
| Bodily Injury: | $100,000.00 | Each Person | Bodily Injury: | $100,000.00 | Each Person |
| | $300,000.00 | Each Occurrence | | $300,000.00 | Each Occurrence |
| Property Damage: | $100,000.00 | Each Occurrence | Property Damage: | $100,000.00 | Each Occurrence |
| Single Limit Bodily Injury: | $0.00 | Each Occurrence | Single Limit Bodily Injury: | $0.00 | Each Occurrence |
| | | | Chemical Deductible: | $1,000.00 | |
| ☐ Passengers Included | ☒ Passengers excluded | | Coverages Required: | ☐ Excluding Chemical | |
| | | | | ☐ Restricted Chemical | |
| | | | | ☒ Comprehensive Chemical | |

Liability Coverage Notes: 1L Bodily Injury Aggregate Endorsement Incl   KR excluded

Chemical Coverage Includes:
- ☐ Pickrum
- ☒ Farmer/Owner/Grower
- ☒ Crops Treated
- ☒ Adjacent Fields
- ☒ Other  Res. Excl. Dusted

#### HULL COVERAGES

| | |
|---|---|
| Insured Value: | $90,000.00 |
| Coverage Type: | All Risk |
| Deductibles - Not in Motion: | $500.00 |
| Deductibles - In Motion: | $9,000.00 |

Hull Coverage Notes: Exclude GPS

#### PILOTS

| | |
|---|---|
| ☒ Open Pilot Clause | ☐ Named Pilots |
| Commercial Pilot with: | Scott Peterson |
| 1000  Total Ag Hours | |
| _____ Total Turbine Hours | |
| 100  Total Make/Model Hours | |
| Other | |

#### AIRCRAFT USE(s)
- ☒ Application of Chemicals, Seeds Fertilizers
- ☒ Pleasure and Business Transportation *
- * excluding any carriage in which a charge is made
- ☐ External Load
- ☐ Sales Demonstration
- ☐ Fire Suppression
- ☐ Other:

#### LIENHOLDER:
People's Bank
P O Box 460, Gridley IL  61744-0460

#### PREMIUM
| | |
|---|---|
| Liability Coverage: | $2,440.00 |
| Hull Coverage: | $6,413.00 |
| Add'l Coverage: | $1,465.00 |
| SubTotal: | $10,318.00 |

Premium Notes: Additional Coverage: $366. Adjacent Fields / $655. Res. Exclusion / $244. Farmer/Owner/Grower. IMASS discount Included

HARDY Aviation Insurance, Inc.        078

RESIDENTIAL AREAS ENDORSEMENT

In consideration of __INCLUDED__ premium of $ __INCLUDED__ , this policy is amended as follows:

Exclusion 5. k) is deleted in its entirety and replaced with the following:

5.  k) to claims arising from the aerial application to any residential area except with respect to aerial application of the following chemicals __THOSE REQUIRED FOR GYPSY MOTH CONTRACTS__

to the village, town or city of __THOSE REQUIRED FOR GYPSY MOTH CONTRACTS__

All other provisions of this policy remain the same.

This endorsement becomes effective ____MAY 19, 2002____ to be attached to and hereby made a part of Policy No. __AV 3391999-04__ issued to __PONTIAC FLYING SERVICE, INC__

By __National Union Fire Insurance Company of Pittsburgh, PA__

Endorsement No. ___6___

Date of Issue ___6-14-02  bp___        By _____
AG004 (5/99)                          085        (Authorized Representative)

---

ADJACENT FIELDS LIABILITY

In consideration of __INCLUDED__ premium of $ __INCLUDED__ , this policy is amended as follows:

Exclusion 7. c) is deleted, subject to the following:

NO CHANGE

All other provisions of this policy remain the same.

This endorsement becomes effective ____MAY 19, 2002____ to be attached to and hereby made a part of Policy No. __AV 3391999-04__ issued to __PONTIAC FLYING SERVICE, INC__

By __National Union Fire Insurance Company of Pittsburgh, PA__

Endorsement No. ___5___

Date of Issue ___6-14-02  bp___        By _____
AG013 (6/98)                          084        (Authorized Representative)

---

ADDITIONAL INSURED ENDORSEMENT

In consideration of __INCLUDED__ premium of $ __INCLUDED__ , this policy is amended as follows:

The following is included as an additional insured, but only with respect to the operation of the aircraft by the Named Insured:

THE FARMER, OWNER, AND/OR GROWER FOR WHOM AERIAL APPLICATION IS BEING PERFORMED. COVERAGE IS EXTENDED TO INCLUDE STATE AND COUNTY GOVERNMENT AGENCIES AND CONTRACT HOLDERS REQUIRED FOR CONTRACT WORK TO BE DONE.

AL'S AERIAL SPRAYING, INC

For the purposes of this endorsement only, coverage

1)  only applies with respect to such insurance as is afforded by coverages A, B, C, or D;
2)  does not apply to any liability arising from the selection or use of chemicals manufactured, sold, handled, or distributed by the additional Insured;
3)  is excess coverage only and applies only after all other coverage available to the Insured has been exhausted;
4)  is further subject to the following:
    THIS EXTENSION OF COVERAGE ONLY APPLIES WITH RESPECT TO THE VICARIOUS RESPONSIBILITY OF THE ADDITIONAL INSURED FOR THE CONDUCT OF AERIAL APPLICATION BY THE NAMED INSURED.

All other provisions of this policy remain the same.

This endorsement becomes effective ____MAY 19, 2002____ to be attached to and hereby made a part of Policy No. __AV 3391999-04__ issued to __PONTIAC FLYING SERVICE, INC__

By __National Union Fire Insurance Company of Pittsburgh, PA__

Endorsement No. ___4___

Date of Issue ___6-14-02  bp___        By _____
AG010 (9/98)                          083        (Authorized Representative)

---

LIABILITY AMENDMENT ENDORSEMENT
(AERIAL APPLICATOR)

In consideration of __INCLUDED__ premium of $ __INCLUDED__ , this policy is amended as follows:

Liability Coverages set forth in the Declarations are __completed__ as follows with respect to the following: __NS030 ONLY__

| Liability Coverages | LIMITS OF LIABILITY | |
|---|---|---|
| | NON-CHEMICAL | CHEMICAL |
| D.  Single Limit - Property Damage & Bodily Injury Excluding Passengers | $1,000,000.  EACH OCCURRENCE | |

__ANNUAL PREMIUMS__          Subject to the following:
Coverage     Premium
                          CHEMICAL COVERAGES A & B REMAIN AS SHOWN IN ITEM 3. OF THE
                          DECLARATIONS.

                          THIS ENDORSEMENT APPLIES ONLY AS RESPECTS OPERATIONS UNDER
                          THE NAMED INSURED'S GYPSY MOTH CONTRACTS.

All other provisions of this policy remain the same.

This endorsement becomes effective ____MAY 19, 2002____ to be attached to and hereby made a part of Policy No. __AV 3391999-04__ issued to __PONTIAC FLYING SERVICE, INC__

By __National Union Fire Insurance Company of Pittsburgh, PA__

Endorsement No. ___3___

Date of Issue ___6-14-02  bp___        By _____
AG427 (4/02)                          082        (Authorized Representative)

EQUIPMENT EXCLUSION

This policy is amended as follows:

The coverage afforded by this policy shall not apply to the following aircraft equipment:

EXCLUDES GLOBAL POSITIONING SYSTEM

All other provisions of this policy remain the same.

This endorsement becomes effective _____ MAY 19, 2002 _____ to be attached to and hereby made a part of
Policy No. _____ AV 3391999-04 _____ issued to _PONTIAC FLYING SERVICE, INC_

By _National Union Fire Insurance Company of Pittsburgh, PA_

Endorsement No. _____ 10

Date of Issue _____ 6-14-02  bp

089 By _____
            [Authorized Representative]

LAD111 (9/99)

---

TERRITORY AMENDMENT ENDORSEMENT

In consideration of _INCLUDED_____ premium of $ _INCLUDED____, this policy is amended as follows:

Exclusion 5. It shall not apply to the following states:

WEST VIRGINIA, VIRGINIA, OHIO, MICHIGAN, MARYLAND

All other provisions of this policy remain the same.

This endorsement becomes effective _____ MAY 19, 2002 _____ to be attached to and hereby made a part of
Policy No. _____ AV 3391999-04 _____ issued to _PONTIAC FLYING SERVICE, INC_

By _National Union Fire Insurance Company of Pittsburgh, PA_

Endorsement No. _____ 9

Date of Issue _____ 6-14-02  bp

088 By _____
            [Authorized Representative]

AG019 (1/99)

---

PURPOSE OF USE ENDORSEMENT

This policy is amended as follows:

The Purpose of Use set forth in the Declarations is   completed   as follows:

AS RESPECTS ALL AIRCRAFT

Purpose of Use shall be only as follows:

THIS POLICY IS AMENDED AS FOLLOWS:

THE PURPOSE OF USE SET FORTH IN THE DECLARATIONS IS AMENDED AS FOLLOWS:

AS RESPECTS AIRCRAFT WHILE OPERATING WITHIN, ON OR ABOVE THE COMMONWEALTH OF KENTUCKY

PURPOSE OF USE SHALL BE ONLY AS FOLLOWS:

PLEASURE AND BUSINESS USE ONLY, AND EXCLUDING AERIAL APPLICATION

All other provisions of this policy remain the same.

This endorsement becomes effective _____ MAY 19, 2002 _____ to be attached to and hereby made a part of
Policy No. _____ AV 3391999-04 _____ issued to _PONTIAC FLYING SERVICE, INC_

By _National Union Fire Insurance Company of Pittsburgh, PA_

Endorsement No. _____ 8

Date of Issue _____ 6-14-02  bp

087 By _____
            [Authorized Representative]

AV122 (1/01)

---

ILLINOIS SPECIAL LIMITS ENDORSEMENT

In consideration of additional premium of $ _INCLUDED____, this policy is amended as follows:

As respects aerial application within the State of Illinois, the Limits of Liability shall be the greater of:

a)   The amounts as shown on the Declarations; or

b)   The following limits if a premium is shown on the Declarations for the coverage(s):

Coverage A      $ 50,000. each person
                $100,000. each occurrence
                $500,000. aggregate

Coverage B      $ 50,000. each occurrence
                $ 50,000. aggregate

Coverage D      $100,000. each occurrence
                $500,000. aggregate

All other provisions of this policy remain the same.

This endorsement becomes effective _____ MAY 19, 2002 _____ to be attached to and hereby made a part of
Policy No. _____ AV 3391999-04 _____ issued to _PONTIAC FLYING SERVICE, INC_

By _National Union Fire Insurance Company of Pittsburgh, PA_

Endorsement No. _____ 7

Date of Issue _____ 6-14-02  bp

086 By _____
            [Authorized Representative]

AG003 (6/99)

## Notations

**For:** _____ **Date:** 3-18-02 **Time:** _____

**Insured:** Pontiac

**Person Calling:** Scott

☐ Hold at Desk  ☐ File Away  ☐ Response Needed

**Message:** add pilots

Harold Luceto      SR   143080
Comm  SER ME CERT   500
total  80,000
in   15000
turbine  15000
AT   500

Rick Luceto   SI   1934246
ATP  CFII  MES
total  7000
SE   3000
turbine  3500
AT   500

*meet CRW*

114     From: _____     HA103.XLS

---

## Notations

**For:** _____ **Date:** 3-1-02 **Time:** _____

**Insured:** Pontiac

**Person Calling:** _____

☐ Hold at Desk  ☐ File Away  ☐ Response Needed

**Message:** I left a msg for Mary Beth that we need calls on the 503, so go ahead "bind," but we have to do something about the hull rate. Told her I'd follow up Monday on price

Mary Beth
3-1-02  Yes - calls is bound + endt is done
#2,598. add'l proceeds at revised hull rate.

113     From: _____     HA103.XLS

---

### WAR, HI-JACKING AND OTHER PERILS EXCLUSION CLAUSE (AVIATION)

This policy is amended as follows:

In the event any of the provisions of this endorsement are in conflict with any provisions, exclusions, conditions or terms forming part of this policy, this endorsement shall take precedence.

This policy does not cover claims caused by:

(a) War, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, martial law, military or usurped power or attempts at usurpation of power;

(b) Any hostile detonation of any weapon of war employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter;

(c) Strikes, riots, civil commotions or labor disturbances;

(d) Any act of one or more persons, whether or not agents of a sovereign power, for political or terrorist purposes and whether the loss or damage resulting therefrom is accidental or intentional;

(e) Any malicious act or act of sabotage;

(f) Confiscation, nationalization, seizure, restraint, detention, appropriation, requisition for title or use by or under the order of any Government (whether civil, military or de facto) or public or local authority;

(g) Hi-jacking or any unlawful seizure or wrongful exercise of control of the aircraft or crew in flight (including any attempt at such seizure or control) made by any person or persons on board the aircraft acting without the consent of the Insured,

Furthermore, this policy does not cover claims arising whilst the aircraft is outside the control of the Insured by reason of any of the above perils.

The aircraft shall be deemed to have been restored to the control of the Insured on the safe return of the aircraft to the Insured at an airfield not excluded by the geographical limits of this policy, and entirely suitable for the operation of the aircraft (such safe return shall require that the aircraft be parked with engines shut down and under no duress).

All other provisions of this policy remain the same.

This endorsement becomes effective _____ MAY 19, 2002 _____ to be attached to and hereby made a part of Policy No. _____ AV 3391999-04 _____ Issued to _____ PONTIAC FLYING SERVICE, INC

By _____ National Union Fire Insurance Company of Pittsburgh, PA

**Endorsement No.** ___12___

**Date of Issue** ___6-14-02  bp___

☒ AIG Aviation, Inc.
☐ AIG Aviation Insurance Services
☐ AIG Aviation (Canada), Inc.
☐ AIG Aviation (Illinois) Corporation
☐ AIG Aviation (Texas), Inc.
☐ American International Aviation Agency, Inc.

By _____ (Authorized Representative)

AVN48B (1/02)     091

---

### LOSS PAYABLE ENDORSEMENT

In consideration of additional premium of $ ___INCLUDED___ , this policy is amended as follows:

Any loss under Coverage F, G, and H is payable as interest may appear to the Named Insured and the following Loss Payable:

As respects _____ N4B489.AND N8762H

PEOPLES BANK
PO BOX 460
GRIDLEY, IL  61744

AS RESPECTS N503D:

BANK OF PONTIAC
300 W WASHINGTON
PONTIAC, IL  67764

All other provisions of this policy remain the same.

This endorsement becomes effective _____ MAY 19, 2002 _____ to be attached to and hereby made a part of Policy No. _____ AV 3391999-04 _____ Issued to _____ PONTIAC FLYING SERVICE, INC

By _____ National Union Fire Insurance Company of Pittsburgh, PA

**Endorsement No.** ___11___

**Date of Issue** ___6-14-02  bp___

By _____ (Authorized Representative)

AV83 (3/01)     090

## Notations

For: _____ Date: 10-19-02 Time: _____
Insured: Pontiac
Person Calling: Scott

☐ Hold at Desk    ☐ File Away    ☐ Response Needed

Message: _____

Get quote on 2 store
Ag Cert for ag training
+ 80,000 sibling now
with parts from the shop
Scott will train - Hadd's
old program

Mary Beth of ASG - Not interested
Scott is too low time to
instruct. Needs at least
8000 total hrs + pic before
ASG will consider insuring him for
ag training

118    From: _____ HA103.XLS

---

Pontiac



quote on
Ag Cat    1-3-1 N chem    550—

80K AgH = 625 / 5,000

500/10%

Copy of Syllabus

J+P = Dave only

P+B — with Dave
+ Sob

AH
MB

117    89-4-02 Gave quote to Sarah.
She was ecstatic. Will let
us know when ready.

---

## Notations

For: _____ Date: 9-3-02 Time: _____
Insured: Pontiac
Person Calling: Scott

☐ Hold at Desk    ☐ File Away    ☐ Response Needed

Message: _____

For ag training -
Rick Lucente will also
be helping

116    From: _____ HA103.XLS

---

## Notations

For: _____ Date: 8-22-02 Time: _____
Insured: Pontiac
Person Calling: Sarah

☐ Hold at Desk    ☐ File Away    ☐ Response Needed

Message: _____

300 hrs already this
year

could training be done
w/o Solo (in the Cat?)

Ag Training

J+P / Chem Cat

115    From: _____ HA103.XLS

his school as well. She isn't holding us responsible yet however who knows
how these deals will fall. As I stated over the phone I believe Sara when
she says she didn't know about Ag Cat training since the transition Scott and they bought the aircraft Harold was using for training.

Our files are clear in that we were never asked to put coverage for training
on this and that we have clearly shown this for ag use only, as well as your
policy. If you remember last year they came to us on a Ag Cat for training
which we did get a quote on through you, however nothing ever happened on
this aircraft to our knowledge. They may have assumed since commercial, and
ag use what difference is the training, especially since transition for
Scott was approved. I really don't know.

I also don't know how to defend this for my client even though I believe
they need help on this. I would like to work on this in the effort to clear
this up and not have a big lawsuit over lost pilots and the aircraft. I
don't know whats in the best interest now for both AIG and Hardy should this
become a situation.

I felt since I knew more information today regarding the loss, I needed to
advise you as well. To date this is what we know.

Randy Hardy

Randy Hardy - President
Hardy Aviation Insurance, Inc.
P O Box 12010
Wichita, KS 67277-2010
Phone (316) 945-6733    Fax (316) 945-2330
Web Site: www.hardyaviationins.com

2

122

---

To:        Angie

From:      Randy
Sent:      May 07, 2003 12:35 PM
To:        Angie
Subject:   FW: Pontiac Flying Service, Inc.   AV3391999-04

-----Original Message-----
From: Schwaegel, Mary Beth [mailto:Mary.Schwaegel@AIG.COM]
Sent: Tuesday, May 06, 2003 4:43 PM
To: 'Randy'
Subject: RE: Pontiac Flying Service, Inc. AV3391999-04

Randy, as I advised on the phone, we are going to non-renew this risk. We
will extend the current policy to be in compliance with state regulations
and send out the proper notice of non-renewal.

Mary Beth

-----Original Message-----
From: Randy [mailto:Randy@hardyaviationins.com]
Sent: Tuesday, May 06, 2003 2:40 PM
To: 'mary.schwaegel@aig.com'
Cc: Jim Anderson (E-mail)
Subject: Pontiac Flying Service, Inc. AV3391999-04

Well, as in the movie, Houston, we have a problem.

Yesterday we turned in a loss for Pontiac Flying Service on their AT503. At
the time we were unaware of the use during the loss, It now appears the
aircraft was being used for Turbine Transition training thus the reason for
an additional person being on board.

I let it go yesterday and was able to speak with the Sara Peterson today.
She was concerned because one of their pilots wasn't named to the file which
was this Rick Lucente who was killed. We indicated to her that when she
called about using him he met the OPW and didn't need to be named. It gave
me the opportunity to ask her about the way she called in the loss as
training. Much to her suprise I had to break the news that we have never
been given a request to add transition training to the file and we did not
cover this aircraft for that use. Sara and Scott of course are very upset
about the loss and might not be thinking straight yet however I did tell her
I would look into this for now. She told me over the phone she was under
the understanding or they assumed that since we added Scott back in the
beginning for transition training by Harold Miller, who they bought this
aircraft from that this gave them transition training coverage just like the
school they bought the aircraft from. Scott and Sara bought this aircraft

1

121

---

## Notations

For: _____   Date: 5-8-03   Time: _____

Insured: Pontiac

Person Calling: Sarah

☐ Hold at Desk    ☐ File Away    ☐ Response Needed

Message: _____

Student passenger's
ex-wife called Pontiac
Inquiring about insurance
on behalf of their minor child
I told Sarah to refer all questions to
the adjuster.

Dave Kircher is adjuster

He's pushing for the plane
to be moved to Pontiac [Genre]

That's where Rick's wife lives
(Kelly) — its an airport community, and
Petersons do not want the
next moved there to be in
Kellys face everyday.

120                    From: [signature]

HA103.XLS

---

## Notations

For: _____   Date: 5-3-03   Time: _____

Insured: Pontiac

Person Calling: Sarah

☐ Hold at Desk    ☐ File Away    ☐ Response Needed

Message: _____

503D   Rick + a
turbine student
crashed + totalled
this afternoon

just outside Pontiac

Rick + passenger killed

Aircraft totalled crashed
on city property

Sarah was very shaken, so
I didn't ask for details
Rick has a 4-yr old daughter
whom he usually brings with him and his
wife is expecting in July.

119                    From: [signature]

HA103.XLS

Phoenix Aviation Managers (Texas), Inc.
8303 LBJ Dallas #1111-9
Dallas, Texas 75240

RECEIVED
JAN - 9 1995
BY:

January 5, 1995

Hardy Aviation Insurance
Attn: Randy Hardy
P.O. Box 12010
Wichita, KS 67277-2010

*Mailed To PAY 1-13-95*

Re: Cash with App. Payment

Gentlemen:

We are pleased that you have elected to place business with us. We do not issue formal contracts, as all of our business is done on a brokerage basis, and we do not extend underwriting, quoting or binding authority. We do ask each producer to agree to the following:

1. Whether or not you collect the premium from the Insured, you are responsible for all earned premium on the business you place with us.

2. All accounts are to be on a CASH WITH APP basis. We will bind an account for a period not to exceed ten (10) days and would expect a check for the net premium in our office by that time.

3. There will be no flat cancellations after inception of coverage.

4. On any account financed through a premium finance company, it is your responsibility to see that the finance company's check is to us by the appropriate due date; otherwise you must remit this amount in your payment.

Your signature on the copy of this letter acknowledges your agreement to all of its contents. Please return it to us as soon as possible. We look forward to working with you on your aviation accounts.

*[signature] 1-12-95*

126

---

AIG AVIATION

AIG Aviation (Texas), Inc.
8403 LBJ Freeway • Suite 500
Dallas, Texas 75244

PREMIUM PAYMENT AGREEMENT

All of our business is handled on a brokerage basis. We do not have a formal agreement; however, we ask that all our producers agree to the following:

1. You are responsible for all earned premium on all business which you place with us, whether or not the premium is collected.

2. All accounts are to be paid in full on a 30-day basis with the exception of Installments, which are due on or before the Installment date. Our accounting runs from the 20th of the month to the 20th of the following month. Assuming that period involved is from December 20th to January 20th, then all items in that period would be payable on March 1st.

3. On accounts to be financed, you are responsible to see that all paperwork is processed in time for the financing company's check to reach us as set out in paragraph 2, otherwise, this amount must be included in your payment.

We appreciate your kind support and trust this procedure will not put any additional burden on your agency.

An extra copy of this letter is enclosed. We ask that you complete and return this copy as an acknowledgement that you agree to the above conditions.

Sincerely,

AIG AVIATION (TEXAS), INC.

*[signature]*
Barbara J. Wells
Vice-President

Producer Name _____
Address _____
City _____ State _____ Zip _____
Telephone _____
        (Area Code)
Federal Tax ID # _____
Signature _____
Name (print/type) _____
Title _____
Date _____

Company Use Only
Producer Code? _____
Scott Code _____
Keyed By _____
Date _____

Telephone (214) 661-5300     Fax (214) 382-5725

125

---

AIG AVIATION

PREMIUM PAYMENT AGREEMENT

All of our business is handled on a brokerage basis. We do not have a formal agreement; however, we ask that all our producers agree to the following:

1. You are responsible for all earned premiums on all business that you place with us whether or not the premium is collected.

2. All accounts are to be paid on a 30-day basis. Our accounting month is each calendar month. Assuming the period involved is September 1 to September 30, then all items billed in that period would be payable on or before October 31.

3. On all accounts to be financed, you are responsible to see that all paperwork is processed in time for the financing company's check to reach us as set out in paragraph 2, otherwise, this amount must be included in your payment.

We appreciate your kind support and trust this procedure will not put any additional burden on your agency.

Producer Name _James R. Hardy_  _Hardy Aviation Insurance, Inc._
Producer Code(s) Per Statement _____
Address _7016 W. Harry_ _* P.O.Box 12010_
City _Wichita_  State _Ks._  Zip _67277-2010_
Telephone _316-945-1733_  FAX No. _316-945-2330_
E-mail Address _hardyavins@feist.com_
Federal Tax ID# _48-1158888_
Is it necessary to send a 1099 form to your company?  _X_ Yes ___ No

Signature _James Hardy_
Name (Print/Type) _James R. Hardy_
Title _President_  Date: _3/28/00_

Billing contact: _James R. Hardy_
Address (If different from above) _P.O. Box 12010_
City _Wichita_  State _Ks._  Zip _67277-2010_
Telephone _____  FAX No. _____
E-mail Address _____  _Same_

124



---

Randy

To:     mary.schwaegel@aig.com
Cc:     Jim Anderson (E-mail)
Subject: Pontiac Flying Service, Inc.    AV3391999-04

Contacts:    Mary Beth Schwaegel

Well, as in the movie, Houston, we have a problem.

Yesterday we turned in a loss for Pontiac Flying Service on their AT503. At the time we were unaware of the use during the loss. It now appears the aircraft was being used for Turbine Transition training thus the reason for an additional person being on board.

I let it go yesterday and was able to speak with the Sara Peterson today. She was concerned because one of their pilots wasn't named to the file which was this Rick Lucente who was killed. We indicated to her that when she called about using him he met the OPW and didn't need to be named. It gave me the opportunity to ask her about the way she called in the loss as training. Much to her surprise I had to break the news that we have never been given a request to add transition training to the file and we did not cover this aircraft for that use. Sara and Scott of course are very upset about the loss and might not be thinking straight yet however I did tell her I would look into this for now. She told me over the phone she was under the understanding of they assumed that since we added Scott back in the beginning for transition training by Harold Miller, who they bought this aircraft from that this gave them transition training coverage just like the school they bought the aircraft from. Scott and Sara bought this aircraft from Harold Miller who was selling out his aircraft and as I just found out, his school as well. She isn't holding us responsible yet however who knows how these deals will fall. As I stated over the phone I believe Sara when she tells me they assumed or presumed they had this since they transitioned Scott and they thought the aircraft Harold was using for training.

Our files are clear in that we were never asked to put coverage for training on this and that we have clearly shown this for ag use only, as well as your policy. If you remember last year they came to us on a Ag Cat for training which we did get a quote on through you, however nothing ever happened on this aircraft to our knowledge. They may have assumed since commercial, and ag use what difference is the training, especially since transition for Scott was approved. I honestly don't know.

I also don't know how to defend this for my client even though I believe they need help on this. I would like to work on this in the effort to clear this up and not have a big lawsuit over lost pilots and the aircraft. I don't know whats in the best interest now for both AIG and Hardy should this become a situation.

I felt since I knew more information today regarding the loss, I needed to advise you as well. To date this is what we know.

Randy Hardy

Randy Hardy - President
Hardy Aviation Insurance, Inc.
P.O. Box 12010
Wichita, KS 67227-2010
Phone: (316) 945-6733    Fax (316) 945-2330
Web Site: www.hardyaviationins.com

123

AIRCRAFT AVIATION AND OTHER PERILS EXCLUSION CLAUSE

This policy is amended as follows:

In the event any of the provisions of this endorsement are in conflict with any provisions, exclusions, conditions or terms forming part of this policy, this endorsement shall take precedence.

1. This policy does not cover claims directly or indirectly occasioned by, happening through or in consequence of:

    (a) noise (whether audible to the human ear or not), vibration, sonic boom and any phenomena associated therewith,

    (b) pollution and contamination of any kind whatsoever,

    (c) electrical and electromagnetic interference,

    (d) interference with the use of property;

    unless caused by or resulting in a crash, fire, explosion or collision or a recorded in-flight emergency causing abnormal aircraft operation.

2. With respect to any provision in the policy concerning any duty of the Company to investigate or defend claims, such provision shall not apply and the Company shall not be required to defend:

    (a) claims excluded by paragraph 1., or

    (b) a claim or claims covered by the policy when combined with any claims excluded by paragraph 1. (referred to below as "Combined Claims").

3. In respect of any Combined Claims, the Company shall (subject to proof of loss and the limits of the policy) reimburse the Insured for that portion of the following items which may be allocated to the claims covered by the policy:

    (a) damages awarded against the Insured and

    (b) defense fees and expenses incurred by the Insured.

4. Nothing herein shall override any radioactive contamination or other exclusion clause attached to or forming part of this policy.

All other provisions of this policy remain the same.

This endorsement becomes effective _____ MAY 19, 2002 _____ to be attached to and hereby made a part of Policy No. _ AV 3391999-04 _ issued to _ PONTIAC FLYING SERVICE, INC _

By _ National Union Fire Insurance Company of Pittsburgh, PA _

Endorsement No. ____ 14

Date of Issue _____ 6-14-02 _ bp

☒ AIG Aviation, Inc.
☐ AIG Aviation Insurance Services
☐ AIG Aviation (Canada), Inc.
☐ AIG Aviation (Illinois) Corporation
☐ AIG Aviation (Texas), Inc.
☐ American International Aviation Agency, Inc.
☐

AVN46B (1/02)

094

By _____
(Authorized Representative)

---

NUCLEAR RISKS EXCLUSION CLAUSE

This policy is amended as follows:

In the event any of the provisions of this endorsement are in conflict with any provisions, exclusions, conditions or terms forming part of this policy, this endorsement shall take precedence.

1. This policy does not cover:

    (i) loss or destruction of or damage to any property whatsoever or any loss or expense whatsoever resulting or arising therefrom or any consequential loss

    (ii) any legal liability of whatsoever nature

    directly or indirectly caused by or contributed to by or arising from:

    (a) the radioactive, toxic, explosive or other hazardous properties of any explosive nuclear assembly or nuclear component thereof;

    (b) the radioactive properties of, or a combination of radioactive properties with toxic, explosive or other hazardous properties of, any other radioactive material in the course of carriage as cargo, including storage or handling incidental thereto;

    (c) ionizing radiations or contamination by radioactivity from, or the toxic, explosive or other hazardous properties of, any other radioactive source whatsoever.

2. It is understood and agreed that such radioactive material or other radioactive source in paragraph 1. (b) and (c) above shall not include:

    (i) depleted uranium and natural uranium in any form;

    (ii) radioisotopes which have reached the final stage of fabrication so as to be usable for any scientific, medical, agricultural, commercial, educational or industrial purpose.

3. This policy, however, does not cover loss of or destruction of or damage to any property or any consequential loss or any legal liability of whatsoever nature with respect to which:

    (i) the Insured under this policy is also an insured or an additional insured under any other insurance policy, including any nuclear energy liability policy; or

    (ii) any person or organization is required to maintain financial protection pursuant to legislation in any country; or

    (iii) the Insured under this policy is, or had this policy not been issued would be, entitled to indemnification from any government or agency thereof.

AVN38B (1/02)      Page 1 of Endorsement No. ____ 13

092

---

4. Loss, destruction, damage, expense or legal liability in respect of the nuclear risks not excluded by reason of paragraph 2. shall subject to all other terms, conditions, limitations, warranties and exclusions of this policy be covered, provided that:

    (i) in the case of any claim in respect of radioactive material in the course of carriage as cargo, including storage or handling incidental thereof, such carriage shall in all respects have complied with the full International Civil Aviation Organization "Technical Instructions for the Safe Transport of Dangerous Goods by Air", unless the carriage shall have been subject to any more restrictive legislation, when it shall in all respects have complied with such legislation;

    (ii) this policy shall only apply to an incident happening during the period of this policy and where any claim by the Insured against the Company or by any claimant against the Insured arising out of such incident shall have been made within three years after the date thereof;

    (iii) in the case of any claim for the loss of or destruction of or damage to or loss of use of an aircraft caused by or contributed to by radioactive contamination, the level of such contamination shall have exceeded the maximum permissible level set out in the following scale:

| Emitter | Maximum permissible level |
|---|---|
| (IAEA Health and Safety Regulations) | of non-fixed radioactive surface contamination (Averaged over 300 cm²) |
| Beta, gamma and low toxicity alpha emitters | Not exceeding 4 Bequerels / cm2 (10⁻⁴ microcuries / cm²) |
| All other alpha emitters | Not exceeding 0.4 Bequerels / cm 2 (10⁻⁵ microcuries / cm²) |

    (iv) the cover afforded hereby may be cancelled at any time by the Company giving seven days' notice of cancellation.

All other provisions of this policy remain the same.

This endorsement becomes effective _____ MAY 19, 2002 _____ to be attached to and hereby made a part of Policy No. _ AV 3391999-04 _ issued to _ PONTIAC FLYING SERVICE, INC _

By _ National Union Fire Insurance Company of Pittsburgh, PA _

Endorsement No. ____ 13

Date of Issue _____ 6-14-02 _ bp

☒ AIG Aviation, Inc.
☐ AIG Aviation Insurance Services
☐ AIG Aviation (Canada), Inc.
☐ AIG Aviation (Illinois) Corporation
☐ AIG Aviation (Texas), Inc.
☐ American International Aviation Agency, Inc.
☐

AVN38B (1/02)
Page 2

093

By _____
(Authorized Representative)

---

Please enclose your full and correct Agency Name, Address, Telephone Number, Fax Number & Tax Identification:

AGENCY NAME: _____ Hardy Aviation Insurance, Inc. _____

AGENCY ADDRESS: _____ P O Box 12010  Wichita, KS 67277-2010 _____

AGENCY TELEPHONE NUMBER: _____ 316-721-6733 _____

AGENCY FAX NUMBER: _____ 316-721-9559 _____

Tax Identification Number: _____ 48-1159898 _____

IS AGENCY INCORPORATED ?: _____ Yes _____

PLEASE ATTACH AND RETURN A COPY OF YOUR AGENCY'S RESIDENT LICENSE. IF YOU HOLD ANY NON-RESIDENT LICENSE(S) PLEASE INDICATE BY PLACING THE LICENSE NUMBER AND THE EXPIRATION DATE IN THE BLANK PROVIDED NEXT TO EACH STATE. IF NO NON-RESIDENT LICENSE(S) ARE HELD AT THIS TIME PLACE AN (X) IN THE SECTION STATING THE STATES, SIGN, AND RETURN ALONG WITH THIS PAGE.

Very truly yours,

PHOENIX AVIATION MANAGERS (TEXAS), INC.

Roger M. Ridings
President

ACCEPTED BY: _____

TITLE _____

DATE _____

RR/kn

127

**NONRENEWAL**

nonrenewal of this policy. If applicable, the Insurer will mail written notice stating the reason for the nonrenewal to the Named Insured's last mailing address known to the Insurer at least sixty (60) days before the expiration date of the policy. A copy of the notice will also be sent to:

a) the broker, if known to the Insurer, or the agent of record; and

b) the last known mortgagee or lienholder named in the policy at the last mailing address known to the Insurer.

This paragraph does not apply if the Insurer has manifested a willingness to renew directly to the Named Insured.

All other provisions of this policy remain the same.

This endorsement becomes effective ___ MAY 19, 2002 ___ to be attached to and hereby made a part of Policy No. ___ AV 3391999-04 ___ Issued to PONTIAC FLYING SERVICE, INC

By ___ National Union Fire Insurance Company of Pittsburgh, PA ___

Endorsement No. ___ 17 ___   ☒ AIG Aviation, Inc.
☐ AIG Aviation Insurance Services
Date of Issue ___ 6-14-02  bp ___   ☐ AIG Aviation (Canada), Inc.
☐ AIG Aviation (Illinois) Corporation
☐ AIG Aviation (Texas), Inc.

SE52142(11/94)   Page 2   **098**   By _____
(Authorized Representative)

---

Wherever used in this endorsement: 1) "we", "us", "our", and "Insurer" mean the insurance company which issued this policy; and 2) "you", "your", "Named Insured", "First Named Insured", and "Insured" mean the Named Corporation, Named Organization, Named Sponsor, Named Insured, or Insured stated in the Declarations page; and 3) "Other Insured(s)" means all other persons or entities afforded coverage under the policy.

**CANCELLATION AND NONRENEWAL**

A) The cancellation condition of this policy is replaced by the following:

**CANCELLATION**

1. The Named Insured may cancel this policy by mailing to the Insurer advance written notice of cancellation.

2. If this policy has been in effect for sixty (60) days or less, the Insurer may cancel this policy by mailing to the Named Insured written notice of cancellation at least:

   a) Ten (10) days before the effective date of cancellation if the Insurer cancels for nonpayment of premium; or

   b) Thirty (30) days before the effective date of cancellation if the Insurer cancels for any other reason.

3. If this policy has been in effect for more than sixty (60) days the Insurer may cancel this policy only for one or more of the following reasons:

   a) Nonpayment of premium;

   b) The policy was obtained through a material misrepresentation;

   c) The Named Insured or Other Insured(s) have violated any of the terms and conditions of the policy;

   d) The risk originally accepted has measurably increased;

   e) Certification to the Director of Insurance of the loss of reinsurance by the Insurer which provided coverage to the Insurer for all or a substantial part of the underlying risk insured; or

   f) A determination by the Director that the continuation of the policy could place the Insurer in violation of the insurance laws of this State.

   If the Insurer cancels this policy based on one or more of the above reasons except for nonpayment of premium, the Insurer will mail written notice to the Named Insured at least sixty (60) days before the effective date of cancellation. When cancellation is for nonpayment of premium, the Insurer will mail notice at least ten (10) days before the effective date of cancellation.

4. The Insurer will mail the notice to the Named Insured and the agent or broker at the last addresses known to the Insurer.

5. Notice of cancellation will state the effective date of cancellation and a specific explanation of the reason or reasons for cancellation. The policy period will end on that date.

6. If this policy is cancelled, the Insurer will send the Named Insured any premium refund due. If the Insurer cancels, the refund will be pro rata. If the Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if the Insurer has not made or offered a refund.

7. Proof of mailing will be sufficient proof of notice.

SE52142(11/94)   Page 1 of Endorsement No. ___ 17 ___   **097**

---

**DATE RECOGNITION EXCLUSION CLAUSE**

This Policy does not cover any claim, damage, injury, loss, cost, expense or liability (whether in contract, tort, negligence, product liability, misrepresentation, fraud or otherwise) of any nature whatsoever arising from or occasioned by in consequence of (whether directly or indirectly and whether wholly or partly):

(a) the failure or inability of any computer hardware, software, integrated circuit, chip or information technology equipment or system (whether in the possession of the Insured or of any third party) accurately or completely to process, recognize, exchange or transfer year, date or time data or information in connection with any change of year, date or time;

whether on or before or after such change of year, date or time;

(b) any implemented or attempted change or modification of any computer hardware, software, integrated circuit, chip or information technology equipment or system (whether in the possession of the Insured or of any third party) in anticipation of or in response to any such change of year, date or time, or any advice given or services performed in connection with any such change or modification;

(c) any non-use or unavailability for use of any property or equipment of any kind whatsoever resulting from any act, failure to act or decision of the Insured or of any third party related to any such change of year, date or time;

and any provision in this Policy concerning any duty of the Company to investigate or defend claims shall not apply to any claims so excluded.

All other provisions of this policy remain the same.

This endorsement becomes effective ___ MAY 19, 2002 ___ to be attached to and hereby made a part of Policy No. ___ AV 3391999-04 ___ issued to PONTIAC FLYING SERVICE, INC

By ___ National Union Fire Insurance Company of Pittsburgh, PA ___

Endorsement No. ___ 16 ___   ☒ AIG Aviation, Inc.
☐ AIG Aviation Insurance Services
Date of Issue ___ 6-14-02  bp ___   ☐ AIG Aviation (Canada), Inc.
☐ AIG Aviation (Illinois) Corporation
☐ AIG Aviation (Texas), Inc.
☐ American International Aviation Agency, Inc.

AVN2000A (1/02)   **096**   By _____
(Authorized Representative)

---

**FUNGUS EXCLUSION ENDORSEMENT**

This policy shall not apply under any coverage section to:

1. bodily injury; sickness; disease; occupational disease; headaches; dizziness; neurological disorders of any kind; mental or physical stress, anguish, or injury of any kind; property damage or grounding or any other claim whatsoever nor

   any loss, cost, or expense including, but not limited to, losses, costs, or expenses related to, arising from, or associated with testing for, cleaning up, remediation, containment, removal, or abatement, nor

   any obligation to defend or indemnify due in whole or in part to any claim or suit against the insured alleging damages arising from or caused by, directly or indirectly, in whole or in part, by

   (a) any fungus(i), molds, mildew or yeast, or

   (b) any spore(s), or toxins created or produced by or emanating from such fungus(i), mold(s), mildew or yeast, or

   (c) any substance, vapor gas, or other emission or organic or inorganic body or substance produced by or arising out of any fungus(i), mold(s), mildew or yeast, or

   (d) any material, product, building component, building or structure or any concentration of moisture, water or other liquid within such material, product, building component, building or structure that contains, harbors, nurtures, or acts as a medium for any fungus(i), mold(s), mildew or yeast, or spore(s) or toxins emanating therefrom,

   regardless of any other cause, event material, product and/or building component that contributed concurrently or in any sequence to any alleged loss or subsequent claim.

2. For the purposes of this endorsement, the following definitions are added to this policy:

   Fungus(i) includes, but is not limited to, any of the plants or organisms belonging to the major group Fungi, lacking chlorophyll, and including mold(s), rusts, mildews, smuts, and mushrooms.

   Mold(s) includes, but is not limited to, any superficial growth produced on damp or decaying organic matter or on living organisms, and fungi that produce molds.

   Spore(s) means any dormant or reproductive body produced by or arising or emanating out of any fungus(i), mold(s), mildew, plants, organisms, or microorganisms.

All other provisions of this policy remain the same.

This endorsement becomes effective ___ MAY 19, 2002 ___ to be attached to and hereby made a part of Policy No. ___ AV 3391999-04 ___ issued to PONTIAC FLYING SERVICE, INC

By ___ National Union Fire Insurance Company of Pittsburgh, PA ___

Endorsement No. ___ 15 ___   ☒ AIG Aviation, Inc.
☐ AIG Aviation Insurance Services
Date of Issue ___ 6-14-02  bp ___   ☐ AIG Aviation (Canada), Inc.
☐ AIG Aviation (Illinois) Corporation
☐ AIG Aviation (Texas), Inc.
☐ American International Aviation Agency, Inc.

AV855 (2/02)   **095**   By _____
(Authorized Representative)

## Top Left Fax

**HARDY**
Aviation Insurance, Inc.

P.O. Box 12010
Wichita, KS 67277-2010

Phone: (316)945-6733
Toll Free: (800)721-6733
Fax: (316)945-2330
E-Mail: angie@hardyaviationins.com
WebSite: www.hardyaviationins.com

To: Bill S. or Jon Antonich     Date: 24 June, 2002
At: Phoenix Aviation              Fax #:
From: Angie Banz                  Pages: 1

Subject: AG School

We have an insured thinking of starting an ag training school. He is a former student of Harold Miller, Harold's Flying Service.

The proposed training aircraft would be a 2-seat Ag Cat. Our insured currently has right at 2000 total hours and 1700 ag hours.

Before we go into all the details and the insured goes any further into his planning, is this a risk Phoenix Aviation would entertain writing?

Await your response.

Thanks!

102

## Top Right Fax

**HARDY**
Aviation Insurance, Inc.

P.O. Box 12010
Wichita, KS 67277-2010

Phone: (316)945-6733
Toll Free: (800)721-6733
Fax: (316)945-2330
E-Mail: angie@hardyaviationins.com
WebSite: www.hardyaviationins.com

To: Bill S. or Jon Antonich     Date: 24 June, 2002
At: Phoenix Aviation              Fax #:
From: Angie Banz                  Pages: 1

Subject: AG School

We have an insured thinking of starting an ag training school. He is a former student of Harold Miller, Harold's Flying Service.

The proposed training aircraft would be a 2-seat Ag Cat. Our insured currently has right at 2000 total hours and 1700 ag hours.

Before we go into all the details and the insured goes any further into his planning, is this a risk Phoenix Aviation would entertain writing?

Await your response.

Thanks!

### THANKS
### BUT
### PHOENIX WILL DECLINE
### TO QUOTE

*Thanks, but no Thanks.*

*Bill*
6-24-02

101

06/24/02  MON 16:10  [TX/RX NO 5748]

## Bottom Left Form

HARDY Aviation
Insurance, Inc.

### AIRCRAFT LIABILITY COVERAGES

Pontiac Flying Service, Inc.

| LIABILITY NON-CHEMICAL | | LIABILITY CHEMICAL | |
|---|---|---|---|
| Bodily Injury | $100,000.00 Each Person | Bodily Injury | $100,000.00 Each Person |
| | $300,000.00 Each Occurrence | | $100,000.00 Each Occurrence |
| Property Damage | $100,000.00 Each Occurrence | Property Damage | $100,000.00 Each Occurrence |
| Single Limit Bodily Injury | | Single Limit Bodily Injury | |
| & Property Damage: | $1,000,000.00 | & Property Damage: | $0.00 |
| ☐ Passengers Included  ☑ Passengers Excluded | | Chemical Deductible: | $1,000.00 |

Liability and Hull Coverage
Ground Hull Only on N8762H - No liability
$1 mil non-chem on N5030 for gypsy moth
Afs Aerial Spraying adds insured N5030
...8/01...hull...N5030

| Coverages Required: | Chemical Coverage Includes: |
|---|---|
| ☐ Excluding Chemical | ☐ Pidoram |
| ☐ Restricted Chemical | ☐ Farmer/Owner/Grower |
| ☑ Comprehensive Chemical | ☑ Crops Treated |
| | ☑ Adjacent Fields |

### PILOT INFORMATION

As pilot, any accidents, citations or FAR violations / limitations?  ☑ Yes  ☐ No
If yes, explain: See front of app

Any physical impairments/limitations or medical waivers?  ☐ Yes  ☑ No
If yes, explain:

Any felony convictions/license suspensions for auto operation?  ☐ Yes  ☑ No
If yes, explain:

Any arrests for reckless driving or DUI?  ☐ Yes  ☑ No
If yes, explain:

Open Pilot Provisions: Commercial pilots with 1000 ag hours and 100 hours make/model

| Named Pilots Birthdate Cert.# | Age | AFR Date | Total Hours | Turbine Ag Hours | Retraining Hours Ag Hours | Make/Model | Last 12 Mos |
|---|---|---|---|---|---|---|---|
| Scott Petersen | 40 | | 2100+ | 1800+ | | Ag Cat | |
| 02/19/1900 | | | | | | | |
| 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 | | | | | | Ass. 800 | 500 |

w/o CertificationType Cml
Ratings BFR

I / We authorize HARDY Aviation Insurance, Inc., Wichita, KS, to represent me / us in placing of this insurance. I / We further affirm that the statements to this application are true and correct and are made in good faith and no information is withheld which would adversely affect the approval of any insurer. It is also understood that no coverage is afforded by this application until accepted by the insuring company.

Signature of applicant or authorized officer

100

## Bottom Right Form

HARDY Aviation Insurance, Inc.

P.O. Box 12010, Wichita, KS 67277-2010
316-945-6733 fax:316-945-2330

## Aerial Application Quote Request/ab

Applicant Name, Address, and Phone     Applicant is:     Present Policy Expiration Date
Pontiac Flying Service, Inc.     ☑ Individual     May 19, 2002 to May 19, 2003
                                  ☐ Corporation    Present Insurance Company
15755 E 2000 North Road          ☐ Partnership     AIG Aviation, Inc.
Pontiac, IL 61764                                   AV 7559/999
☎ (815) 842-3738
Names of All Partners or Officers, if any: Scott & Sarah Petersen
Name(s) used in any former Aerial Application business:
Operations in other states (list):
Home Airport: Pontiac Municipal     Airport ID 188   Length: 4000   Surface: asphalt
Aircraft are ☐ Hangared     Secondary Location:
Years of Aerial Application Experience: 4    Will aircraft be used for herbicide work?  ☑ Yes  ☐ No
Number of aircraft owned/operated/leased by insured: 3
Has any Insurer cancelled, declined, or refused to renew any aviation insurance coverage?  ☐ Yes  ☐ No
If yes, explain:
Has insured or any pilot had any hull, liability or chemical claims during the last 5 years?  ☑ Yes  ☐ No
If yes, explain: 6-99 herbicide drift to soybeans pilot Scott Petersen - Paid $7,000.00

### AIRCRAFT HULL COVERAGES

| | Make/Model | Reg Number | Engine H.P. | Insured Value | All Risk or Ground Only | Deductibles NM | Deductibles IM |
|---|---|---|---|---|---|---|---|
| 1 | 1976 Ag Cat G164A | N484G8 | 600 | $90,000.00 | All Risk | $500.00 | $9,000.00 |
| 2 | 1975 Ag Cat G164A | N8762H | | $45,000.00 | Ground not in Motion | $500.00 | $0.00 |
| 3 | 1991 Air Tractor AT503 | N503D | 0 | $350,000.00 | All Risk | $500.00 | $35,000.00 |
| 4 | | | | | | | |
| 5 | | | | | | | |
| 6 | | | | | | | |

Type Owner  Name/Address of co-owner, lessor, or lienholder (if any)     Aircraft Use(s)
☐ Sole Owner  *If lienholder, indicate loan amount & Loss Payee or Breach of Warranty   Chemical, seed, fertilizer application
☐ Co-Owner  1) People's Bank, P.O. Box 460, Gridley IL 61744-0460
☐ Lessor   2) People's Bank, P.O. Box 460, Gridley IL 61744-0460
☑ Lienholder* 3) Bank of Pontiac, 300 W. Washington, Pontiac IL  61764

If P & B, *excluding any appreciation for which a charge is made

Do all aircraft have valid restricted airworthiness certificates?  ☐ Yes  ☐ No

Also quote $1,000,000 premises for Pontiac
Muni. + incidental locations

099

Randy

Contacts:        Mary Beth Schwaegel

As I stated over the phone. This client went through school himself at Harolds F/S. Harold isn't the lead person anymore however I know that Harold is going to help Scott set this up and help over see it.

This client has been with us at least four years and now wants to help work with some new guys and get some training done.

There looking at buying or building a 2 seat ag cat from Hershey F/S and using it for dual training.

Scott is over 2000 ag now with about 2300 to 2500 total time.

We need to give an indication of what we can do, P&B with Dual instruction in the Cat.  1-3-1 Non Chemical with value around $80,000.

I suggest we price this at 2% hull and around $500. for Liab.

Please let us know your soonest since we need to advise client.

Randy Hardy - President
Hardy Aviation Insurance, Inc.
P O Box 12010
Wichita, KS 67277-2010
Phone  (316) 945-6733        Fax (316) 945-2330
Web Site: www.hardyaviationins.com

106

---



June 18, 2002

Pontiac Flying Service, Inc.

15755 E 2000 North Road
Pontiac, IL  61764

RE:  Aerial Application Insurance Renewal Confirmation

Dear Scott & Sarah:

We are pleased to confirm placement of aerial application insurance per the enclosed confirmation of coverage.

Also enclosed is an invoice indicating the annual premium for this coverage, as well as an application form should it be necessary.  If we have enclosed a new application form, please complete any highlighted areas on the application, sign where indicated and return the application to our office, along with your premium payment.  Retain the confirmation form as evidence of coverage until your policy arrives.  Please advise our office of any necessary changes.

Remember that in the event of a loss, the wording of the policy determines exact coverage.

Higher limits of liability protection are sometimes available.  If you desire information regarding higher limits, please contact our office.

We appreciate your business and welcome your call should you have any questions.

Cordially,

HARDY Aviation Insurance, Inc.
Angela K. Banz
Executive Assistant
/ab
Enclosure

---

## HARDY AVIATION INSURANCE

### INVOICE

| Customer Number | | |
|---|---|---|
| 1516 | Date | Invoice Number |
| | 06/18/2002 | 7279 |

Pontiac Flying Service, Inc.

15755 E 2000 North Road
Pontiac, IL  61764

| Policy Period | Description | Premium |
|---|---|---|
| 05/19/2002 to 05/19/2003 | Aerial Application Insurance Replacement N503D, N48468, N8762H | $38,564.00 |
| | $15,426. Due on receipt | |
| | $11,569. Due 7-19-02 | |
| | $11,569. Due 8-19-02 | |

Insurance Company: AIG
Premium Due

| Invoice Amount |
|---|
| $38,564.00 |

Please indicate invoice# on check                    Thank You!

---

```
***************
***  TX REPORT  ***
***************

TRANSMISSION OK

TX/RX NO                    2064
CONNECTION TEL              18724967099
CONNECTION ID              PHOENIX AVIATION
ST. TIME                   06/24 15:13
USAGE T                    00'21
PGS. SENT                  1
RESULT                     OK
```



|  |  |
|---|---|
| | P.O. Box 12010 |
| | Wichita, KS  67277-2010 |
| **HARDY** | Phone:   (316)945-6733 |
| Aviation Insurance, Inc. | Toll Free:  (800)721-6733 |
| | Fax:   (316)945-2330 |
| | E-Mail:  angie@hardyaviationins.com |
| | WebSite:  www.hardyaviationins.com |

To:    Bill S. or Jon Antonich        Date:  24 June, 2002
At:    Phoenix Aviation                Fax #:
From:  Angie Banz                      Pages:  1

Subject:  AG School

We have an insured thinking of starting an ag training school.  He is a former student of Harold Miller, Harold's Flying Service.

The proposed training aircraft would be a 2-seat Ag Cat.  Our insured currently has right at 2000 total hours and 1700 ag hours.

Before we go into all the details and the insured goes any further into his planning, is this a risk Phoenix Aviation would entertain writing?

Await your response.

Thanks!

103

**Notations**

For: _____ Date: 2.21.02 Time: _____
Insured: Pontiac Craft
Person Calling: _____

☐ Hold at Desk   ☐ File Away   ☐ Response Needed

Message: _____

Called to make sure Scott
got our quote — he did, and
he said it would be about
1 more week, hopefully for the
banks to approve his loan.

Harold gave us this same time
frame

110    From: (initials)    HA100.XLS

---

For: _____ Date: 2.8.00 Time: _____
Insured: Pontiac Fly Serv
Person Calling: _____

☐ Hold at Desk   ☐ File Away   ☐ Response Needed

Message: Scott pilot
get quote
N503 @ $360,000.
> 2 pl

check out by Harold miller's
turbine transition course
40 hrs. turbine
Covington PT-6 course also

respects Cnt
quote. ARH us going

109    From: (initials)    HA100.XLS

---

500 West Madison Street
Suite 1700
Chicago, IL 60661
Phone: 312-831-6050
Fax: 312-691-6058

**AIG AVIATION**

# Fax

To: Pontiac Flying Service, Inc.        From: Peter Guy
Attention: Sarah Petersen

Fax: 1-815-844-2401        Date: May 8, 2003
Phone: _____        Pages: 1

Re: Insured: Pontiac Flying Service, Inc.    CC: Hardy Aviation Insurance, Inc.
    Aircraft: N503D, Air Tractor        1-316-945-2330
    D/L: 5/5/03
    Our File: HP03331

☐ Urgent   ☐ For Review   ☐ Please Comment   ☐ Please Reply   ☐ Please Recycle

Dear Ms. Petersen:

AIG Aviation is the Managing General Aviation Agent of National Union Fire Insurance Company of Pittsburgh, PA. (National Union)

National Union issued Policy No. AV3391909-04 with a policy period from May 19, 2002 to May 19, 2003.

Please be advised that we are investigating the above captioned incident under a strict reservation of rights. Our investigation is not a waiver of any rights Pontiac Flying Service, Inc. or National Union may have under the subject policy regarding this incident.

Please contact us directly with questions or concerns.

Sincerely,

(signature)

108

05/08/03  THU 08:31  [TX/RX NO 5774]  P. 01

---

HARDY Aviation Insurance, Inc.
PHONE: (316) 945 6733
FAX: (316) 945-2330

# LOSS REPORT

May 5, 2003
Current Date

Insured: Pontiac Flying Service, Inc.

Address: 15755 E 2000 N Road, Pontiac IL 61764    Phone (815) 844-2707 or 844-3738

Reported By: Sarah Petersen (Owner)    Date Reported: 5/5/03

Aircraft: 1991 Air Tractor AT 503    N#: 503D

Date of Loss: 5/5/03    Location: Pontiac IL.

Policy Number: AV 3391999 04    Policy Date: 5/19/02 to 5/19/03

Pilot / Name: Rick Lucente    Type of License: n/a

Aircraft now located at: Pontiac IL (just inside city limits on city property)

Passengers:
1. one – identity tba
2.
3.

Injuries:
1. pilot and passenger fatality injured
2.
3.

Details of Loss: Aircraft crashed not far from Pontiac airport, on city property – cause unknown at time of Loss report

Loss Estimate and Damage : Aircraft totalled

Contact for Adjuster: Scott or Sarah Petersen    Phone: (815) 844-2707 or 844-3738

Adjuster Assigned: _____    Date Assigned: _____

Reported to Insurance Company / Date: May 5, 2003    Method: Fax ☒ / Phone ☐ / Letter ☐

Information Taken By: ~~Melinda Greene~~ (signature)    Sign

HA103.DOC    107



PART 2

Policy Number    AV 3301999-04    Previous Policy Number    AV 3301999-03

**DECLARATIONS**

This page with "Policy Provisions – Part 1" Form AG0109/9301 and all endorsements attached hereto completes this common insurance physical damage and liability policy, issued by the company as indicated by an "X" in the box to the left of the company's name, here-inafter called the Company.

☐ AMERICAN HOME ASSURANCE COMPANY
☐ NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.
☐ THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA

**CERTIFIED COPY**

ITEM 1.    NAMED INSURED    PONTIAC FLYING SERVICE, INC.
15755 E 2000 NORTH ROAD, PONTIAC, IL 61764
ADDRESS

ITEM 2.    Policy Period:    from    MAY 19, 2002    to    MAY 19, 2003    12:01 A.M. Standard Time at the
address in Item 1. The insurance afforded is only with respect to such and so many of the following coverages as are indicated by specified premium charge or charges. The limit of the Company's liability against such coverages shall be as stated herein, subject to all of the terms of this policy having reference thereto.

ITEM 3.    Liability Coverages

| LIMITS OF LIABILITY | | | | |
|---|---|---|---|---|
| | NON-CHEMICAL | CHEMICAL | | LIABILITY PREMIUM |
| A. Bodily Injury – excluding Passengers | 100,000.  each person 300,000.  each occurence | 100,000.  each person 300,000.  each occurence 100,000.  aggregate | | 3,407. |
| B. Property Damage | 100,000.  each occurence | 100,000.  each occurence 100,000.  aggregate | | |
| C. Passenger Liability | each person each occurence aggregate | Not applicable aggregate | | 6,326. |
| D. Single Limit – Property Damage & Bodily Injury, excluding Passengers | each person each occurence aggregate | Not applicable Not applicable | | |
| E. Medical Expense – excluding Passengers | each person each occurence | Not applicable aggregate | | |

Chemical Limits of Liability are part of and not in addition to the Non-chemical Limits of Liability.    LIAB. TOTAL $    5,735.
All liability arising from any one occurrence shall not exceed the Non-chemical Limits of Liability.

ITEM 4.    Description of Aircraft and Physical Damage Coverage hereunder:

| F.A.A. CERT. NO. | MAKE AND MODEL | YEAR BUILT | SEATS PASS | INSURED VALUE | COVERAGE | PHYSICAL DAMAGE PREMIUMS | DEDUCTIBLES | |
|---|---|---|---|---|---|---|---|---|
| | | | | | PHYSICAL DAMAGE | | NOT IN MOTION | IN MOTION INGESTION, ICR INGORING |
| N5530 | AT1 TRACTOR 503 | 91 | 1 | 350,000. | F - FC | 10,028. | 500. | 9,000. |
| N48438 | AG CAT G164A | 76 | 1 | 90,000. | F - FC | 6,472. | 500. | N/A |
| N97671 | AG CAT G164A | 75 | 1 | 45,000. | H - HC | 1,835. | 500. | N/A |

PHYSICAL DAMAGE Coverage Identified:
F. All Risks: Ground & Flight
G. All Risks: Not In Flight
H. All Risks: Not In Motion

CHEMICAL CATEGORY:
CC Comprehensive Chemical
RC Restricted Chemical
XC Excluding Chemical
N/A Not Applicable

PHYSICAL DAMAGE TOTAL  $    28,827.    POLICY PREMIUM  $    38,562.

ITEM 5.    When in flight the aircraft will be piloted only by SEE AG018
ITEM 6.    The aircraft will be used only for the purpose Aerial Application.
ITEM 7.    LOSS PAYABLE / Any loss under coverage F, G, and H is payable as interest may appear to the Named Insured and

ITEM 8.    The aircraft will be principally based at PONTIAC MUNICIPAL  Airport, PONTIAC  City, IL  State.

Producer    HARDY AVIATION INSURANCE, INC

Countersigned

At

By _____    **EXHIBIT**    Approved By _____
(Authorized Representative)    A    (Authorized Representative)

AG04 (3/98)

---

lease enclose your full and correct Agency Name, Address, Telephone Number, ax Number & Tax Identification:

AGENCY NAME:    Hardy Aviation Insurance, Inc.

AGENCY ADDRESS:    P O Box 12010  Wichita, KS 67277-2010

AGENCY TELEPHONE NUMBER:    316-721-6733

AGENCY FAX NUMBER:    316-721-9559

Tax Identification Number:    48-1159898

IS AGENCY INCOPORATED ?:    Yes

PLEASE ATTACH AND RETURN A COPY OF YOUR AGENCY'S RESIDENT LICENSE. IF YOU HOLD ANY NON-RESIDENT LICENSE(S) PLEASE INDICATE THE CERTIF NUMBER AND THE EXPIRATION DATE IN THE BLANK. IF NO NON-RESIDENT LICENSE(S) ARE HELD AT THE STATING THE STATES, SIGN, AND RETURN ALONG

Very truly yours,

PHOENIX AVIATION MANAGERS (TEXAS), INC.

Roger M. Ridings
President

ACCEPTED BY:

TITLE  President

DATE  1-25-95

RR/kn

128

---

## Notations

For: _____    Date: 2-26-02    Time: _____
Insured: Pontiac
Person Calling: Sarah

☐ Hold at Desk    ☐ File Away    ☐ Response Needed

Message:

Need certs to VA & FL showing current cov so they can get their licenses renewed
Send those to Pontiac X

At renewal:
Will need $1ail XC - see each did they have 2 guaranteed guys with contracts which is why they bought the 503.

The loan on the 503 should close Thurs or Fri. this wks

Had to take on an investor so must improve + justify all expenditures. Need to reassure guides as possible at renewal.

112    From: _____

HA100.XLS

---

## Notations

For: _____    Date: 2-26-02    Time: _____
Insured: Pontiac
Person Calling: Sarah - USAIG

☐ Hold at Desk    ☐ File Away    ☐ Response Needed

Message:

Frank would prefer that we leave this with USAIG for now) until April.

At renewal, Frank will give't his best terms + maybe we can move it then. He doesn't want to jump in mid-term.

He gave an indication of 5% on the hull.

He explained this to Scott - he was pleased to hear he might get a better deal @ renewal.

111    From: _____

HA100.XLS

IN WITNESS WHEREOF, the Company specified on the Declaration Page has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned on the Declarations Page by a duly authorized agent of the Company and approved by the Aviation Managers.

National Union Fire Insurance Company of Pittsburgh, Pa.

_J. P. Cavores_
President

American Home Assurance Company

_Larry Zoller_
President

The Insurance Company of the State of Pennsylvania

_Theodore J. Surgely_
President

_Elizabeth M. Mee_
Secretary

National Union Fire Insurance Company of Pittsburgh, Pa.
The Insurance Company of the State of Pennsylvania
American Home Assurance Company

AG01 (9/98)

| Days Policy In Force | Minimum Earned Premium |
|---|---|
| Less than 31 days | 33-1/3% of annual premium |
| 31 days or more but less than 61 days | 60% of annual premium |
| 61 days or more but less than 91 days | 75% of annual premium |
| 91 days or more but less than 120 days | 85% of annual premium |
| 120 days or more | 100% of annual premium |

Cancellation for non-payment of premium can be considered cancellation by the Named Insured. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but tender of unearned premium is not a condition of cancellation.

**5. CHANGES**

This policy contains all the agreements between the Named Insured and the Company concerning the insurance that is afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with the Aviation Managers consent. This policy's terms can be amended or waived only by endorsement signed and issued by the Aviation Managers and made a part of this policy.

**6. EXAMINATION OF INSURED'S BOOKS AND RECORDS**

The Aviation Managers may examine and audit the Insured's books and records as they relate to this policy at any time during the policy period and up to three (3) years afterward.

**7. FRAUD OR MISREPRESENTATION**

This policy shall be void if the Named Insured has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject interest or in case of any fraud, attempted fraud or false swearing by the Named Insured touching any matter relating to this insurance or the subject thereof, whether before or after a loss.

**8. INSPECTION AND SURVEYS**

The Company or Aviation Managers have the right but are not obligated to:

a)  make inspections and surveys at any time;

b)  give the Named Insured reports on the conditions found;

c)  recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. The Company or Aviation Managers do not make safety inspections. The Company or Aviation Managers do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. The Company or Aviation Managers do not warrant that conditions:

1)  are safe and healthful;

2)  comply with laws, regulations, codes or standards.

This condition applies not only to the Company or Aviation Managers, but also to any rating, advisory, rate service or similar organization that makes insurance inspection, surveys, reports or recommendations.

**19. NONRENEWAL**

If the Company decides not to renew this coverage, the Aviation Managers will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than thirty (30) days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**20. PREMIUMS**

The first Named Insured shown in the Declarations is responsible for the payment of all premiums.

**21. REPRESENTATIONS**

CERTIFIED COPY

By accepting this policy, the Named Insured agrees:

a)  the statements in the Declarations are accurate and complete;

b)  those statements are based upon representations of the Named Insured to the Company, Aviation Managers and any of their agents relating to this insurance;

c)  the Aviation Managers have issued this policy in reliance upon the Named Insured's representations.

**22. STATE STATUTES**

If the terms of this policy are in conflict with or inconsistent with the statutes of any state where this policy is in effect, the Company will conform to those state statutes.

**23. SUBROGATION**

If the Insured has rights to recover all or part of any payment the Company has made under this policy, those rights are transferred to the Company. The Insured must do nothing after loss to impair them. At the request of the Company or Aviation Managers, the Insured will bring suit or transfer those rights to the Company and do whatever else is necessary to secure such rights. The Insured shall do nothing after a loss to prejudice such rights. This condition shall not apply respect Coverage E -Medical Expense.

**24. TRANSFER OF THE NAMED INSURED'S RIGHTS AND DUTIES UNDER THIS POLICY**

The Named Insured's rights and duties under this policy may not be transferred without the Aviation Managers written consent except in the case of the death or bankruptcy of an individual Named Insured.

If such individual Named Insured dies or is adjudged bankrupt or insolvent, his or her rights and duties will be transferred to the Named Insured's legal representative but only while acting within the scope of duties as the Named Insured's legal representative is appointed, anyone having proper temporary custody of the Named Insured's property will have such Named Insured's rights and duties but only with respect to that property, but in no event for more than sixty (60) days following such death or adjudication.

AG01 (9/98)                                                                    - 18 -

1)  the interest of the Named Insured and of all other parties affected;

2)  any encumbrances thereon;

3)  the actual cash value of the property at the time of the loss;

4)  the amount, place, time and cause of such loss;

5)  the description and amounts of all other insurance covering such property;

unless such time is extended in writing by the Aviation Managers.

**11. NO BENEFIT TO BAILEE**

The insurance afforded by this policy shall not inure directly or indirectly to the benefit of any carrier or bailee liable for loss to the aircraft.

**APPLICABLE TO ALL COVERAGES**

**12. ASSISTANCE AND COOPERATION OF THE INSURED**

CERTIFIED COPY

The Insured shall cooperate with the Company and, upon the Company's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits. The Insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for such immediate medical and surgical relief to others as shall be imperative at the time of an occurrence.

**13. BANKRUPTCY**

Bankruptcy or insolvency of the Insured or of the Insured's estate shall not relieve the Company of its obligations under this policy.

**14. CANCELLATION**

a)  The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to the Company or Aviation Managers advance written notice of cancellation.

b)  The Company or Aviation Managers may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least ten (10) days before the effective date of cancellation.

c)  The Company or Aviation Managers will mail or deliver notice to the first Named Insured's last mailing address known to the Company or Aviation Managers.

d)  If this policy is cancelled, the Aviation Managers will return any premium refund due. If the Company or Aviation Managers cancel, the refund will be pro rata. The cancellation will be effective even if the Company or Aviation Managers have not made or offered a refund. The Company or Aviation Managers shall not be liable for any return of the physical damage premium in respect to any aircraft on which a total loss has been paid.

e)  If notice is mailed, proof of mailing will be sufficient proof of notice.

f)  If the first Named Insured cancels this policy or requests substitution, addition or deletion of aircraft and/or alteration of coverage, the minimum earned premium will be computed according to the following schedule:

AG01 (9/98)                                                                    - 16 -

APPLICABLE TO COVERAGES F, G, AND H (PHYSICAL DAMAGE)

**ACTION AGAINST THE COMPANY AND PAYMENT OF LOSS**

The Company does not have to pay, and the Named Insured does not have the right to sue on this policy, unless all of its terms have been fully complied with and until thirty (30) days after the required proofs of loss have been filed with the Company and the amount of loss is determined as provided by the policy, nor at all unless commenced within twelve (12) months after the date of the loss.

**APPRAISAL OF LOSS**

If the Named Insured and the Company fail to agree as to the amount of loss, each shall upon written notice to the other, hire at its own expense an independent aircraft appraiser. The appraisers will then agree on a knowledgeable and neutral umpire. If they cannot agree on the umpire in fifteen (15) days, a Judge of the court of the pending appraisal will appoint the umpire. Agreement by any two of these three shall determine the amount of loss. The Named Insured and the Company will share the umpire's cost equally. But this clause shall not deprive or waive any rights of the Company.

**AUTOMATIC REINSTATEMENT**

In the event of loss, whether or not covered by this policy, the amount of insurance in respect to any aircraft shall be reduced as of the time and date of loss by the amount of such loss. Such reduced value shall continue until repairs are commenced, and the amount of insurance shall be automatically increased by the value of the completed repairs until the amount of insurance is fully reinstated or the policy has expired.

**INSURED'S DUTIES WHEN LOSS OCCURS**

When loss occurs the Insured shall:

a) take all reasonable precautions to protect the property or aircraft after an occurrence. The Company shall reimburse the Insured all reasonable cost in affording such protection;

b) not abandon the property or aircraft;

c) immediately contact the nearest Aviation Managers and provide prompt written notice at the address appearing on the back of the policy cover, including the:

   1) time, place and description of events;

   2) description and location of the aircraft;

d) promptly report theft and vandalism to the Aviation Managers and local police;

e) do nothing after the loss to harm the Company's rights of recovery against any person or organization;

f) allow the Aviation Managers to inspect the property;

g) submit to examination under oath if requested by the Company;

h) allow the Company to inspect all aircraft records, pilot logbooks, repair and service invoices, sales receipts and any other pertinent records until settlement of the loss;

i) file proof of loss with the Aviation Managers within sixty (60) days after the date of loss, in the form of a sworn statement to include:

---

1) immediately send the Aviation Managers copies of any demands, notices, summonses or legal papers received in connection with the claim or suit;

2) authorize the Aviation Managers to obtain records and other information;

3) cooperate with the Aviation Managers in the investigation, settlement or defense of the claim or suit;

4) assist the Aviation Managers, upon the Aviation Managers' request, in the enforcement of any right against any person or organization which may be liable to the Insured because of injury or damage to which this insurance may also apply.

c) No Insured will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid to others, without the Aviation Managers' consent.

**4. SEVERABILITY OF INTEREST**

Except with respect to the Limit of the Company's Liability and any rights or duties specifically assigned in this policy to the first Named Insured, this insurance applies:

a) as if each Named Insured were the only Named Insured;

b) separately to each Insured against whom claim is made or suit is brought.     CERTIFIED COPY

APPLICABLE TO COVERAGE E (MEDICAL EXPENSE)

**5. ACTION AGAINST COMPANY**

No person or organization has the right under this policy to sue on this policy unless all its terms have been fully complied with and until thirty (30) days after the required proofs of claim have been filed with the Company.

**6. MEDICAL REPORTS: PROOF AND PAYMENT OF CLAIM**

a) The injured person or someone on his or her behalf, as soon as practical after the accident, must give the Aviation Managers written proof of claim and if requested by the Aviation Managers:

   1) provide his or her sworn statement under oath;

   2) authorize the Aviation Managers to obtain medical reports and copies of records;

   3) submit to physical examination by a physician selected by the Aviation Managers, when and as often as the Aviation Managers may reasonably require.

b) The Company may pay the injured person or any person or organization rendering the services and such payment:

   1) shall reduce the amount payable for the injury;

   2) shall not constitute admission of liability by an Insured or the Aviation Managers.

*AG01 (9/98)*

- 14 -

---

are included and combined within the "each person", "each occurrence" and aggregate Limits of Liability specified in the Declarations, as applicable, and there are no separate or additional Limits of Liability for related derivative claims.

"Total Loss" means any physical damage loss for which the "cost to repair" when added to the "salvage value" (the value of the aircraft after physical damage and prior to repairs) equals or exceeds the Insured Value of the aircraft as set forth in Item 4 of the Declarations. Disappearance or theft of the entire aircraft shall be considered as a total loss.

## CONDITIONS

APPLICABLE TO COVERAGES A, B, C, AND D (BODILY INJURY AND PROPERTY DAMAGE)

**1. ACTION AGAINST THE COMPANY**

No person or organization has a right under this policy:

a) to join the Company as a party or otherwise bring the Company into a suit asking for damages from an Insured;

b) to sue on this policy unless all its terms have been fully complied with.

A person or organization may sue the Company to recover on an agreed settlement or on a final judgment against an Insured obtained after an actual trial; but the Company will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by the Company, the Insured and the claimant or the claimant's legal representative. Service of process may be made upon the Aviation Managers on behalf of the Company. However the Company does not waive its right to commence an action in any court of competent jurisdiction or to seek a transfer to another court as permitted by law.

**2. FINANCIAL RESPONSIBILITY**

If this policy is certified as proof of insurance under any governmental financial responsibility law applicable to aircraft, the Company will pay the minimum amounts required by that law which do not exceed the limit of liability of this policy. The Named Insured agrees to reimburse the Company promptly for any amounts the Company would not have had to pay were it not for this clause.

**3. NOTICE OF OCCURRENCE, LOSS, CLAIM OR SUIT**

a) The Named Insured must see to it that the Aviation Managers are promptly notified in writing at the nearest office, whose addresses is listed on the back of the policy cover, of an occurrence that may result in a claim. Notice shall include:

   1) particulars sufficient enough to identify the Insured; and

   2) how, when and where the occurrence took place; and

   3) the names and addresses of any injured persons and witnesses.

b) If a claim is made or suit is brought against any Insured, the Named Insured must see to it that the Aviation Managers receive prompt written notice of the claim or suit. The Named Insured and any other Insured involved must:

---



"Medical Expense" means expenses for necessary medical, surgical, x-ray or dental services, including prosthetic devices, and necessary ambulance, hospital, professional nursing and funeral services.

"Mooring" shall mean while the aircraft is in water, or during launching onto or hauling up therefrom (except under its own power or momentum).

"Named Insured" means the person or organization named in Item 1 of the Declarations.

"Occurrence" means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage during the policy period. In the event of continuing or progressively deteriorating damage over any length of time, such damage shall be deemed to be one occurrence, and shall be deemed to occur only when such damage first commences.

"Partial Loss" means any physical damage loss which is not a total loss.

"Passenger" means any person in, on, or boarding the aircraft for the purpose of riding or flying therein or alighting therefrom after a flight or attempted flight therein, including crew member(s).

"Physical Damage" means direct and accidental physical loss of or damage to the aircraft, hereinafter called loss, but does not include loss of use or any residual depreciation or diminution in value (including loss of guaranty or warranty), if any, after repairs have been made.

"Pleasure and Business" means use in the business of the Insured including personal and pleasure uses but excluding any operation for hire or reward. Cost reimbursement shall be included within the definition of Pleasure and Business provided that such cost reimbursement is limited to:

1) fuel, oil, lubricants, and other additives;

2) travel expenses of the crew, including food, lodging, and ground transportation;    CERTIFIED COPY

3) hangar and tie-down costs away from the aircraft's base of operation;

4) insurance obtained for the specific flight;

5) landing fees, airport taxes, and similar assessments;

6) customs, foreign permit, and similar fees directly related to the flight;

7) in flight food and beverages;

8) passenger ground transportation;

9) flight planning and weather contact services;

10) an additional charge equal to 100% of the expenses lists in subparagraph 1) of this paragraph.

"Property Damage" means direct physical injury to or destruction of tangible property which occurs during the policy period, including loss of use thereof at any time resulting therefrom.

"Related Derivative Claims" means all claims for care and loss of service, loss of society and consortium, mental anguish, emotional distress, loss of support, medical and funeral expenses, and any and all other damages from or related to bodily injury to any person or passenger. Notwithstanding anything to the contrary in the definition of bodily injury, the Company's liability and coverage for damages for both bodily injury and related derivative claims

*AG01 (9/98)*

"The release or distribution of sterile insects, predatory/beneficial insects, bacteria, fungi or viruses for the purpose of controlling, mitigating or exterminating insects or other pests or weeds is included within the definitions of Comprehensive Chemical (CC) and Restricted Chemical (RC) and excluded from the definition of Excluding Chemical (XC) .

"Crew" means the pilot in-command, co-pilot, flight engineer, flight attendant or anyone else who is in, on, or boarding the aircraft for assisting in the operation of the aircraft.

"Disappearance" means missing in flight and not reported for sixty days after commencing a flight.

"Federal Aviation Administration (FAA)" means the duly constituted authority of the United States of America having jurisdiction over civil aviation, or its duly constituted equivalent in any other country.

"In Flight" means, with respect to fixed wing aircraft, the time commencing with the actual take-off run of the aircraft and continuing thereafter until it has completed its landing run; and if the aircraft is a rotorcraft, from the time the rotors start to rotate under power for the purpose of flight until they subsequently cease to rotate after landing.

"In Motion" means while the aircraft is moving under its own power or the momentum generated therefrom or while it is in flight and, if the aircraft is a rotorcraft, any time that the rotors are rotating or while it is in flight.

"Ingestion" means damage to aircraft turbine engines or turbine auxiliary power units (if a part of the aircraft as defined) caused by objects or substances not a part of the engine or its accessories, not intended to be used in the engine, which occurs during the policy period and is the result of a single incident and of sufficient severity to require (or would require if its severity were known) immediate repair before further use.

"Insured" means with respect to Coverages A, B, C and D, not only the Named Insured but also officers, directors and employees of the Named Insured and, in the course of the Named Insured, but only while acting within the scope of their duties as such and provided the actual use of the aircraft is with the express permission of the Named Insured. Except with respect to the Named Insured the provisions of this paragraph do not apply:

a) to any employee with respect to bodily injury of another employee of the same employer injured in the course of such employment;

b) to any person or organization or to any agent or employee thereof (other than any employee of the Named Insured while acting in the course of his employment by the Named Insured):

  1) who manufactures, builds, sells or distributes aircraft, aircraft engines, aircraft components, aircraft accessories or fuel used in aircraft;

  2) who is engaged in the operation of an aircraft repair shop, aircraft sales agency, aircraft rental service, aircraft flying school, aircraft management service, aircraft aerial application service, aircraft inspection, appraisal, certification or examination service, commercial flying service, airline, airport, hangar, or pilot training center;

  3) who is engaged in the activity of instruction, evaluation, examination or certification of any pilot or crew member or prospective pilot or crew member;

  4) who is charging a fee and/or receiving any remuneration or benefit for providing any type of service whatsoever in connection with the ownership, maintenance or use of any insured aircraft.

c) to any person or organization operating the aircraft under the terms of any rental agreement or training program which provides any remuneration or benefit to the Named Insured for the use of the aircraft;

Coverage B. The total liability of the Company for all damages because of all property damage sustained by one or more persons or organizations as the result of any one occurrence shall not exceed the limit of liability stated in the Declarations as applicable to "each occurrence" and in the aggregate.

Coverages C. The total liability of the Company for all damages, including all related derivative claims and all damages for care and loss of services, because of bodily injury sustained by any person as the result of any one occurrence shall not exceed the limit of liability stated in the Declarations as applicable to "each person". Subject to the above provision respecting "each person", the total liability of the Company for all damages, including all related derivative claims and all damages for care and loss of services, because of bodily injury sustained by two or more persons as the result of any one occurrence shall not exceed the limit of liability stated in the Declarations as applicable to "each occurrence".

Coverage D. The Total liability of the Company for all damages, including all related derivative claims and all damages for care and loss of services, because of bodily injury or property damage sustained by one or more persons or organizations as the result of any one occurrence shall not exceed the limit of liability stated in the Declarations as applicable to "each occurrence" and in the aggregate.

For the purpose of determining the limit of the Company's liability, all bodily injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence.

COVERAGE E
(Total Liability)

The limit of liability stated in the Declarations as applicable to "each person" is the limit of the Company's liability for all expenses incurred by or on behalf of each person who sustains bodily injury in any one occurrence; the limit of liability stated in the Declarations for Coverage E as applicable to "each occurrence" is, subject to the above provision respecting each person, the total limit of the Company's liability for all expenses incurred by or on behalf of two or more persons who sustain bodily injury in any one such occurrence.

COVERAGES F, G and H
(Total Liability)

With respect to total loss, the Company will pay the insured value of the aircraft, as stated in the Declarations, subject to any applicable deductible.

With respect to partial loss, the Company may pay for the least expensive and most reasonable means to repair the aircraft or may pay for the loss in money, subject to any applicable deductible, as hereinafter provided:

1. if repairs are made by other than the Named Insured, the total of the following:

  a) cost to repair the damaged property with material of like kind and quality (excluding any charges for overtime);

  b) cost of the least expensive and most reasonable method of transporting new and/or damaged parts and/or the damaged aircraft to the place of repair and the return of the repaired aircraft to the place where the loss occurred or the place where the aircraft is regularly based, whichever is nearer;

2. if repairs are made by the Named Insured, the total of the following:

  a) actual cost to the Insured of material of like kind and quality;

  b) actual wages paid for labor, excluding any overtime;

c)  up to 150% of item b) in lieu of overhead and supervisory services;

d)  cost of the least expensive and most reasonable method of transporting new and/or damaged parts and/or the damaged aircraft to the place of repair and the return of the repaired aircraft to the place where the loss occurred or the place where the aircraft is regularly based, whichever is nearer.

With respect to any partial loss or total loss:

1)  the amount due under this policy shall not exceed the amount due were the loss payable as a total loss;

2)  any salvage value remaining shall inure to the benefit of the Company and the Named Insured shall provide clear title thereto;

3)  any equipment attached to the aircraft, even if subsequent to the effective date of coverage, shall be considered a part of the aircraft;

4)  there shall be no abandonment of any damaged property without the consent of the Company.

If the loss is due to theft or disappearance, the Company shall have the right to return the stolen property at any time prior to actual payment of the claim hereunder, with payment for any physical damage sustained thereto.

DEFINITIONS                                CERTIFIED COPY

When appearing in this policy in bold face print:

"Aerial Application" means the application by aircraft of seeds, fertilizers or chemicals and includes flights required in direct support thereof.

"Aircraft" means the aircraft described in Item 4 of the Declarations including the propulsion system and equipment usually attached to the aircraft (1) while attached to the aircraft, (2) while temporarily removed from the aircraft and (3) while removed from the aircraft for replacement such as replacement by a similar item; but commenced; also tools and equipment which are specifically designed for the aircraft and which are ordinarily carried therein.

"Aviation Managers" mean AIG Aviation, Inc., American International Aviation Agency, Inc., or any of the subsidiary or affiliated companies, branch offices or authorized representatives.

"Bodily Injury" means bodily injury, sickness, disease and, if arising out of the foregoing, mental anguish sustained by any person which occurs during the policy period, including death at any time resulting therefrom.

"Chemical(s)" means any substance or mixture of substances intended to prevent, destroy, repel or mitigate any pest, or any substance or mixture of substances intended for use as a plant or tree regulator, defoliant or desiccant. The common name of a chemical includes preparations of the chemical, in any form, having a trade or proprietary name.

  "Comprehensive Chemical (CC)" means seeds, fertilizers, or any chemical except Picloram; or any defoliant desiccant applied in dust form; or any inorganic arsenical compound, except arsenic acid used in liquid spray form as a cotton desiccant or defoliant.

  "Restricted Chemical (RC)" means seeds, fertilizers, insecticides or fungicides only.

  "Excluding Chemical (XC)" means seeds or fertilizers only.

AG01 (9/98)                                    - 10 -

  2)  any electrical malfunction or failure of any electronic components, accessories, or electrically powered equipment;

  3)  any mechanical, hydraulic, pneumatic, or structural malfunction or failure,

  unless any such loss or damage in 1), 2) and 3) is the direct result of other physical damage covered by this policy.

  Damage resulting from electrical malfunction or failure of any electronic component(s), accessory(ies), or electrically powered equipment is considered breakdown of the entire electrical system containing such electronic component(s), accessory(ies), or electrically powered equipment.

  Damage resulting from the breakdown, failure or malfunction of an engine component, accessory or part is considered mechanical breakdown of the entire engine.

d)  to loss or damage to turbine aircraft engines and auxiliary power units insured under this policy if such damage is caused by:

  1)  foreign objects unless a result of ingestion;

  2)  heat or temperature change from the operation, attempted operation or shutdown of the engine;

  unless any such loss or damage is the direct result of other physical damage covered by this policy.

LIMIT OF THE COMPANY'S LIABILITY   CERTIFIED COPY

ALL COVERAGES
(Other Insurance)

Except with respect to insurance specifically purchased by the Insured to apply in excess of this policy, if there is other insurance in the Insured's name or otherwise, against loss, liability or expense covered by this policy, the Company shall not be liable under this policy for a greater proportion of such loss, liability or expense than the applicable limit of the Company's liability bears to the total applicable limit of liability of all valid and collectible insurance against such loss, liability or expense. If collectible insurance (other than insurance purchased to apply as excess hereof) under any other policy of the Company is available to the Insured covering a loss covered hereunder, the Company's total liability will in no event exceed the greater or greatest limit provided under this or any such policy.

COVERAGES A, B, C AND D
(Total Liability)

Regardless of the number of (1) Insureds under this policy, (2) persons or organizations who sustain bodily injury or property damage, (3) claims made or suits brought (derivative or otherwise) on account of bodily injury or property damage, or (4) aircraft to which this policy applies, the Company's liability is limited as follows:

  Coverages A. The total liability of the Company for all damages, including all related derivative claims and all damages for care and loss of services, because of bodily injury sustained by any person as the result of any one occurrence shall not exceed the limit of liability stated in the Declarations as applicable to "each person". Subject to the above provision respecting "each person", the total liability of the Company for all damages, including all related derivative claims and all damages for care and loss of services, because of bodily injury sustained by two or more persons as the result of any one occurrence shall not exceed the limit of liability stated in the Declarations as applicable to "each occurrence" and in the aggregate.

AG01 (9/98)                                    - 8 -

d) to claims arising from the aerial application of herbicides or Glyphosate to forests, woods, timberlands or tree farms;

e) to claims arising from controlled and/or prescribed burning;

f) to claims arising from any intentional act or omission that causes bodily injury or property damage;

g) except with respect to bodily injury or property damage resulting from efforts to prevent dangerous interference with the operation of the aircraft, to those occurrences either expected or intended from the standpoint of the Insured;

6. Under Coverages A, C and D

a) to any obligation for which the Insured or any carrier as his insurer may be held liable under any workers' compensation, unemployment compensation or disability benefits law, or under any similar law;

b) to bodily injury to any employee of the Insured arising out of and in the course of his employment by the Insured;

c) to bodily injury to any person who is a Named Insured;

d) to bodily injury to any person who is a pilot under contract to the Named Insured;

e) to bodily injury to any member of the Named Insured's family or household;

f) to any bodily injury caused by or resulting in any manner from the rendering of any professional services, or the omission thereof, or any medical or surgical treatments by any doctor, nurse or other professional attendant;

g) to bodily injury to any passenger while the aircraft is being used for aerial application.

7. Under Coverages B and D

a) to property damage to property owned, occupied, rented or used by the Insured or in the care, custody or control of the Insured or as to which the Insured is for any purpose exercising physical control or transported by the Insured;

b) to any property damage arising from direct aerial application;

c) to any property damage to a field, premises or property owned, occupied or rented by or in the care, custody or control of anyone for whom aerial application is performed.

8. Under Coverages F, G, and H

a) to loss or damage due to conversion, embezzlement, secretion, repossession or sale by any person with legal right of and who is in possession of the aircraft, nor for any loss or damage during or resulting therefrom;

b) to loss or damage to tires except where such loss or damage is caused by fire, theft, windstorm or vandalism or is the direct result of physical damage covered by this policy;

c) to loss or damage which is due and confined to:

1) wear, tear, deterioration, freezing;

AG01 (9/98)

2) the radioactive properties of, or the combination of radioactive properties with toxic, explosive or other hazardous properties of, any other radioactive material in the course of carriage of cargo, including storage or handling incidental thereto;

3) ionizing radiations or contamination by radioactivity from, or the toxic, explosive or other hazardous properties of, any other radioactive source whatsoever.

4. To claims caused by

a) War, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, martial law, military or usurped power or attempts at usurpation of power.

b) Any hostile detonation of any weapon of war employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter.

c) Strikes, riots, civil commotions or labor disturbances.

d) Any act of one or more person, whether or not agents of a sovereign power, for political or terrorist purposes and whether the loss or damage resulting therefrom is accidental or intentional.

e) Any malicious act or act of sabotage.

f) Confiscation, nationalization, seizure, restraint, detention, appropriation, requisition for title or use by or under the order of any Government (whether civil, military or de facto) or public or local authority.

g) Hi-jacking or any unlawful seizure or wrongful exercise of control of the aircraft or crew in flight (including any attempt at such seizure or control) made by any person or persons on board the aircraft acting without the consent of the Insured.

Furthermore this policy does not cover claims arising while the aircraft is outside the control of the Insured by reason of any of the above perils. The aircraft shall be deemed to have been restored to the control of the Insured on the safe return of the aircraft to the Insured at an airfield not excluded by the geographical limits of this policy, and entirely suitable for the operation of the aircraft (such safe return shall require that the aircraft be parked with engines shut down and under no duress).

5. Under Coverages A, B, C, D and E

a) to liability assumed by the Insured under any contract or agreement;

b) to an Insured under this policy who is also an Insured under a contract of nuclear energy liability insurance issued by the Nuclear Energy Liability Insurance Association or the Mutual Atomic Energy Liability Underwriters and in effect at the time of the occurrence resulting in such injury, sickness, disease, death or destruction; provided, such contract of nuclear energy liability insurance shall be deemed to be in effect at the time of such occurrence notwithstanding such contract has terminated upon exhaustion of its limit of liability;

c) 1) To claims directly or indirectly occasioned by, happening through or in consequence of:

a) noise (whether audible to the human ear or not), vibration, sonic boom and any phenomena associated therewith,

b) pollution and contamination of any kind whatsoever,

c) electrical and electromagnetic interference.

---

· EXCLUSIONS

This policy does not apply:

1. a) while the aircraft is being operated with the knowledge and consent of the Insured or of any executive officer or partner thereof, for any unlawful purpose, or for any purpose or use other than aerial application, unless specifically endorsed on the policy;

b) if the aircraft has been modified, unless such modifications have been noted on the application for insurance or specifically endorsed on this policy;

c) if the aircraft is leased, rented or loaned to anyone other than the Named Insured;

d) while the aircraft is subject to any lease, lien, conditional sale, mortgage or other encumbrance not specifically declared and described in the policy.

CERTIFIED COPY

2. While the aircraft is in flight

a) if piloted by other than the pilot or pilots designated in the Declarations, except while the aircraft is under the care, custody or control of a Federal Aviation Administration (FAA) approved repair station for the purpose of maintenance, repair or test flights and if flown by an employee of such repair station;

b) unless the aircraft has a valid "Standard" or "Restricted" category Airworthiness Certificate in full force and effect, as issued by the Federal Aviation Administration;

c) unless the pilot(s) designated in the Declarations maintains a current and valid pilot certificate as required by the Federal Aviation Administration for the flight involved;

d) while the aircraft is engaged in aerial application unless the pilot maintains and is not in violation of any certificate required by any governmental authority having jurisdiction over aerial application;

e) while the aircraft is used for smoke or fire patrol, fire fighting or control, or any activity in support of those uses;

f) while the aircraft is used for aerial application unless the Named Insured has complied with all federal, state and local laws and regulations which apply to aerial application;

g) under conditions requiring a special permit or waiver from the Federal Aviation Administration, other than a permit or waiver which has been granted to the Named Insured for aerial application;

h) in violation of any Federal Aviation Regulation which applies to repairs, alterations or inspections of the aircraft.

3. To

a) loss or destruction of or damage to any property whatsoever or any loss or expense whatsoever resulting or arising therefrom or any consequential loss

b) any legal liability of whatsoever nature

directly or indirectly caused or contributed to, by or arising from:

1) the radioactive, toxic, explosive or other hazardous properties of any explosive nuclear assembly or nuclear component thereof;

AG01 (9/98)    - 4 -

Coverage H - All Risk Basis Not in Motion - To pay for physical damage loss to the aircraft sustained while the aircraft is not in motion and which is not the result of fire or explosion following crash or collision while the aircraft was in motion unless otherwise described in this policy.

IV. DEFENSE, SETTLEMENT AND SUPPLEMENTARY PAYMENTS
Coverages A, B, C, and D

The Company shall have the right and duty to defend any suit against the Insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the Company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the Company's liability has been exhausted by payment of judgments or settlements.

During such time as the Company is obligated to defend a claim or claims under the provisions of the preceding paragraphs, the Company will pay with respect to such claim, in addition to the applicable limit of liability:

a)  all expenses incurred by the Company, all costs taxed against the Insured in any suit defended by the Company and all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before the Company has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the Company's liability thereon;

b)  premiums on appeal bonds required in any such suit, premiums on bonds to release attachments in any such suit for an amount not in excess of the applicable limit of liability of this policy, and the cost of bail bonds required of the Insured because of an occurrence or violation of law or a regulation for civil aviation arising out of the use of the aircraft, not to exceed $1,000, per bail bond, but the Company shall have no obligation to apply for or furnish any such bonds;

c)  expenses incurred by the Insured for first aid to others at the time of an accident, for bodily injury to which this policy applies, not to exceed $5,000, per occurrence;

d)  all reasonable expenses incurred by the Insured at the Company's request to assist the Company in the investigation or defense of the claim or suit, including actual loss of earnings up to $100, per day because of time off from work.

V. UNITED STATES ARMY, NAVY AND AIR FORCE INSURANCE REQUIREMENTS
Coverages A, B, C, and D

If the Aviation Managers issues a Civil Aircraft Certificate of Insurance Form DD 2400, or any replacement thereof, as required by regulations of the U.S. Army, Navy or Air Force, then the insurance policy provisions shall conform to the minimum requirements of that regulation.

VI. POLICY PERIOD, TERRITORY
All Coverages

This policy applies only to bodily injury or property damage which occurs, and to physical damage losses to the aircraft which are sustained during the policy period, while the aircraft is within the 48 contiguous United States of America.

VII. TWO OR MORE AIRCRAFT
All Coverages

Except with respect to any Aggregate Limit(s) of Liability, when two or more aircraft are insured under this policy, the terms of this policy shall apply separately to each.

CERTIFIED COPY

POLICY PERIOD REVISION

In consideration of  INCLUDED  premium $  INCLUDED  Item  2  - Policy Period - is amended to read as follows:

From  MAY 19, 2002  to  JULY 6, 2003  both at 12:01 A.M. Standard Time at the address in Item  1  of the Declarations Page.

All other provisions of this policy remain the same.

This endorsement becomes effective  MAY 19, 2003  to be attached to and hereby made a part of Policy No.  AV 3391999-04  issued to  PONTIAC FLYING SERVICE, INC.

By  National Union Fire Insurance Company of Pittsburgh, PA

Endorsement No.  19

Date of Issue  MAY 6, 2003 bp

By _____
(Authorized Representative)

AV116 (1/99)

---

 

AMERICAN HOME ASSURANCE COMPANY   NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.   THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA

AERIAL APPLICATOR AIRCRAFT POLICY

Policy Provisions - Part 1 - Form AG01 (9/98)

The Company as shown in Part 2 - Declarations (hereinafter called the Company), in consideration of the payment of the premium, in reliance upon the statements of the Declarations made a part hereof, subject to all of the terms of this policy including the applicable limits of liability, the Company agrees with the Named Insured with respect to those coverages indicated in Items 3 and 4 of the Declarations.

INSURING AGREEMENTS   CERTIFIED COPY

I. LIABILITY COVERAGES

Coverage A - Bodily Injury Liability Excluding Passengers - To pay on behalf of the Insured those sums which the Insured shall become legally obligated to pay as damages because of bodily injury sustained by any person excluding any passenger.

Coverage B - Property Damage Liability - To pay on behalf of the Insured those sums which the Insured shall become legally obligated to pay as damages because of property damage.

Coverage C - Passenger Bodily Injury Liability - To pay on behalf of the Insured those sums which the Insured shall become legally obligated to pay as damages because of bodily injury sustained by any passenger.

Coverage D - Single Limit Bodily Injury and Property Damage Liability - To pay on behalf of the Insured those sums which the Insured shall become legally obligated to pay as damages because of bodily injury sustained by any person (excluding any passenger unless the words "including passengers" appear in Item 3 of the Declarations) and property damage,

caused by an occurrence and arising out of the ownership, maintenance or use of the aircraft.

II. MEDICAL EXPENSE COVERAGE

Coverage E - Medical Expense - To pay that reasonable medical expense incurred within one year from the date of injury, to or for each passenger (including any crew unless the words "including crew" appear in Item 3 of the Declarations) who sustains bodily injury caused by an occurrence, provided the aircraft is being used by or with the permission of the Named Insured.

III. PHYSICAL DAMAGE COVERAGES

Coverage F - All Risk Basis - To pay for physical damage loss to the aircraft, including disappearance of the aircraft unless otherwise described in this policy.

Coverage G - All Risk Basis Not in Flight - To pay for physical damage loss to the aircraft sustained while the aircraft is not in flight and which is not the result of fire or explosion following crash or collision while the aircraft was in flight unless otherwise described in this policy.

AG01 (9/98)   - 2 -

---

TERRORISM EXCLUSION
(Terrorism Risk Insurance Act of 2002)   CERTIFIED COPY

This policy is amended as follows:

This policy does not cover claims caused by any losses, damages, or injuries arising directly or indirectly as a result of a certified "Act of Terrorism" defined by Section 102. Definitions of the Terrorism Risk Insurance Act of 2002 and any revisions or amendments.

Solely with respect to this endorsement and to ensure compliance with the Terrorism Risk Insurance Act of 2002 an "Act of Terrorism" shall mean:

(1) Act of Terrorism:
(A) Certification - The term "act of terrorism" means any act that is certified by the Secretary of the Treasury of the United States, in concurrence with the Secretary of State and the Attorney General of the United States:
(i)  to be an act of terrorism;
(ii)  to be a violent act or an act that is dangerous to:
(I)  human life;
(II)  property; or
(III)  infrastructure;
(iii)  to have resulted in damage within the United States or outside of the United States in the case of:
(I)  an air carrier or commercial vessel defined as one principally based in the United States, which United States income tax is paid, and whose insurance coverage is subject to regulation in the United States;
(II)  the premises of a United States mission; and
(iv)  to have been committed by an individual(s) acting on behalf of any foreign person or interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.
(B) Limitation - No act shall be certified by the Secretary as an act of terrorism if:
(i)  the act is committed as part of the course of war declared by the Congress, except that this clause shall not apply with respect to any coverage for workers' compensation; or
(ii)  property and casualty insurance losses resulting from the act, in the aggregate, do not exceed $5,000,000.
(C) Determinations Final - Any certification of, or determination not to certify, an act of terrorism under this paragraph shall be final, and shall not be subject to judicial review.
(D) Nondelegation - The Secretary may not delegate or designate to any other officer, employee, or person, any determination under this paragraph of whether, during the effective period of the Program, an act of terrorism has occurred.

THE PROVISIONS OF THIS ENDORSEMENT SHALL APPLY SOLELY TO THE TERRORISM RISK INSURANCE ACT OF 2002 AND SHALL IN NO WAY CONFLICT WITH THOSE OF AVN48B AND AMENDMENTS THERETO.

All other provisions of this policy remain the same.

This endorsement becomes effective  NOVEMBER 26, 2002  to be attached to and hereby made a part of Policy No.  AV 3391999-04  issued to  PONTIAC FLYING SERVICE, INC.

By  National Union Fire Insurance Company of Pittsburgh, PA

Endorsement No.  18

Date of Issue  APRIL 11, 2003 JT

By _____
(Authorized Representative)

AV856 (1/03)

(a) The following is added:

If the Insurer decides not to renew this policy, the Insurer will mail written notice stating the reason for nonrenewal to the Named Insured's last mailing address known to the Insurer at least sixty (60) days before the expiration date of the policy. A copy of the notice will also be sent to:

a)   The broker, if known to the Insurer, or the agent of record; and

b)   The last known mortgagee or lienholder named in the policy at the last mailing address known to the Insurer.

This paragraph does not apply if the Insurer has manifested a willingness to renew directly to the Named Insured.

All other provisions of this policy remain the same.

This endorsement becomes effective ___MAY 19, 2002___ to be attached to and hereby made a part of
Policy No. __AV 3391999-04__ issued to _PONTIAC FLYING SERVICE, INC_

By __National Union Fire Insurance Company of Pittsburgh, PA__

Endorsement No. ___17___
Date of Issue ___6-14-02   bp___

☒ AIG Aviation, Inc.
☐ AIG Aviation Insurance Services
☐ AIG Aviation (Canada), Inc.
☐ AIG Aviation (Illinois) Corporation
☐ AIG Aviation (Texas), Inc.

By _[signature]_
(Authorized Representative)

SE52142(11/94)   Page 2

---

**CERTIFIED COPY**

**ILLINOIS CANCELLATION / NONRENEWAL ENDORSEMENT - AVIATION**

Wherever used in this endorsement: 1) "we", "us", "our", and "Insurer" mean the insurance company which issued this policy; and 2) "you", "your", "Named Insured", "First Named Insured", and "insured" mean the Named Corporation, Named Organization, Named Sponsor, Named Insured, or Insured stated in the Declarations Page; and 3) "Other Insured(s)" means all persons or entities afforded coverage under the policy.

**CANCELLATION AND NONRENEWAL**

A)   The cancellation condition of this policy is replaced by the following:

CANCELLATION

1.   The Named Insured may cancel this policy by mailing to the Insurer advance written notice of cancellation.

2.   If this policy has been in effect for sixty (60) days or less, the Insurer may cancel this policy by mailing the Named Insured written notice of cancellation at least:

a)   Ten (10) days before the effective date of cancellation if the Insurer cancels for nonpayment of premium; or

b)   Thirty (30) days before the effective date of cancellation if the Insurer cancels for any other reason.

3.   If this policy has been in effect for more than sixty (60) days the Insurer may cancel this policy only for one or more of the following reasons:

a)   Nonpayment of premium;

b)   The policy was obtained through a material misrepresentation;

c)   The Named Insured or Other Insured(s) have violated any of the terms and conditions of the policy;

d)   The risk originally accepted has measurably increased;

e)   Certification to the Director of Insurance of the loss of reinsurance by the Insurer which provided coverage to the Insurer for all or a substantial part of the underlying risk insured; or

f)   A determination by the Director that the continuation of this policy could place the Insurer in violation of the insurance laws of this State.

If the Insurer cancels this policy based on one or more of the above reasons except for nonpayment of premium, the Insurer will mail written notice to the Named Insured at least sixty (60) days before the effective date of cancellation. When cancellation is for nonpayment of premium, the Insurer will mail notice at least ten (10) days before the effective date of cancellation.

4.   The Insurer will mail the notice to the Named Insured and the agent or broker at the last addresses known to the Insurer.

5.   Notice of cancellation will state the effective date of cancellation and a specific explanation of the reason or reasons for cancellation. The policy period will end on that date.

6.   If this policy is cancelled, the Insurer will send the Named Insured any premium refund due. If the Insurer cancels, the refund will be pro rata. If the Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if the Insurer has not made or offered a refund.

7.   Proof of mailing will be sufficient proof of notice.

SE52142(11/94)   Page 1 of Endorsement No. ___17___

---

**DATE RECOGNITION EXCLUSION CLAUSE** **CERTIFIED COPY**

This Policy does not cover any claim, damage, injury, loss, cost, expense or liability (whether in contract, tort, negligence, product liability, misrepresentation, fraud or otherwise) of any nature whatsoever arising from or occasioned by or in consequence of (whether directly or indirectly and whether wholly or partly):

(a)   the failure or inability of any computer hardware, software, integrated circuit, chip or information technology equipment or system (whether in the possession of the Insured or of any third party) accurately or completely to process, recognize, exchange or transfer year, date or time data or information in connection with any change of year, date or time;

whether on or before or after such change of year, date or time;

(b)   any implemented or attempted change or modification of any computer hardware, software, integrated circuit, chip or information technology equipment or system (whether in the possession of the Insured or of any third party) in anticipation of or in response to any such change of year, date or time, or any advice given or services performed in connection with any such change or modification;

(c)   any non-use or unavailability for use of any property or equipment of any kind whatsoever resulting from any act, failure to act or decision of the Insured or of any third party related to any such change of year, date or time;

and any provision in this Policy concerning any duty of the Company to investigate or defend claims shall not apply to any claims so excluded.

All other provisions of this policy remain the same.

This endorsement becomes effective ___MAY 19, 2002___ to be attached to and hereby made a part of
Policy No. __AV 3391999-04__ issued to _PONTIAC FLYING SERVICE, INC_

By __National Union Fire Insurance Company of Pittsburgh, PA__

Endorsement No. ___16___
Date of Issue ___6-14-02   bp___

☒ AIG Aviation, Inc.
☐ AIG Aviation Insurance Services
☐ AIG Aviation (Canada), Inc.
☐ AIG Aviation (Illinois) Corporation
☐ AIG Aviation (Texas), Inc.
☐ American International Aviation Agency, Inc.

By _[signature]_
(Authorized Representative)

AVN2000A (1/02)

---

**FUNGUS EXCLUSION ENDORSEMENT** **CERTIFIED COPY**

This policy shall not apply under any coverage section to:

1.   bodily injury; sickness; disease; occupational disease; headaches; dizziness; neurological disorders of any kind; mental or physical stress, anguish, or injury of any kind; property damage or grounding or any other claim whatsoever or:

any loss, cost, or expense including, but not limited to, losses, costs, or expenses related to, arising from, or associated with testing for, cleaning up, remediation, containment, removal, or abatement, nor

any obligation to defend or indemnify due in whole or in part to any claim or suit against the insured alleging damages arising from or caused by, directly or indirectly, in whole or in part, by

(a)   any fungus(i), molds, mildew or yeast, or

(b)   any spore(s), or toxins created or produced by or emanating from such fungus(i), mold(s), mildew or yeast, or

(c)   any substance, vapor gas, or other emission or organic or inorganic body or substance produced by or arising out of any fungus(i), mold(s), mildew or yeast, or

(d)   any material, product, building component, building or structure or any concentration of moisture, water or other liquid within such material, product, building component, building or structure that contains harbors, nurtures, or acts as a medium for any fungus(i), mold(s), mildew or yeast, or spore(s) or toxins emanating therefrom,

regardless of any other cause, event material, product and/or building component that contributed concurrently or in any sequence to any alleged loss or subsequent claim.

2.   For the purposes of this endorsement, the following definitions are added to the policy:

Fungus(i) includes, but is not limited to, any of the plants or organisms belonging to the major group Fungi, lacking chlorophyll, and including mold(s), rusts, mildews, smuts, and mushrooms.

Mold(s) includes, but is not limited to, any superficial growth produced on damp or decaying organic matter or on living organisms, and fungi that produce molds.

Spore(s) means any dormant or reproductive body produced by or arising or emanating out of any fungus(i), mold(s), mildew, plants, organisms, or microorganisms.

All other provisions of this policy remain the same.

This endorsement becomes effective ___MAY 19, 2002___ to be attached to and hereby made a part of
Policy No. __AV 3391999-04__ issued to _PONTIAC FLYING SERVICE, INC_

By __National Union Fire Insurance Company of Pittsburgh, PA__

Endorsement No. ___15___
Date of Issue ___6-14-02   bp___

☒ AIG Aviation, Inc.
☐ AIG Aviation Insurance Services
☐ AIG Aviation (Canada), Inc.
☐ AIG Aviation (Illinois) Corporation
☐ AIG Aviation (Texas), Inc.
☐ American International Aviation Agency, Inc.

By _[signature]_
(Authorized Representative)

CERTIFIED COPY

## NOISE AND POLLUTION AND OTHER PERILS EXCLUSION CLAUSE

This policy is amended as follows:

In the event any of the provisions of this endorsement are in conflict with any provisions, exclusions, conditions or terms forming part of this policy, this endorsement shall take precedence.

1.  This policy does not cover claims directly or indirectly occasioned by, happening through or in consequence of:

    (a)  noise (whether audible to the human ear or not), vibration, sonic boom and any phenomena associated therewith,

    (b)  pollution and contamination of any kind whatsoever,

    (c)  electrical and electromagnetic interference,

    (d)  interference with the use of property;

    unless caused by or resulting in a crash, fire, explosion or collision or a recorded in-flight emergency causing abnormal aircraft operation.

2.  With respect to any provision in this policy concerning any duty of the Company to investigate or defend claims, such provision shall not apply and the Company shall not be required to defend:

    (a)  claims excluded by paragraph 1., or

    (b)  a claim or claims covered by the policy when combined with any claims excluded by paragraph 1. (referred to below as "Combined Claims").

3.  In respect of any Combined Claims, the Company shall (subject to proof of loss and the limits of the policy) reimburse the Insured for that portion of the following items which may be allocated to the claims covered by the policy;

    (a)  damages awarded against the Insured and

    (b)  defense fees and expenses incurred by the Insured.

4.  Nothing herein shall override any radioactive contamination or other exclusion clause attached to or forming part of this policy.

All other provisions of this policy remain the same.

This endorsement becomes effective _____ MAY 19, 2002 _____ to be attached to and hereby made a part of Policy No. _____ AV 3391999-04 _____ issued to _____ PONTIAC FLYING SERVICE, INC _____

By _____ National Union Fire Insurance Company of Pittsburgh, PA _____

Endorsement No. _____ 14 _____

Date of Issue _____ 6-14-02   bp _____

☑ AIG Aviation, Inc.
☐ AIG Aviation Insurance Services
☐ AIG Aviation (Canada), Inc.
☐ AIG Aviation (Illinois) Corporation
☐ AIG Aviation (Texas), Inc.
☐ American International Aviation Agency, Inc.

By _____ (Authorized Representative)

AVN46B (1/02)

---

Loss, destruction, damage, expense or legal liability in respect of the nuclear risks not excluded by reason paragraph 2. shall (subject to all other terms, conditions, limitations, warranties and exclusions of this policy) be covered, provided that:

(b)  in the case of any claim in respect of radioactive material in the course of carriage as cargo, including storage or handling incidental thereof, such carriage shall in all respects have complied with the full International Civil Aviation Organization "Technical Instructions for the Safe Transport of Dangerous Goods by Air", unless the carriage shall have been subject to any more restrictive legislation, when it shall in all respects have complied with such legislation;

(ii)  this policy shall only apply to an incident happening during the period of this policy and where any claim by the Insured against the Company or by any claimant against the Insured arising out of such incident shall have been made within three years after the date thereof;

(iii)  in the case of any claim for the loss of or destruction of or damage to or loss of use of an aircraft caused by or contributed to by radioactive contamination, the level of such contamination shall have exceeded the maximum permissible level set out in the following scale:

| Emitter | | Maximum permissible level of non-fixed radioactive surface contamination (Averaged over 300 cm²) |
|---|---|---|
| IAEA Health and Safety Regulations | | |
| Beta, gamma and low toxicity alpha emitters | | Not exceeding 4 Bequerels / cm² (10⁻⁴microcuries / cm²) |
| All other alpha emitters | | Not exceeding 0.4 Bequerels / cm 2 (10⁻⁵microcuries / cm²) |

(iv)  the cover afforded hereby may be cancelled at any time by the Company giving seven days' notice of cancellation.

All other provisions of this policy remain the same.

This endorsement becomes effective _____ MAY 19, 2002 _____ to be attached to and hereby made a part of Policy No. _____ AV 3391999-04 _____ issued to _____ PONTIAC FLYING SERVICE, INC _____

By _____ National Union Fire Insurance Company of Pittsburgh, PA _____

Endorsement No. _____ 13 _____

Date of Issue _____ 6-14-02   bp _____

☑ AIG Aviation, Inc.
☐ AIG Aviation Insurance Services
☐ AIG Aviation (Canada), Inc.
☐ AIG Aviation (Illinois) Corporation
☐ AIG Aviation (Texas), Inc.
☐ American International Aviation Agency, Inc.

Page 2

By _____ (Authorized Representative)

AVN38B (1/02)

---

## NUCLEAR RISKS EXCLUSION CLAUSE

CERTIFIED COPY

This policy is amended as follows:

In the event any of the provisions of this endorsement are in conflict with any provisions, exclusions, conditions or terms forming part of this policy, this endorsement shall take precedence.

1.  This policy does not cover:

    (i)  loss or destruction of or damage to any property whatsoever or any loss or expense whatsoever resulting or arising therefrom or any consequential loss

    (ii)  any legal liability of whatsoever nature

    directly or indirectly caused by or contributed to by or arising from:

    (a)  the radioactive, toxic, explosive or other hazardous properties of any explosive nuclear assembly or nuclear component thereof;

    (b)  the radioactive properties of, or a combination of radioactive properties with toxic, explosive or other hazardous properties of, any other radioactive material in the course of carriage as cargo, including storage or handling incidental thereto;

    (c)  ionizing radiations or contamination by radioactivity from, or the toxic, explosive or other hazardous properties of, any other radioactive source whatsoever.

2.  It is understood and agreed that such radioactive material or other radioactive source in paragraph 1. (b) and (c) above shall not include:

    (i)  depleted uranium and natural uranium in any form;

    (ii)  radioisotopes which have reached the final stage of fabrication so as to be usable for any scientific, medical, agricultural, commercial, educational or industrial purpose.

3.  This policy, however, does not cover loss of or destruction of or damage to any property or any consequential loss or any legal liability of whatsoever nature with respect to which:

    (i)  the Insured under this policy is also insured or insured as an additional insured under any other insurance policy, including any nuclear energy liability policy; or

    (ii)  any person or organization is required to maintain financial protection pursuant to legislation in any country; or

    (iii)  the Insured under this policy is, or had this policy not been issued would be, entitled to indemnification from any government or agency thereof.

AVN38B (1/02)   Page 1 of Endorsement No. _____ 13

---

## WAR, HI-JACKING AND OTHER PERILS EXCLUSION CLAUSE (AVIATION)

CERTIFIED COPY

This policy is amended as follows:

In the event any of the provisions of this endorsement are in conflict with any provisions, exclusions, conditions or terms forming part of this policy, this endorsement shall take precedence.

This policy does not cover claims caused by:

(a)  War, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, martial law, military or usurped power or attempts at usurpation of power;

(b)  Any hostile detonation of any weapon of war employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter;

(c)  Strikes, riots, civil commotions or labor disturbances;

(d)  Any act of one or more persons, whether or not agents of a sovereign power, for political or terrorist purposes and whether the loss or damage resulting therefrom is accidental or intentional;

(e)  Any malicious act or act of sabotage;

(f)  Confiscation, nationalization, seizure, restraint, detention, appropriation, requisition for title or use by or under the order of any Government (whether civil, military or de facto) or public or local authority;

(g)  Hi-jacking or any unlawful seizure or wrongful exercise of control of the aircraft or crew in flight (including any attempt at such seizure or control) made by any person or persons on board the aircraft acting without the consent of the Insured.

Furthermore, this policy does not cover claims arising whilst the aircraft is outside the control of the Insured by reason of any of the above perils.

The aircraft shall be deemed to have been restored to the control of the Insured on the safe return of the aircraft to the Insured at an airfield not excluded by the geographical limits of this policy, and entirely suitable for the operation of the aircraft (such safe return shall require that the aircraft be parked with engines shut down and under no duress).

All other provisions of this policy remain the same.

This endorsement becomes effective _____ MAY 19, 2002 _____ to be attached to and hereby made a part of Policy No. _____ AV 3391999-04 _____ issued to _____ PONTIAC FLYING SERVICE, INC _____

By _____ National Union Fire Insurance Company of Pittsburgh, PA _____

Endorsement No. _____ 12 _____

Date of Issue _____ 6-14-02   bp _____

☑ AIG Aviation, Inc.
☐ AIG Aviation Insurance Services
☐ AIG Aviation (Canada), Inc.
☐ AIG Aviation (Illinois) Corporation
☐ AIG Aviation (Texas), Inc.
☐ American International Aviation Agency, Inc.

By _____ (Authorized Representative)

AVN48B (1/02)

LOSS PAYABLE ENDORSEMENT                    CERTIFIED COPY

In consideration of additional premium of $ ___INCLUDED___ , this policy is amended as follows:

Any loss under Coverage F, G, and H is payable as interest may appear to the Named Insured and the following Loss Payable:

As respects  N48468 AND N8762H

PEOPLES BANK
PO BOX 460
GRIDLEY, IL  61744

AS RESPECTS N5030:

BANK OF PONTIAC
300 W WASHINGTON
PONTIAC, IL  67764

All other provisions of this policy remain the same.
This endorsement becomes effective ___MAY 19, 2002___ to be attached to and hereby made a part of
Policy No. ___AV 3391999-04___ issued to PONTIAC FLYING SERVICE, INC
By ___National Union Fire Insurance Company of Pittsburgh, PA___

Endorsement No. ___11___
Date of Issue ___6-14-02  bp___        By _____
AV83 (3/01)                                    (Authorized Representative)

---

EQUIPMENT EXCLUSION                    CERTIFIED COPY

This policy is amended as follows:

The coverage afforded by this policy shall not apply to the following aircraft equipment:

EXCLUDES GLOBAL POSITIONING SYSTEM

All other provisions of this policy remain the same.
This endorsement becomes effective ___MAY 19, 2002___ to be attached to and hereby made a part of
Policy No. ___AV 3391999-04___ issued to  PONTIAC FLYING SERVICE, INC
By ___National Union Fire Insurance Company of Pittsburgh, PA___

Endorsement No. ___10___
Date of Issue ___6-14-02  bp___        By _____
LAD111 (9/99)                                  (Authorized Representative)

---

TERRITORY AMENDMENT ENDORSEMENT                    CERTIFIED COPY

In consideration of _INCLUDED_ premium of $ _INCLUDED_ , this policy is amended as follows:

Exclusion 5. f) shall not apply to the following states:

WEST VIRGINIA, VIRGINIA, OHIO, MICHIGAN, MARYLAND

All other provisions of this policy remain the same.
This endorsement becomes effective ___MAY 19, 2002___ to be attached to and hereby made a part of
Policy No. ___AV 3391999-04___ issued to PONTIAC FLYING SERVICE, INC
By ___National Union Fire Insurance Company of Pittsburgh, PA___

Endorsement No. ___9___
Date of Issue ___6-14-02  bp___        By _____
AG019 (1/99)                                   (Authorized Representative)

---

PURPOSE OF USE ENDORSEMENT                    CERTIFIED COPY

This policy is amended as follows:

The Purpose of Use set forth in the Declarations is   completed   as follows:

AS RESPECTS ALL AIRCRAFT

Purpose of Use shall be only as follows:

THIS POLICY IS AMENDED AS FOLLOWS:

THE PURPOSE OF USE SET FORTH IN THE DECLARATIONS IS AMENDED AS FOLLOWS:

AS RESPECTS AIRCRAFT WHILE OPERATING WITHIN, ON OR ABOVE THE COMMONWEALTH OF KENTUCKY

PURPOSE OF USE SHALL BE ONLY AS FOLLOWS:

PLEASURE AND BUSINESS USE ONLY, AND EXCLUDING AERIAL APPLICATION

All other provisions of this policy remain the same.
This endorsement becomes effective ___MAY 19, 2002___ to be attached to and hereby made a part of
Policy No. ___AV 3391999-04___ issued to PONTIAC FLYING SERVICE, INC
By ___National Union Fire Insurance Company of Pittsburgh, PA___

Endorsement No. ___8___
Date of Issue ___6-14-02  bp___        By _____
AV122 (1/01)                                   (Authorized Representative)

## ILLINOIS SPECIAL LIMITS ENDORSEMENT

In consideration of additional premium of $ INCLUDED , this policy is amended as follows:

As respects aerial application within the State of Illinois, the Limits of Liability shall be the greater of:

☐  The amounts as shown on the Declarations; or

☑  The following limits if a premium is shown on the Declarations for the coverage(s):

| | |
|---|---|
| Coverage A | $ 50,000. each person |
| | $ 100,000. each occurrence |
| | $ 500,000. aggregate |
| Coverage B | $ 50,000. each occurrence |
| | $ 50,000. aggregate |
| Coverage D | $ 100,000. each occurrence |
| | $ 500,000. aggregate |

All other provisions of this policy remain the same.

This endorsement becomes effective _____ MAY 19, 2002 _____ to be attached to and hereby made a part of
Policy No. __ AV 3391999-04 __ issued to PONTIAC FLYING SERVICE, INC

By _ National Union Fire Insurance Company of Pittsburgh, PA _

Endorsement No. ___ 7 ___

Date of Issue _____ 6-14-02  bp _____         By _____
AG003 (6/99)                                              (Authorized Representative)

## ADJACENT FIELDS LIABILITY

In consideration of INCLUDED _____ premium of $ INCLUDED _____, this policy is amended as follows:

Exclusion 7. c) is deleted, subject to the following:

NO CHANGE

All other provisions of this policy remain the same.

This endorsement becomes effective _____ MAY 19, 2002 _____ to be attached to and hereby made a part of
Policy No. __ AV 3391999-04 __ issued to PONTIAC FLYING SERVICE, INC

By _ National Union Fire Insurance Company of Pittsburgh, PA _

Endorsement No. ___ 5 ___

Date of Issue _____ 6-14-02  bp _____         By _____
AG013 (6/98)                                              (Authorized Representative)

CERTIFIED COPY

## RESIDENTIAL AREAS ENDORSEMENT

In consideration of _ INCLUDED _ premium of $ INCLUDED _____, this policy is amended as follows:

Exclusion 5. k) is deleted in its entirety and replaced with the following:

5.  k)  claims arising from the aerial application to any residential area except with respect to aerial application
        of the following chemicals  THOSE REQUIRED FOR GYPSY MOTH CONTRACTS

        to the village, town or city of  THOSE REQUIRED FOR GYPSY MOTH CONTRACTS

All other provisions of this policy remain the same.

This endorsement becomes effective _____ MAY 19, 2002 _____ to be attached to and hereby made a part of
Policy No. __ AV 3391999-04 __ issued to PONTIAC FLYING SERVICE, INC

By _ National Union Fire Insurance Company of Pittsburgh, PA _

Endorsement No. ___ 6 ___

Date of Issue _____ 6-14-02  bp _____         By _____
AG004 (5/99)                                              (Authorized Representative)

## ADDITIONAL INSURED ENDORSEMENT

CERTIFIED COPY

In consideration of INCLUDED _____ premium of $ INCLUDED _____, this policy is amended as follows:

The following is included as an additional insured, but only with respect to the operation of the aircraft by the
Named Insured:

THE FARMER, OWNER, AND/OR GROWER FOR WHOM AERIAL APPLICATION IS BEING PERFORMED.
COVERAGE IS EXTENDED TO INCLUDE STATE AND COUNTY GOVERNMENT AGENCIES AND CONTRACT
HOLDERS REQUIRED FOR CONTRACT WORK TO BE DONE.

A L'S AERIAL SPRAYING, INC

For the purposes of this endorsement only, coverage

1)  only applies with respect to such insurance as is afforded by coverages A, B, C, or D;
2)  does not apply to any liability arising from the selection or use of chemicals manufactured, sold, handled,
    distributed by the additional insured;
3)  is excess coverage only and applies only after all other coverage available to the insured has been exhausted;
4)  is further subject to the following:
    THIS EXTENSION OF COVERAGE ONLY APPLIES WITH RESPECT TO THE VICARIOUS RESPONSIBILITY
    OF THE ADDITIONAL INSURED FOR THE CONDUCT OF AERIAL APPLICATION BY THE NAMED INSURED.

All other provisions of this policy remain the same.

This endorsement becomes effective _____ MAY 19, 2002 _____ to be attached to and hereby made a part of
Policy No. __ AV 3391999-04 __ issued to PONTIAC FLYING SERVICE, INC

By _ National Union Fire Insurance Company of Pittsburgh, PA _

Endorsement No. ___ 4 ___

Date of Issue _____ 6-14-02  bp _____         By _____
AG010 (9/98)                                              (Authorized Representative)

## POLICY AMENDMENT ENDORSEMENT
### (AERIAL APPLICATOR)

In consideration of __INCLUDED__ premium of $ __INCLUDED__ , this policy is amended as follows:

Liability Coverages set forth in the Declarations are __completed__ as follows with respect to the following:
N 503D ONLY

| Liability Coverages | LIMITS OF LIABILITY | |
|---|---|---|
| | NON-CHEMICAL | CHEMICAL |
| D. Single Limit - Property Damage & Bodily Injury Excluding Passengers | $1,000,000. EACH OCCURRENCE | |

**ANNUAL PREMIUMS**

| Coverage | Premium |
|---|---|
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

Subject to the following:

CHEMICAL COVERAGES-A & B REMAIN AS SHOWN IN ITEM 3. OF THE DECLARATIONS.

THIS ENDORSEMENT APPLIES ONLY AS RESPECTS OPERATIONS UNDER THE NAMED INSURED'S GYPSY MOTH CONTRACTS.

All other provisions of this policy remain the same.

This endorsement becomes effective __MAY 19, 2002__ to be attached to and hereby made a part of Policy No. __AV 3391999-04__ issued to __PONTIAC FLYING SERVICE, INC__

By __National Union Fire Insurance Company of Pittsburgh, PA__

Endorsement No. __3__

Date of Issue __6-14-02 bp__

By _(signature)_
(Authorized Representative)

AG427 (4/02)

---

## PILOT WARRANTY ENDORSEMENT
### (AERIAL APPLICATOR AIRCRAFT)

**CERTIFIED COPY**

This policy is amended as follows:

When in flight, the aircraft will only be operated by the pilots specified below who possess the logged hours, current and valid ratings and certificates specified below, and a current and valid Medical Certificate.

As respects piston engine powered fixed-wing aircraft:
☒ Named pilot(s) SCOTT PETERSEN
☒ Any pilot maintaining a commercial or more advanced pilot certificate who has flown a minimum pilot command time of __1,000__ (1,000 if nothing else is shown) hours in fixed-wing aircraft engaged in aerial application, including at least __100__ (100 if nothing else is shown) hours in aircraft of the same make and model being flown.

As respects piston engine powered rotorcraft:
☐ Named pilot(s) _____
☐ Any pilot maintaining a commercial or more advanced pilot certificate who has flown a minimum pilot command time of _____ (1,000 if nothing else is shown) hours in rotorcraft engaged in aerial application including at least _____ (100 if nothing else is shown) hours in aircraft of the same make and model being flown.

As respects turbine powered fixed-wing aircraft:
☒ Named pilot(s) SCOTT PETERSEN
☒ Any pilot maintaining a commercial or more advanced pilot certificate who has flown a minimum pilot command time of __1,000__ (1,000 if nothing else is shown) hours in fixed-wing aircraft engaged in aerial application, including at least __100__ (100 if nothing else is shown) hours in aircraft of the same make and model being flown.

As respects turbine powered rotorcraft:
☐ Named pilot(s) _____
☐ Any pilot maintaining a commercial or more advanced pilot certificate who has flown a minimum pilot command time of _____ (1,000 if nothing else is shown) hours in rotorcraft engaged in aerial application including at least _____ (100 if nothing else is shown) hours in aircraft of the same make and model being flown.

As respects all turbine powered aircraft/rotorcraft:
☐ In addition to the above, the following pilots must also have successfully completed the aircraft manufacturer's ground and flight training program for the aircraft being flown or, if the aircraft has a turbine engine conversion, the pilot must have successfully completed formalized ground and flight training with the aircraft conversion facility:

_____
_____
_____

All other provisions of this policy remain the same.

This endorsement becomes effective __MAY 19, 2002__ to be attached to and hereby made a part of Policy No. __AV 3391999-04__ issued to __PONTIAC FLYING SERVICE, INC__

By National Union Fire Insurance Company of Pittsburgh, PA

Endorsement No. __2__

Date of Issue __6-14-02 bp__

By _(signature)_
(Authorized Representative)

AG018 (6/98)

---

4. The Company may pay any part or all of the deductible amount to effect settlement of any claim or suit and, upon notification of the action taken, the Named Insured shall promptly reimburse the Company for such part of the deductible amount as has been paid by the Company.

**CERTIFIED COPY**

All other provisions of this policy remain the same.

This endorsement becomes effective __MAY 19, 2002__ to be attached to and hereby made a part of Policy No. __AV 3391999-04__ issued to __PONTIAC FLYING SERVICE, INC__

By National Union Fire Insurance Company of Pittsburgh, PA

Endorsement No. __1__ page 2 of 2

Date of Issue __6-14-02 bp__

By _(signature)_
(Authorized Representative)

AG016 (2/00)

---

**CERTIFIED COPY**

## DEDUCTIBLE LIABILITY INSURANCE ENDORSEMENT

In consideration of __Included__ premium of $ __Included__ , this policy is amended as follows:

**SCHEDULE**

| COVERAGE | AMOUNT AND BASIS OF DEDUCTIBLE | |
|---|---|---|
| Coverage B. | | |
| Property Damage Liability | | |
| Arising from Chemicals | $1,000 | each occurrence |
| Arising from other than Chemicals | $250 | each occurrence |
| Coverage D. | | |
| Property Damage Liability | | |
| Arising from Chemicals | $Not Covered | each occurrence |
| Arising from other than Chemicals | $Not Covered | each occurrence |

APPLICATION OF ENDORSEMENT (Enter below any limitations on the application of this endorsement. If no limitation is entered, the deductibles apply to damages for all property damage, however caused):

1. The obligation of the Company under Coverage B or D to pay damages on behalf of the Insured applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as applicable to such coverages, and the limits of insurance applicable to each occurrence for such coverages will be reduced by the application of such deductible amount.

2. The deductible amounts stated in the Schedule apply as follows:

   Per Occurrence Basis - if the deductible is on a per occurrence basis, the deductible amount applies under Coverage B or D to all damages because of property damage as the result of any one occurrence, regardless of the number of persons or organizations who sustain damages because of that occurrence.

3. The terms of this insurance, including those with respect to:

   A) the Company's right and duty to defend any suits seeking these damages, and

   B) the Named Insured's duties in the event of an occurrence, claim or suit

   apply irrespective of the application of the deductible amount.

AG016 (2/00)

Endorsement No. 1 page 1 of 2

VERIFICATION

STATE OF _Ks_ )
                ) SS
COUNTY OF _Sedgwick_ )

James R. Hardy, being duly sworn, upon oath states that he is the _President_ of Hardy Aviation Insurance, Inc., that he has read the foregoing Answers to Interrogatories, knows the contents thereof, and states that the Answers are true and correct.

_[signature]_

SUBSCRIBED AND SWORN TO
before me this 30th day
of _June_, 2004.

_[signature]_
Notary Public

04/28/04  TUE 13:15  [TX/RX NO 7470]

---

23-5324-00-1

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

NATIONAL UNION FIRE INSURANCE        )
COMPANY OF PITTSBURGH, P.A.,         )
                                     )
                Plaintiff,           )
                                     )    No. 03-1288
        vs.                          )
                                     )
PONTIAC FLYING SERVICES, INC.,       )
                Defendant and        )
                Third-Party Plaintiff,)
                                     )
        vs.                          )
                                     )
HARDY AVIATION INSURANCE, INC.,      )
                                     )
                Third-Party Defendant.)

CERTIFICATE OF SERVICE

The undersigned, being first duly sworn upon oath, deposes and states that the attached Hardy's Aviation Insurance, Inc.'s Answers to Pontiac Flying Service's Interrogatories was faxed to All Counsel of Record (see attached Service List) on the 30th day of June, 2004 from 10 S. LaSalle, Chicago, Illinois 60603.

_[signature]_

---

Subscribed and sworn to before me

this 30th day of _June_, 2004

_[signature]_
Notary Public

"OFFICIAL SEAL"
CHRISTINE MENNELLA

---

National Union v. Pontiac Flying v. Hardy Aviation
File No. 23-53 24 00 1

SERVICE LIST

Counsel for Plaintiff NATIONAL UNION

Jeffrey B. Rock
HASELBERG ROCK BELL & KUPPLER
Suite 200 - Associated Bank Building
4600 N. Brandywine Drive
Peoria, Illinois 61614
Tel. No. 309-688-9400
Fax No. 309-688-9455

Mark T. Banovetz
TRESSLER SODERSTROM MALONEY & PRIESS
Sears Tower - 32nd Floor
233 South Wacker Drive
Chicago, Illinois 60606
Tel. No. 312-627-4000
Fax No. 312-627-1717

Counsel for Third Party Plaintiff

David D. Mueller
CASSIDY & MUELLER
323 Commerce Bank Building
416 Main Street
Peoria, IL 61602
Tel. No. 309-676-0591
Fax No. 309-676-8036

6/18/02 - Confirmation of AIG coverage for aerial application use on all 3 aircraft.

6/19/02 - Received inquiry from insured as to possibility of starting an ag training school with two-seat ag cat. Canvassed market to see if anyone willing to take on the risk. AIG and Phoenix declined.

6/26/02 - Sent AIG's ag policy to insured.

7/2/02 - Sent insured's application to AIG for ag use.

9/4/02 - AIG offered quote for two-seat ag cat valued at $80,000 for AG training. Gave quote to insured by telephone. File note states insured ecstatic that they received a quote for training and that they would call when they were ready to start training.

1/30/03 - Sent renewal update to insured with ag uses only clearly indicated.

2/6/03 - Insured completed and signed renewal update; forwarded it to AIG.

5/1/03 - Sent renewal quote to insured for ag use for all three aircrafts clearly stated, with no other use shown.

Documents are included in Hardy's Rule 26 disclosures.

5. Did HARDY "bind" coverage under NATIONAL UNION Policy No. A V 3391999-04, which is the subject of this litigation?

ANSWER: HARDY has no binding authority. The coverage under the policy was bound by NATIONAL UNION.

6. Please state whether HARDY was ever provided with a definition of the term "flights required in direct support thereof" as it is used in the following policy provision:

> "Aerial Application" means the application by aircraft of seeds, fertilizers or chemicals and includes flights required in direct support thereof.

by NATIONAL UNION or anyone else? If your answer is in the affirmative, then please:

(a) Set for the definition;

(b) Identify the person or persons from whom it was received, and

(c) Identify any documents evidencing the same.

ANSWER: No.

7. Please state whether or not HARDY ever defined the term "flights required in direct support thereof" as it is used in the following policy provision:

> "Aerial Application" means the application by aircraft of seeds, fertilizers or chemicals and includes flights required in direct support thereof.

for PONTIAC FLYING, and, if your answer is in the affirmative, then please identify the person and any documents which provide that definition.

ANSWER: HARDY gave PONTIAC the policy.

8. Please set forth the basis for HARDY's admission that it was an "agent" of NATIONAL UNION FIRE COMPANY OF PITTSBURGH, PA in making the following answer to the Third Party Complaint:

> 5. At all relevant times HARDY has been and held itself out to be a property and casualty lines insurance broker and agent in business *inter alia* of procuring property and liability coverages for the public. Included within those coverages was and is commercial aviation insurance for flight service business such as PONTIAC.
>
> ANSWER: Hardy admits that it has been and has held itself out to be a property and casualty lines insurance broker and agent in the business of procuring property and liability coverages for the public. Hardy further admits that included in those coverages was and is commercial aviation insurance for flight services business such as Pontiac. Hardy denies the remaining allegations of Paragraph 5.

Including the identity of any persons having knowledge thereof and the identity of any documents evidencing the same.

ANSWER: In its answer to Paragraph 5, HARDY does not admit that it was an "agent" of NATIONAL UNION.

9. Please state the basis upon which you subsequently decided to deny the existence of an agency relationship between HARDY and NATIONAL UNION FIRE COMPANY OF PITTSBURGH, PA, including the identity of any persons who provided information in that regard and any documents relied upon.

ANSWER: HARDY denied the existence of an agency relationship with NATIONAL UNION because they do not have an agency relationship.

10. Please state whether or not there are any agreements or understandings by and between HARDY and NATIONAL UNION FIRE COMPANY OF PITTSBURGH, PA, regarding indemnification or contribution by one in favor of the other or involving the assertion of a common defense or defense strategy. If your answer is in the affirmative, then please:

(a) Identify any and all persons having knowledge thereof;

(b) Describe the agreement with particularity, and

(c) Identify any documents evidencing the same.

ANSWER: No.

Diane M. Baron

DIANE M. BARON
CLAUSEN MILLER P.C.

DIANE M. BARON
CLAUSEN MILLER P.C.
10 South LaSalle Street
Chicago, Illinois 60603-1098
312/855-1010

Attorneys for Third-Party Defendant, HARDY AVIATION INSURANCE, INC.

23-5324-00-1

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

NATIONAL UNION FIRE INSURANCE COMPANY OF )
PITTSBURGH, PA., )
)
Plaintiffs, )   No. 03-1288
)
vs. )
)
PONTIAC FLYING SERVICES, INC., )
)
Defendants and )
Third-Party Plaintiff, )
)
vs. )
)
HARDY AVIATION INSURANCE, INC., )
)
Third-Party Defendant. )

**HARDY AVIATION INSURANCE, INC.'S
ANSWERS TO PONTIAC FLYING
SERVICE'S INTERROGATORIES**

NOW COMES the Third-Party Defendant, HARDY AVIATION INSURANCE, INC.

(hereinafter "HARDY") by its attorneys, DIANE M. BARON and CLAUSEN MILLER P.C.,

and for its Answers to Third-Party Plaintiff PONTIAC FLYING SERVICES, INC.'s (hereinafter

"PONTIAC") Interrogatories, states as follows:

1.    Please identify the person answering these Interrogatories.

ANSWER:    James R. Hardy
HARDY AVIATION INSURANCE, INC.
P.O. Box 12010
Wichita, Kansas 67277-2010


EXHIBIT
D

2.    Please identify any and all persons who dealt with PONTIAC FLYING regarding

insurance coverage for PONTIAC FLYING and in that regard, as to each such person, state

chronologically:

(a)    The person or persons at PONTIAC FLYING with whom that individual
dealt;

(b)    The date or dates of each contact;

(c)    The subject of that contact, and

(d)    Identify and state the location of any and all documents evidencing the
same.

ANSWER:    James R. Hardy
HARDY AVIATION INSURANCE, INC.
P.O. Box 12010
Wichita, Kansas 67277-2010

Angela Banz
HARDY AVIATION INSURANCE, INC.
P.O. Box 12010
Wichita, Kansas 67277-2010

Our file indicates the following contacts regarding the AT503:

2/8/02 Note of Angela Banz re: telephone contact with Pontiac requesting quote
for AT503.

2/18/02 Angela Banz's letter to Scott Petersen re: AT503 quote from AIG.

2/21/02 Note of Angela Banz re: telephone contact with Scott Petersen to
confirm that he received quote.

2/26/02 Note of Angela Banz re: telephone contact with Scott Petersen re:
keeping coverage with AIG until renewal.

2/26/02 Note of Angela Banz re: telephone contact with Sarah Petersen re: loan
for 503, gypsy moth contracts and need to take on investor.

3/15/02 Angela Banz's letter to Scott and Sarah Petersen confirming addition of
1991 Air Tractor 503 to aerial application insurance policy and enclosing invoice.

3/18/02 Note of Angela Banz re: telephone contact with Scott Petersen re:
Harold Lucente and Rick Lucente.

2

2/26/02 Angela Banz's letter to Scott and Sarah Petersen re: renewal quote for
aerial application insurance.

6/18/02 Angela Banz's letter to Scott and Sarah Petersen confirming placement of
aerial application insurance and enclosing invoice.

8/22/02 Note of Angela Banz re: telephone contact with Sara Petersen re:
question of whether training could be done in the Cat.

9/3/02 Note of Angela Banz re: telephone contact with Scott Petersen re: ag
training.

10/19/02 Note of Angela Banz re: telephone contact with Sarah Petersen re:
getting quote on 2 place Ag Cat for ag training.

5/5/03 Note of Angela Banz re: telephone contact with Sarah Petersen re: plane
crash.

5/8/03 Note of Angela Banz re: telephone contact with Scott Petersen re:
passenger's ex-wife's inquiry about insurance for minor child.

These documents are included in HARDY's Rule 26 disclosures.

Investigation continues.

3.    Please identify any and all instances in which HARDY bound coverage on

insurance contracts issued by NATIONAL UNION FIRE COMPANY OF PITTSBURGH, PA,

including by date and type of coverage, any policies, insurance contracts or endorsements which

provided coverage to PONTIAC FLYING

ANSWER:    HARDY has no binding authority.  Coverage is bound by NATIONAL UNION.

4.    Please identify the person or persons both at HARDY and NATIONAL UNION

FIRE COMPANY OF PITTSBURGH, PA who were involved in providing coverage to

PONTIAC FLYING for the dual cockpit Ag Tractor 503 which is the subject of this litigation.

As to each, also please:

(a)    State what that person did;

3

(b)    Give the date or dates thereof, and

(c)    Identify any documents evidencing the same.

ANSWER:    Angela Banz, Hardy Aviation Insurance
Randy Hardy, Hardy Aviation Insurance
Mary Beth Schwagel, Underwriter for AIG Aviation Insurance

(a)    Angela Banz received most of the telephone calls and requests.

Randy Hardy was involved on a part-time basis and oversaw some of the
information.

Mary Beth Schwagel was the underwriter handling the binding of
coverage.

(b)    2/8/02 - Banz received request from the Petersens for a quote on the
AT503.

2/18/02 - Banz followed up with Petersens for status of AT503.

2/18/02 - AIG's quote to add the AT503 to the Petersens' existing ag
policy was given to the Petersens by Banz.

2/21/02 - Banz' telephone contact with Scott Petersen to confirm that he
received quote.

2/26/02 - Banz followed up with Petersens for status of AT503 purchase.
Discussed higher liability to be added to the ag policy at renewal because
the insured had 2 guaranteed gypsy moth contracts.

3/1/02 - AT503 purchased; coverage bound by AIG until policy expiration
on 4/10/03.

3/15/02 - Banz' correspondence to Petersens confirming addition of the
AT503 to the existing ag policy with liability coverage at current policy
limits

3/26/02 - Renewal quote for aerial application insurance sent to insured.

4/3/02 - Insured signed renewal quote, through USAIG, for ag coverage on 3
aircraft, including the AT503.

4/16/02 - Received gypsy moth contract requiring residential coverage. USAIG
cannot provide such coverage, so began search for another company for coverage.

5/19/02 - Coverage provided by AIG due to gypsy moth contract requirement of
residential coverage. USAIG policy cancelled.

4

ANSWER:   Hardy admits that it has been and has held itself out to be a property and casualty lines insurance broker and agent in the business of procuring property and liability coverages for the public. Hardy further admits that included in those coverages was and is commercial aviation insurance for flight service business such as Pontiac. Hardy denies the remaining allegations of Paragraph 5.

6.   Upon information and belief, PONTIAC also alleges that HARDY had an agency contract with the Plaintiff in the underlying case, NATIONAL UNION FIRE COMPANY OF PITTSBURGH, PA, or one of its affiliated companies, pursuant to which HARDY bound and sold the NATIONAL UNION policy in question.

ANSWER:   Hardy denies the allegations of Paragraph 6.

7.   For a number of years before the issuance of NATIONAL UNION policy No. A V3391999-04 (the "Policy") HARDY had acted as an insurance broker for PONTIAC in procuring property and casualty policies for PONTIAC. During the course of that relationship HARDY came to know the nature of PONTIAC's business, including the type and amount of property and liability insurance which was necessary for that business.

ANSWER:   Hardy admits that for several years before the issuance of National Union policy No. AV3391999-04 Hardy had acted as an insurance broker for Pontiac in procuring property and casualty policies for Pontiac. Hardy further admits that it came to know the nature of Pontiac's business based upon information provided by Pontiac. Hardy denies the remaining allegations of Paragraph 7.

8.   Upon information and belief, PONTIAC alleges that HARDY was the property and casualty insurance broker for Harold Miller Flying Service, and in that regard procured property and liability coverages on and for the 1991 Air Tractor #AT503A, N503D ("Air Tractor") which is described in the underlying complaint when it was owned by Miller.

ANSWER:   Hardy admits that it was the property and casualty insurance broker for Harold Miller Flying Service, and that Hardy procured liability coverage on and for the 1991 Air Tractor #AT503A, N503D ("Air Tractor") when it was owned by Miller. Hardy did not procure physical property damage coverage for said Air Tractor for Miller and therefore denies the remaining allegations of Paragraph 8.

3

---

9.   During the times that the Air Tractor was insured under policies which were procured by HARDY, the Third Party Defendant knew the plane contained two seats and, was used inter alia by Miller for transition turbine training in support of the aerial application of seeds and chemicals.

ANSWER:   Hardy admits the allegations of Paragraph 9.

10.   On or about March 1, 2002 the Air Tractor was purchased by PONTIAC from Miller. At that time property and casualty insurance for the Air Tractor was sought from HARDY by PONTIAC.

ANSWER:   Hardy admits the allegations of Paragraph 10.

11.   At the time coverage was sought, and at all times thereafter, HARDY knew or had reason to know that the Air Tractor was to be used by PONTIAC inter alia for turbine transition training in support of the aerial application of seeds and fertilizers and that coverage for that use was sought.

ANSWER:   Hardy denies the allegations of Paragraph 11.

12.   In the event that it is determined that there is no property damage or casualty loss coverage under the NATIONAL UNION policy for the occurrence of May 5, 2003, then HARDY was guilty of one or more of the following negligent acts and omissions:

   (a)   Failing to procure property damage coverage for the use which was made of the plane at the time of the occurrence;

   (b)   Failing to seek property damage and casualty loss coverage for the use which was made of the plane at the time of the occurrence;

   (c)   Failing to tell PONTIAC that HARDY had been able to procure coverage for the use which was made of the plane at the time of the occurrence;

   (d)   Failing to tell PONTIAC that HARDY had not sought coverage for the use which was made of the plane at the time of the occurrence;

4

---

   (e)   Failing to inform PONTIAC that it was not covered for turbine transition training in support of aerial application when HARDY knew of that use;

   (f)   Causing PONTIAC to rely upon having coverage which did not exist under the Policy which HARDY procured.

ANSWER:   Hardy denies the allegations of Paragraph 12, including each and every allegation contained in subparagraphs (a) through (f) thereof.

13.   In the event that it is determined there is no coverage under the National Union policy for the occurrence of May 5, 2003, then one or more of the foregoing negligent acts and omissions on the part of HARDY will be a proximate cause of the uninsured loss and damages suffered by PONTIAC.

ANSWER:   Hardy denies the allegations of Paragraph 13.

WHEREFORE, Third Party Defendant, HARDY AVIATION INSURANCE, INC., prays for the entry of judgment in its favor and against Third Party Plaintiff, PONTIAC FLYING SERVICES, INC., together with its costs incurred herein.

_Diane M. Baron_
DIANE M. BARON
CLAUSEN MILLER P.C.

DIANE M. BARON
GEORGE K. FLYNN
CLAUSEN MILLER P.C.
10 South LaSalle Street
Chicago, Illinois 60603-1098
312/855-1010

Attorneys for Third Party Defendant

5

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA.,

    Plaintiff,

v.

PONTIAC FLYING SERVICE, INC.,

    Defendant/Third Party Plaintiff,

HARDY AVIATION INSURANCE, INC.,

    Third Party Defendant.

No. 03-1233

Mag. Judge Byron G. Cudmore

RECEIVED
APR 14 2004
CASSIDY & MUELLER

### NOTICE OF FILING

TO:   See Attached Service List

PLEASE TAKE NOTICE that on the 12th day of April, 2004, we mailed for filing with the Clerk of the United States District Court for the Central District of Illinois, Peoria Division, that Third Party Defendant HARDY AVIATION INSURANCE, INC.'s Amended Answer to Third Party Complaint, a copy of which is attached hereto.

_Diane M. Baron, P.C._
DIANE M. BARON
CLAUSEN MILLER P.C.

CLAUSEN MILLER P.C.
10 South LaSalle Street
Chicago, Illinois 60603-1098
312/855-1010
Attorneys for Third Party Defendant HARDY AVIATION

### CERTIFICATE OF SERVICE

The undersigned, after being duly sworn, deposes and says that she served a copy of the above and foregoing Notice of Filing, together with a copy of the documents therein referred, to each party to whom this Notice is directed, by First Class mail, postage prepaid, at 10 South LaSalle Street, Chicago, Illinois at 5:00 p.m. on the 12th day of April 2004.

_Patricia M. Lebo_

Subscribed and sworn to before me
this 12th day of April, 2004.

_Joseph Backes_
Notary Public

"OFFICIAL SEAL"
Joseph Backes
Notary Public, State of Illinois
My Commission Expires Sept 27, 2005
374999.1

EXHIBIT
C

---

National Union v. Pontiac Flying v. Hardy Aviation
File No. 23 53 24 00 1

### SERVICE LIST

Counsel for Plaintiff NATIONAL UNION

Jeffrey B. Rock
HASELBERG ROCK BELL & KUPPLER
Suite 200 - Associated Bank Building
4600 N. Brandywine Drive
Peoria, Illinois 61614
Tel. No. 309.688.5400

Mark T. Banovetz
TRESSLER SODERSTROM MALONEY & PRIESS
Sears Tower - 22nd Floor
233 South Wacker Drive
Chicago, Illinois 60606
Tel. No. 312.627.4000

Counsel for Third Party Plaintiff

David D. Mueller
CASSIDY & MUELLER
323 Commerce Bank Building
416 Main Street
Peoria, IL 61602
Tel. No. 309.676.0591

880042.1

---

23 53 24 00 1

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA

    Plaintiff,

v.

PONTIAC FLYING SERVICES, INC.

    Defendant and
    Third Party Plaintiff,

v.

HARDY AVIATION INSURANCE, INC.,

    Third Party Defendant.

RECEIVED
APR 14 2004
CASSIDY & MUELLER

No. 03-1288

Mag. Judge Byron G. Cudmore

### HARDY AVIATION INSURANCE, INC.'S AMENDED ANSWER TO THIRD PARTY COMPLAINT

NOW COMES Third Party Defendant HARDY AVIATION INSURANCE, INC. (hereinafter "Hardy"), by its attorneys, DIANE M. BARON, GEORGE K. FLYNN, CLAUSEN MILLER P.C., and for its Amended Answer to the Third Party Complaint of PONTIAC FLYING SERVICES, INC. (hereinafter "Pontiac"), Third Party Plaintiff herein, states as follows:

### JURISDICTION

1.    This Third Party Complaint is brought pursuant to Rule 14. In the event that the Plaintiff in the underlying case prevails, HARDY will be liable to PONTIAC for the resultant uninsured loss.

379313.1

---

ANSWER:    Hardy admits that Rule 14 of the Federal Rules of Civil Procedure provides for the filing of third party complaints. Hardy denies that Pontiac has any factual basis for bringing a third party complaint against Hardy, and denies the remaining allegations of Paragraph 1.

2.    Upon information and belief, PONTIAC alleges that HARDY is a corporation incorporated under the laws of the State of Kansas, with its principal place of business in Wichita, Kansas.

ANSWER:    Hardy admits the allegations of Paragraph 2.

3.    The NATIONAL UNION policy which is the subject of the underlying case was procured by HARDY through contacts with PONTIAC which took place in the State of Illinois. The policy was delivered to PONTIAC in the State of Illinois and premiums for coverage under the policy were transmitted by PONTIAC to HARDY from the State of Illinois.

ANSWER:    Hardy admits the allegations of Paragraph 3.

4.    Upon information and belief, PONTIAC further alleges that HARDY regularly transacts business in the State of Illinois involving the solicitation for and placement of insurance policies within the State of Illinois.

ANSWER:    Hardy admits the allegations of Paragraph 4.

### GENERAL ALLEGATIONS

5.    At all relevant times HARDY has been and held itself out to be a property and casualty lines insurance broker and agent in the business _inter alia_ of procuring property and liability coverages for the public. Included within those coverages was and is commercial aviation insurance for flight service business such as PONTIAC.

379313.1

2

was and is commercial aviation insurance for flight service business such as Pontiac. Hardy denies the remaining allegations of Paragraph 5.

6.    Upon information and belief, PONTIAC also alleges that HARDY had an agency contract with the Plaintiff in the underlying case, NATIONAL UNION FIRE COMPANY OF PITTSBURGH, PA, or one of its affiliated companies, pursuant to which HARDY bound and sold the NATIONAL UNION policy in question.

ANSWER:    Hardy admits the allegations of Paragraph 6.

7.    For a number of years before the issuance of NATIONAL UNION policy No. A V3391999-04 (the "Policy") HARDY had acted as an insurance broker for PONTIAC in procuring property and casualty policies for PONTIAC. During the course of that relationship HARDY came to know the nature of PONTIAC's business, including the type and amount of property and liability insurance which was necessary for that business.

ANSWER:    Hardy admits that for several years before the issuance of National Union policy No. AV3391999-04 Hardy had acted as an insurance broker for Pontiac in procuring property and casualty policies for Pontiac. Hardy further admits that it came to know the nature of Pontiac's business based upon information provided by Pontiac. Hardy denies the remaining allegations of Paragraph 7.

8.    Upon information and belief, PONTIAC alleges that HARDY was the property and casualty insurance broker for Harold Miller Flying Service, and in that regard procured property and liability coverages on and for the 1991 Air Tractor #AT503A, N503D ("Air Tractor") which is described in the underlying complaint when it was owned by Miller.

ANSWER:    Hardy admits that it was the property and casualty insurance broker for Harold Miller Flying Service, and that Hardy procured liability coverage on and for the 1991 Air Tractor #AT503A, N503D ("Air Tractor") when it was owned by Miller. Hardy did not procure physical property damage coverage for said Air Tractor for Miller and therefore denies the remaining allegations of Paragraph 8.

9.    During the times that the Air Tractor was insured under policies which were procured by HARDY, the Third Party Defendant knew that the plane contained two seats and,

3

was used inter alia by Miller for transition turbine training in support of the aerial application of seeds and chemicals.

ANSWER:    Hardy admits the allegations of Paragraph 9.

10.    On or about March 1, 2002 the Air Tractor was purchased by PONTIAC from Miller. At that time property and casualty insurance for the Air Tractor was sought from HARDY by PONTIAC.

ANSWER:    Hardy admits the allegations of Paragraph 10.

11.    At the time coverage was sought, and at all times thereafter, HARDY knew or had reason to know that the Air Tractor was to be used by PONTIAC inter alia for turbine transition training in support of the aerial application of seeds and fertilizers and that coverage for that use was sought.

ANSWER:    Hardy denies the allegations of Paragraph 11.

12.    In the event that it is determined that there is no property damage or casualty loss coverage under the NATIONAL UNION policy for the occurrence of May 5, 2003, then HARDY was guilty of one or more of the following negligent acts and omissions:

(a)    Failing to procure property damage coverage for the use which was made of the plane at the time of the occurrence;

(b)    Failing to seek property damage and casualty loss coverage for the use which was made of the plane at the time of the occurrence;

(c)    Failing to tell PONTIAC that HARDY had been able to procure coverage for the use which was made of the plane at the time of the occurrence;

(d)    Failing to tell PONTIAC that HARDY had not sought coverage for the use which was made of the plane at the time of the occurrence;

(e)    Failing to inform PONTIAC that it was not covered for turbine transition training in support of aerial application when HARDY knew of that use;

(f)    Causing PONTIAC to rely upon having coverage which did not exist under the Policy which HARDY procured.

4

ANSWER:    Hardy denies the allegations of Paragraph 12, including each and every allegation contained in subparagraphs (a) through (f) thereof.

13.    In the event that it is determined there is no coverage under the National Union policy for the occurrence of May 5, 2003, then one or more of the foregoing negligent acts and omissions on the party of HARDY will be a proximate cause of the uninsured loss and damages suffered by PONTIAC.

ANSWER:    Hardy denies the allegations of Paragraph 13.

WHEREFORE, Third Party Defendant, HARDY AVIATION INSURANCE, INC., prays for the entry of judgment in its favor and against Third Party Plaintiff, PONTIAC FLYING SERVICES, INC., together with its costs incurred herein.

_Diane M. Baron_
DIANE M. BARON
CLAUSEN MILLER P.C.

DIANE M. BARON
GEORGE K. FLYNN
CLAUSEN MILLER P.C.
10 South LaSalle Street
Chicago, Illinois 60603-1098
312/855-1010
Attorneys for Third Party Defendant

5

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

**RECEIVED**

JAN - 2 2004

CASSIDY & MUELLER

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA.,

    Plaintiff,

    v.

PONTIAC FLYING SERVICE, INC.,

    Defendant/Third Party Plaintiff,

    v.

HARDY AVIATION INSURANCE, INC.,

    Third Party Defendant.

No. 03-1233

Mag. Judge Byron G. Cudmore

### NOTICE OF FILING

TO:    See Attached Service List

PLEASE TAKE NOTICE that on the 30th day of December, 2003, we mailed via overnight delivery for filing with the Clerk of the United States District Court for the Central District of Illinois, Peoria Division, Third Party Defendant HARDY AVIATION INSURANCE, INC.'s ANSWER TO THIRD PARTY COMPLAINT, a copy of which is attached hereto.

DIANE M. BARON
CLAUSEN MILLER P.C.

CLAUSEN MILLER P.C.
10 South LaSalle Street
Chicago, Illinois 60603-1098
312/855-1010
Attorneys for Defendant RONALD L. SCHAAD

### CERTIFICATE OF SERVICE

The undersigned, after being duly sworn, deposes and says that she served a copy of the above and foregoing Notice of Filing, together with a copy of the documents therein referred, to each party to whom this Notice is directed, by First Class mail, postage prepaid, at 10 South LaSalle Street, Chicago, Illinois at 5:00 p.m. on the 30th day of December, 2003.

Subscribed and sworn to before me
this 30th day of December, 2003.

Patricia M. Kehr
Notary Public

"OFFICIAL SEAL"
Patricia M. Kehr
Notary Public, State of Illinois
My Commission Expires Nov. 10, 2007

EXHIBIT
B

---

National Union v. Pontiac Flying v. Hardy Aviation
File No. 23 53 24 00 1

### SERVICE LIST

**Counsel for Plaintiff NATIONAL UNION**

Jeffrey B. Rock
HASELBERG ROCK BELL & KUPPLER
Suite 200 - Associated Bank Building
4600 N. Brandywine Drive
Peoria, Illinois 61614
Tel. No. 309.688.9400

Mark T. Banovetz
THESSLER SODERSTROM MALONEY & PRIESS
Sears Tower - 22nd Floor
233 South Wacker Drive
Chicago, Illinois 60606
Tel. No. 312.617.4890

**Counsel for Third Party Plaintiff**

David D. Mueller
CASSIDY & MUELLER
323 Commerce Bank Building
416 Main Street
Peoria, IL 61602
Tel. No. 309.676.0591

---

23 53 24 00 1

**RECEIVED**

JAN - 2 2004

CASSIDY & MUELLER

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

NATIONAL UNION FIRE COMPANY OF
PITTSBURGH, PA

    Plaintiff,

    v.

PONTIAC FLYING SERVICES, INC.

    Defendant and
    Third Party Plaintiff,

    v.

HARDY AVIATION INSURANCE, INC.,

    Third Party Defendant.

No. 03-1288

Mag. Judge Byron G. Cudmore

### HARDY AVIATION INSURANCE, INC.'S
### ANSWER TO THIRD PARTY COMPLAINT

NOW COMES Third Party Defendant HARDY AVIATION INSURANCE, INC. (hereinafter "Hardy"), by its attorneys, DIANE M. BARON, GEORGE K. FLYNN, CLAUSEN MILLER P.C., and for its Answer to the Third Party Complaint of PONTIAC FLYING SERVICES, INC. (hereinafter "Pontiac"), Third Party Plaintiff herein, states as follows:

### JURISDICTION

1.    This Third Party Complaint is brought pursuant to Rule 14. In the event that the Plaintiff in the underlying case prevails, HARDY will be liable to PONTIAC for the resultant uninsured loss.

---

ANSWER:    Hardy admits that Rule 14 of the Federal Rules of Civil Procedure provides for the filing of third party complaints. Hardy denies that Pontiac has any factual basis for bringing a third party complaint against Hardy, and denies the remaining allegations of Paragraph 1.

2.    Upon information and belief, PONTIAC alleges that HARDY is a corporation incorporated under the laws of the State of Kansas, with its principal place of business in Wichita, Kansas.

ANSWER:    Hardy admits the allegations of Paragraph 2.

3.    The NATIONAL UNION policy which is the subject of the underlying case was procured by HARDY through contacts with PONTIAC which took place in the State of Illinois. The policy was delivered to PONTIAC in the State of Illinois and premiums for coverage under the policy were transmitted by PONTIAC to HARDY from the State of Illinois.

ANSWER:    Hardy admits the allegations of Paragraph 3.

4.    Upon information and belief, PONTIAC further alleges that HARDY regularly transacts business in the State of Illinois involving the solicitation for and placement of insurance policies within the State of Illinois.

ANSWER:    Hardy admits the allegations of Paragraph 4.

### GENERAL ALLEGATIONS

5.    At all relevant times HARDY has been and held itself out to be a property and casualty lines insurance broker and agent in the business *inter alia* of procuring property and liability coverages for the public. Included within those coverages was and is commercial aviation insurance for flight service business such as PONTIAC.

ANSWER:    Hardy admits that it has been and has held itself out to be a property and casualty lines insurance broker and agent in the business of procuring property and liability coverages for the public. Hardy further admits that included in those coverages

2

IN WITNESS WHEREOF, the Company specified on the Declaration Page has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned on the Declarations Page by a duly authorized agent of the Company and approved by the Aviation Managers.

National Union Fire Insurance Company of Pittsburgh, Pa.

President

American Home Assurance Company

President

The Insurance Company of the State of Pennsylvania

President

Secretary
National Union Fire Insurance Company of Pittsburgh, Pa.
The Insurance Company of the State of Pennsylvania
American Home Assurance Company

2-8-02    Request from Petersen's to get quote on AT503. Scott went through Harold Miller's turbine transition course and had 40 hours turbine.

2-18-02    Gave Petersen's AIG's quote to add the AT503 to their existing ag policy

2-26-02    Followed up with Petersen's for status of 503 purchase. Discussed higher liability to be added to the ag policy at renewal because the insured had two guaranteed gypsy moth contracts, which is why they bought the 503.

3-1-03    503 purchased -- coverage bound through AIG until policy expiry April 10 2003.

3-15-02    Letter to insured confirming addition of the 503 to the existing ag policy With liability coverage at current policy limits.

3-18-02    Request by Petersen's to add pilots Harold Lucente and Rick Lucente. They both meet the terms of the open pilot clause of the policy, so by AIG's standard procedure, they do not need to be named.

3-26-02    Renewal quote for aerial application insurance sent to insured. Quote Clearly shows use on the 503 as aerial application only.

4-3-02    Insured signed renewal quote, through USAIG, for ag coverage on all Three of the aircraft, including the 503.

4-4-02    Request from insured to send certificates to several states to get licenses Renewed/established because they're in the middle of gypsy moth work.

4-16-02    Gypsy moth contract forwarded to us requiring residential coverage. USAIG can't do -- began to look to another company for coverage.

5-19-02    Coverage placed with AIG due to gypsy moth requirement of residential Coverage. USAIG policy cancelled.

6-18-02    Confirmation of coverage replaced with AIG, for aerial application use On all three aircraft.

6-19-02    Insured inquired to possibility of starting an ag training school with a Two-seat ag cat. Canvassed market to see if anyone willing to take On the risk. AIG declined because Scott didn't have enough Experience. Phoenix also declined.

6-26-02    AIG's ag policy sent to insured.

7-2-02    Insured's signed application sent to AIG. Ag use, with no other approved Uses clearly stated on the application.

8-22-02    Insured called to advise Scott had obtained 300 ag hours to date this Season and inquired into the possibility of doing training, without solo In the Ag Cat.

9-3-02    Note that with regard to possible ag training, Rick Lucent would be helping

9-4-02    AIG offered quote for two-seat Ag Cat valued at $80,000., for ag training, Gave quote to insured over phone. File note states insured ecstatic that They got a quote for the training and they would call us when they were Ready to begin training.

1-30-03    Renewal update sent to insured -- ag uses only clearly represented.

2-6-03    Insured completed and signed renewal update forwarded to AIG.

5-1-03    Sent renewal quote to insured. Ag use for all three aircraft clearly Stated, with no other uses shown.

5-5-03    LOSS OCCURRED



EXHIBIT
F

1:03-cv-01288-JBM-BGC  # 111-9

# Damage claims - real or alleged

*by L.B. Davis*
*Davis Ag Consultants*

Frequently we get claim assignments where so much time has passed since the spray that all of the symptoms that we could use to document the situation have disappeared.

When you have a complaint, let me urge you to have someone investigate the matter who has the expertise to recognize whether or not the complaint is justified or if you are being falsely accused. This should be someone who can testify in court as an expert witness.

### Opening Scene

I am sure burndown is already occurring in some parts of the United States. Materials will include such things as glyphosate, Touchdown, gramoxone and some other burndown materials. I do not know of any wheat, oats, barley or other small grains that are not sensitive to these materials. Also, there will probably be other sensitive crops, such as flowers, trees, shrubs, etc.

### Temperature Inversion

A temperature inversion occurs when a warm layer of air forms above the cooler air. A gradual smoke column will rise to this inversion layer and level off just under it. If there is no movement, the smoke will go downwind. If the inversion occurs when winds are perfectly calm, the smoke will probably spread in more than one direction.

As most of you know, the...




HARDY AVIATION INSURANCE

COVERAGE FROM A NAME YOU CAN TRUST... AT A PRICE YOU CAN AFFORD!

From Agricultural Aviation to Fixed Base Operations and Personal Aircraft... Call Randy, Angie, Vera or Melinda with all of your aviation insurance needs. We'll make a satisfied customer out of you the old fashioned way... Good Policies and Good Service.

P.O. Box 12010, Wichita, KS  67277
Phone: (316) 945-6733  •  Fax: (316) 945-2330
randy@hardyaviationins.com   www.hardyaviationins.com

1•800•721•6733

JON HERR PROFESSIONAL FIBERGLASS REPAIR

The only name to remember for all your repair, refinish and custom work

422 Monte Vista • Woodland
www.jhgfa.com  •  email: jherr

Available Now!

Hard bound — 117 pages
Only $14.95 plus $5.00 S&H
MasterCard/Visa



Advertise in Varonico *AgAir update*

478-987-2250

to determine if there
five crops, trees, plants,
prowled of your spray

... take someone else's
at the surrounding crops
...ndup-Ready" or other-
...netically engineered for
...ical that you plan to
... Do not take the word of
...k driver or some other
...eer. Ask the owner or
... of the surrounding

aged portion may be evident,
but whose the leaf been actu-
ally stopped would be hard to
determine. Other situations also
occur with other crops where it
is impossible to determine the
extent of a drift, or to document
that a drift did not occur. Get the
situation documented while the
symptoms are still present.



# Turbine Transition Training

AT-502-24 w/Series III
5 hour Ground Instruction
5 hour Dual Instruction w/CESB Ag Pilot
Turbine Sign-off · Lodging Provided

## Pontiac Flying Service

Pontiac, Ill.

815-844-2707



... to take this opportunity
...h you a safe and suc-
... season. However, if you
...e a complaint, even if you
...ot believe you are guilty
...you believe the average
...ped is very small, I urge
... to get it documented by an
...ert" who can testify in coun
... expert witness, should it
...ume necessary. For instance,
... the corn is completely
...gue, it is hard to tell where
...symptoms of Roundup
...loped. The heavily dam-



...rips

$32.50

...ORK

...e Comments

2013

AFS

# ROY'S CUSTOMIZED TRUCKS
Building Trucks for 25 Years

## Standard Features
✓ 12" tubes
✓ 12" folding augers
✓ 600 gal. fuel tank
✓ Onboard scales
✓ Hopper 11,000 lb.
✓ Uren capacity
✓ Rollover tarp
✓ 10" side over side
  hopper loading capability
✓ Dual chain drive
✓ Hydraulic controlled
  stainless slide gate





Mounted on A7500 or 4900
International trucks with DT 466 engines.
Or custom mounted to customer's truck.

Many custom options
available including 100%
stainless steel version

**Let Us Build One For
Your Operation**

## ROY'S CUSTOMIZED TRUCKS
· Box 273, Highway 18C · Monette, AR 72447
870-486-2122 - shop   870-926-2384 - mobile
870-486-2853 - also 6pm

If your going to spray pasture and use Picloram (grazon, tordan, etc.) and you're not sure if your covered......................CALL US FIRST

If you have a need to spray for mosquito's in your county and your unsure if your covered for this........................ CALL US FIRST

If you have a call for Gypsy Moth contracts, or you want to help another operator and your unsure.................... CALL US FIRST

If you have any questions as to what your policy covers you for, please call our office for an update, or look into the policy terms and see what you have. Please do not assume, ask us first.

Each one of these items I just covered require an endorsement, or changes to a normal policy. You are not covered to loan your aircraft out or lease it to another operator unless you arrange the proper coverage. Picloram is a special endorsement that must be placed on the coverage to be in effect. Mosquito's spraying requires (in most cases) flying over Towns, Villages, or City's and your policy has an exclusion for this unless bought back.

Gypsy Moth or the boll weevil contracts require additional coverage and in the case of Gypsy Moth, the residential exclusion bought back.

Another issue of change or concern is the new methods of adding aircraft. In the past underwriters have been lenient towards adding aircraft during the season depending on time frames and the amount of season left. As a general rule now, if you have more than one aircraft when you renew and you choose to not place coverage on one aircraft, but end up adding that aircraft later, underwriters are charging the full annual premium for the additional aircraft at the time of addition. Exceptions to this rule are if the aircraft was just bought and added, maintenance issues, or leased aircraft for a specific time frame. We are still able to work with underwriters on a case by case basis, depending on variables. However, as this general rule goes, if you have most of the season left, and you have added the aircraft because you did need it, then most likely it will be at full annual premium. Call us on this because it could be different based on your individual situation or needs.

Additional Insured status has always been fairly interesting. We know you need to have some operations or clients added as additional insureds. Remember, when you add an additional insured, you are sharing your policy with that A.I. In most cases if you can avoid this, it's in your best interest not to offer sharing of your policy. Underwriters are starting to indicate a possible charge for each additional insured, more than ever now so please take notice of this and be selective on your choice.

Well, I think that's enough for now. If I don't have you confused yet then read your policy, that's enough to confuse anyone.

My wish is that each of you have a safe season and please, no surprises. If you have any questions about your coverage, call our office first.

Fly safe,

Randy Hardy

---

June 5, 2003

To clients and future customers:

Since we don't do a newsletter from our office just yet, I wanted to give you an update regarding the status of the industry especially where it concerns aerial application. As well, maybe some helpful suggestions or insight in your coverage's.

You may have heard me say this before, but I'll say it again. We don't like surprises and I'm fairly sure you don't either.

Loss update - The only way we can track losses across the nation is by using the NTSB records. These records do not include chemical losses or any liability losses for that matter. They also do not include losses not turned into the NTSB. The record is still good since this method is the industry standard so if the NTSB losses are down, overall losses are down as well.

So far in 2003, there have been 32 ag related losses. Of these, 21 are considered total losses or substantial. Of the 32 losses, 19 are piston, and 13 are turbine. It's difficult to determine the cause of the loss and since we don't want to assume anything, we will not try. The dollar value of losses so far exceeds the 5 million mark. Also, so far the death toll is 3 pilots for ag losses.

Okay, on to other items:

Currently there are still three markets who write aerial application insurance, they are, USAIG, AIG and Phoenix Aviation. All three markets are fairly strong and have shown a commitment to aerial application. USAIG and AIG's policy are the same wording on non chemical liability called "XC", which includes seeds and fertilizers. If you're with Phoenix and you take XC only coverage, their policy does not include seeds or fertilizers, just basic liability excluding any agri use.

Now, just as a recap of the liability. In the policy for Phoenix Aviation, they generally write a policy for CC ( comprehensive chemical ) which includes basic 3rd party drift, crops treated, adjacent field, farmer/owner/grower, and picloram coverage. With AIG and USAIG, your basic CC coverage is for 3rd party drift coverage. You will have to buy back the exclusions for Crops Treated, Adjacent Fields, Farmer/owner/grower, and Picloram, if needed. There is no longer any call for specialized coverage on Glyphosates (round-up).

Regarding physical damage to the aircraft (hull):

All aviation policies are now written on an agreed or stated value basis. What ever value you state or agree to is the amount to be paid less deducts, in the event of a total loss. Check your values to make sure you have them where you need them to be. A general rule is 10% to 15% either side of the actual value of the aircraft.

At one time it was of great advantage to separate the GPS units, however with the lower cost of GPS's and marketing trends, it's about the same to insure them on the aircraft. You can exclude the GPS from your policy should you want to. If you exclude the GPS, it's not covered however if a partial or total loss you can take the unit off the aircraft and use it on another. It's yours.

Ok, here's some food for thought, Exclusions:

If you're going to just loan out your aircraft to another operator, or lease that same

---



---



## We Are The Specialists In Aviation Insurance

Agricultural Aviation • Airport Liability • Air Show Liability • Air Taxi Operators • Aviation Products Liability
Business & Corporate Aircraft • Fixed Base Operations • Flight Schools • Helicopters • Pleasure Aircraft
Property Insurance Building and Contents • Workers Compensation & Employers Liability

## Hardy Aviation Insurance

Tuesday, July 13, 2004

**Newsletters**          Click Here To Read Some Of Our Customers

June 11, 2003

**We are committed to providing highly individualized service to our clients .....**

In today's changing world, it is important to identify your particular aviation insurance options and tailor your policy to match your exact needs.

Hardy Aviation Insurance is prepared to become a highly effective extension of your business by analyzing these needs and options, and providing you with a policy that "covers all the bases".

We encourage a one-on-one comprehensive study of your business or personal policy to ensure that you are covered in the manner you desire. Also, we will monitor your total insurance program, keeping you up to date with changes that may affect your insured risk

When the need arises, or you simply have a question, we are available night or day, weekends or holidays. Great customer service is a trademark of our organization ... our professional staff answers the phone, and we will not keep you waiting!

( Get A Quote )





## Meet Our Staff .....

Hardy Aviation Insurance, Inc. is staffed by professionals who have the knowledge to take care of all your aviation-related insurance needs. Call us today!





**Randy Hardy**

Randy is the founder of Hardy Aviation Insurance, Inc.

Randy began his aviation career in 1977 by obtaining his flying license. He is now certified for commercial, multi-engine, and is instrument rated. He has spent the better part of his career learning and understanding the many facets of aviation.

Randy enjoys working directly with clients, and is a member of numerous aviation-related organizations. He is also called upon to speak to aviation groups on subjects pertaining to trends and changes within

**Angie Banz**

As a charter staff member, Angie has extensive experience in the field of aviation insurance. Her experience includes claims service and policy inception and renewals. She became a licensed agent in 1987, and has further expanded her knowledge of the aviation insurance industry.

Angie also handles a large part of the office management duties, while continuing to service the clients directly.

## Contact Information .....

**7016 West Harry**
**P.O. Box 12010**
**Wichita, KS 67277-2010**

Toll Free: 800-721-6733
Local: 316-945-6733
Fax: 316-945-2330
E-Mail: hardy@hardyaviationins.com

( Get A Quote )



top | home | who we are | coverages | contact | staff | customer profiles

---



## We Service All Aviation Insurance Exposures ....

( Get A Quote )         ( Get A Quote )

Pleasure & Business      Agricultural Aerial
                          Application

* **Fixed Base Operation** insurance .... due to the large number of variables involved in preparing your quote, we request that you call us toll-free at the above number.

We can provide you with cost-effective coverage in the following aviation sectors.

- Agricultural Aviation
- Airport Liability
- Air Show Liability
- Air Taxi Operators
- Aviation Products Liability
- Business And Corporate Fleets
- Fixed Base Operators
- Flight Schools
- Helicopters
- Pleasure Aircraft
- Property Insurance - Buildings And Contents
- Workers Compensation And Employers Liability
- And More

---



## Who We Are ....

Hardy Aviation Insurance, Inc. was formed January 2, 1995 by Randy Hardy in Wichita, Kansas.

After ten years in the aviation parts business, Randy saw a growing need for better insurance service to aircraft owners, and began providing aviation insurance as a broker for another well know insurance agency. A pilot and owner himself, Randy decided he could better serve the needs of his clients by establishing his own agency, and thus began Hardy Aviation Insurance.

Hardy Aviation Insurance has become a name associated with best serving the needs of you, the customer. A well-trained and dedicated staff provides you with prompt and courteous service.

With cost always a factor, we believe in finding you the best comprehensive plan tailored to your specific needs. In effect, Hardy Aviation Insurance provides coverage from a name you can trust ... at a price you can afford.

( Get A Quote )



top | home | who we are | coverages | contact | staff | customer profiles

Page 4 of 4

Page 3 of 4



**Peggy Hahn**

Peggy Hahn joined the staff of Hardy Aviation Insurance in December of 2001. Her duties include taking over our accounting department and to help maintain good customer relationships.

Peggy's history includes working for many years as the flight coordinator for a local fixed base operator. Even though she's new to aviation insurance, aviation has been in her blood for many years. Married with a family of her own, we're very pleased now to have Peggy as a part of the Hardy Aviation Insurance family.

**Patricia McCluney**

Patricia came to Hardy in May of 2001 after five years experience with Flight Safety International. Her experience includes previous aviation insurance as an expediter for policy writers and customer service representatives.

In her position with Hardy, Patricia will continue this work as the back-up to and expediter for our other staff members. She also is in charge of special promotions and development in new business accounts.



Got A Quote

HARDY
AVIATION INSURANCE
800-721-6733

the industry.





**Rita Ethridge**

Rita has been in the aviation industry since 1978. She started her career in the insurance division of a full service aircraft sales/service company, working her way to eventually become vice president of that division.

Her experience extends into all facets of general aviation insurance, with a special emphasis on aerial application.

Joining Hardy Aviation Insurance in 1989, Rita has become our specialist in the agricultural aviation industry. Rita believes that, "The most important aspect of any business is customer service, and I believe we provide our clients with the highest degree of personal service that can be offered."

**Melinda Greene**

Melinda joined the staff of Hardy Aviation Insurance in April of 1999. She became a licensed agent in the same year, and has further developed her skills and knowledge in the industry.

She serves as an account manager and works directly with our clients on a daily basis. She primarily works with our pleasure and business aircraft customers, but also has the expertise to deal in all areas.

Melinda also serves as our resident information systems technician, and has developed new ways to enhance our abilities to serve our customers more efficiently.

